Jeremy W. Faith (State Bar No. 190647)
*Jeremy@MarguliesFaithLaw.com*
Monsi Morales (State Bar No. 235520)
*Monsi@MarguliesFaithLaw.com*
MARGULIES FAITH LLP
16030 Ventura Blvd., Suite 470
Encino, CA  91436
Telephone: (818) 705-2777
Facsimile:  (818) 705-3777

Counsel for Flexogenix Group, Inc., *et al.*,
Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>FLEXOGENIX GROUP, INC.,<br><br>                         Debtor. | Bk. Case No.:  2:19-bk-12927-BR<br><br>Chapter: 11 |

Jointly Administered With:
Case No.:  2:19-bk-12928-BR
Case No.:  2:19-bk-12929-BR
Case No.:  2:19-bk-12930-BR
Case No.:  2:19-bk-12931-BR

In re

WHALEN MEDICAL CORPORATION,

                         Debtor.

**DISCLOSURE STATEMENT DESCRIBING FLEXOGENIX DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JANUARY 19, 2021**

In re

FLEXOGENIX NORTH CAROLINA, PC,

                         Debtor.

In re

FLEXOGENIX GEORGIA, PC,

                         Debtor.

<u>Disclosure Statement Hearing:</u>
Date:    March 2, 2021
Time:    10:00 a.m.
Place:   Courtroom 1668
          255 E. Temple St.
          Los Angeles, CA 90012

In re

FLEXOGENIX OKLAHOMA, PC,

                         Debtor.

☒ Affects All Debtors
☐ Affects Flexogenix Group, Inc.
☐ Affects Whalen Medical Corporation
☐ Affects Flexogenix North Carolina, P.C.
☐ Affects Flexogenix Georgia, P.C.
☐ Affects Flexogenix Oklahoma, P.C.

<u>Confirmation Hearing:</u>
Date:    TBD
Time:    TBD
Place:   Courtroom 1668
          255 E. Temple St.
          Los Angeles, CA 90012

# TABLE OF CONTENTS

*Page No.*

I.  **INTRODUCTION** ...........................................................................................................1
   A.  *Purpose of This Document* .................................................................................1
   B.  *Deadlines for Voting and Objecting; Date of Plan Confirmation and Hearing* ..............2
      1.  Time and Place of the Confirmation Hearing.......................................................2
      2.  Deadline For Voting For or Against the Plan ......................................................2
      3.  Deadline For Objecting to the Confirmation of the Plan......................................3
      4.  Identity of Person to Contact for More Information Regarding the Plan .....................3
   C.  *Source of the Information Contained in the Disclosure Statement and Disclaimer* .......3
   D.  *The Accounting Method Used to Produce Financial Information and the Identity of the*
      *Accountant(s) or Others Responsible for Such Information* ...........................................3

II. **BACKGROUND** ............................................................................................................3
   A.  *Description and History of the Debtor's Business*...........................................3
   B.  *Principals/Affiliates of Debtor's Business* ....................................................4
   C.  *Management of the Debtor Before and After the Bankruptcy, Including Qualifications*
      *and Compensation* .......................................................................................4
   D.  *Relationship of the Debtors with Affiliates, Subsidiaries, Merger or Acquisition Interests,*
      *Plan Proponent* ...........................................................................................5
   E.  *Events Leading to Chapter 11 Filing* .........................................................5
   F.  *Significant Events* ......................................................................................6
      1.  Bankruptcy Proceedings ...................................................................................6
          a.  Administrative Matters ......................................................................6
          b.  Cash Collateral and Other "First Day" Motions ..........................................7
          c.  Lease Rejections ...............................................................................7
          d.  Relief from Stay ...............................................................................8
          e.  Claims Bar Date................................................................................8
          f.  Settlement with Össur Americas, Inc. ......................................................8
          g.  Objections to Claims.........................................................................9
          h.  Professionals ...................................................................................9
          i.  Pending and Potential Adversary Proceedings .........................................10
      2.  Other Legal Proceedings...................................................................................11
      3.  Description of the Available Assets and Their Value ................................................11
      4.  Actual and Projected Recovery of Preferential or Fraudulent Transfers....................12
      5.  Collectability of Accounts Receivable, Counter Claims, Etc.....................................12
      6.  Procedures Implemented to Resolve Financial Problems ........................................13
      7.  Current and Historical Financial Conditions .......................................................13
      8.  Anticipated Future of the Company ...................................................................13

III. **SUMMARY OF THE PLAN OF REORGANIZATION** ...................................................13
   A.  *Joint Plan for All Debtors* .........................................................................13
   B.  *What Creditors and Interest Holders Will Receive Under the Proposed Plan* ..............14

i

C. *Unclassified Claims* ............................................................................................14
   1. Statutory Fees .................................................................................................14
   2. Administrative Expenses .................................................................................15
   3. Priority Tax Claims..........................................................................................17
D. *Classified Claims and Interests* ............................................................................18
   1. Classes of Secured Claims...............................................................................19
   2. Classes of Priority Unsecured Claims .............................................................21
   3. Classes of General Unsecured Claims .............................................................21
   4. Classes of Interest Holders ..............................................................................22
E. *Means of Effectuating the Plan* .............................................................................23
   1. Continued Legal Existence & Revesting of Assets ..........................................23
   2. Funding for the Plan ........................................................................................23
   3. Post-Confirmation Management.......................................................................23
   4. Provisions Governing Distributions .................................................................24
      a. Disbursing Agent .....................................................................................24
      b. Distributions for Claims Allowed as of the Effective Date........................24
      c. Undeliverable Distributions......................................................................24
      d. Interest and Penalties on Claims...............................................................25
      e. Means of Cash Payment ...........................................................................25
      f. Withholding and Reporting Requirements ................................................25
      g. Setoffs......................................................................................................25
      h. Procedures for Resolving Disputed, Contingent, and Unliquidated Claims ........26
   5. Corporate Action .............................................................................................27
   6. Effectuating Documents; Further Transactions. ...............................................27
   7. Exemption From Certain Transfer Taxes and Recording Fees ..........................27
   8. Further Authorization .......................................................................................27
F. *Risk Factors* ..........................................................................................................27
G. *Other Provisions of the Plan* .................................................................................28
   1. Assumption/Rejection of Executory Contract and Unexpired Leases ........................28
   2. Compensation and Benefits Programs..............................................................30
   3. Employment Contracts ....................................................................................30
   4. Changes in Rates Subject to Regulatory Commission Approval ...............................30
   5. Preservation of Causes of Action .....................................................................30
   6. Retention of Jurisdiction..................................................................................31
H. *Tax Consequences of Plan* .....................................................................................33
IV. **CONFIRMATION REQUIREMENTS AND PROCEDURES**........................33
*1. Who May Vote or Object* ........................................................................................34
   1. Who May Object to Confirmation of the Plan...................................................34
   2. Who May Vote to Accept/Reject the Plan.........................................................34
      a. What Is an Allowed Claim/Interest ..........................................................34
      b. What Is an Impaired Claim/Interest..........................................................34
   3. Who is <u>Not</u> Entitled to Vote .............................................................................35

4. Who Can Vote in More Than One Class ...................................................35
5. Votes Necessary to Confirm the Plan ......................................................35
6. Votes Necessary for a Class to Accept the Plan .......................................35
7. Treatment of Non-Accepting Classes ......................................................36
8. Request for Confirmation Despite Non-Acceptance by Impaired Classes...............38

2. *Liquidation Analysis* ................................................................36
3. *Feasibility* .........................................................................37

**V. EFFECT OF CONFIRMATION OF PLAN** ..........................................................38
*A. Binding Effect* .......................................................................38
*B. Revesting of Assets* ..................................................................38
*C. Discharge, Satisfaction of Claims and Termination of Interest* ........................38
1. Complete Satisfaction, Discharge and Releases .......................................38
*D. Injunction* ...........................................................................39
*E. Exculpation and Limitation of Liability* .............................................40
*F. Term of Bankruptcy Injunction or Stay* ...............................................40
*G. Indemnification of Officers, Directors and Employees* .................................41
*H. Amendment of Modification of Plan* ...................................................41
*I. Post-Confirmation Status Report* .....................................................41
*J. Payment of Quarterly Fees* ...........................................................41
*K. Post-Confirmation Converstion/Dismissal* .............................................41
*L. Final Decree and Closing the Chapter 11 Cases* .......................................42

**VI. SUPPORTING DECLARATIONS [TO BE FILED]** ...................................................
**VII. SUPPORTING EXHIBITS [TO BE FILED]** .......................................................
**EXHIBIT A – LIST OF ALL ASSETS** ..............................................................
**EXHIBIT B –LIST OF ADMINISTRATIVE EXPENSE CLAIMS** ............................................
**EXHIBIT C – LIST OF UNSECURED CLAIMS** ........................................................
**EXHIBIT D – TAX CONSEQUENCES** ................................................................
**EXHIBIT E – LIQUIDATION VALUATION AND ANALYSIS** .............................................
**EXHIBIT F-1 – LIST OF ASSUMED EXECUTORY CONTRACTS AND LEASES** ......
**EXHIBIT F-2 – LIST OF REJECTED EXECUTORY CONTRACTS AND LEASES**.....
**EXHIBIT G – CASH FLOW PROJECTION THROUGH DECEMBER 2028**................
**EXHIBIT H – UNAUDITED FINANCIAL STATEMENTS** ..............................................
**EXHIBIT I – MANAGEMENT SERVICE AGREEMENTS**
**EXHIBIT J – RESUMES OF DR. SEAN WHALEN AND IRIS WHALEN**

# I.

## **INTRODUCTION**

Flexogenix Group, Inc. ("Flex Group"), Flexogenix Oklahoma, P.C. ("Flex OK"), Flexogenix Georgia, P.C. ("Flex GA"), Flexogenix North Carolina, P.C. ("Flex NC"), and Whalen Medical Corporation ("WMC," and collectively with Flex Group, Flex OK, Flex GA and Flex NC, the "Debtors"), are debtors and debtors in possession in the above-captioned jointly-administered chapter 11 cases. The Debtors commenced their voluntary bankruptcy cases by filing chapter 11 petitions under the United States Bankruptcy Code, 11 U.S.C. § 101 *et. seq* (the "***Bankruptcy Code***"), on March 18, 2019 (the "***Petition Date***"). The Bankruptcy Court (the "***Court***") authorized the joint administration of the Debtors' cases (the "***Chapter 11 Cases***") by Order entered on March 19, 2019.

Chapter 11 allows debtors, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization. The plan may provide for the debtor to reorganize by continuing to operate, to liquidate by selling assets of the estates, or a combination of both. The Debtors (also referred to herein as the "***Plan Proponents***") are the parties proposing the consolidated Chapter 11 Plan (the "***Plan***") sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN. The Disclosure Statement has been approved by the Bankruptcy Court and is provided to help you understand the Plan. Any capitalized terms used in this Disclosure Statement and not defined shall have the meaning ascribed in the Plan.

This is reorganizing plan. In other words, the Plan provides for the revesting of substantially all of the Debtors' assets in the Reorganized Debtors and payments to Creditors on account of their Allowed Claims. The Effective Date of the proposed Plan is expected to be June 1, 2021.

### A.    Purpose of This Document

This Disclosure Statement summarizes what is in the Plan and tells you certain information relating to the Plan and the process the Bankruptcy Court follows in determining whether to confirm the Plan.

## **READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

**(1)    WHO CAN VOTE OR OBJECT,**

**(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

1

**(3)    THE HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASES,**

**(4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

**(5)    WHAT IS THE EFFECT OF CONFIRMATION, AND**

**(6)    WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how the Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plan. The Bankruptcy Court has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

**B.    Deadlines for Voting and Objecting; Date of Plan Confirmation and Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTORS AND ON ALL CREDITORS AND INTEREST HOLDERS IN THESE CHAPTER 11 CASES.

**1.    Time and Place of the Confirmation Hearing**

The hearing where the Court will determine whether or not to confirm the Plan will take place on _____, 2021, at __:__ _.m., in Courtroom 1668, U.S. Bankruptcy Court, 255 East Temple Street, Los Angeles, CA, 90012.

**2.    Deadline For Voting For or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to counsel for the Plan Proponents, Margulies Faith LLP, attention: Monsi Morales, Esq., 16030 Ventura Boulevard, Suite 470, Encino, CA 91436.

Your ballot must be received by 5:00 p.m., Pacific Time, on _____, 2021, or it will not be counted.

2

**3.    Deadline For Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon: (1) counsel for the Plan Proponents, Margulies Faith LLP, attention: Monsi Morales, Esq., 16030 Ventura Boulevard, Suite 470, Encino, CA 91436, and (2) the Office of the United States Trustee, attention: Ron Moroko, Esq., 915 Wilshire Blvd., Suite 1850, Los Angeles, CA 90017, by _____, 2021.

**4.    Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact counsel for the Plan Proponents, Margulies Faith LLP, attention: Monsi Morales, Esq., 16030 Ventura Boulevard, Suite 470, Encino, CA 91436.

**C.    Source of the Information Contained in the Disclosure Statement and Disclaimer**

The information contained in this Disclosure Statement is provided by the Plan Proponents and their accountants, Grobstein Teeple, LLP. The Plan Proponents represent that everything stated in the Disclosure Statement is true to the Plan Proponents' best knowledge.  The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

**D.    The Accounting Method Used to Produce Financial Information and the Identity of the Accountant(s) or Others Responsible for Such Information**

The financial data relied upon in formulating the Plan is based on the Debtors' books and records, financial statements, appraisals of certain of the Debtors' assets, and projections, prepared by Grobstein Teeple, LLP, of future cash flows expected by the Debtors from the operation of their business.

## II.

## BACKGROUND

**A.    Description and History of the Debtors' Business**

Flex Group is a California corporation that was founded in or about January 2015. Pursuant to pre-petition management agreements between Flex Group and the PC Debtors (defined below), Flex Group provides management services to the PC Debtors.

Flex NC is a North Carolina professional corporation that was founded in or about June 2015.  Flex NC owns and operates three nonsurgical orthopedic joint care clinics in North Carolina.

3

Flex OK is an Oklahoma professional corporation that was founded in or about March 2018.  Flex OK owns and operates a nonsurgical orthopedic joint care clinic in Oklahoma City, Oklahoma.

Flex GA is a Georgia professional corporation that was founded in or about January 2017.  Prior to the Petition Date, Flex GA owned and operated a nonsurgical orthopedic joint care clinic in Atlanta, Georgia.  Flex GA closed its Atlanta clinic and ceased all business operations after the commencement of these Chapter 11 Cases.

WMC is a California corporation that was founded in or about April 2013 as Flexogenix, Inc.  In or about January 2015, the company changed its name to Mogannam & Whalen Medical Corporation, and in or about June 2017, the company changed its name again to Whalen Medical Corporation.  Prior to the Petition Date, WMC owned and operated a nonsurgical orthopedic joint care clinic in Los Angeles, California, under the name "Flexogenix Los Angeles."  WMC closed its Los Angeles clinic and ceased all business operations after the commencement of these Chapter 11 Cases.

**B.      Principals/Affiliates of Debtors' Business**

Flex Group is operated primarily by Iris Whalen, as the Chief Executive Officer, and Dr. Sean P. Whalen, as the Chief Medical Officer ("***Dr. Whalen***," and together with Iris Whalen, the "***Whalens***").  The Whalens, together, own 97.5% of the equity interest in Flex Group, while Jack Miletic and Thomas Howard own 1% and 1.5%, respectively.

Flex GA, Flex NC, Flex OK, and WMC (together, the "***PC Debtors***") are all owned solely by Dr. Whalen.  The PC Debtors are operated primarily by Dr. Whalen, as the Chief Executive Officer.

**C.      Management of the Debtor Before and After the Bankruptcy, Including Qualifications and Compensation**

From its formation through present, Flex Group has been managed the Whalens, and the PC Debtors have been managed by Dr. Whalen.  Dr. Whalen graduated with his Doctor of Medicine from University of California, Irvine, College of Medicine, in 2002.  He completed an internship in internal medicine at St. Mary Medical Center in Long Beach, California, in 2002-2003, and a diagnostic radiology residency at the University of Southern California, LAC+USC Medical Center, in Los Angeles, California, from 2003 through 2007.  Beginning in 2007, Dr. Whalen was a practicing radiologist, and in 2013, he founded Flexogenix, Inc., the predecessor of the Debtors.  Iris Whalen has worked in the medical field since 2006 and has served as the Chief Executive Officer and Chief Financial Officer of Flex Group (and the former Flexogenix, Inc.) since 2013.  Attached at Exhibit J are the current resumes for Dr. Whalen and Iris Whalen.

From the formation of Flexogenix, Inc., in 2013, through 2018, Dr. Whalen received salary from the Debtors totaling $952,246.03, which averages out to $158,707.67 per year.  In addition,

the Debtors' employer contribution to Dr. Whalen's 401k, which began in 2014, totaled $98,526.89 through 2018, or an average of $19,705.38. Iris Whalen received an aggregate salary from the Debtors of $1,089,494.35 between 2013 and 2018, which equals an average of $181,582.39 per year. Also, from 2014 through 2018, the Debtors contributed a total of $98,700.35 to Ms. Whalen's 401k.

During the Chapter 11 Cases, Dr. Whalen receives total gross monthly compensation from the Debtors of approximately $25,000 and Iris Whalen receives gross monthly compensation from Flex Group of $20,250, in accordance with the Notices of Setting Insider Compensation. It is expected that, after the Effective Date, the Whalens will continue to serve as the officers and directors of the Reorganized Flex Group, and Dr. Whalen will continue to serve as the officer of the Reorganized PC Debtors, at their current rate of compensation and benefits.

From and after the Effective Date of the Plan, it is expected that Flex GA and WMC will have minimal, if any, business activities. It is expected that Dr. Whalen, in a reduced capacity, will continue to serve as the officer of the Reorganized Flex GA and the Reorganized WMC after the Effective Date.

**D.      Relationship of the Debtors With Affiliates, Subsidiaries, Merger or Acquisition Interests, Plan Proponents**

Pursuant to management agreements between Flex Group and the PC Debtors, Flex Group provided pre-petition management services to the PC Debtors, which services included all administrative functions, including processing payroll and ordering inventory and supplies, as well as managing billing, accounts receivable and accounts payable. Following the Effective Date, Flex Group will enter into separate Management Services Agreements with Flex NC and Flex OK for the continued provision of management services. Copies of the proposed Management Services Agreements are attached hereto as Exhibit I.

**E.      Events Leading to Chapter 11 Filing**

In 2017-2018, the Debtors began experiencing cash flow issues stemming from decreased collections and expenses arising from certain struggling clinics, principally those located in Los Angeles and Atlanta, as well as increasing start-up costs and expenses for new locations such as Oklahoma City, Oklahoma. Around the same time, the Debtors abruptly separated from their closely-tied advertising partner, which was responsible for all Flexogenix brand advertising, due to conflicts of interest that had arisen and the advertising company's relationships with and treatment of the Debtors' competitors. This sudden loss of all advertising caused a significant and unexpected decrease in the Debtors' business, as the Debtors were forced to rebuild their significant advertising efforts from the ground up on their own, while running the businesses.

To stabilize their revenue and support necessary expenses, beginning in or about November 2017 and continuing through February 2019, certain of the Debtors obtained financing from several above-market lenders.

During this period, the Debtors borrowed a total of approximately $11.1 million from ten separate lenders (the "**Lenders**").  All of the funds received were used to pay the obligations of the Debtors, including, but not limited to, employee salaries, vendor payments, rent for the clinics.  The Debtors were able to make significant payments to the Lenders pre-petition.  Specifically, with respect to the agreements that were paid in full prior to the Petition Date, the Debtors borrowed $3.9 million and repaid in excess of $5.5 million.  For the agreements that remained open as of the Petition, the Debtors borrowed a total of $7.2 million and have paid back nearly $3.4 million.

Despite these substantial payments, and due to the exorbitant interest charged by the Lenders, as of the Petition Date, the Debtors purportedly owed approximately $6.4 million to six of the Lenders.  The Lenders are merchant cash advance ("**MCA**") companies.  Each of the Lenders' agreements purported to grant the Lender a security interest in certain of the Debtors' accounts receivable and personal property.  Less than half of the Lenders took any action to perfect their alleged security interests, and most, if not all, of the filings that do purport to perfect a Lender's alleged security interest are objectionable and avoidable as preferential and/or fraudulent transfers.  Four of the Lenders filed proofs of claim, asserting secured claims totaling approximately $1 million and unsecured claims totaling approximately $5.3 million.  As described in Sections II.F.1.h and II.F.2 of this Disclosure Statement, the Debtors dispute the claims of the Lenders and have commenced, or will commence, litigation against the Lenders.

As MCA companies asserting security interests in certain of the Debtors' accounts receivable, the Lenders' agreements provided for daily draws by the Lenders from the Debtors' bank accounts to pay down the loans, in excess of $73,000 per day in total as of the Petition Date. The substantial and burdensome daily withdrawals, combined with ordinary and necessary business expenses, began exceeding the Debtors' revenue collections and, without availability of additional capital or financing, the Debtors decided to commence these chapter 11 cases with the goal of restructuring their debt and reorganizing as an on-going business.

### F.    Significant Events

#### 1.    Bankruptcy Proceedings

The following is a list of significant events that have occurred <u>during</u> these Chapter 11 Cases:

##### a.    Administrative Matters

Shortly after the Petition Date, the Debtors filed motions to have their five cases jointly administered, which motions were granted by Order entered on March 19, 2019.  An official committee of unsecured creditors was not appointed in these Chapter 11 Cases.

Throughout these Chapter 11 Cases, the Debtors have materially complied with, and continue to comply with, all of their duties under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure ("**FRBP**") and all applicable guidelines of the Office of the United States

Trustee ("**OUST**").  On or about March 24, 2019, the Debtors submitted their 7-day Packages to the OUST, which were supplemented on or about June 14, 2019.  The Debtors filed their complete Schedules of Assets and Liabilities and Statements of Financial Affairs on April 15, 2019, which were amended on June 5, 2019, and again on November 5, 2019.  The Debtors have filed and submitted, or will file and submit prior to confirmation of the Plan, the required monthly operating reports to the OUST.  In addition, the Debtors have tendered the quarterly fees due and owing to the OUST through the quarter ending September 30, 2020.

### b.  Cash Collateral and Other "First Day" Motions

On March 22, 2019, the Debtors filed emergency motions seeking orders from the Court (1) establishing notice procedures and permitting service on insured depository institutions by first class mail; (2) authorizing the Debtors to continue use of its existing cash management system, maintain prepetition bank accountings and continued use of existing forms (the "**Cash Management Motion**"); (3) authorizing the Debtors to pay prepetition priority wage and benefits claims for employees; and (4) authorizing the Debtors to utilize cash collateral (collectively, the "**First Day Motions**").

At the hearing on the First Day Motions, the Court granted the First Day Motions, with the exception of the Cash Management Motion, and authorized the Debtors' use of cash collateral, on an interim basis, through a further hearing scheduled for May 7, 2019, at which time the Court authorized the Debtors' use of cash collateral on a final basis in accordance with the approved amended budget, with certain conditions regarding a variance with respect to budgeted expenditures. Pursuant to the procedures set forth in the final order authorizing the Debtors' use of cash collateral, the Debtors have filed extended budgets and are using cash collateral in accordance therewith.

### c.  Lease Rejections

The Debtors were the lessees under various leases for commercial and real properties located throughout the country, in locations proximate to their service areas. Prior to the Petition Date, and, in some instances, shortly thereafter, the Debtors vacated the leased properties that were no longer necessary, due to the termination of the Debtors' operations in certain locations. Accordingly, the Debtors filed a motion for order from the Court authorizing the Debtors to reject the real property lease for the properties that were no longer occupied by the Debtors. Said motion was subsequently granted on June 25, 2019.

Subsequently, the Debtors determined that they should assume the leases for the three real properties in which they operated the North Carolina clinics and the one real property in which they operated the Oklahoma clinic.  On October 14, 2019, the Debtors filed an omnibus motion for the assumption of the three North Carolina leases, which was granted by Order of the Court entered on December 19, 2019.  Similarly, on January 10, 2020, the Debtors filed a motion to

assume the Oklahoma lease, which was granted by the Court by Order entered on February 18, 2020.

### d. Relief from Stay

On May 24, 209, the landlord of the commercial property located in Cary, North Carolina, Healthpark at Kildaire MOB II, LLC ("**HPK**") filed for relief from the automatic stay (the "**MFRS**"). Initially, the Debtors opposed the MFRS, in an attempt to reach an agreement with HPK for the Debtors' consensual assumption of the lease. Ultimately, the negotiations with HPK did not result in a deal, and the Debtors withdrew their opposition to the MFRS, and consented to an order granting HPK relief from the automatic stay, which was memorialized in a stipulation approved by the Court on July 29, 2019

### e. Claims Bar Date

On May 15, 2019, the Debtors filed a motion to establish a deadline for filing proofs of claim against the Debtor's estate of July 29, 2019. On May 30, 2019, the Debtor prepared and served the Notice of Bar Date for filing proofs of claim in a Chapter 11 case to all known creditors and parties on the Master Mailing List.

On or about November 5, 2019, the Debtors filed amended Schedules of Assets and Liabilities in the Chapter 11 Cases. Because the amended Schedules modified the amount, classification, and/or allocation of certain claims, on or about November 12, 2019, the Debtors filed a motion with the Court requesting a new claims bar date, solely with respect to those creditors who were affected by the amended Schedules. By Order of the Court entered on November 18, 2019, a new claims bar date was established for those creditors of December 18, 2019.

On or about July 9, 2020, the Debtors filed a motion to establish a deadline for filing chapter 11 administrative expense claims. By Order of the Court entered on August 5, 2020, the Court set the administrative claims deadlines of August 31, 2020. On August 5, 2020, the Debtors served the Notice of Bar Date for Administrative Claims to all required parties.

### f. Settlement with Össur Americas, Inc.

Össur Americas, Inc. ("**Össur**") is a vendor of orthotics and prosthetics that supplied goods to the Debtors prior to the Petition Date. Össur filed a claim in the Chapter 11 Cases in the amount of $204,974.38 (the "**Össur Claim**"). Össur has asserted that a portion of the Össur Claim is entitled to priority status under 11 U.S.C. § 503(b)(9), a timely reclamation demand, alleged post-petition conversion of Össur's product, and/or alleged unauthorized use of Össur's cash collateral. The Debtors do not dispute the amount of the Össur Claim, but a dispute may exist with respect to the amount entitled to priority treatment under the Plan.

Following negotiations, the Debtors and Össur agreed to the terms of a consensual settlement that will resolve all disputes between the parties. Pursuant to the settlement, the Debtors

will return to Össur the current unused Össur product on hand (approximate purchase value of $30,000 subject to verification), with amount to be credited to Össur's asserted "reclamation" claim. Upon entry of a final order of the Bankruptcy Court approving the settlement, the Debtors will pay to Össur its agreed-upon administrative claim in the amount of $87,052.38, less the value of the returned product. Beginning thirty days following the Effective Date of the Plan, the Debtors will pay Össur its remaining unsecured claim ($117,922) at 0.50/1.00, for a total of $58,961, through five equal monthly installments of $10,000 and one final monthly installment of $8,961, at which point the Össur Claim will be deemed satisfied in full. The parties also agreed to mutual general releases of any other claims that may exist between them.

The Debtors and Össur are documenting their settlement into a written agreement and will seek Bankruptcy Court approval thereof prior to the date of the Confirmation Hearing.

### g. Objections to Claims

No objections to Claims have been filed by the Debtors, but the Debtors reserve the right to object to all Claims before and after Confirmation of the Plan on any available grounds, including any claims, counterclaims, defenses, right to setoff, or other basis, in favor of the Debtors as against any claimant. A list of the General Unsecured Claims against the Debtors is attached as Exhibit C. Included in Exhibit C is a list of the General Unsecured Claims against the Debtors to which the Debtors anticipate filing objections, if any.

### h. Professionals

The Court has approved the employment of the following professionals:

| Name | Date Court Approved Employment |
|---|---|
| Margulies Faith LLP<br>16030 Ventura Blvd., Suite 470<br>Encino, CA 91436<br><br>*Bankruptcy Counsel* | May 30, 2019 (effective date March 18, 2019) |
| Grobstein Teeple LLP<br>6300 Canoga Avenue, Suite 1500W<br>Woodland Hills, CA 91367<br>*Accountants* | December 23, 2019 (effective date May 1, 2019) |
| Levy Sapin Ko & Freeman<br>4221 Wilshire Blvd., Suite 430<br>Los Angeles, CA 90010<br><br>*Tax Accountants* | May 30, 2019 (effective date March 29, 2019) |

| Name | Date Court Approved Employment |
|---|---|
| Nelson Hardiman<br>1100 Glendon Avenue, 14th Floor<br>Los Angeles, CA 90024<br><br>*Special Healthcare Counsel* | October 1, 2019 (effective date August 13, 2019) |
| White and Williams, LLP<br>1650 Market Street<br>One Liberty Place, Suite 1800<br>Philadelphia, PA 19103-7395<br><br>*Special Litigation Counsel* | March 10, 2020 (effective date January 16, 2020) |

### i. Pending and Potential Adversary Proceedings

There are no pending adversary proceedings in which any Debtor is a party in these Chapter 11 Cases.  The Debtors anticipate filing one or more adversary proceedings against certain of the Lenders (the "***Lender Litigations***").

The Lenders are merchant cash advance ("***MCA***") companies.  In the last few years, MCA companies are increasingly under attack by federal and state authorities for engaging in deceptive practices and predatory lending schemes.  *See e.g., Letitia James, Attorney General of New York v. Richmond Capital Group, LLC, et. al.*, Supreme Court of the State of New York, County of New York, Index No. 451368/2020.  Indeed, Rohit Chopra, a commissioner of the the Federal Trade Commission, has announced that the commission is "looking for a systemic solution that makes sure [MCA companies] can all be wiped out before they do more damage."  *See* Gretchen Morgenson, *Feds Crack Down On Lenders Targeting Smalle Businesses With Hight-Interest Loans, Abusive Collection Tactics,* August 13, 2020, NBCNEWS.Com.

In the Lender Litigations, the Debtors anticipate alleging that the Lenders have engaged in unlawful, predatory schemes to solicit, fund and collect upon criminally usurious loans disguised as so-called future receivable purchase agreements (the "***Lender Agreements***").  *See e.g., McNider Mar., LLC v. Yellowstone Capital, LLC*, 2019 N.Y. Misc. LEXIS 6165 (N.Y. Sup. Crt. Erie Cty. Nov. 19, 2019) (denying MCA company's motion to dismiss similar predatory lending scheme allegations).   Among other things, the Debtors will allege that the transactions between the Lenders and the Debtors do not constitute a true sale of receivables because the risks and benefits of ownership of the receivables remain with the Debtors.  Indeed, by operation of the agreements' default rights and remedies, the Debtors were absolutely obligated to repay the Lenders through fixed daily payments and within a fixed term that resulted in an unlawful rate of interest.  *See Funding Metrics, LLV v. NRO Boston, LLC,* 2019 N.Y. Misc. LEXIS 4878 (N.Y. Sup. Crt. West. Cty. Aug. 28, 2019) (finding a receivable sale agreement to be loan because it shifted all risk of loss to merchant/borrower).  Based on these allegations, the Debtors are investigating potential claims against the Lenders and others, sounding in fraud, breach of contract, and violations of the

Racketeer Influenced and Corrupt Organization Act ("RICO").   If the Debtors are successful, the Lender Agreements will be declared unenforceable, the Lenders' claims disallowed and the Debtors could recover damages equal to three times the amount of any payments made to the Lenders.

In response, the Lenders will likely contend that the Lender Agreements are true sale/purchases of the Debtors' receivables and not loans potentially subject to state usury laws. Among other things, the Lenders will contend that the Debtors' repayment obligations under the Lender Agreements are contingent upon the generation and collection of receivables and, thus, they are not absolute as in the case of a loan.  Additionally, the Lenders will likely contend that the Lender Agreements do not contain a specified term of repayment because they contain provisions that require the Lenders to extend the term in certain instances.  *See e.g., Power Up Lending Grp., Ltd.v. Cardinal Energy Grp.*, 2019 U.S. Dist. LEXIS 57527 (E.D.N.Y. April 3, 2019) (finding that a receivable purchase agreement was not a loan because it did not contain a term).

Resolution of these issues will depend upon a number of factors including the terms of the individual Lender Agreement and the facts surrounding their solicitation and enforcement. *LG Funding LLC v. United Senior Props.*, LLC, 181 A.D.3d 664 (2nd Dep't 2020) (affirming denial of motion to dismiss defense the receivable purchase agreement was a usurious loan).

In addition to the Lender Litigations, the Debtors or the Reorganized Debtors may commence one or more Avoidance Actions, as described in Section II.F.4 of this Disclosure Statement.

## 2.  Other Legal Proceedings

In 2019, one of the Lenders, Complete Business Solutions Group, LLC ("***CBSG***") commenced an action against the Whalens, titled *Complete Business Solutions Group, LLC v. Sean Whalen and Yingyin Iris Chen; Sean Whalen, Yingyin Iris Chen and Flexogenix Group, Inc. v. Complete Business Solutions Group, LLC; Broadway Advance, LLC; and MCA Capital Fund I, LLC*, Civ. A. No: 19-cv-06181-JS, pending in the United States District Court for the Eastern District of Pennsylvania (the "***CBSG Litigation***").  On or about January 21, 2020, the Whalens and Flex Group filed an answer and affirmative counterclaims against CBSG.  The CBSG Litigation currently is on hold, as CBSG and its principals are under federal investigation and being sued by the Securities Exchange Commission for fraud, and a receiver has been appointed for CBSG.

There are no pending or anticipated non-bankruptcy legal proceedings in which any of the PC Debtors is a party.

## 3.  Description of the Available Assets and Their Value

Because of the nature of the relationship between and among Flex Group and the PC Debtors, Flex Group was the title owner of all assets for the Flexogenix family of companies, other

than the PC Debtors' accounts receivable for medical services provided.  As of October 31, 2020, the estimated value (at cost) of Flex Group's assets totals approximately $1,009,506.

As of October 31, 2020, the estimated value of the outstanding accounts receivable for Flex NC totals approximately $592,652, of which approximately $239,413 is aged more than 120 days, rendering these amounts less likely to be collected.

As of October 31, 2020, the estimated value of the outstanding accounts receivable for Flex OK totals approximately $73,633, of which approximately $21,016 is aged more than 120 days, rendering these amounts less likely to be collected.

As of October 31, 2020, the estimated value of the outstanding accounts receivable for Flex GA totals approximately $18,709, all of which is aged more than 120 days, rendering these amounts less likely to be collected.

As of October 31, 2020, the estimated value of the outstanding accounts receivable for WMC totals approximately $37,869, all of which is aged more than 120 days, rendering these amounts less likely to be collected.

A list of the Debtors' assets and the estimated value thereof is attached to this Disclosure Statement as A.

### 4.  Actual and Projected Recovery of Preferential or Fraudulent Transfers

Except as otherwise provided in the Plan, all of the Debtors' rights, title and interest in any litigation claims or actions, including, but not limited to, claims or actions under Bankruptcy Code sections 544, 547, 548, and 549, (a) alleged, (b) pending, or (c) that may be alleged in a future complaint (the "***Avoidance Actions***") are preserved by the Plan.  On the Effective Date of the Plan, the Reorganized Debtors shall be authorized to investigate all Avoidance Actions and to initiate and/or prosecute any and all such Avoidance Actions that the Reorganized Debtors, in their sole discretion, determine should be prosecuted.  Any recoveries from Avoidance Actions shall be preserved for the benefit of the Debtors' estates.

### 5.  Collectability of Accounts Receivable, Counter Claims, Etc.

The PC Debtors are continuing to collect their accounts receivable and have average collections of nearly $760,000 per month, collectively, during these Bankruptcy Cases from their A/R and current operations.  However, as the accounts receivable age, the likelihood of collection diminishes.  Thus, the A/R that is aged over 120 days may be uncollectible.

Flex Group, as an administrative management company, does not collect accounts receivable for itself.  Under the Management Services Agreements, Flex Group is entitled to a management fee for its administrative services.

### 6.  Procedures Implemented to Resolve Financial Problems

To fix the problems that led to the bankruptcy filing and achieve a successful reorganization, the Debtors worked to improve the efficiency and reduce the costs of their business operations over the course of the Chapter 11 Cases.  The Debtors developed and have maintained ongoing directives for the clinics designed to control labor expenses and inventory costs.  In addition to implementing changes at the operations level, the Debtors also terminated certain burdensome leases and contracts.  Finally, because they were not operating profitably, Flex GA and WMC ceased their business operations at the outset of these Chapter 11 Cases.  The Debtors commenced these Chapter 11 Cases with the goals of reducing the Debtors' operations to only those clinics that are operating profitably and eliminating burdensome leases and contracts, which actions would allow the Debtors to reorganize successfully.

### 7.  Current and Historical Financial Conditions

The liquidation value of the Debtors' assets is summarized on Exhibit E.  The summary of the Debtors' assets set forth on Exhibit E was prepared by the Debtors and their professionals and has not been audited.

The Debtors' unaudited historical financial statements for the months of January 2016 through January 2019, together with the Debtors' current unaudited financial statements (as of October 31, 2020), are attached as Exhibit H.

### 8.  Anticipated Future of the Company

Following the Effective Date, the Flex Group, Flex NC and Flex OK will continue to maintain their operations.  Flex GA and WMC are no longer operating their business and are liquidating their assets.  All Interests in Flex GA and WMC shall be canceled on the Effective Date.  Flex GA and WMC shall be deemed dissolved and shall conduct no business and have no employees after the Effective Date.

### III.

### SUMMARY OF THE PLAN OF REORGANIZATION

### A.    Joint Plan for All Debtors

The Plan is a single plan of reorganization for the jointly administered Chapter 11 Cases.  Solely for the purposes of voting, confirmation, and making distributions to the holders of Allowed General Unsecured Claims: (a) all General Unsecured Claims against the Debtors are placed in a single Class for the purpose of voting on the Plan, and (b) any General Unsecured Claims against multiple Debtors based upon one underlying obligation, including Claims based on joint and several liability, contribution, indemnity, subrogation, reimbursement, surety, guaranty, co-maker and similar concepts, shall be treated as a single Claim.  Such treatment of General Unsecured

Claims for Plan purposes shall not affect, without limitation: (x) the legal and corporate structure of the Reorganized Debtors, (y) any obligations under any leases or contracts assumed in the Plan or otherwise after the Petition Date, or (z) the obligation of each Reorganized Debtor to pay all U.S. Trustee Fees on all disbursements as required by the Bankruptcy Code and Guidelines of the U.S. Trustee.

The Debtors believe a single consolidated plan of reorganization is appropriate and in the best interests of all creditors.  While each of the Debtors maintains separate books and records and the Debtors can trace funds into and out of each of the Debtors, in many cases it is very difficult for the Debtors to identify the specific Debtor that is liable on a Claim. The Debtors have historically been, and presently continue to be, effectively operated as a single enterprise and creditors have traditionally treated the Debtors as a single enterprise.  If the Debtors were required to review each Claim to determine which Debtor was liable for the Claim and which Debtor was not liable for the Claim (and then resolve any disputes as to the determination of which Debtor is liable), the costs to the Estates would far outweigh any benefit to the Estates and Holders of the Claims.

Under these circumstances, the Bankruptcy Court has the authority to confirm a single consolidated plan of reorganization. *See, e.g., In re Standard Brands Paint Co.*, 154 B.R. 563, 570 (Bankr. C.D. Cal. 1993) (recognizing that consolidation of debtors under a single plan would allow consensual plan to be confirmed without delay or uncertainty that could result with separate plans). The test for consolidation, as formulated by the Ninth Circuit, considers "(1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; or (2) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors." *In re Bonham*, 229 F.3d 750, 766-67 (9th Cir. 2000).  The Debtors satisfy both tests set forth by the Ninth Circuit.

**B.    What Creditors And Interest Holders Will Receive Under The Proposed Plan**

As required by the Bankruptcy Code, the Plan classifies Claims and Interests in various Classes according to their right to priority of payments, as provided in the Bankruptcy Code.  The Plan states whether each Class of Claims or Interests is Impaired or Unimpaired.  The Plan provides the treatment each Class will receive under the Plan.

**C.    Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired, and they do not vote on the Plan because they are automatically entitled to specific treatment as provided in the Bankruptcy Code.  As such, the Plan Proponents have not placed the following Claims in a Class.

**1.    Statutory Fees**

On the Effective Date, all fees due and payable pursuant to 28 U.S.C. § 1930, including, without limitation, any U.S. Trustee Fees incurred pursuant to 28 U.S.C. § 1930(a)(6), as

determined by the Bankruptcy Court at the Confirmation Hearing, to the extent not previously paid by the Debtors, shall be paid in Cash in full.  The Reorganized Debtors shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6) after the Effective Date. Following Confirmation, the Reorganized Debtors will file with the Bankruptcy Court and serve on the United States Trustee quarterly financial reports regarding all income and disbursements, including all Plan payments, for each quarter (or portion thereof) that the Chapter 11 Cases remain open.

## 2.    Administrative Expenses

Administrative expenses are Claims for costs or expenses of administering the Debtors' Chapter 11 Cases that are Allowed Claims under Bankruptcy Code section 507(a)(2).  The Bankruptcy Code requires that, on the Effective Date of the Plan, all Allowed Administrative Claims be paid Cash equal to the total allowed amount of such Administrative Claim, unless a particular claimant agrees to a different treatment.

On the latest of (a) the Effective Date, (b) the date on which an Administrative Claim becomes an Allowed Administrative Claim, or (c) the date on which an Allowed Administrative Claim becomes payable under any agreement relating thereto, each Holder of such Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim.  Notwithstanding the foregoing, (y) any Allowed Administrative Claim based on a liability incurred by the Debtor in the ordinary course of business during the Chapter 11 Cases may be paid in the ordinary course of business in accordance with the terms and conditions of any agreement relating thereto, and (z) any Allowed Administrative Claim may be paid on such other terms as may be agreed to between the Holder of such Claim and the Debtors or the Reorganized Debtors.

The following chart lists the Debtors' anticipated section 507(a)(2) Administrative Claims, including the amounts incurred through January 19, 2021, and an estimate of the total amounts through the Effective Date of the Plan, and their proposed treatment under the Plan.  A detailed listing of the non-professional Administrative Claims asserted against the Debtors is attached as Exhibit B.

| Name | Amount Owed | Treatment |
|---|---|---|
| Clerk's Office Fees | Estimated amount owed as of Effective Date is $0 | Paid in full on the Effective Date to the extent Allowed |
| Office of the U.S. Trustee Fees | Estimated amount owed as of Effective Date is $0 | Paid in full on the Effective Date to the extent Allowed |

| Name | Amount Owed | Treatment |
|---|---|---|
| Margulies Faith LLP<br><br>Bankruptcy Counsel for the Debtors | Estimated amount owed as of Effective Date is $125,000 | Paid in full on the Effective Date to the extent Allowed |
| Grobstein Teeple LLP<br><br>Accountants to the Debtors | Estimated amount owed as of Effective Date is $50,000 | Paid in full on the Effective Date to the extent Allowed |
| Levy Sapin Ko & Freeman<br><br>Tax Accountants to the Debtors | Estimated amount owing as of Effective Date is $5,000 | Paid in full on the Effective Date to the extent Allowed |
| Nelson Hardiman<br><br>Special Healthcare Counsel for the Debtors | Estimated amount owed as of Effective Date is $0 | Paid in full on the Effective Date to the extent Allowed |
| White and Williams, LLP<br><br>Special Litigation Counsel for the Debtors | Estimated amount owed as of Effective Date is $100,000 | Paid in full on the Effective Date to the extent Allowed |
| Other section 503(b) Claims | Estimated amount owed as of Effective Date is $544,315 | Paid on the later of the Effective Date, in the ordinary course of business in accordance with terms and conditions of any agreement relating thereto, or otherwise as agreed to between the Debtors and the claimant(s). |
| **TOTAL** | **$824,315** | |

The Bankruptcy Court must approve all Professional Fee Claims listed in this chart for those Professionals employed by the Debtors. The Professional in question must file and serve a properly noticed fee application and the Bankruptcy Court must rule on the application. Only the amount of fees allowed by the Bankruptcy Court will be owed and required to be paid under the Plan.

As indicated above, unless the Holder of an Allowed Administrative Claim agrees to different treatment, it is estimated that the Debtors will need to pay approximately $824,315 worth of Allowed Administrative Claims on the Effective Date of the Plan (or when the Claim becomes Allowed). The Debtors believe they will have sufficient Cash on hand on the Effective Date to

make all payments required under the Plan to be paid on the Effective Date.  The primary source of this Cash will be from (a) existing Cash balances, and (b) income from the operation of the Reorganized Debtors' business.  In the event that the Debtors do not have sufficient Cash on hand to pay Allowed Administrative Claims in full on the Effective Date, certain of the Debtors' professionals have agreed to accept installment payments in satisfaction of their final approved fees and expenses.  In addition, the Debtors currently are negotiating with certain other Holders of Administrative Claims to pay such Allowed Administrative Claims over a period of time following the Effective Date.

### 3.    Priority Tax Claims

Priority Tax Claims are certain unsecured income, employment and other taxes described by Bankruptcy Code section 507(a)(8).  Section 1129(a)(9)(C) of the Bankruptcy Code requires that, except as otherwise agreed to by the parties, each holder of an Allowed Priority Tax Claim receive Cash equal to the total unpaid portion of such Allowed Priority Tax Claim, calculated as of the Effective Date of the Plan, paid over a period not exceeding five (5) years after the Petition Date.

On the later of (a) the Effective Date or (b) the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Tax Claim, in the sole discretion of, prior to the Effective Date, the Plan Proponents or, after the Effective Date, the Reorganized Debtors, (i) Cash equal to the unpaid portion of such Holder's Allowed Priority Tax Claim, (ii) a *Pro Rata* share of $17,500 per month, beginning on the Effective Date and continuing for twenty-four (24) months, followed by a *Pro Rata* share of $41,457.50 for the next fourteen (14) months or until such Allowed Priority Tax Claim is paid in full, which shall occur not later than five years from the Petition Date, or (iii) such other treatment as to which the Debtors or the Reorganized Debtors and such Holder shall have agreed upon in writing.

The Debtors believe that they owe approximately $1 million in section 507(a)(8) Priority Tax Claims.

### Deadline for Filing Administrative Expenses

### (a)    Pre-Effective Date Claims and Expenses

Other than Holders of (a) Administrative Claims for U.S. Trustee Fees, (b) Professional Fee Claims, (c) Administrative Claims that were Allowed on or before the Effective Date, (d) Administrative Claims incurred and payable in the ordinary course of the Debtors' business, and (e) Administrative Claims held by current officers, directors, managers or employees for indemnification, contribution, or advancement of expenses pursuant to (1) an operating agreement or similar organizational document, or (2) agreement approved by the Bankruptcy Court, all

Holders of Administrative Claims shall file with the Bankruptcy Court and serve on the Reorganized Debtors proof of any unpaid Administrative Claim on or before the 30th day following the Effective Date.  Such proof must include all supporting documentation for such Administrative Claim.  **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE CLAIM BEING FOREVER BARRED AND DISCHARGED**.

### (b)    Professional Fee Claims

Each Professional requesting compensation pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code for services rendered in connection with the Chapter 11 Cases prior to the Effective Date shall file with the Bankruptcy Court and serve on the Reorganized Debtors an application for allowance of final compensation and reimbursement of expenses in the Chapter 11 Cases on or before the 30th day following the Effective Date.  **FAILURE TO FILE AND SERVE SUCH PROFESSIONAL FEE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE PROFESSIONAL FEE CLAIM BEING FOREVER BARRED AND DISCHARGED**.  Without limiting the foregoing, the Reorganized Debtors may pay the charges incurred by the Reorganized Debtors on and after the Effective Date for any professional's fees, disbursements, expenses or related support services, without application to or approval by the Bankruptcy Court.

### (c)    Postpetition Tax Claims

All requests for payment of Claims by a governmental unit for Taxes (and for interest and/or penalties related to such Taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date otherwise has been established previously, must be filed on or before the later of: (i) sixty (60) days following filing of the notice of the Effective Date; and (ii) ninety (90) days following the filing of the tax return for such Taxes for such tax year or period with the applicable governmental unit.  **FAILURE TO FILE AND SERVE SUCH POSTPETITION TAX CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE POSTPETITION TAX CLAIM BEING FOREVER BARRED AND DISCHARGED.**

### D.    Classified Claims And Interests

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified, and the respective treatment of such Unclassified Claims is set forth in Article II.B of the Plan.

Claims and Interests are classified for all purposes, including voting, confirmation, and distribution pursuant to the Plan, as described below.

18

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

| Class | Impaired/Unimpaired; Entitlement To Vote |
|---|---|
| Class 1 – Secured Claims | Unimpaired – Deemed to accept the Plan and not entitled to vote |
| Class 2 – Non-Tax Priority Claims | Unimpaired – Deemed to accept the Plan and not entitled to vote |
| Class 3 – Convenience Claims | Impaired – Entitled to vote |
| Class 4 – General Unsecured Claims | Impaired – Entitled to vote |
| Class 5 – Interests in Debtors | Unimpaired – Deemed to accept the Plan |

### 1.  Classes of Secured Claims

Secured Claims are Claims secured by liens on property of an Estate.  The Debtors dispute that there are any valid, perfected and enforceable Secured Claims.

#### a.    Class 1 – Secured Claims

On the Effective Date, each Holder of an Allowed Secured Claim shall, at the option of the Plan Proponents, be entitled to the treatment set forth below in option A, B, C, D, or E.  The Plan Proponents and the Reorganized Debtors specifically reserve the right to challenge the validity, nature and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported Claims and Liens relating to the Secured Claims.

Option A:  Allowed Secured Claims with respect to which the Plan Proponents elect option A shall be Reinstated.  The failure of the Plan Proponents to file an objection, prior to the Effective Date, with respect to any Secured Claim that is Reinstated hereunder shall be without prejudice to the rights of the Reorganized Debtors to contest or otherwise defend against such Claim in an appropriate forum when and if such Claim is sought to be enforced.  Any cure amount that the Debtors may be required to pay pursuant to section 1124(2) of the Bankruptcy Code on account of any such Reinstated Secured Claim shall be paid on the latest of (a) the Effective Date, (b) the date on which such Secured Claim

becomes Allowed, and (c) such other date as mutually may be agreed to by and between such Holder and the Debtors or Reorganized Debtors.

Option B:  Allowed Secured Claims with respect to which the Plan Proponents elect option B shall be paid in Cash, in full, including any amounts owed under section 506 of the Bankruptcy Code, on the latest of (a) the Effective Date, (b) the date on which such Secured Claim becomes an Allowed Secured Claim, (c) the date on which such Secured Claim is otherwise due and payable, and (d) such other date as mutually may be agreed to by and between such Holder and the Debtors or Reorganized Debtors.

Option C:  Allowed Secured Claims with respect to which the Plan Proponents elect option C shall be satisfied by the surrender to the Holder of the Claim of the collateral securing the applicable Secured Claim.

Option D:  Allowed Secured Claims with respect to which the Plan Proponents elect option D shall receive the following payments in Cash: (a) one year after the Effective Date, 20% of the Allowed Amount of the Allowed Secured Claim plus accrued interest at 5% per annum, (b) two years after the Effective Date, 20% of the Allowed Amount of the Allowed Secured Claim plus accrued interest at 5% per annum, (c) three years after the Effective Date, 20% of the Allowed Amount of the Allowed Secured Claim plus accrued interest at 5% per annum, (d) four years after the Effective Date, 20% of the Allowed Amount of the Allowed Secured Claim plus accrued interest at 5% per annum, and (e) five years after the Effective Date, 20% of the Allowed Amount of the Allowed Secured Claim plus accrued interest at 5% per annum. The Reorganized Debtors' payment obligations on account of the Secured Claim will be secured by a security interest in the property securing the Secured Claim as of the Petition Date.  If the Secured Claim becomes an Allowed Secured Claim after the Effective Date, the Reorganized Debtors shall make all payments due and owing as of the date the Secured Claim becomes an Allowed Secured Claim within thirty days of such date.

Option E:  Allowed Secured Claims with respect to which the Plan Proponents elect option E shall be satisfied in accordance with such other terms and conditions as may be agreed upon by the Debtors or Reorganized Debtors and the Holder of such Allowed Secured Claim.

The Plan Proponents shall be deemed to have elected option A with respect to all Allowed Secured Claims except those with respect to which the Plan Proponents elect another option in writing and filed not later than five (5) days prior to the Confirmation Hearing.

Unless the Debtors elect Option D, Class 1 is an Unimpaired Class, and the Holders of Secured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Secured Claims are not entitled to vote to accept or reject this Plan.   If the Debtors elect Option D, Class 1 is Impaired and pursuant to section 1126 of the Bankruptcy Code, the Holders of the Secured Claims are entitled to vote to accept or reject the Plan

**2.   Classes of Priority Unsecured Claims**

a.   <u>Class 2 – Non-Tax Priority Claims</u>

Certain Non-Tax Priority Claims that are referred to in Bankruptcy Code sections 507(a)(1), (4), (5), (6), and (7) are required to be placed in Classes.  Non-Tax Priority Claims include (i) claims for certain accrued employee compensation; (ii) claims for contributions to employee benefit plans; and (iii) claims for certain deposits made in connection with the purchase, lease or rental of certain property or the purchase of certain services.

All Non-Tax Priority Claims against the Debtors are placed in Class 2.  Except to the extent that the Holder of an Allowed Non-Tax Priority Claim has agreed to a less favorable treatment of such Claim, on the latest of (a) the Effective Date, (b) the date on which such Non-Tax Priority Claim becomes an Allowed Non-Tax Priority Claim, (c) the date on which such Allowed Non-Tax Priority Claim is otherwise due and payable, and (d) such other date as mutually may be agreed to by and between the Debtors and the Holder of such Non-Tax Priority Claim, each Holder of an Allowed Non-Tax Priority Claim shall receive, in full and final satisfaction, release, and discharge of, and in exchange for, such Allowed Non-Tax Priority Claim, Cash equal to the unpaid portion of such Allowed Non-Tax Priority Claim.

Class 2 is an Unimpaired Class, and the Holders of Non-Tax Priority Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Non-Tax Priority Claims are not entitled to vote to accept or reject the Plan.

**3.   Classes of General Unsecured Claims**

Unsecured Claims are Claims that are not secured by liens on property of the Estates and not entitled to priority under section 507(a) of the Bankruptcy Code.  Unsecured Claims include all executory contract and lease rejection damage Claims under section 502(g) of the Bankruptcy Code, and all Claims under section 502(h) of the Bankruptcy Code arising from the recovery of property under sections 522, 550, or 553 of the Bankruptcy Code.  The following is the Class containing the Debtors' Unsecured Claims and their treatment under the Plan:

a.   <u>Class 3 – Convenience Claims</u>

All Convenience Claims against the Debtors are placed in Class 3.  A Convenience Claim is a Claim against the Debtors that is for $1,000 or less or the Holder of a Claim for more than $1,000 that elects to reduce its Claim to $1,000.  The Debtors estimate that, with the Convenience Claim amount set at $1,000, more than 30 of the Holders of Allowed Unsecured Claims against the Debtors in these Chapter 11 Cases may be in Class 3 or elect to be in Class 3, which will (1) provide a significant administrative benefit to the Estates, and (2) provide an increased distribution to the overwhelming number of unsecured creditors while liquidating and limiting the aggregate amount of cash necessary to satisfy Allowed General Unsecured Claims under the Plan.

Holders of Convenience Claims shall be paid in Cash, in full, on, or as soon as reasonably practicable after, the latest of (a) the Effective Date, (b) the date on which such Convenience Claim becomes an Allowed Convenience Claim, (c) the date on which such Convenience Claim is otherwise due and payable, and (d) such other date as mutually may be agreed to by and between such Holder and the Debtors or Reorganized Debtors.  No interest will be paid on Allowed Convenience Claims.  The Debtors estimate that approximately $17,640 will be paid on the Effective Date to Holders of Convenience Claims.

Class 3 is Impaired.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of a Convenience Claim is entitled to vote to accept or reject the Plan

b.    <u>Class 4 – General Unsecured Claims</u>

All General Unsecured Claims against the Debtors are placed in Class 4.  A General Unsecured Claim is a Claim against the Debtors that is not an Administrative Claim, Secured Claim, Non-Tax Priority Claim, Convenience Claim, or Priority Tax Claim.

Beginning on the first Business Date of the first calendar month following the end of the calendar quarter in which the Allowed Priority Tax Claims are paid in full, and continuing on the same date of the month following each calendar quarter thereafter, the Holders of Allowed Class 4 Claims shall receive *Pro Rata* distributions of $88,000.00, until the earlier of (a) the date on which all such Allowed Class 4 Claims have been paid in full, and (b) forty-eight (48) months following the date of the first distributions to Holders of Allowed Class 4 Claims under the Plan.  Based on the projected Effective Date of June 1, 2021, it is anticipated that payments to Holders of Allowed Class 4 Claims will begin to receive distributions under the Plan on or about October 1, 2024.

Class 4 is Impaired.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

**4.  Classes of Interest Holders**

Interests are the legal, equitable, contractual (including any contractual right to acquire equity in a Debtor contingent upon future events, such as an initial public offering) and other rights of any Person with respect to any capital stock or other ownership interest in a Debtor, whether or not transferable, and any option, warrant, or right to purchase, sell, or subscribe for an ownership interest or other equity security in the Debtor, including membership interests in limited liability companies regardless of whether such membership interests have any voting rights under the applicable operating agreement.

All Interests in the Debtors are placed in Class 5.  Holders of Interests in the Debtors shall have such Interests Reinstated on the Effective Date.

Class 5 is an Unimpaired Class, and the Holders of Interests in the Debtors are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

**Intercompany Claims**

On the Effective Date, all net Intercompany Claims (taking into account any setoffs of Intercompany Claims) held by the Debtors, between and among the Debtors, or between one or more Debtors shall be released, waived, and discharged.

**Reservation of Reorganized Debtors' Rights Regarding Claims**

Except as otherwise expressly provided in the Plan, nothing shall affect the Debtors' or the Reorganized Debtors' rights, claims and defenses, both legal and equitable, including all rights and claims with respect to legal and equitable defenses to setoffs against or recoupments, with respect to any Claims, including with respect to Claims in Unimpaired Classes.

**E.    Means of Effectuating the Plan**

**1.    Continued Legal Existence and Revesting of Assets.**

Except as otherwise provided in the Plan, each Debtor will continue to exist after the Effective Date as a separate legal entity, with all the powers of such an entity (i.e., a corporation) under the laws of the state in which such Debtor was organized and pursuant to such Debtor's articles of organization or formation, operating agreement and other organizational documents in effect as of the Effective Date (provided that such organizational documents shall be amended to prohibit the Reorganized Debtors from issuing non-voting equity securities, to the extent necessary to comply with section 1123(a) of the Bankruptcy Code), without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date.  In accordance with Section IV.B of the Plan, and except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estate (including Retained Actions) shall vest in the Reorganized Debtors.

**2.    Funding for the Plan**

All Cash necessary for the Reorganized Debtors to make payments required by the Plan shall be obtained from (a) existing Cash balances, and (b) the operation of the Reorganized Debtors.

**3.    Post-Confirmation Management**

On the Effective Date, Dr. Whalen shall be the President, Secretary and Chief Medical Officer of the Reorganized Debtor Flex Group, Inc., and the President and Chief Medical Officer of the PC Debtors.  Iris Whalen shall be the Chief Executive Officer of the Reorganized Debtor Flex Group.  The directors of the Reorganized Debtor Flex Group shall be the Whalens.  On the Effective Date, the Whalens will be appointed automatically as the officers and directors of the Reorganized Debtors, as described herein, without any requirement of further action by members, creditors, directors, or managers of the Debtors or the Reorganized Debtors, and their

23

compensation for such services shall continue as established under the approved insider compensation in this Chapter 11 Cases.

### 4.    Provisions Governing Distributions

*a.    Disbursing Agent*.  The Reorganized Debtors shall have the responsibility for making the post-Effective Date payments and distributions to creditors required by the Plan. Notwithstanding any provision herein to the contrary, with respect to distributions on account of pre-Effective Date Claims, the Reorganized Debtors shall make distributions only to Holders of Allowed Claims.  A Holder of a Disputed Claim shall receive only a distribution on account thereof when and to the extent that such Holder's Disputed Claim becomes an Allowed Claim.

*b.    Distributions for Claims Allowed as of the Effective Date.*  Except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Effective Date.  Any distribution to be made on the Effective Date pursuant to the Plan shall be deemed as having been made on the Effective Date if such distribution is made on the Effective Date.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.  Distributions to Holders of Allowed Claims will be made by mail as follows:

i.    If the Holder filed a proof of claim, distributions will be sent to the address, if any, set forth on the proof of claim;

ii.    If the Holder, after filing a proof of claim, delivered or delivers to the Debtor's attorneys a written notice of address change, distributions will be sent to the address set forth in the written notice and not the address set forth on the proof of claim;

iii.    If no proof of claim was filed or if the filed proof of claim does not set forth a legible and complete address and if the Debtors' attorneys have not received a written notice of address change, distributions will be sent to the address set forth in the Debtors' schedules of assets and liabilities (the "*Schedules*"); or

iv.    If no proof of claim was filed or if the proof of claim does not set forth a legible, complete address, the Debtors' attorneys have not received a written notice of address change; and the Schedules do not set forth a complete address, then the distribution will be deemed to be an "*Undeliverable Distribution*" as defined below.

*c.    Undeliverable Distributions.*  If a distribution is made and returned to the Reorganized Debtor marked as undeliverable for any reason, the distribution shall be deemed an "*Undeliverable Distribution*."  If a distribution to a Holder is returned to the Reorganized Debtors as an Undeliverable Distribution or is deemed to be an Undeliverable Distribution, the Reorganized Debtors shall make no further distribution to the Holder unless and until the Reorganized Debtors are timely notified by such Holder, in writing, of the Holder's current address.  Any Holder who is otherwise entitled to an Undeliverable Distribution and who does not, within 90 days after the

24

attempted delivery thereof (the "*90-Day Period*"), provide the Reorganized Debtors with written notice asserting its claim in that Undeliverable Distribution and setting forth a current, deliverable address, will be deemed to waive any claim to or interest in that Undeliverable Distribution and will be forever barred from receiving that Undeliverable Distribution from the Reorganized Debtors. Any Undeliverable Distributions that are not claimed prior to the expiration of the 90-Day Period shall revert back to the Reorganized Debtors free and clear of all claims of the Holder and all other Holders of Allowed Claims.  The Reorganized Debtors shall not have any obligation to attempt to locate any Holder whose distribution is undeliverable.  During the 90-Day Period, the Reorganized Debtors shall undertake reasonable efforts, such as a Google search, to attempt to locate any Holder whose distribution is undeliverable.

> **d.**    ***Interest and Penalties on Claims.***  Unless otherwise specifically provided for in the Plan or the Confirmation Order, required by applicable bankruptcy law, or necessary to render a Claim Unimpaired, postpetition interest and penalties shall not accrue or be paid on any Claims, including Priority Tax Claims and Non-Tax Priority Claims, and no Holder of a Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date such Claim becomes an Allowed Claim and is satisfied in accordance with the terms of the Plan.

> **e.**    ***Means of Cash Payment.***  Payments of Cash made pursuant to the Plan shall be made, at the option and in the sole discretion of the Reorganized Debtors, by checks drawn on, or wire transfer from, a domestic bank selected by the Reorganized Debtors.  Cash payments to foreign creditors may be made, at the option of the Reorganized Debtors, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

> **f.**    ***Withholding and Reporting Requirements.***  In connection with the Plan and all distributions hereunder, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.  The Reorganized Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including in requiring the Holder of any Allowed Claim to provide the Reorganized Debtors with any information, completed and signed state or federal tax forms, or other documents as the Reorganized Debtors may reasonably request.

> **g.**    ***Setoffs.***  The Reorganized Debtors may, pursuant to applicable law, but shall not be required to, set off against any Claim the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims or rights of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claim or rights that the Debtors or the Reorganized Debtors may have against such Holder.  The Debtors or the Reorganized Debtors shall provide notice of any proposed setoff to the Holder of such Claim at least five (5) days prior to effectuating such setoff.

*h.*     ***Procedures for Resolving Disputed, Contingent, and Unliquidated Claims***.

i.     *Authority and Deadline.*  The Reorganized Debtors shall have the sole right to file objections to all Disputed Claims; *provided, however,* if any party in interest requests that the Reorganized Debtors object to a certain Claim, and if the Reorganized Debtors refuses to file the objection, and the requesting party can demonstrate to the Bankruptcy Court that a good faith basis for the objection exists, the Bankruptcy Court may enter an order authorizing the requesting party to file an objection to the Claim. Any objections to Disputed Claims shall be served and filed in the Bankruptcy Court on or before one hundred twenty (120) days after the Effective Date.

ii.     *Creation of Reserves for Disputed Claim*.  The Reorganized Debtors shall (i) establish and maintain a reserve for Disputed Claims, (ii) establish and maintain a reserve for Undeliverable Distributions, and (iii) establish any other reserves or accounts it deems necessary or appropriate.  All Cash held in the reserves shall be invested only in investments permitted under the Bankruptcy Code and maintained in accounts held at authorized bank depositories.

iii.     *Estimation of Claims*.  The Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection and make distributions under the Plan with respect to other Allowed Claims in the same Class after making an appropriate reserve based on the estimated amount of such Disputed or contingent Claim.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Except as provided herein, Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

iv.     *Distributions Relating to Disputed Claims*.  At such time as a Disputed Claim becomes an Allowed Claim, the Reorganized Debtors shall distribute to the Holder of such Claim such Cash as the Holder is entitled to under the Plan, which distribution shall occur as soon as practicable after the date that the order or judgment allowing any Disputed Claim becomes a Final Order.  To the extent that all or a portion of a Disputed Claim is Disallowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is Disallowed.

v.     *Disallowed Claims*.  All Disputed Claims held by Entities against whom or which the Debtors or the Reorganized Debtors have commenced, or described in the Plan

or Disclosure Statement as possible, a proceeding asserting a claim for relief under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code and shall continue to be Disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Debtor or the Reorganized Debtors from such party have been paid.

## 5.    Corporate Action

Each of the matters provided for under the Plan involving the corporate structure of the Debtors or the Reorganized Debtors or any corporate action to be taken by, or required of, the Debtors or the Reorganized Debtors shall be deemed to have occurred and be effective as provided herein, and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by stockholders, members, creditors, directors, or managers of the Debtors or the Reorganized Debtors.

## 6.    Effectuating Documents; Further Transactions

Each of the Debtors and Reorganized Debtors, and their respective officers and designees, is authorized to execute, deliver, file, or record all contracts, instruments, releases, indentures, and other agreements or documents, and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, or to otherwise comply with applicable law.

## 7.    Exemption From Certain Transfer Taxes and Recording Fees

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from the Debtors to the Reorganized Debtors or to any other Entity pursuant to the Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtors' or the Estates' real or personal property, will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## 8.    Further Authorization

The Reorganized Debtors shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary to enforce, carry out the intentions and purposes, and to give full effect to the provisions, of the Plan.

## F.    Risk Factors

Because the Plan provides that, on the Effective Date, the Debtors will make payments in Cash on account of the Allowed Administrative Claims, Allowed Priority Claims and Allowed

Convenience Claims, as well as the General Unsecured Claim Effective Date Payment, totaling up to approximately $824,315, the primary risk under the Plan is the possibility that the aggregate amount of such payments on the Effective Date will exceed the Debtors' available Cash on the Effective Date.  The projected available Cash is comprised primarily of the proceeds to be received by the Debtors from the operation of their business, plus Cash on hand.  The projected amount of Cash on the Effective Date could be materially reduced for any number of reasons, including (1) some or all of the projected income is not received by the Effective Date of the Plan, or (2) the total amount of income received is lower than projected.  In other words, if the Debtors' collections are less than projected, there may not be sufficient Cash available to make the Effective Date payments.  Furthermore, there is a possibility that the administrative expenses that must be paid on the Effective Date are higher than currently projected.  If the Cash on hand on the Effective Date is not sufficient to make the required Effective Date payments, certain of the Debtors' professionals have agreed to accept payment of their final fees in installments over a period of time after the Effective Date to allow the Debtors to confirm the Plan.  In addition, the Debtors currently are negotiating with one or more non-professional Holders of Administrative Claims, with the goal of reaching agreement to allow the Debtors to pay some or all of the Allowed Administrative Claims in installments.

With respect to post-Effective Date payments, the Debtors are confident of the Reorganized Debtors' ability to operate profitably and make all such post-Effective Date payments.  Attached as Exhibit G is a cash flow projection that demonstrates the Reorganized Debtors will be able to make all requirement Plan payments.   However, there is a risk that the Reorganized Debtors will generate insufficient income and profitability to make all required post-Effective Date payments.  The Debtors' profitability is dependent on both overall market conditions and the success of the Flexogenix brand.  In addition, there is a risk that the Debtors' claims in the Lender Litigations will not be successful, in which case one or more Lender may be deemed to hold an Allowed Secured or General Unsecured Claim, which would dilute projected distributions to other creditors.

**G.    Other Provisions of the Plan**

**1.    Assumption/Rejection of Executory Contracts and Unexpired Leases**

A list of the Debtors' Executory Contracts and Unexpired Leases, together with the cure amount for each Executory Contract and Unexpired Lease to be assumed, is attached as Exhibit F to this Disclosure Statement.  Exhibit F-1 identifies Executory Contracts and Unexpired Leases to be assumed as of the Effective Date, along with the proposed cure amount to be paid, if any, and Exhibit F-2 identifies Executory Contracts and Unexpired Leases to be rejected as of the Effective Date.  Exhibit F to this Disclosure Statement is subject to modification at any time before the Confirmation Date.

The Debtors' Executory Contracts and Unexpired Leases shall be deemed automatically assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless such Executory Contract or Unexpired Lease:

vi.    is listed on Exhibit F-2 to the Disclosure Statement;

vii.    has been previously rejected by the Debtors by order of the Bankruptcy Court;

viii.    has been rejected by the Debtor by order of the Bankruptcy Court in effect as of the Effective Date (which order may be the Confirmation Order); or

ix.    is the subject of a motion to reject filed by the Debtors under section 365 of the Bankruptcy Code pending as of the Confirmation Date.

An Executory Contract or Unexpired Lease that is deemed to be assumed pursuant to the foregoing sentence shall be referred to as an "***Assumed Contract***."  An Executory Contract that is rejected or subject to a motion to reject as described above shall be referred to as a "***Rejected Contract***."

Entry of the Confirmation Order by the Bankruptcy Court shall constitute findings by the Bankruptcy Court that (i) the Debtors and the Reorganized Debtors have properly provided for the cure of any defaults that might have existed consistent with the requirements of section 365(b)(1) of the Bankruptcy Code, (ii) each assumption (or rejection, as the case may be) is in the best interest of the Debtors and the Estates and that each Assumed Contract is assumed and each Rejected Contract is rejected as of the Effective Date, and (iii) the requirements for assumption (or rejection, as the case may be) of any Executory Contract or Unexpired Lease to be assumed or rejected have been satisfied.  No provision of any agreement or other document that permits a person to terminate or modify an agreement or to otherwise modify the rights of the Debtors based on the filing of the petition initiating the Chapter 11 Cases or the financial condition of the Debtors shall be enforceable.  At the election of the Debtors, all cure payments under any Assumed Contract will be made by the Reorganized Debtors (1) on the Effective Date, (2) in 24 equal monthly payments plus 3% per annum interest paid monthly, or (3) upon such other terms as may be agreed to by the Debtors and the non-Debtor party to the Assumed Contract.  The Debtors estimate that a total of $76,391.06 will be due and owing as cure payments.

In the event of a dispute, cure payments required by section 365(b)(1) of the Bankruptcy Code shall be paid consistent with the preceding sentence commencing upon entry of a Final Order resolving such dispute; *provided, however*, if an objection to the Debtors' proposed cure amount, as set forth on Exhibit F-1 to the Disclosure Statement, is sustained by the Bankruptcy Court, the Reorganized Debtors, in their sole discretion, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it.

1
2
3
4
5

Unless otherwise provided by an order of the Bankruptcy Court, any Claim arising from the rejection of an Executory Contract or Unexpired Lease must be filed by the Holder of such Claim with the Bankruptcy Court and served on the parties entitled to notice under the Plan no later than sixty (60) days after the later of (1) the Effective Date or (2) the effective date of such rejection, subject to the Debtors' and the Reorganized Debtors' right to object thereto.  In the event of such objection, the Debtors shall not be obligated to make any distribution in respect of such Claim until such dispute is resolved by Final Order of the Bankruptcy Court or the agreement of the parties.

6
7

### 2.    Compensation and Benefit Programs

8
9
10
11
12
13
14

All of the Debtors' existing programs, plans, agreements, and arrangements relating to employee compensation and benefits (other than as set forth in any Rejected Contract), including all savings plans, retirement plans, healthcare plans, disability plans, severance plans, incentive plans, and life, accidental death and dismemberment insurance plans, entered into before the Petition Date, as amended from time to time and to the extent and as in effect immediately prior to the Effective Date (***"Benefit Plans"***) will be deemed to be, and will be treated as though they are, executory contracts that are assumed under Article III.A.1 of the Plan, and the Debtors' and Reorganized Debtors' obligations and rights under such programs, plans, agreements, and arrangements will survive confirmation of the Plan, subject to the terms and conditions of such Benefit Plans.

15
16
17
18

With respect to the Debtors' employer-sponsored 401k plan, the Debtors contribute on behalf of all their employees in the amounts required under the plan and applicable law, including the "safe harbor" provisions.  For 2019-2020, the Debtors matched all employee contributions, up to 6% of salary, at 50%.  Beginning in 2021, the Debtors will match all employee contributions, up to 3% of salary, at 100%, and up to an additional 2% of salary at 50%.  These employer contributions are the same for the Debtors' insiders as for all other employees.

19
20

### 3.    Employment Contracts

21
22
23
24

Any employment agreements designated for rejection in writing by the Debtors and filed with the Bankruptcy Court prior to the Confirmation Date shall be deemed rejected as of the Effective Date.  Any Claims arising from the rejection of any employment agreements shall be governed by the deadlines set forth in Article III.A.1 of the Plan.  Any such Claims will be classified as Class 4 General Unsecured Claims and will be capped in accordance with section 502(b)(7) of the Bankruptcy Code

### 4.    Changes in Rates Subject to Regulatory Commission Approval

25
26

The Debtors are not subject to governmental regulatory commission approval of any rates.

### 5.    Preservation of Causes of Action

27
28

In accordance with section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors will retain and may (but are not required to) enforce all Retained Actions.  After the Effective

Date, the Reorganized Debtors, in their sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court.  The failure to specifically list any claim, right of action, suit, proceeding, or other Retained Action in the Plan or the Disclosure Statement does not, and will not be deemed to, constitute a waiver or release by the Debtors or the Reorganized Debtors of such claim, right of action, suit, proceeding or other Retained Action, and the Reorganized Debtors will retain the right to pursue such claims, rights of action, suits, proceedings, and other Retained Actions in its sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches will apply to such claim, right of action, suit, proceeding, or other Retained Action upon or after the confirmation or consummation of the Plan.

### 6.    Retention of Jurisdiction.

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction (unless otherwise indicated) over all matters arising out of, and related to, the Chapter 11 Cases and the Plan, including, among other things, jurisdiction to:

i.    resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease with respect to which the Debtors or the Reorganized Debtors may be liable, and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

ii.    decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications, involving the Debtors that may be pending on the Effective Date or that are described in the Plan or Disclosure Statement as may be commenced after the Effective Date;

iii.    decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications, involving objections to Claims filed after the Effective Date;

iv.    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

v.    resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to the Plan, or any entity's rights arising from, or obligations incurred in connection with, the Plan or such documents;

vi.    modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, or remedy any defect or omission, or reconcile any inconsistency, in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

vii.    hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331, 503(b) and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date the payment of fees and expenses of the Reorganized Debtors, including professional fees, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

viii.    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation, or enforcement of the Plan or the Confirmation Order;

ix.    adjudicate controversies arising out of the administration of the Estate or the implementation of the Plan;

x.    recover all assets of the Debtors and property of the Estates, wherever located;

xi.    hear and determine claims for relief and causes of action by or on behalf of the Debtors or the Reorganized Debtors;

xii.    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason, or in any respect, modified, stayed, reversed, revoked, or vacated, or distributions pursuant to the Plan are enjoined or stayed;

xiii.    hear and resolve all matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

xiv.    determine any other matters that may arise in connection with, or relate to, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

xv.    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases;

xvi.    hear and determine such other matters related hereto that are not inconsistent with the Bankruptcy Code or title 28 of the United States Code; and

xvii.    enter an order closing the Chapter 11 Cases.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter, including the matters set forth in Section III.C of the Plan, the provisions of this Section shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

**H.    Tax Consequences of Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The disclosure of possible tax consequences, attached as Exhibit D, is intended solely for the purpose of alerting readers about possible tax issues the Plan may present.  The Plan Proponents CANNOT and DO NOT represent that the tax consequences contained are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

As set forth in Exhibit D, the Debtor are subchapter S corporations. As subchapter S corporations, the Debtors are not subject to U.S. federal income tax at the entity level. Instead the taxable income and losses pass thru to the shareholders and are reflected on each shareholder's U.S. federal income tax filing.  Any taxable loss generated may be claimed as a loss by the shareholders subject to limitations. Any loss carryforward is an attribute of the shareholders.

The Plan is expected to generate U.S. federal taxable income for the Debtors that will pass through to the shareholders.  Any existing loss carryforwards may be utilized by the shareholders to offset the income generated or may be subject to reduction pursuant to the tax attribute reduction rules.

**IV.**

**<u>CONFIRMATION REQUIREMENTS AND PROCEDURES</u>**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing Claims. The Plan Proponents CANNOT and DO NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a plan.  Some of the requirements include that the plan must be proposed in good faith, acceptance of the plan, whether

the plan pays creditors at least as much as creditors would receive in a chapter 7 liquidation, and whether the plan is feasible.  These requirements are <u>not</u> the only requirements for confirmation.

### 1.  Who May Vote or Object

### 1.  Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

### 2.  Who May Vote to Accept/Reject the Plan

A Creditor or Interest holder has a right to vote for or against the Plan if that Creditor or Interest holder has a Claim that is both (1) Allowed or allowed for voting purposes and (2) classified in an Impaired Class.

### a. What Is an Allowed Claim/Interest

As noted above, a Creditor or Interest holder must first have an <u>Allowed Claim or Interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the Claim.  When an objection to a Claim or Interest is filed, the Creditor or Interest holder holding the Claim or Interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the Claim or Interest for voting purposes.

With certain limited exceptions, THE CLAIMS BAR DATE FOR FILING A PROOF OF CLAIM IN THE CHAPTER 11 CASES WAS JULY 29, 2019.  For those certain creditors whose claims were affected by the Debtors' amended Schedules, the modified claims bar date for filing a proof of claim in the Chapter 11 Cases was December 18, 2019.  A Creditor or Interest holder may have an Allowed Claim or Interest even if a proof of claim or interest was not timely filed.  A Claim is deemed Allowed if (1) it is Scheduled on any Debtors' Schedules and such Claim is not Scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the Claim. An Interest is deemed Allowed if it is Scheduled and no party in interest has objected to the Interest.  Consult Exhibit C to see how the Plan Proponents have characterized your Claim or Interest.

### b.    What Is an Impaired Claim/Interest

As noted above, an Allowed Claim or Interest only has the right to vote if it is in a Class that is <u>Impaired</u> under the Plan. A Class is Impaired if the Plan alters the legal, equitable, or contractual rights of the members of that Class. For example, a Class comprised of General Unsecured Claims is Impaired if the Plan fails to pay the members of that Class 100% of what they are owed.

In this case, the Plan Proponents believe that Classes 3 and 4 are Impaired and that holders of Claims in these Classes, therefore, are entitled to vote to accept or reject the Plan. Class 1 is Impaired if the Debtors elect Option D.  The Plan Proponents believe that Classes 1 (unless the Debtors elect Option D), 2 and 5 are unimpaired and that holders of Claims in each of these Classes, therefore, do not have the right to vote to accept or reject the Plan.  Parties who dispute the Plan Proponents' characterization of their Claim or Interest as being Impaired or unimpaired may file an objection to the Plan contending that the Plan Proponents have incorrectly characterized the Class.

### 3.    Who is <u>Not</u> Entitled to Vote

The following four types of Claims are <u>not</u> entitled to vote: (1) Claims that have been Disallowed; (2) Claims in unimpaired Classes; (3) Claims entitled to priority pursuant to Bankruptcy Code sections 507(a)(2), (a)(3), and (a)(8); and (4) Claims in Classes that do not receive or retain any value under the Plan. Claims in unimpaired Classes are not entitled to vote because such Classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Bankruptcy Code sections 507(a)(2), (a)(3), and (a)(8) are not entitled to vote because such Claims are not placed in Classes and they are required to receive certain treatment specified by the Bankruptcy Code. Claims in Classes that do not receive or retain any value under the Plan do not vote because such Classes are deemed to have rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4.    Who Can Vote in More Than One Class

A Creditor whose Claim has been Allowed in part as a Secured Claim and in part as an Unsecured Claim is entitled to accept or reject the Plan in both capacities by casting one ballot for the Secured Claim and another ballot for the Unsecured Claim.

### 5.    Votes Necessary to Confirm the Plan

If Impaired Classes exist, the Court cannot confirm the Plan unless (1) at least one Impaired Class has accepted the Plan without counting the votes of any insiders within that Class, and (2) all Impaired Classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting Classes, as discussed later in Section IV.A.8.

### 6.    Votes Necessary for a Class to Accept the Plan

A Class of Claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Claims that actually voted, voted in favor of the Plan.  A Class of Interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the Interest holders of such Class that actually voted, voted to accept the Plan.

### 7. Treatment of Non-Accepting Classes

As noted above, even if <u>all</u> Impaired Classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting Classes are treated in the manner required by the Bankruptcy Code.  The process by which nonaccepting Classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown."  The Bankruptcy Code allows the Plan to be "crammed down" on nonaccepting Classes of Claims or Interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each Impaired Class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

### 8. Request for Confirmation Despite Non-Acceptance by Impaired Classes

The Plan Proponents will ask the Court to confirm the Plan by cramdown on Impaired Classes 3 and 4 if either of these Classes does not vote to accept the Plan. In addition, if the Court determines that any Class identified by the Debtors as Unimpaired is Impaired and that Class does not vote to accept the Plan, the Debtors will ask the Court to confirm the Plan by cramdown on that Class.  In addition, if the Bankruptcy Court determines that any modification to the Plan proposed after a Class has accepted the Plan "adversely changes the treatment" of the Class within the meaning of Bankruptcy Rule 3019, the Debtors will ask the Court to confirm the Plan by cramdown on that Class.

### 2. Liquidation Analysis

Another confirmation requirement is the "Best Interest Test," which requires a liquidation analysis.  Under the Best Interest Test, if a Claimant or Interest holder is in an Impaired Class and that Claimant or Interest holder does not vote to accept the Plan, then that Claimant or Interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

In a chapter 7 case, the debtor's assets are usually sold by a chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm the Plan, the Court must find that all Creditors and Interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a chapter 7 liquidation. The Plan Proponents maintain that this requirement is met here because the Plan proposes to pay all Holders of Allowed Administrative, Priority and Convenience Claims in full and Holders of General Unsecured Claims approximately

30% of the value of their Allowed Claims.  Therefore, in the event of a liquidation, Creditors would receive no better treatment or payment, and, in fact, Holders of General Unsecured Claims likely would receive little to no distributions at all.  In addition, Holders could face significant delay in receiving any payment on account of their Allowed Claims following the liquidation of the Debtors' assets and subsequent distribution by a chapter 7 trustee.  For these reasons, the Plan Proponents conclude that the Plan provides fair and equitable treatment of all Classes of Creditors and the greatest feasible recovery to all Creditors.

Attached as Exhibit E is a liquidation analysis that demonstrates that Creditors and Interest holders will receive at least as much under the Plan as such Creditors and Interest holders would receive a chapter 7 liquidation of the Debtors.

### 3.  Feasibility

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtors will have enough Cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on such date.  The Plan Proponents maintain that this aspect of feasibility is satisfied as illustrated here:

| | |
|---|---|
| Estimated Cash Debtors will have on hand on Effective Date | $ 630,065 |
| To Pay: Administrative Claims due on Effective Date[1] | - $ 544,316 |
| To Pay: Priority Tax Claims due on Effective Date | - $   17,500 |
| To Pay: Class 2 Non-Tax Priority Claims (if Allowed) | - $          0 |
| To Pay: Convenience Claims (est.) | -$   17,640 |
| **Balance after paying these amounts** | **$      50,609** |

The sources of the Cash the Debtors will have on hand by the Effective Date, as shown above, will be Cash in the Debtors' debtor in possession accounts, which amount includes the collection of revenue as of the Effective Date.  As set forth above, however, the projected amount of Cash on the Effective Date could be materially reduced for any number of reasons, including receiving income an aggregate amount less than projected by the Debtors as of the Effective Date.

The second aspect considers whether there will be sufficient funds to make all the Plan payments required after the Effective Date, which include monthly interest and principal payments

---

[1] Does not include estimated professional fees, which may be paid in installments, if the Debtors do not have sufficient Cash on the Effective Date.

1  to Holders of Allowed General Unsecured Claims.  The Debtors are confident of the Reorganized
2  Debtors' ability to operate profitably and to make all such post-Confirmation payments.  Attached
   as Exhibit G is a cash flow projection through December 2028 that demonstrates the Reorganized
3  Debtors will be able to make all required Plan payments.

4          YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL
5  ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL
   STATEMENTS.
6
7          In summary, the Plan proposes to make distributions to the Creditors holding Allowed
   Claims according to their priorities as soon as practicable.  As the cash flow projection
8  demonstrates, the Reorganized Debtors should have sufficient cash flow, over the 7.5 years
   following the Effective Date, to satisfy all required distributions under the Plan.  The Plan
9  Proponents contend that the Debtors' financial projections are feasible.

10
                                              **V.**
11
                      **EFFECT OF CONFIRMATION OF PLAN**
12
13         **A.      Binding Effect**

14         The Plan shall be binding upon and inure to the benefit of the Debtors, the Estates, all
15  current and former Holders of Claims and Interests, and their respective successors and assigns,
   including the Reorganized Debtors.
16
17         **B.      Revesting of Assets**

18         Except as otherwise explicitly provided in the Plan, on the Effective Date, on the Effective
   Date, all Retained Actions and all other property comprising the Estates shall vest in the
19  Reorganized Debtors, free and clear of all Claims, Liens, charges, encumbrances, rights, and
   Interests of creditors and equity security holders except for possessory liens, purchase money
20  security interests and as otherwise set forth in the Plan.  As of the Effective Date, the Reorganized
21  Debtors may operate their business and use, acquire, and dispose of property and settle and
   compromise Claims or Interests without supervision of the Bankruptcy Court, free of any
22  restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly
23  imposed by this Plan or the Confirmation Order.

24         **C.      Discharge, Satisfaction Of Claims And Termination Of Interest**
25
26                 **1.    *Complete Satisfaction, Discharge and Releases*.**

27                 a.    Except as otherwise provided in the Plan or in the Confirmation Order, all
   consideration distributed under the Plan shall be in exchange for, and in complete satisfaction,
28  settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtors or
   any of their assets or properties and, regardless of whether any property shall have been abandoned

by order of the Bankruptcy Court, retained, or distributed pursuant to the Plan on account of such Claims, upon the Effective Date, the Debtors shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including demands and liabilities that arose before the Effective Date, and all debts of the kind specified in 11 U.S.C. § 502, whether or not (i) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (iii) a Claim based upon such debt is or has been Disallowed by order of the Bankruptcy Court, or (iv) the Holder of a Claim based upon such debt accepted the Plan.

      b.  As of the Effective Date, except as provided in the Plan or the Confirmation Order, all Entities shall be precluded from asserting against the Debtors or the Reorganized Debtors any other or further Claims, debts, rights, causes of action, claims for relief, or liabilities relating to the Debtors or any Interest in the Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors, and the termination of all such Interests, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim or a terminated Interest.

### D.    Injunction

**Except as provided in the Plan or the Confirmation Order, from and after the Effective Date, all Entities that have held, currently hold, may hold, or allege that they hold, a Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, cause of action, or liability that is released, terminated, exculpated, or discharged under Section IV.C of the Plan, along with their respective current and former employees, agents, officers, directors, managers, principals, affiliates, shareholders, and members, are permanently enjoined from taking any of the following actions against the Debtors, the Reorganized Debtors, the Exculpated Parties, or any other released party, and their respective agents, officers, directors, managers, employees, representatives, advisors, attorneys, affiliates, shareholders, or members, or any of their successors or assigns or any of their respective property on account of any such released, terminated or discharged Claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or Interest:  (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor; or (v) commencing or continuing any action, in each such case in any manner, in any place, or against any Entity that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.**

### E.    Exculpation and Limitation of Liability

i.    None of the Exculpated Parties shall have or incur any liability to any Entity or any Entity's respective agents, employees, representatives, advisors, attorneys, affiliates, shareholders, or members, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the Disclosure Statement, the formulation, negotiation, or implementation of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions that are the result of fraud, gross negligence, criminal conduct, or willful misconduct, including the willful misappropriation of confidential information; *provided*, *however*, that the foregoing exculpation and limitation of liability shall apply only to acts and omissions that occur prior to the Effective Date, except with respect to those specific Plan administrative matters identified in the Plan; and *provided further, however,* that the foregoing exculpation and limitation of liability shall not apply to and shall not operate to waive, release, or exculpate any Claims or causes of action arising from or related to the rights and obligations under the Plan and the contracts, instruments, releases, and other agreements or documents delivered thereunder or contemplated thereby.  Without limiting the generality of the foregoing, the Debtors, the Reorganized Debtors, and any of such parties' directors, managers, officers, or members, shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

ii.    Notwithstanding any other provision in the Plan, nothing in the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state and local authority against the Exculpated Parties, and nothing in the Plan shall enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Exculpated Parties referred to herein for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state or local authority, nor shall anything in the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state and local authority, against the Exculpated Parties referred to in the Plan.

iii.    Notwithstanding any other provision herein, nothing in the Plan shall limit the liability of the Professionals of the Debtors or the Reorganized Debtors to their respective clients.

### F.    Term of Bankruptcy Injunction or Stays

Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered

after such date will terminate and the Reorganized Debtors may employ and pay professionals in the ordinary course of business.

### G.    Indemnification of Officers, Directors and Employees

All Claims arising on or after the Petition Date relating to or arising from the obligation of the Debtors to exculpate, indemnify or advance any expense to any officer, director, manager, employee or agent, shall survive confirmation of the Plan and become the obligations of the Reorganized Debtors.

### H.    Amendment or Modification of Plan

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Plan Proponents reserve the right to alter, amend, or modify the Plan at any time prior to or after the Confirmation Date, including, without limitation the right to withdraw the Plan; provided, however, that, in the event a material modification to the Plan is proposed after the Effective Date, the Reorganized Debtors shall provide notice and an opportunity to object to all interested parties.  A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

### I.    Post-Confirmation Status Report

Subject to any requirements set forth in the Confirmation Order or section 1106(a)(7) of the Bankruptcy Code, the Reorganized Debtors shall file, within 45 days after the Effective Date, a status report detailing the actions taken by the Debtors and the Reorganized Debtors and the progress made toward the consummation of the Plan.  Reports shall be filed thereafter every March 15, June 15, September 15, and December 15 until a final decree has been entered.

### J.    Payment of Quarterly Fees

All U.S. Trustee Fees due and payable as of the Effective Date, plus applicable interest, if any, shall be paid by the Debtors in full on the Effective Date.  The Reorganized Debtors shall be responsible for timely payment of all U.S. Trustee Fees incurred after the Effective Date.

### K.    Post-Confirmation Conversion/Dismissal

A Creditor or party in interest may bring a motion to convert or dismiss the Chapter 11 Cases under Bankruptcy Code section 1112(b) after the Plan is confirmed if there is a default in performing the Plan.  If the Bankruptcy Court orders the Chapter 11 Cases converted to chapter 7 after the Plan is confirmed, all property that had been property of the chapter 11 Estates, and that has not been disbursed pursuant to the Plan, will revest in the chapter 7 estates, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Bankruptcy Court during this Chapter 11 Case.

**L.     Final Decree and Closing the Chapter 11 Cases**

As soon as practicable after the Estates are fully administered, the Reorganized Debtors shall seek a decree closing the Chapter 11 Cases.  The Estates shall be administered fully, as provided in Bankruptcy Code section 3022, notwithstanding any continuing jurisdiction of the Bankruptcy Court and whether or not the Reorganized Debtors have made all distributions to the Holders of Allowed Claims and Interests as provided under the Plan.

Dated:  January 19, 2021                **"PLAN PROPONENTS"**

                                         Debtors and Debtors in Possession:

                                         Flexogenix Group, Inc.
                                         Flexogenix North Carolina, P.C.
                                         Flexogenix Oklahoma, P.C.
                                         Flexogenix Georgia, P.C.
                                         Whalen Medical Corporation


                                         _____
                                         By: Sean Whalen
                                         Its: President


Submitted By:

MARGULIES FAITH LLP

By:   _/s/ Monsi Morales_____
        Jeremy W. Faith
        Monsi Morales
Reorganization Counsel for Debtors and Debtors in Possession

# EXHIBIT A

**In Re FLEXOGENIX GROUP, INC., et.al.**
**Bankruptcy Case No. 2:19-bk-12927-BR**
**Detailed Asset Listing for Potential Liquidation**
**Exhibit A**

| Description | Location | Comment | Date in service | Category | Cost |
|---|---|---|---|---|---|
| LG Dryer 4.2 cu ft White Stackable Electric Dryer | Cary | | 05/01/15 | Furniture and Fixtures | $550.00 |
| LG Television | Cary | | 05/01/15 | Furniture and Fixtures | $199.00 |
| LG Television | Cary | | 05/01/15 | Furniture and Fixtures | $199.00 |
| LG Washer 2.3 Cu ft White Stackable- Front Load | Cary | | 05/01/15 | Furniture and Fixtures | $600.00 |
| Shelf | Cary | | 04/12/16 | Furniture and Fixtures | $404.58 |
| dylis 5-cu ft Chest Freezer | Cary | | 05/21/16 | Furniture and Fixtures | $245.32 |
| Book Shelf | Cary | | 08/30/16 | Furniture and Fixtures | $404.58 |
| XD232 NETWORKED INTERACTIVE TV Screen | Cary | | 10/08/16 | Furniture and Fixtures | $706.08 |
| Patient Chairs | Cary | | 11/07/16 | Furniture and Fixtures | $2,589.76 |
| Employee desk chairs | Cary | | 07/11/17 | Furniture and Fixtures | $900.47 |
| | | | | **Furniture and Fixtures Total** | **$6,798.79** |
| 4* Mini C-ARM Hologic | Cary | | 05/01/15 | Medical Equipment | $64,000.00 |
| Mat flatform, foot stool | Cary | | 06/03/15 | Medical Equipment | $841.00 |
| Platform Mounted Parallel Bars | Cary | | 06/09/15 | Medical Equipment | $1,611.50 |
| TS XR Demo Unit (Cross trainer) | Cary | | 06/10/15 | Medical Equipment | $6,050.00 |
| Mat flatform, foot stool | Cary | | 06/20/15 | Medical Equipment | $2,470.00 |
| Mat flatform, foot stool | Cary | | 06/25/15 | Medical Equipment | $2,124.00 |
| Mat flatform, foot stool | Cary | | 07/01/15 | Medical Equipment | $218.00 |
| T3200, transducer, hip probe | Cary | | 07/10/15 | Medical Equipment | $28,000.00 |
| Platform Mounted Parallel Bars | Cary | | 07/16/15 | Medical Equipment | $1,097.29 |
| Blood Pressure, Table Top *3 | Cary | | 07/17/15 | Medical Equipment | $1,117.32 |
| Blood Pressure, Table Top *3 | Cary | | 07/28/15 | Medical Equipment | $705.00 |
| Blood Pressure, Table Top *3 | Cary | | 08/06/15 | Medical Equipment | $1,052.58 |
| HILL LABORATORIES INC (Treatment chair) | Cary | | 09/13/15 | Medical Equipment | $2,777.87 |
| ~~T3200 - Terason  (ultrasound machine)~~ | ~~Cary~~ | Broken | ~~04/15/16~~ | ~~Medical Equipment~~ | ~~$22,800.00~~ |
| SKINACT SKIN ACT INCPACOIMA CA (Treatment chair ) | Cary | | 10/11/16 | Medical Equipment | $2,059.39 |
| T3200- Terason (TERASON 6C1 portable Terason system probe) | Cary | | 06/30/17 | Medical Equipment | $2,845.42 |
| Treatment Table | Cary | | 07/31/17 | Medical Equipment | $1,968.49 |
| Butterfly IQ: Lighting | Cary | | 11/26/19 | Medical Equipment | $1,685.38 |
| | | | | **Medical Equipment Total** | **$143,423.24** |
| 2* Lenovo G50-80 | Cary | | 05/01/15 | Office Equipment | $600.00 |
| 3* HP Pavilion 23 | Cary | | 05/01/15 | Office Equipment | $525.00 |
| 4* IPAD 4th Generation | Cary | | 05/01/15 | Office Equipment | $719.96 |
| Asus Model X551M | Cary | | 05/01/15 | Office Equipment | $477.00 |
| DELL Optiplex 3040 Micro Form Factor BTX Item # 210-AFWE | Cary | | 05/01/15 | Office Equipment | $500.00 |
| DellLatitude 3560 | Cary | | 05/01/15 | Office Equipment | $279.99 |
| IPad Air- Model: A1474 | Cary | | 05/01/15 | Office Equipment | $300.00 |
| Samsung Galaxy Tab S2 | Cary | | 05/01/15 | Office Equipment | $154.99 |
| 2* Dell - Inspiron 15.6" Touch-Screen Laptop | Cary | | 04/22/16 | Office Equipment | $853.98 |
| DELL optiplex 3040 Micro form factor XCTO | Cary | | 04/26/16 | Office Equipment | $741.91 |
| Dell - Inspiron 15.6" Touch-Screen Laptop | Cary | | 05/24/16 | Office Equipment | $811.28 |
| Dell - Inspiron 15.6" Touch-Screen Laptop | Cary | | 06/07/16 | Office Equipment | $811.28 |
| Dell - Inspiron 15.6" Laptop | Cary | | 06/24/16 | Office Equipment | $320.24 |
| EPSON STORE 800-873-7766 CA (EX3240 SVGA 3LCD Projector) | Cary | | 08/23/16 | Office Equipment | $619.06 |
| 6* iPad 5th Generation | Cary | | 05/01/17 | Office Equipment | $2,094.00 |
| Laptop | Cary | | 05/21/17 | Office Equipment | $615.34 |
| Laptop | Cary | | 05/27/17 | Office Equipment | $643.49 |
| 24* 8x8 Phones | Cary | | 01/01/18 | Office Equipment | $2,159.76 |
| Acer Aspire ES-575 | Cary | | 06/22/18 | Office Equipment | $364.00 |
| | | | | **Office Equipment Total** | **$13,591.28** |
| LG Dryer 4.2 cu ft White Stackable Electric Dryer | Charlotte | | 08/01/15 | Furniture and Fixtures | $550.00 |

| Location | Sum of Cost |
|---|---|
| **Cary** | |
| Furniture and Fixtures | 6,798.79 |
| Medical Equipment | 143,423.24 |
| Office Equipment | 13,591.28 |
| **Cary Total** | **163,813.31** |
| | |
| **Charlotte** | |
| Furniture and Fixtures | 2,928.84 |
| Medical Equipment | 151,633.07 |
| Office Equipment | 4,612.66 |
| **Charlotte Total** | **159,174.57** |
| | |
| **Greensboro** | |
| Furniture and Fixtures | 28,662.73 |
| Medical Equipment | 114,490.28 |
| Office Equipment | 24,483.57 |
| **Greensboro Total** | **167,636.58** |
| | |
| **Group** | |
| Furniture and Fixtures | 27,207.84 |
| Medical Equipment | 291,482.45 |
| Office Equipment | 12,084.55 |
| **Group Total** | **330,774.84** |
| | |
| **Oklahoma City** | |
| Furniture and Fixtures | 42,577.62 |
| Medical Equipment | 114,695.38 |
| Office Equipment | 30,843.83 |
| **Oklahoma City Total** | **188,116.83** |
| | |
| **Grand Total** | **1,009,516.13** |

**In Re FLEXOGENIX GROUP, INC., et.al.**
**Bankruptcy Case No. 2:19-bk-12927-BR**
**Detailed Asset Listing for Potential Liquidation**
**Exhibit A**

| Description | Location | Comment | Date in service | Category | Cost |
|---|---|---|---|---|---|
| LG Television | Charlotte | | 08/01/15 | Furniture and Fixtures | $199.00 |
| LG Washer 2.3 Cu ft White Stackable- Front Load | Charlotte | | 08/01/15 | Furniture and Fixtures | $600.00 |
| White Chest Freezer 7.1 Cu ft | Charlotte | | 08/01/15 | Furniture and Fixtures | $180.00 |
| Break room tables and chairs | Charlotte | | 10/08/15 | Furniture and Fixtures | $1,336.57 |
| Techni Mobili laptop storage | Charlotte | | 12/11/18 | Furniture and Fixtures | $63.27 |
| | | | | **Furniture and Fixtures Total** | **$2,928.84** |
| HILL LABORATORIES INC (Treatment chair) | Charlotte | | 07/22/15 | Medical Equipment | $1,358.00 |
| HILL LABORATORIES INC (Treatment chair) | Charlotte | | 07/22/15 | Medical Equipment | $679.00 |
| 2* Mini C-ARM Hologic | Charlotte | | 08/01/15 | Medical Equipment | $32,000.00 |
| 3* Terason Ultrasounds machine | Charlotte | | 08/01/15 | Medical Equipment | $70,650.00 |
| Platform Mounted Parallel Bars | Charlotte | | 08/27/15 | Medical Equipment | $9,898.32 |
| Leg Press Machine | Charlotte | | 08/29/15 | Medical Equipment | $3,848.00 |
| Leg Press Machine | Charlotte | | 09/10/15 | Medical Equipment | $4,999.63 |
| HILL LABORATORIES INC (Treatment chair) | Charlotte | | 09/13/15 | Medical Equipment | $5,555.76 |
| PT United PLAISTOW NH (speed pulley) | Charlotte | | 04/21/16 | Medical Equipment | $3,480.28 |
| HILL LABORATORIES INC (Treatment chair) | Charlotte | | 04/13/17 | Medical Equipment | $3,438.00 |
| Carolina Fitness Equipment | Charlotte | | 06/12/18 | Medical Equipment | $14,040.71 |
| Butterfly IQ: Lighting | Charlotte | | 11/26/19 | Medical Equipment | $1,685.37 |
| | | | | **Medical Equipment Total** | **$151,633.07** |
| 2* Canon Printer Pixa | Charlotte | | 08/01/15 | Office Equipment | $159.98 |
| 7* IPAD 4th Generation | Charlotte | | 08/01/15 | Office Equipment | $2,093.00 |
| HP Office Jet 8620 Printer | Charlotte | | 08/01/15 | Office Equipment | $169.99 |
| Dell -Inspiron 15.6" Touch-Screen Laptop | Charlotte | | 04/22/16 | Office Equipment | $428.99 |
| Dell Inspiron 156 TouchScreen Laptop | Charlotte | | 05/16/16 | Office Equipment | $1,179.72 |
| Vizio TV | Charlotte | | 10/08/16 | Office Equipment | $430.99 |
| Samsung Tablet | Charlotte | | 05/01/19 | Office Equipment | $149.99 |
| | | | | **Office Equipment Total** | **$4,612.66** |
| XD232 NETWORKED INTERACTIVE TV Screen | Greensboro | | 06/09/16 | Furniture and Fixtures | $717.47 |
| Patient Chairs | Greensboro | | 06/11/16 | Furniture and Fixtures | $1,262.60 |
| Lockers and furniture lamps | Greensboro | | 06/13/16 | Furniture and Fixtures | $1,477.37 |
| Patient Chairs | Greensboro | | 06/13/16 | Furniture and Fixtures | $5,025.26 |
| Loveseat Chairs, Lounge Chairs | Greensboro | | 06/17/16 | Furniture and Fixtures | $3,848.45 |
| Marydel Lounge Chairs | Greensboro | | 06/21/16 | Furniture and Fixtures | $2,471.92 |
| Magzine Rack, Shelf, Table | Greensboro | | 06/29/16 | Furniture and Fixtures | $723.67 |
| Freezer | Greensboro | | 07/06/16 | Furniture and Fixtures | $969.28 |
| Desks | Greensboro | | 08/05/16 | Furniture and Fixtures | $547.62 |
| Desks | Greensboro | | 08/06/16 | Furniture and Fixtures | $339.47 |
| WIRE SHELVING | Greensboro | | 10/13/16 | Furniture and Fixtures | $2,463.82 |
| Metalic grey powder coated chair legs | Greensboro | | 10/15/16 | Furniture and Fixtures | $2,240.00 |
| Washer & Dryer | Greensboro | | 10/28/16 | Furniture and Fixtures | $2,205.36 |
| Loveseat chairs for patient | Greensboro | | 12/31/16 | Furniture and Fixtures | $312.77 |
| Furniture for corp apt | Greensboro | | 05/21/17 | Furniture and Fixtures | $1,795.44 |
| Furniture for corp apt | Greensboro | | 05/23/17 | Furniture and Fixtures | $406.97 |
| Furniture for corp apt | Greensboro | | 05/24/17 | Furniture and Fixtures | $525.80 |
| Furniture for corp apt | Greensboro | | 05/28/17 | Furniture and Fixtures | $529.46 |
| LG Refridgerator | Greensboro | | 05/01/19 | Furniture and Fixtures | $800.00 |
| | | | | **Furniture and Fixtures Total** | **$28,662.73** |
| Platform Mounted Parallel Bars | Greensboro | | 03/21/16 | Medical Equipment | $4,095.35 |
| TS XR (Cross Trainers) | Greensboro | | 03/25/16 | Medical Equipment | $6,511.00 |
| SKINACT SKIN ACT INCPACOIMA CA (Treatment chair ) | Greensboro | | 03/29/16 | Medical Equipment | $2,106.37 |
| 2* T3200- Terason (ultrasound machine) | Greensboro | | 04/15/16 | Medical Equipment | $45,600.00 |

**In Re FLEXOGENIX GROUP, INC., et.al.**
**Bankruptcy Case No. 2:19-bk-12927-BR**
**Detailed Asset Listing for Potential Liquidation**
**Exhibit A**

| Description | Location | Comment | Date in service | Category | Cost |
|---|---|---|---|---|---|
| HILL LABORATORIES INC (Treatment chair) | Greensboro | | 04/17/16 | Medical Equipment | $9,123.00 |
| 3* Hill LAB chairs (treatment chairs) | Greensboro | | 05/06/16 | Medical Equipment | $8,928.00 |
| HILL LABORATORIES INC (Treatment chair) | Greensboro | | 05/25/16 | Medical Equipment | $2,232.00 |
| SPA AND EQUIPMENT 8188346640 CA  (Treatment Chair) | Greensboro | | 06/14/16 | Medical Equipment | $2,018.39 |
| Adjustable Rolling Pneumatic Stool for Massage Tables | Greensboro | | 06/22/16 | Medical Equipment | $740.88 |
| Scale | Greensboro | | 06/23/16 | Medical Equipment | $359.00 |
| FreeMotion Cable Column, #GZFM6016 | Greensboro | | 07/29/16 | Medical Equipment | $2,624.55 |
| 1390QS Platform Mounted Parallel Bars,Height and Width Adjustable, 10' | Greensboro | | 08/04/16 | Medical Equipment | $3,457.69 |
| T3200- Terason (Ultrasound Probe) | Greensboro | | 08/16/16 | Medical Equipment | $4,500.00 |
| T5 XR (Cross Trainers) | Greensboro | | 10/14/16 | Medical Equipment | $6,569.00 |
| PT treatment table | Greensboro | | 10/18/16 | Medical Equipment | $337.85 |
| 2* Hill LAB chairs (treatment chairs) | Greensboro | | 05/01/17 | Medical Equipment | $6,802.00 |
| Treatment Table | Greensboro | | 05/24/17 | Medical Equipment | $3,887.20 |
| Opaque X-Ray Mobile Lead Barriers- 30"W x72"H | Greensboro | | 06/01/17 | Medical Equipment | $2,096.00 |
| Blood pressure metersphygmometer | Greensboro | | 06/26/17 | Medical Equipment | $1,879.00 |
| HILL LABORATORIES INC (Treatment chair) | Greensboro | | 07/26/17 | Medical Equipment | $623.00 |
| | | | | **Medical Equipment Total** | **$114,490.28** |
| Toshiba -Satellite P55T-C5114 15.6" Laptop | Greensboro | | 05/20/16 | Office Equipment | $725.89 |
| 7* DELL optiplex 3040 Micro form factor XCTO | Greensboro | | 06/15/16 | Office Equipment | $6,303.66 |
| 8* DELL optiplex 3040 Micro form factor XCTO | Greensboro | | 06/15/16 | Office Equipment | $6,177.07 |
| 8* Monitor Displays | Greensboro | | 06/16/16 | Office Equipment | $298.90 |
| 9* Dell Latitude 3570 | Greensboro | | 06/16/16 | Office Equipment | $6,388.98 |
| 5* Dell 22 Monitor E2216H | Greensboro | | 06/23/16 | Office Equipment | $555.05 |
| Laptop Caddy Presentation Cart | Greensboro | | 06/30/16 | Office Equipment | $425.97 |
| iPad | Greensboro | | 07/01/16 | Office Equipment | $639.42 |
| STAPLES 00472 PUTNAM CT (HP OfficeJet Pro 8710 All-in-One Printer) | Greensboro | | 07/06/16 | Office Equipment | $138.76 |
| iPad Air 2 Wi-Fi 16GB - Space gray | Greensboro | | 07/28/16 | Office Equipment | $426.99 |
| iPad Air 2 Wi-Fi 16GB - Space Gray | Greensboro | | 08/30/16 | Office Equipment | $320.24 |
| 2* Samsung 11.6" Chromebook 3 | Greensboro | | 09/20/16 | Office Equipment | $424.87 |
| Samsung 11.6" Chromebook 3 | Greensboro | | 09/21/16 | Office Equipment | $212.43 |
| 2* iPad | Greensboro | | 09/27/16 | Office Equipment | $689.82 |
| ID Card Scanner | Greensboro | | 03/06/17 | Office Equipment | $305.52 |
| 2* Asus  X200M Notebook PC | Greensboro | | 05/01/19 | Office Equipment | $450.00 |
| | | | | **Office Equipment Total** | **$24,483.57** |
| Beginning Balance | Group | | 01/01/15 | Furniture and Fixtures | $25,400.00 |
| 4Drawer vertical file Cabinet with lock | Group | | 09/26/16 | Furniture and Fixtures | $200.58 |
| Employee desk chairs | Group | | 07/11/17 | Furniture and Fixtures | $1,235.08 |
| Latitude Run Elizabeth desk | Group | | 11/28/17 | Furniture and Fixtures | $289.08 |
| Drawer | Group | | 11/20/18 | Furniture and Fixtures | $83.10 |
| | | | | **Furniture and Fixtures Total** | **$27,207.84** |
| Beginning Balance | Group | | 01/01/15 | Medical Equipment | $291,482.45 |
| | | | | **Medical Equipment Total** | **$291,482.45** |
| Computer | Group | | 03/26/15 | Office Equipment | $2,944.91 |
| Laptop | Group | | 03/23/16 | Office Equipment | $860.35 |
| All in one mount displays | Group | | 03/27/16 | Office Equipment | $381.50 |
| 2* Laptop | Group | | 04/22/16 | Office Equipment | $1,820.14 |
| Laptop | Group | | 05/10/16 | Office Equipment | $1,608.21 |
| iPad | Group | | 05/19/16 | Office Equipment | $425.93 |
| HP - Pavilion Desktop | Group | | 07/02/16 | Office Equipment | $514.10 |
| Lenovo -Yoga 700 14" 2-in-1 TouchScreen Laptop | Group | | 07/12/16 | Office Equipment | $700.59 |
| Lenovo -Yoga 700 14" 2-in-1 TouchScreen Laptop | Group | | 07/12/16 | Office Equipment | $700.59 |

**In Re FLEXOGENIX GROUP, INC., et.al.**
**Bankruptcy Case No. 2:19-bk-12927-BR**
**Detailed Asset Listing for Potential Liquidation**
**Exhibit A**

| Description | Location | Comment | Date in service | Category | Cost |
|---|---|---|---|---|---|
| 2* Dell -Inspiron 3650 Desktop | Group | | 09/09/16 | Office Equipment | $1,381.36 |
| VZWRLSSETMWPN0W21150800-922-0204 CA (Cellphone) | Group | | 09/19/16 | Office Equipment | $635.06 |
| VERIZON WRLS 21536-0800-922-0204 NY (Cellphone) | Group | | 09/29/16 | Office Equipment | $111.81 |
| | | | | **Office Equipment Total** | **$12,084.55** |
| Office desks | Oklahoma City | | 09/21/15 | Furniture and Fixtures | $1,350.00 |
| Employee Chairs | Oklahoma City | | 03/26/16 | Furniture and Fixtures | $7,481.93 |
| Washer,Dryer,Freezer | Oklahoma City | | 03/30/16 | Furniture and Fixtures | $3,145.63 |
| Office Furniture | Oklahoma City | | 04/05/16 | Furniture and Fixtures | $1,569.27 |
| Freezer | Oklahoma City | | 04/19/16 | Furniture and Fixtures | $225.62 |
| Drawer | Oklahoma City | | 04/26/16 | Furniture and Fixtures | $174.38 |
| Table, Shelf | Oklahoma City | | 04/27/16 | Furniture and Fixtures | $569.48 |
| Office Tables and chairs | Oklahoma City | | 06/02/16 | Furniture and Fixtures | $383.57 |
| Patient Chairs | Oklahoma City | | 06/16/16 | Furniture and Fixtures | $1,608.02 |
| Love seats, Club chairs, 5 Rolling laptop av cart | Oklahoma City | | 06/19/17 | Furniture and Fixtures | $2,194.94 |
| Chair, Extendable table and Shelf unit | Oklahoma City | | 07/02/17 | Furniture and Fixtures | $595.80 |
| Rolling stools for treatment room | Oklahoma City | | 07/04/17 | Furniture and Fixtures | $479.92 |
| Storage Boxes/ Drawer | Oklahoma City | | 07/05/17 | Furniture and Fixtures | $117.50 |
| TV for Tens and Ice section | Oklahoma City | | 07/05/17 | Furniture and Fixtures | $450.00 |
| Projector | Oklahoma City | | 03/01/18 | Furniture and Fixtures | $11,000.81 |
| Office charis | Oklahoma City | | 10/22/18 | Furniture and Fixtures | $6,632.51 |
| Office charis | Oklahoma City | | 11/14/18 | Furniture and Fixtures | $1,007.88 |
| Drawer | Oklahoma City | | 11/20/18 | Furniture and Fixtures | $83.10 |
| Chair leg and cap | Oklahoma City | | 11/30/18 | Furniture and Fixtures | $2,244.00 |
| ClosetMaid End Table and Zipcode Design | Oklahoma City | | 12/14/18 | Furniture and Fixtures | $463.26 |
| Refrigerator LG | Oklahoma City | | 05/01/19 | Furniture and Fixtures | $800.00 |
| | | | | **Furniture and Fixtures Total** | **$42,577.62** |
| T3200, transducer, hip probe | Oklahoma City | | 07/10/15 | Medical Equipment | $28,000.00 |
| Blood Pressure, Table Top *3 | Oklahoma City | | 07/27/15 | Medical Equipment | $1,075.71 |
| T5 XR (Cross Trainers) | Oklahoma City | | 08/31/15 | Medical Equipment | $6,450.00 |
| NESTABLE FOOT STOOLS (SET OF 4) | Oklahoma City | | 09/03/15 | Medical Equipment | $1,674.19 |
| Platform Mounted Parallel Bars,Mobile Rack with Mirror, Hugger Weights, Dumbbells, and REP Bands | Oklahoma City | | 09/06/15 | Medical Equipment | $3,892.35 |
| Leg Press Machine | Oklahoma City | | 09/12/15 | Medical Equipment | $5,094.63 |
| ADJ MAT PLATFORM 6' X 8' GRAY | Oklahoma City | | 09/15/15 | Medical Equipment | $2,692.30 |
| LOW HEIGHT BARIATRIC H-BRACE TABLE DOVE GRY | Oklahoma City | | 09/24/15 | Medical Equipment | $2,315.16 |
| Terason portable ultrasound machine | Oklahoma City | | 01/01/16 | Medical Equipment | $23,550.00 |
| T3200- Terason Power Supply ; T3200 TRANSDUCER | Oklahoma City | | 01/12/16 | Medical Equipment | $3,665.00 |
| NESTABLE FOOT STOOLS (SET OF 4) | Oklahoma City | | 03/22/16 | Medical Equipment | $970.10 |
| Mat Platform | Oklahoma City | | 03/23/16 | Medical Equipment | $1,545.05 |
| Light -weight non-lead Apron | Oklahoma City | | 03/30/16 | Medical Equipment | $933.56 |
| CRANK ADJ MAT PLATFORM 6' X 8' GRAY | Oklahoma City | | 03/31/16 | Medical Equipment | $2,692.30 |
| Double level Medicine ball Rack | Oklahoma City | | 04/14/16 | Medical Equipment | $417.43 |
| Cybex Prestige Leg Press, #21040 | Oklahoma City | | 07/29/16 | Medical Equipment | $6,789.25 |
| Scale | Oklahoma City | | 06/27/17 | Medical Equipment | $340.96 |
| Ultrasound Chair | Oklahoma City | | 10/17/18 | Medical Equipment | $1,969.39 |
| 6* Hill LAB chairs (treatment chairs) | Oklahoma City | | 05/01/19 | Medical Equipment | $20,628.00 |
| | | | | **Medical Equipment Total** | **$114,695.38** |
| Laptop | Oklahoma City | | 03/23/16 | Office Equipment | $860.35 |
| 10* DELL Monitor E2216H | Oklahoma City | | 03/25/16 | Office Equipment | $1,398.34 |
| 14* DELL 3560 CTO | Oklahoma City | | 04/01/16 | Office Equipment | $9,641.87 |
| 10* DELL optiplex 3040 Micro form factor XCTO | Oklahoma City | | 04/04/16 | Office Equipment | $5,992.47 |
| TV | Oklahoma City | | 04/06/16 | Office Equipment | $493.32 |

In Re FLEXOGENIX GROUP, INC., et.al.
Bankruptcy Case No. 2:19-bk-12927-BR
Detailed Asset Listing for Potential Liquidation
Exhibit A

| Description | Location | Comment | Date in service | Category | Cost |
|---|---|---|---|---|---|
| 10* DELL Optiplex Micro All in one Mount for E1914H Displays, Kit | Oklahoma City | | 04/12/16 | Office Equipment | $381.50 |
| 23* Mitel 5530E VOIP Phone | Oklahoma City | | 05/01/16 | Office Equipment | $1,195.77 |
| Anti-Glare Privacy Filter for Widescreen Desktop LCD Monitor | Oklahoma City | | 05/14/16 | Office Equipment | $457.25 |
| 3* Dell Inspiron i3552-8043BLK 15.6 Inch Laptop | Oklahoma City | | 06/09/16 | Office Equipment | $1,221.87 |
| Acer laptop | Oklahoma City | | 10/02/16 | Office Equipment | $301.74 |
| Acer laptop | Oklahoma City | | 10/02/16 | Office Equipment | $301.75 |
| Cssn Scanshell 800Dxn Card Scanner, ID Scanner | Oklahoma City | | 07/05/17 | Office Equipment | $333.71 |
| 10* BRIGHT SIGN XD1132 (TV screen) | Oklahoma City | | 05/01/19 | Office Equipment | $1,990.00 |
| 3* Acer CB3-111-C8UB Notebook PC | Oklahoma City | | 05/01/19 | Office Equipment | $599.97 |
| 3* iPad air 2 | Oklahoma City | | 05/01/19 | Office Equipment | $807.00 |
| 3* Samsung XE500C13 Notebook | Oklahoma City | | 05/01/19 | Office Equipment | $689.97 |
| 4* Brother Multifuntion Printer | Oklahoma City | | 05/01/19 | Office Equipment | $100.00 |
| 5* HP Prodesk 400 G1 DM | Oklahoma City | | 05/01/19 | Office Equipment | $2,474.95 |
| 5* HP W2082A Monitor | Oklahoma City | | 05/01/19 | Office Equipment | $380.00 |
| Asus X200M Notebook PC | Oklahoma City | | 05/01/19 | Office Equipment | $225.00 |
| HP 355 G2 Laptop | Oklahoma City | | 05/01/19 | Office Equipment | $349.00 |
| HP Office Jet 4650 Printer | Oklahoma City | | 05/01/19 | Office Equipment | $210.00 |
| iPad 4 | Oklahoma City | | 05/01/19 | Office Equipment | $299.00 |
| iPad Apple A1395, 16GB, Silver | Oklahoma City | | 05/01/19 | Office Equipment | $139.00 |
| | | | | Office Equipment Total | $30,843.83 |
| | | | | Grand Total | $1,009,516.13 |

EXHIBIT A

Page 47

# EXHIBIT B

# ADMINISTRATIVE CLAIMS LIST

| CLAIMANT | |
|---|---|
| **Claimant Name** | **Administrative Claim** |
| American Express | $613.75 |
| ASD Specialty Healthcare LLP | $16,751.06 |
| Bioventus | $322,425.00 |
| Fidia Pharma USA Inc. | $150,096.00 |
| Ossur Americas Inc. | $42,352.74 |
| Packard Commercial LLC | $12,077.56 |
| | **$544,316.11** |

# EXHIBIT C

CLAIMS LIST

| ENTITY | Name | D C U | Secured Claim (SCHED) | Priority Claim (SCHED) | Unsecured Claim (SCHED) | POC # | Secured Claim (FILED) | Admin. Claim (FILED) | Priority Claim (FILED) | Unsecured Claim (FILED) | Secured Claim | Admin. Claim | Priority Claim | Unsecured Claim | Class | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| N.C. | 1 Global Capital, LLC | DU | $10,304.79 | | | 3 (5/10/19) | | | | $10,741.58 | | | | $10,741.58 | | |
| Georgia | Business Merchant Funding | DU | $973,606.00 | | | | | | | | | | | $0.00 | | |
| GROUP | Business Merchant Funding | DU | $973,606.00 | | | 57 (8/20/19) | | | | $1,350,000.00 | | | | $0.00 | | Disputed, claim under litigation |
| N.C. | Business Merchant Funding | DU | $973,606.00 | | | | | | | | | | | $0.00 | | |
| WMC | Business Merchant Funding | DU | $973,606.00 | | | | | | | | | | | $0.00 | | |
| GROUP | Complete Business Solutions Group | DU | $563,589.94 | | | 32 | | | | $3,976,988.05 | | | | $0.00 | | Disputed, claim under litigation |
| GROUP | Complete Business Solutions Group | DU | $578,727.20 | | | 32 | | | | filed 1 poc | | | | $0.00 | | Disputed, claim under litigation |
| GROUP | Complete Business Solutions Group | DU | $1,125,574.00 | | | 32 | | | | filed 1 poc | | | | $0.00 | | Disputed, claim under litigation |
| GROUP | Complete Business Solutions Group | DU | $1,076,500.00 | | | 32 | | | | filed 1 poc | | | | $0.00 | | Disputed, claim under litigation |
| GROUP | Complete Business Solutions Group | DU | $583,700.00 | | | 32 | | | | filed 1 poc | | | | $0.00 | | Disputed, claim under litigation |
| Georgia | Franklin Funding Group, LLC | DU | $423,695.00 | | | | | | | | $0.00 | | | | | |
| Georgia | Franklin Funding Group, LLC | DU | $577,587.00 | | | | | | | | $0.00 | | | | | |
| GROUP | Franklin Funding Group, LLC | DU | $423,695.00 | | | 1 (3-25-19) | $1,002,280.00 | | | | $0.00 | | | | | Disputed, claim under litigation |
| GROUP | Franklin Funding Group, LLC | DU | $577,587.00 | | | 1 (3-25-19) | filed 1 POC | | | | $0.00 | | | | | Disputed, claim under litigation |
| N.C. | Franklin Funding Group, LLC | DU | $423,695.00 | | | | | | | | $0.00 | | | | | |
| N.C. | Franklin Funding Group, LLC | DU | $577,587.00 | | | | | | | | $0.00 | | | | | |
| Georgia | In Advance Capital, LLC | DU | $183,359.00 | | | | | | | | $0.00 | | | | | |
| GROUP | In Advance Capital, LLC | DU | $183,359.00 | | | | | | | | $0.00 | | | | | |
| N.C. | In Advance Capital, LLC | DU | $183,359.00 | | | | | | | | $0.00 | | | | | |
| Georgia | Influx Capital LLC | DU | $335,548.00 | | | | | | | | $0.00 | | | | | |
| GROUP | Influx Capital LLC | DU | $335,548.00 | | | | | | | | $0.00 | | | | | |
| N.C. | Influx Capital LLC | DU | $335,548.00 | | | | | | | | $0.00 | | | | | |
| Georgia | Yes Capital Group, LLC | DU | $183,359.00 | | | | | | | | $0.00 | | | | | |
| GROUP | Yes Capital Group, LLC | DU | $183,359.00 | | | | | | | | $0.00 | | | | | |
| N.C. | Yes Capital Group, LLC | DU | $183,359.00 | | | | | | | | $0.00 | | | | | |
| Georgia | 4imprint | | | | $258.70 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | 4imprint | | | | $2,273.20 | | | | | | | | | $2,273.20 | | |
| N.C. | 4imprint | | | | $1,113.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| OK | 4imprint | | | | $258.69 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| WMC | 4imprint | | | | $258.70 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Georgia | 8X8, Inc. | | | | $505.35 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | 8X8, Inc. | | | | $3,550.21 | | | | | | | | | $0.00 | | lease to be assumed |

Page 49

EXHIBIT C

| ENTITY | Name | D C U | Secured Claim (SCHED) | Priority Claim (SCHED) | Unsecured Claim (SCHED) | POC # | Secured Claim (FILED) | Admin. Claim (FILED) | Priority Claim (FILED) | Unsecured Claim (FILED) | Secured Claim | Admin. Claim | Priority Claim | Unsecured Claim | Class | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| N.C. | 8X8, Inc. | | | | $1,516.05 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| OK | 8X8, Inc. | | | | $505.35 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| WMC | 8X8, Inc. | | | | $505.35 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Accell Orthopedics, Inc | | | | $23,680.00 | 9 (4-17-19) | | | | $23,680.00 | | | | $23,680.00 | | |
| N.C. | Accell Orthopedics, Inc | | | | $14,800.00 | 11 (12/13/19) | | | | $14,800.00 | | | | $0.00 | | Total amount due listed under Group |
| OK | Accell Orthopedics, Inc | | | | $8,880.00 | 5 (12/13/19) | | | | $8,800.00 | | | | $0.00 | | Total amount due listed under Group |
| Group | ADT Security (Cary) | | | | $481.99 | | | | | | | | | $0.00 | | Paid in the ordinary course under approved budget |
| N.C. | ADT Security (Cary) | | | | $481.99 | | | | | | | | | $0.00 | | Paid in the ordinary course under approved budget |
| Georgia | ADT Security (CLT) | | | | $0.00 | | | | | | | | | $0.00 | | |
| Group | ADT Security (CLT) | | | | $36.51 | | | | | | | | | $0.00 | | Paid in the ordinary course under approved budget |
| N.C. | ADT Security (CLT) | | | | $36.51 | | | | | | | | | $0.00 | | Paid in the ordinary course under approved budget |
| N.C. | Aetna, Inc | | | | | 4 (6/04/19) | | | | $1,564.19 | | | | $1,564.19 | | |
| WMC | Aetna, Inc | | | | NOT Scheduled | 3 (6/04/19) | | | | $1,311.44 | | | | $1,311.44 | | |
| Group | Alford Leasing Company | | | | $433.44 | | | | | | | | | $0.00 | | lease to be assumed |
| Group | AlterG | | | | $6,447.29 | | | | | | | | | $0.00 | | lease to be assumed |
| N.C. | AlterG | | | | $5,484.78 | | | | | | | | | $0.00 | | lease to be assumed |
| WMC | AlterG | | | | $962.51 | | | | | | | | | $0.00 | | lease to be assumed |
| Group | Amazon | | | | $3,101.55 | | | | | | | | | $3,101.55 | | |
| Group | American Express | | | | $111,574.24 | | | | | | | | | $111,574.24 | | 3712-465200-62001 |
| Group | American Express | | | | $119,198.41 | 4 (04-01-19) | | | | $118,929.06 | | | | $118,929.06 | | 3727-214222-21003 |
| Group | American Express | | | | $666,495.19 | 2 (3-27-19) | | | | $666,276.69 | | | | $666,276.69 | | 3787-512598-11000 |
| Group | American Express | | | | | 61 (8/27/20) | | $613.75 | | | | $613.75 | | | | 3727-214222-21003, additional amount added to POC#4 |
| Group | Ampronix | | | | $83.30 | | | | | | | | | $83.30 | | |
| N.C. | Ampronix | | | | $41.65 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| OK | Ampronix | | | | $41.65 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Anthem Blue Cross | | | | $43,443.21 | | | | | | | | | $0.00 | | Paid in the ordinary course under approved budget |
| WMC | Aramark | | | | $1,601.96 | | | | | | | | | $0.00 | | Creditor filed the claim as "Aramark Refreshment Services LLC" Group POC#14 |
| Group | ARAMARK Refreshment Services, LLC | | | | $1,601.96 | 14 (5-15-19) | | | | $4,770.27 | | | | $4,770.27 | | |
| Group | ARAMARK Refreshment Services, LLC | | | | $2,774.37 | 14  (5-15-19) | | | | | | | | $0.00 | | Duplicated, Group POC#14 |
| Group | Arbimed | | | | $325.00 | | | | | | | | | $0.00 | | Paid in the ordinary course under approved budget |
| Group | ASD Specialty Healthcare LLP | | | | $42,217.42 | 33 (7/15/19) | | | | $676.61 | | | | $0.00 | | Duplicated claim, WMC POC#6 |
| OK | ASD Specialty Healthcare LLP | | | | $1,199.95 | 2 (7/15/19) | | | | $1,199.95 | | | | $0.00 | | Duplicated claim, WMC POC#6 |

EXHIBIT C

| ENTITY | Name | D C U | Secured Claim (SCHED) | Priority Claim (SCHED) | Unsecured Claim (SCHED) | POC # | Secured Claim (FILED) | Admin. Claim (FILED) | Priority Claim (FILED) | Unsecured Claim (FILED) | Secured Claim | Admin. Claim | Priority Claim | Unsecured Claim | Class | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WMC | ASD Specialty Healthcare LLP | | | | $5,806.83 | 6 (7/15/19) | | $16,751.06 | | $13,496.36 | | $16,751.06 | | $13,496.36 | | |
| Group | Atlanta Journal - Constitution | | | | | 53 (7/29/19) | | | | $19,400.00 | | | | $0.00 | | Disputed, billed to Intersect |
| Group | Bainbridge Lake Crabtree | | | | $0.00 | | | | | | | | | $0.00 | | |
| Group | Bank of America | | | | $42,975.23 | | | | | | | | | $42,975.23 | | 4339-9312-6093-0144 |
| WMC | Bank of America | | | | $30,571.41 | | | | | | | | | $30,571.41 | | 5474-1513-7299-7111 |
| Georgia | Besse Medical Supply | | | | $1,816.61 | | | | | | | | | $0.00 | | creditor filed the claim as "ASD Specialty Healthcare LLP" (aka Besse Medical Supply) WMC POC#6 |
| Group | Besse Medical Supply | | | | $42,217.42 | | | | | | | | | $0.00 | | creditor filed the claim as "ASD Specialty Healthcare LLP" (aka Besse Medical Supply) WMC POC#6 |
| N.C. | Besse Medical Supply | | | | $33,394.03 | | | | | | | | | $0.00 | | creditor filed the claim as "ASD Specialty Healthcare LLP" (aka Besse Medical Supply) WMC POC#6 |
| OK | Besse Medical Supply | | | | $1,199.95 | | | | | | | | | $0.00 | | creditor filed the claim as "ASD Specialty Healthcare LLP" (aka Besse Medical Supply) WMC POC#6 |
| WMC | Besse Medical Supply | | | | $5,806.83 | 6 | | $16,751.06 | | $13,496.36 | | | | $0.00 | | Duplicated claim, creditor filed the claim as "ASD Specialty Healthcare LLP", WMC POC#6 |
| Georgia | Bigleaf Networks | | | | $387.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Bigleaf Networks | | | | $2,322.00 | 52 (7/29/19) | | | | $2,322.00 | | | | $0.00 | | lease to be assumed |
| N.C. | Bigleaf Networks | | | | $1,161.00 | | | | | | | | | $0.00 | | lease to be assumed |
| OK | Bigleaf Networks | | | | $387.00 | | | | | | | | | $0.00 | | lease to be assumed |
| WMC | Bigleaf Networks | | | | $387.00 | | | | | | | | | $0.00 | | lease to be assumed |
| Georgia | Bioventus | | | | $100,350.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Bioventus | | | | $803,700.00 | 35 (7/23/19) | | | $322,425.00 | $530,775.00 | | $322,425.00 | | $530,775.00 | | |
| N.C. | Bioventus | | | | $497,925.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| OK | Bioventus | | | | $82,350.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| WMC | Bioventus | | | | $122,175.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Georgia | Bizfilings | | | | $199.00 | | | | | | | | | $0.00 | | Disputed, did not use the creditor's service |
| Group | Bizfilings | | | | $199.00 | | | | | | | | | $0.00 | | Paid in the ordinary course under approved budget |
| Georgia | Bizmatics, Inc. | | | | $266.50 | | | | | | | | | $0.00 | | Total amount due listed under WMC |
| Group | Bizmatics, Inc. | | | | $1,599.00 | | | | | | | | | $0.00 | | Total amount due listed under WMC |
| N.C. | Bizmatics, Inc. | | | | $799.50 | | | | | | | | | $0.00 | | Total amount due listed under WMC |
| OK | Bizmatics, Inc. | | | | $266.50 | | | | | | | | | $0.00 | | Total amount due listed under WMC |
| WMC | Bizmatics, Inc. | | | | $266.50 | 8 (12/12/19) | | | | $1,599.00 | | | | $0.00 | | lease to be assumed |
| Group | Bluevine | | | | $19,485.00 | | | | | | | | | $19,485.00 | | |
| N.C. | Bluevine | | | | $0.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Georgia | Canon Financial | | | | $225.40 | | | | | | | | | $0.00 | | Total amount due listed under Group |

Page 51

EXHIBIT C

| | CLAIMANT | | | SCHEDULED CLAIM | | | FILED CLAIM | | | | | ALLOWED CLAIM | | | | | |
| ENTITY | Name | D C U | Secured Claim (SCHED) | Priority Claim (SCHED) | Unsecured Claim (SCHED) | POC # | Secured Claim (FILED) | Admin. Claim (FILED) | Priority Claim (FILED) | Unsecured Claim (FILED) | Secured Claim | Admin. Claim | Priority Claim | Unsecured Claim | Class | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Group | Canon Financial Service, Inc. | | | | $1,325.42 | | | | | | | | | $583.30 | | Estimated lease rejection damage |
| WMC | Canon Financial Service, Inc. | | | | $279.46 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| N.C. | Canon Financial Service, Inc. | | | | $449.58 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Capital Waste Solutions, LLC | | | | $78.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| OK | Capital Waste Solutions, LLC | | | | $78.00 | 1 (6/07/19) | | | | $234.00 | | | | $0.00 | | Disputed, balance is $0 creditor to update POC |
| WMC | Capital Waste Solutions, LLC | | | | $0.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Capitol Cleaning OKC LP | | | | $550.00 | | | | | | | | | $0.00 | | Paid by principal |
| OK | Capitol Cleaning OKC LP | | | | $550.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Carolina BioMedical Disposal, LLC | | | | $539.96 | | | | | | | | | $539.96 | | |
| N.C. | Carolina BioMedical Disposal, LLC | | | | $539.96 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Chase Freedom | | | | $29,141.00 | | | | | | | | | $29,141.00 | | |
| Group | Chase Ink | | | | $64,010.37 | | | | | | | | | $64,010.37 | | |
| Group | Chase Sapphire | | | | $74,603.52 | | | | | | | | | $74,603.52 | | |
| Group | Chase Slate | | | | $17,503.05 | | | | | | | | | $17,503.05 | | |
| Georgia | CISLO&THOMAS LLP | | | | $658.20 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | CISLO&THOMAS LLP | | | | $3,720.25 | | | | | | | | | $3,720.25 | | |
| N.C. | CISLO&THOMAS LLP | | | | $1,974.60 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| OK | CISLO&THOMAS LLP | | | | $429.25 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| WMC | CISLO&THOMAS LLP | | | | $658.20 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | CIT Bank NA | | | | | 59 (10/15/19) | | | | $2,006.95 | | | | $0.00 | | Disputed, balance is $0, paid in full in 2018 |
| Group | Citibank | | | | $20,240.02 | | | | | | | | | $20,240.02 | | |
| Group | City of Los Angeles | | | $1,655.53 | | | | | | | | | $0.00 | | | creditor filed the claim as "City of Los Angeles, Office of Finance" WMC POC#9 |
| WMC | City of Los Angeles | | | $1,655.53 | | | | | | | | | $0.00 | | | creditor filed the claim as "City of Los Angeles, Office of Finance" WMC POC#9 |
| Group | City of Los Angeles False Alarms | | | | $266.00 | 12 (4-26-19) | | | | $266.00 | | | | $266.00 | | |
| WMC | City of Los Angeles False Alarms | | | | $266.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| WMC | City of Los Angeles, Office of Finance | | | $1,655.53 | | 9 (2/10/20) | | | $11,990.83 | $6,084.08 | | | $11,990.83 | $6,084.08 | | |
| Georgia | Clark Trevithick | | | | $8,714.62 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Clark Trevithick | | | | $52,287.61 | | | | | | | | | $52,287.61 | | |
| N.C. | Clark Trevithick | | | | $26,143.83 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| OK | Clark Trevithick | | | | $8,714.61 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| WMC | Clark Trevithick | | | | $8,714.59 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | CMG Charlotte TV | | | | | 44 (7/26/19) | | | | $44,050.40 | | | | $0.00 | | Disputed, billed to Ren Scott |

Page 52

EXHIBIT C

| ENTITY | CLAIMANT Name | D C U | SCHEDULED CLAIM Secured Claim (SCHED) | Priority Claim (SCHED) | Unsecured Claim (SCHED) | FILED CLAIM POC # | Secured Claim (FILED) | Admin. Claim (FILED) | Priority Claim (FILED) | Unsecured Claim (FILED) | ALLOWED CLAIM Secured Claim | Admin. Claim | Priority Claim | Unsecured Claim | Class | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Georgia | CMGAtlantaTV | | | | $10,191.67 | | | | | | | | | $0.00 | | creditor filed the claim as "WSB-TV Cox Enterprises, Inc" Group POC#18 |
| Group | CMGAtlantaTV | | | | $61,150.00 | | | | | | | | | $0.00 | | creditor filed the claim as "WSB-TV Cox Enterprises, Inc" Group POC#18 |
| N.C. | CMGAtlantaTV | | | | $30,574.99 | | | | | | | | | $0.00 | | creditor filed the claim as "WSB-TV Cox Enterprises, Inc" Group POC#18 |
| OK | CMGAtlantaTV | | | | $10,191.67 | | | | | | | | | $0.00 | | creditor filed the claim as "WSB-TV Cox Enterprises, Inc" Group POC#18 |
| WMC | CMGAtlantaTV | | | | $10,191.67 | | | | | | | | | $0.00 | | creditor filed the claim as "WSB-TV Cox Enterprises, Inc" Group POC#18 |
| Group | COECO OF RALEIGH | | | | $934.86 | | | | | | | | | $0.00 | | lease to be assumed |
| Group | COX Business | | | | $345.85 | | | | | | | | | $345.85 | | |
| OK | COX Business | | | | $345.85 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Georgia | Cox Health Marketing | | | | $80,745.75 | | | | | | | | | $0.00 | | creditor filed the claim as "WSB-TV Cox Enterprises, Inc" Group POC#18 |
| Group | Cox Health Marketing | | | | $80,745.75 | | | | | | | | | $0.00 | | creditor filed the claim as "WSB-TV Cox Enterprises, Inc" Group POC#18 |
| Group | Daimler Trust | | | | | 7 (4-05-19) | | | | $29,056.59 | | | | $0.00 | | lease to be assumed |
| Group | De Forest & Associates, Inc | | | | $11,250.00 | 31 | | | | $11,250.00 | | | | $11,250.00 | | |
| Group | De Lage Landen Financial Services, Inc. | | | | $35,490.84 | 25 (7-03-19) | | | | $103,283.38 | | | | $4,227.66 | | Estimated lease rejection damage |
| Group | De Lage Landen Financial Services, Inc. | | | | | 26 (7-03-19) | $39,100.64 | | | | $0.00 | | | | | Lease to be assumed |
| Group | De Lage Landen Financial Services, Inc. | | | | | 27 (7-03-19) | $59,234.55 | | | | $0.00 | | | | | Lease to be assumed |
| Group | De Lage Landen Financial Services, Inc. | | | | | 28 (7-03-19) | $114,806.29 | | | | $0.00 | | | | | Lease to be assumed |
| Group | Diagnostic Physics Inc | | | | $3,750.00 | | | | | | | | | $0.00 | | Total amount due listed under NC |
| N.C. | Diagnostic Physics Inc | | | | $3,750.00 | 7 (7/18/19) | | | | $3,750.00 | | | | $3,750.00 | | |
| Group | DJO, LLC | | | | $2,012.45 | | | | | | | | | $1,814.44 | | |
| N.C. | DJO, LLC | | | | $747.40 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| WMC | DJO, LLC | | | | $1,265.05 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Dragos Mihalu | | | $449.69 | | | | | | | | | $0.00 | | | Authorized to be paid in ordinary course |
| Group | Elite2 LLC | | | | $2,100.00 | | | | | | | | | $2,100.00 | | |
| N.C. | Elite2 LLC | | | | $2,100.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | EXCEL ERROR FIX, LLC | | | | $450.00 | | | | | | | | | $450.00 | | |
| N.C. | Fedex | | | | $420.49 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| OK | Fedex | | | | $117.57 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| WMC | Fedex | | | | $159.99 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Fedex Corporate Services | | | | $916.02 | 11 (4-23-19) | | | | $1,016.16 | | | | $1,016.16 | | Total invoice amount is $916.02 creditor not responding (existing vendor) |
| N.C. | Fidia Pharma USA Inc | | | | $645,792.00 | 8 (7/25/19) | | | $150,096.00 | $741,054.00 | | | $0.00 | $0.00 | | Total amount due listed under Group POC#43 |

EXHIBIT C

CLAIMS LIST

| ENTITY | Name | D C U | Secured Claim (SCHED) | Priority Claim (SCHED) | Unsecured Claim (SCHED) | POC # | Secured Claim (FILED) | Admin. Claim (FILED) | Priority Claim (FILED) | Unsecured Claim (FILED) | Secured Claim | Admin. Claim | Priority Claim | Unsecured Claim | Class | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OK | Fidia Pharma USA Inc | | | | $35,120.00 | 3 (7/25/19) | | | $150,096.00 | $741,054.00 | | | $0.00 | $0.00 | | Total amount due listed under Group Group POC#43 |
| WMC | Fidia Pharma USA Inc | | | | $108,400.00 | 7 (7/25/19) | | | $150,096.00 | $741,054.00 | | | $0.00 | $0.00 | | Total amount due listed under Group Group POC#43 |
| Georgia | Fidia Pharma USA Inc. | | | | $72,838.00 | 1 (7/25/19) | | | $150,096.00 | $741,054.00 | | | $0.00 | $0.00 | | Total amount due listed under Group Group POC#43 |
| Group | Fidia Pharma USA Inc. | | | | $894,150.00 | 43 (7/25/19) | | | $150,096.00 | $741,054.00 | | $150,096.00 | | $741,054.00 | | |
| Group | Flagship Cary, LLC | | | | $13,593.00 | 49 (7/29/19) | | | | $13,593.00 | | | | $0.00 | | lease has been assumed |
| Group | Frances Boyd | | | $105.00 | | | | | | | | | $0.00 | | | Authrized to be paid in ordinary course |
| Group | Franchise Tax Board | | | | | 21 (6/21/19) | | | $6,002.40 | $278.25 | | | $6,002.40 | $278.25 | | |
| WMC | Franchise Tax Board | | | | | 4 - (6/21/19) | | | $1,631.23 | $44.00 | | | $1,631.23 | $44.00 | | |
| Group | FreeWheel Advertisers | | | | | 42 (9/10/19) | | | | $0.00 | | | | $0.00 | | |
| Georgia | GE Healthcare | | | | $299.96 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | GE Healthcare | | | | $2,366.49 | | | | | | | | | $2,366.49 | | |
| N.C. | GE Healthcare | | | | $1,084.14 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| OK | GE Healthcare | | | | $114.98 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| WMC | GE Healthcare | | | | $299.96 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Georgia | Genzyme Corporation | | | | $14,670.00 | 3 (12/04/19) | | | | $263,553.00 | | | | $0.00 | | Duplicated claim, Group POC#13 |
| Group | Genzyme Corporation | | | | $263,553.00 | 13 (5-14-19) | | | | $263,553.00 | | | | $263,553.00 | | |
| N.C. | Genzyme Corporation | | | | $187,448.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| OK | Genzyme Corporation | | | | $11,377.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| WMC | Genzyme Corporation | | | | $50,058.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | George Place | | | | $0.00 | | | | | | | | | $0.00 | | |
| Georgia | Georgia Dept of Revenue | | | $0.00 | | | | | | | | | $0.00 | | | |
| Group | Golden Triangle #6-Avery, LLC | | | | $0.00 | 48 (12/18/19) | | | | $0.00 | | | | $0.00 | | |
| Group | Griffin Communications, LLC | | | | $84,715.25 | 23 (6-21-19) | | | | $105,676.25 | | | | $105,676.25 | | |
| Georgia | HENDRIX BUSINESS SYSTEMS, INC. | | | | $970.94 | | | | | | | | | $0.00 | | lease to be assumed |
| Group | HENDRIX BUSINESS SYSTEMS, INC. | | | | $2,438.03 | | | | | | | | | $1,110.40 | | Estimated lease rejection damage |
| N.C. | HENDRIX BUSINESS SYSTEMS, INC. | | | | $1,467.09 | | | | | | | | | $0.00 | | lease to be assumed |
| Georgia | Henry Schein | | | | $9,315.75 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Henry Schein | | | | $38,813.00 | 34 (7/19/19) | | | | $38,813.00 | | | | $38,813.00 | | |
| N.C. | Henry Schein | | | | $20,176.25 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| OK | Henry Schein | | | | $4,660.50 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| WMC | Henry Schein | | | | $4,660.50 | | | | | | | | | $0.00 | | Total amount due listed under Group |

Page 54

EXHIBIT C

CLAIMS LIST

| ENTITY | Name | D C U | Secured Claim (SCHED) | Priority Claim (SCHED) | Unsecured Claim (SCHED) | POC # | Secured Claim (FILED) | Admin. Claim (FILED) | Priority Claim (FILED) | Unsecured Claim (FILED) | Secured Claim | Admin. Claim | Priority Claim | Unsecured Claim | Class | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Group | Hewlett–Packard Financial Services Company | | | | $1,427.10 | 22 (6-21-19) | | | | $9,790.39 | | | | $4,861.27 | | Estimated lease rejection damage |
| Georgia | Hologic Capital | | | | $12,682.98 | | | | | | | | | $0.00 | | Creditor filed the claim under "De Lage Landen Financial Services, Inc" Lease to be assumed |
| Group | Hologic, Inc (maintenance) | | | | $14,680.99 | | | | | | | | | $5,298.28 | | Estimated lease rejection damage |
| Group | HPE Financial Services | | | | $1,427.10 | | | | | | | | | $0.00 | | Creditor filed the claim under "Hewlett-Packard Financial Services", Group POC#22 |
| Group | Imperial | | | | $189.23 | | | | | | | | | $189.23 | | |
| OK | Imerial | | | | $189.23 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Georgia | Internal Revenue Service | | | $953,010.25 | | | | | | | | | $0.00 | | | Total amount due listed under Group |
| Group | Internal Revenue Service | | | $953,010.25 | | 6 (2-11-20) | | | $917,143.07 | $345,775.25 | | | $917,143.07 | $281,504.61 | | Disputed, should be reduced by $64,270.64 as a result of payment by Principals |
| N.C. | Internal Revenue Service | | | $953,010.25 | | 2 - (7/18/19) | | | $59.53 | $4,140.00 | | | $0.00 | $0.00 | | Disputed, in negociation w IRS |
| OK | Internal Revenue Service | | | $953,010.25 | | | | | | | | | $0.00 | | | Total amount due listed under Group |
| WMC | Internal Revenue Service | | | $953,010.25 | | | | | | | | | $0.00 | | | Total amount due listed under Group |
| Group | Iris Whalen | | | | $27,111.77 | | | | | | | | | $27,111.77 | | |
| Group | Iris Whalen | | | $0.00 | | | | | | | | | $0.00 | | | |
| OK | Iris Whalen | | | | $0.00 | | | | | | | | | $0.00 | | |
| Group | Iron Mountain | | | | $42.92 | | | | | | | | | $0.00 | | lease to be assumed |
| OK | Iron Mountain | | | | $42.92 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Georgia | J&J Healthcare Systems, Inc | | | | $22,167.96 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | J&J Healthcare Systems, Inc | | | | $224,634.84 | | | | | | | | | $224,634.84 | | |
| N.C. | J&J Healthcare Systems, Inc | | | | $159,901.16 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| OK | J&J Healthcare Systems, Inc | | | | $5,771.84 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| WMC | J&J Healthcare Systems, Inc | | | | $17,632.88 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Janet Freeman | | | $775.17 | | | | | | | | | $0.00 | | | Authorized to be paid in ordinary course |
| Group | JANI-KING OF RALEIGH/DURHAM | | | | $925.00 | | | | | | | | | $0.00 | | lease to be assumed |
| N.C. | JANI-KING OF RALEIGH/DURHAM | | | | $925.00 | 5 (6/14/19) | | | | $925.00 | | | | $0.00 | | lease to be assumed |
| WMC | JANI-KING OF RALEIGH/DURHAM | | | | $0.00 | | | | | | | | | $0.00 | | lease to be assumed |
| Group | Jasmin Battle | | | | $370.00 | | | | | | | | | $0.00 | | Paid by principal |
| OK | Jasmin Battle | | | | $370.00 | | | | | | | | | $0.00 | | |
| Group | JP Morgan Chase Bank, N.a. | | | | | 16 (5-29-19) | | | | $75,885.81 | | | | $0.00 | | $0, lease to be assumed |
| Group | K&L Gates LLP | | | | $6,545.50 | | | | | | | | | $6,545.50 | | |

Page 55

EXHIBIT C

CLAIMS LIST

| ENTITY | Name | D C U | Secured Claim (SCHED) | Priority Claim (SCHED) | Unsecured Claim (SCHED) | POC # | Secured Claim (FILED) | Admin. Claim (FILED) | Priority Claim (FILED) | Unsecured Claim (FILED) | Secured Claim | Admin. Claim | Priority Claim | Unsecured Claim | Class | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| N.C. | K&L Gates LLP | | | | $6,545.50 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| OK | K&L Gates LLP | | | | $0.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Kevin Donovan | | | $675.00 | | | | | | | | | $0.00 | | | Authorized to be paid in ordinary course |
| Group | Kokilia Rana | | | $610.21 | | | | | | | | | $0.00 | | | Authrozied to be paid in ordinary course |
| Group | Kull + Hall | | | | | 60 (10/15/19) | | | | $67,056.71 | | | | $0.00 | | Disputed, do not recognize the creditor, pending on the claimant to update the POC |
| OK | KWTV-TV | | | | $84,715.25 | | | | | | | | | $0.00 | | Creditor filed the claim as "Griffin Communications, LLC" Group POC#23 |
| Group | LA Arena Funding LLC (Staples Center) | | | | $36,558.00 | 19 (6-05-19) | | | | $36,558.00 | | | | $36,558.00 | | Estimated lease rejection damage |
| Group | Linda Lefever | | | $448.06 | | | | | | | | | $0.00 | | | Authrozied to be paid in ordinary course |
| Group | Logan O Tufts | | | $0.00 | | | | | | | | | $0.00 | | | |
| Group | Los Angeles County Tax Collector | | | $10,589.16 | | 3 (02/25/20) | | | $15,093.43 | | | | $15,093.43 | | | |
| WMC | Los Angeles County Tax Collector | | | $10,589.16 | | | | | | | | | $0.00 | | | Total amount due listed under Group |
| Georgia | Manning Fulton | | | | $310.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Manning Fulton | | | | $310.00 | | | | | | | | | $310.00 | | |
| Group | Maple One Partners, LLC | | | | $0.00 | 46 (7/26/19) | | | | $0.00 | | | | $0.00 | | Lease has been assumed |
| Group | Marlene Thomas | | | $503.54 | | | | | | | | | $0.00 | | | Authrozied to be paid in ordinary course |
| Group | Marva Hogg | | | $400.00 | | | | | | | | | $0.00 | | | Authrozied to be paid in ordinary course |
| Group | Mayflower Transit, LLC | | | | $8,005.17 | | | | | | | | | $8,005.17 | | |
| N.C. | Mayflower Transit, LLC | | | | $3,925.62 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| OK | Mayflower Transit, LLC | | | | $4,079.55 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Georgia | McKesson Medical Surgical | | | | $608.22 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | McKesson Medical Surgical | | | | $6,894.23 | | | | | | | | | $6,894.23 | | |
| N.C. | McKesson Medical Surgical | | | | $5,335.14 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| OK | McKesson Medical Surgical | | | | $224.55 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| WMC | McKesson Medical Surgical | | | | $726.32 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Georgia | Medasend Biomedical Inc | | | | $160.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Medasend Biomedical Inc | | | | $160.00 | | | | | | | | | $160.00 | | |
| Group | Michael Yi | | | $473.00 | | | | | | | | | $0.00 | | | Authorized to be paid in ordinary course |
| Group | Mildred Osbourne | | | $280.00 | | | | | | | | | $0.00 | | | Authorized to be paid in ordinary course |
| Group | Mint Medical Physician Staffing LP | | | | | 30 (07/11/19) | | | | $5,278.00 | | | | $0.00 | | Disputed, Balance is $0; pending on creditor to update the POC |
| Group | MRC | | | | $6,683.80 | | | | | | | | | $0.00 | | Lease to be assumed |
| OK | MRC | | | | $6,683.80 | | | | | | | | | $0.00 | | |
| WMC | MUFG Union Bank, N.A. Credit Card Operations | | | | $19,570.73 | | | | | | | | | $0.00 | | Total amount due listed under Group |

Page 56

EXHIBIT C

| ENTITY | Name | D C U | Secured Claim (SCHED) | Priority Claim (SCHED) | Unsecured Claim (SCHED) | POC # | Secured Claim (FILED) | Admin. Claim (FILED) | Priority Claim (FILED) | Unsecured Claim (FILED) | Secured Claim | Admin. Claim | Priority Claim | Unsecured Claim | Class | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | SCHEDULED CLAIM | | | FILED CLAIM | | | | | | ALLOWED CLAIM | | | |
| Group | MUFG Union Bank, N.A. Credit Card Operations | | | | $19,570.73 | | | | | | | | | $19,570.73 | | |
| Group | Nancy Forbes | | | $45.00 | | | | | | | | $0.00 | | | | Authorized to be paid in ordinary course |
| Group | NC Dept of Revenue | | | | | 5 - (4/1/19) | | | $48,541.15 | $1,000.00 | | | $48,541.15 | $1,000.00 | | |
| N.C. | NC Dept of Revenue | | $49,584.78 | | | 1 - (4/2/19) | | | $0.51 | $21.72 | | | $0.51 | $21.72 | | |
| WMC | NC Dept of Revenue | | | | | 2 - (4/02/19) | | | $0.51 | $30.00 | | | $0.51 | $30.00 | | |
| Group | NCMIC | | | | $1,358.67 | | | | | | | | | $0.00 | | Creditor filed the claim under "NCMIC Finance Corp"; lease to be assumed |
| Georgia | NCMIC Finance Corp | | | | $589.00 | 4 (12/12/19) | | | | $589.00 | | | | $0.00 | | Lease to be assumed |
| N.C. | NCMIC Finance Corp | | | | $769.67 | 10 (12/12/19) | | | | $769.67 | | | | $0.00 | | Lease to be assumed |
| Group | News & Record | | | | $15,519.00 | | | | | | | | | $15,519.00 | | |
| N.C. | News & Record | | | | $15,519.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | OG&E | | | | $197.20 | | | | | | | | | $0.00 | | Paid in the ordinary course under approved budget |
| OK | OG&E | | | | $197.20 | | | | | | | | | $0.00 | | |
| OK | Oklahoma Tax Commission | | $0.00 | | | | | | | | | $0.00 | | | | |
| Georgia | Organogenesis, Inc. | | | | $1,275.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Organogenesis, Inc. | | | | $7,125.00 | | | | | | | | | $7,125.00 | | |
| N.C. | Organogenesis, Inc. | | | | $5,850.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Georgia | Ossur Americas Inc. | | | | $34,733.54 | 2 (7/29/19) | | $3,536.63 | | $30,023.39 | | $0.00 | | $0.00 | | Duplicated claim, Group POC# 51 |
| Group | Ossur Americas Inc. | | | | $204,974.38 | 51 (7/29/19) | | $42,352.74 | | $162,621.64 | | $42,352.74 | | $162,621.64 | | |
| N.C. | Ossur Americas Inc. | | | | $137,040.19 | 9 (7/29/19) | | $13,256.87 | | $123,625.39 | | $0.00 | | $0.00 | | Duplicated claim, Group POC# 51 |
| OK | Ossur Americas Inc. | | | | $8,812.11 | 4 (7/29/19) | | $4,105.87 | $4,706.00 | | | $0.00 | | $0.00 | | Duplicated claim, Group POC# 51 |
| WMC | Ossur Americas Inc. | | | | $22,669.54 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | OUTFRONT Media | | | | | 40 (7/23/19) | | | | $20,275.00 | | | | $0.00 | | Disputed, billed to Ren Scott |
| Group | Packard Commercial LLC | | | | $33,421.49 | 56 (8/01/19) | | $12,077.56 | | $6,038.78 | | $12,077.56 | | $6,038.78 | | Lease has been rejected |
| WMC | Packard Commercial, LLC | | | | $27,382.69 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Paul Mogannam | | | | | 24 (7/02/19) | | | | $888,455.10 | | | | $0.00 | | Disputed |
| N.C. | Paul Mogannam | | | | | 6 (7/02/19) | | | | $888,455.10 | | | | $0.00 | | Disputed |
| WMC | Paul Mogannam | | | | | 5 (7/02/19) | | | | $888,455.10 | | | | $0.00 | | Disputed |
| Group | Physician Solutions, Inc | | | | $38,419.88 | 29 (7-05-19) | | | | $43,586.65 | | | | $36,478.42 | | Disputed amount to $36478.42; creditor is modifying the POC |
| N.C. | Physician Solutions, Inc | | | | $38,419.88 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Piedmont Natural Gas | | | | $99.86 | | | | | | | | | $0.00 | | Paid in the ordinary course under approved budget |
| N.C. | Piedmont Natural Gas | | | | $99.86 | | | | | | | | | $0.00 | | Paid in the ordinary course under approved budget |
| Group | Registered Agent Solutions, Inc. | | | | $165.00 | | | | | | | | | $165.00 | | |

Page 57

EXHIBIT C

CLAIMS LIST

| ENTITY | CLAIMANT Name | D C U | SCHEDULED CLAIM Secured Claim (SCHED) | Priority Claim (SCHED) | Unsecured Claim (SCHED) | FILED CLAIM POC # | Secured Claim (FILED) | Admin. Claim (FILED) | Priority Claim (FILED) | Unsecured Claim (FILED) | ALLOWED CLAIM Secured Claim | Admin. Claim | Priority Claim | Unsecured Claim | Class | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OK | Registered Agent Solutions, Inc. | | | | $165.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Georgia | Ren Scott Creative | | | | $1,138.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Ren Scott Creative | | | | $31,802.86 | | | | | | | | | $0.00 | | Disputed, breach of contract |
| N.C. | Ren Scott Creative | | | | $29,526.86 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| WMC | Ren Scott Creative | | | | $1,138.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Renee Burwell | | | $1,125.00 | | | | | | | | | $0.00 | | | Authrized to be paid in ordinary course |
| Group | Rose Fukuhara | | | $40.00 | | | | | | | | | $0.00 | | | Authrized to be paid in ordinary course |
| Group | Sandy Springs Gateway Owner, LLC | | | | $31,236.73 | | | | | | | | | $31,236.73 | | |
| Gergia | Sandy Springs Getaway Owner LLC | | | | $31,236.73 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Georgia | Sandy Springs Locksmith | | | | $200.99 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Sandy Springs Locksmith | | | | $200.99 | | | | | | | | | $200.99 | | |
| Group | Sean P Whalen | | | | $237,746.29 | | | | | | | | | $237,746.29 | | |
| Group | Sean P Whalen | | | $0.00 | | | | | | | | | $0.00 | | | |
| Group | Sensis, Inc | D | | | $146,494.00 | 50 (7/29/19) | | | | $172,852.64 | | | | $0.00 | | Disputed, $0, breach of agreement |
| Group | Shred Ace, Inc | | | | $45.00 | | | | | | | | | $0.00 | | Lease to be assumed |
| N.C. | Shred Ace, Inc | | | | $45.00 | | | | | | | | | $0.00 | | Lease to be assumed |
| Georgia | Shred-it | | | | $207.16 | | | | | | | | | $0.00 | | Lease to be assumed |
| Group | Shred-it | | | | $1,031.92 | | | | | | | | | $0.00 | | Lease to be assumed |
| N.C. | Shred-it | | | | $590.68 | | | | | | | | | $0.00 | | Lease to be assumed |
| WMC | Shred-it | | | | $234.08 | | | | | | | | | $0.00 | | Lease to be assumed |
| Group | Smart Business System | | | | $570.13 | | | | | | | | | $380.23 | | Estimated lease rejection damage |
| WMC | Smart Business System | | | | $189.90 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Georgia | Smith Anderson Blount Dorsett | | | | $5,135.50 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Smith Anderson Blount Dorsett | | | | $31,451.75 | 20 (6-05-19) | | | | $31,451.75 | | | | $31,451.75 | | |
| N.C. | Smith Anderson Blount Dorsett | | | | $15,406.50 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| OK | Smith Anderson Blount Dorsett | | | | $638.75 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| WMC | Smith Anderson Blount Dorsett | | | | $5,135.50 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Georgia | Stanford Dosimetry LA | | | | $454.00 | | | | | | | | | $0.00 | | Lease to be assumed |
| Group | Stanford Dosimetry LA | | | | $2,431.00 | | | | | | | | | $0.00 | | Lease to be assumed |
| N.C. | Stanford Dosimetry LA | | | | $1,180.00 | | | | | | | | | $0.00 | | Lease to be assumed |
| OK | Stanford Dosimetry LA | | | | $445.00 | | | | | | | | | $0.00 | | Lease to be assumed |
| WMC | Stanford Dosimetry LA | | | | $351.00 | | | | | | | | | $0.00 | | Lease to be assumed |

EXHIBIT C

CLAIMS LIST

| ENTITY | Name | D | C | U | Secured Claim (SCHED) | Priority Claim (SCHED) | Unsecured Claim (SCHED) | POC # | Secured Claim (FILED) | Admin. Claim (FILED) | Priority Claim (FILED) | Unsecured Claim (FILED) | Secured Claim | Admin. Claim | Priority Claim | Unsecured Claim | Class | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Georgia | Staples Advantage | | | | | | $805.95 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Staples Advantage | | | | | | $4,644.08 | | | | | | | | | $4,644.08 | | |
| N.C. | Staples Advantage | | | | | | $1,966.80 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| OK | Staples Advantage | | | | | | $590.03 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| WMC | Staples Advantage | | | | | | $501.84 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Stephanie Moore | | | | | $40.00 | | | | | | | | | $0.00 | | | Authroized to be paid in ordinary course |
| Group | Stericycle | | | | | | $507.12 | | | | | | | | | $0.00 | | Lease to be assumed |
| OK | Stericycle | | | | | | $0.00 | | | | | | | | | $0.00 | | Lease to be assumed |
| WMC | Stericycle | | | | | | $507.12 | | | | | | | | | $0.00 | | Lease to be assumed |
| Georgia | Stratus Video , LLC | | | | | | $150.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Stratus Video , LLC | | | | | | $150.00 | | | | | | | | | $150.00 | | |
| OK | Stratus Video , LLC | | | | | | $0.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Technology Unlimited Inc | | | | | | $126.60 | | | | | | | | | $126.60 | | |
| OK | Technology Unlimited Inc | | | | | | $126.60 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | The Charlotte Observer | | | | | | $12,933.96 | | | | | | | | | $12,933.96 | | |
| N.C. | The Charlotte Observer | | | | | | $12,933.96 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | The News & Observer | | | | | | $13,212.00 | | | | | | | | | $13,212.00 | | |
| N.C. | The News & Observer | | | | | | $13,212.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | TOG Langer Biomechanics Cary | | | | | | $555.00 | | | | | | | | | $555.00 | | |
| N.C. | TOG Langer Biomechanics Cary | | | | | | $555.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | TOG Langer Biomechanics CLT | | | | | | $742.00 | | | | | | | | | $742.00 | | |
| N.C. | TOG Langer Biomechanics CLT | | | | | | $742.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | TOG Langer Biomechanics LA | | | | | | $25.00 | | | | | | | | | $25.00 | | |
| WMC | TOG Langer Biomechanics LA | | | | | | $25.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Tower Lakes, LLC | | | | | | $0.00 | 8 (4-16-19) | | | | $2,514,162.90 | | | | $0.00 | | Lease assumed (O/E 2/18/20) |
| Group | United Pet Care LLC | | | | | | $214.20 | | | | | | | | | $0.00 | | Paid in the ordinary course under approved budget |
| WMC | UnitedHealthcare Insurance Company | | | | | | | 1- (3/21/19) | | | | $2,143.49 | | | | $2,143.49 | | |
| Group | V-Corp Contracting Services, Inc. | | | | | | $693.00 | | | | | | | | | $693.00 | | |
| WMC | V-Corp Contracting Services, Inc. | | | | | | $693.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Valpak of the Triad | | | | | | $300.00 | | | | | | | | | $300.00 | | |
| N.C. | Valpak of the Triad | | | | | | $300.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |

EXHIBIT C

| ENTITY | CLAIMANT Name | DCU | SCHEDULED CLAIM Secured Claim (SCHED) | Priority Claim (SCHED) | Unsecured Claim (SCHED) | FILED CLAIM POC # | Secured Claim (FILED) | Admin. Claim (FILED) | Priority Claim (FILED) | Unsecured Claim (FILED) | ALLOWED CLAIM Secured Claim | Admin. Claim | Priority Claim | Unsecured Claim | Class | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Group | Vicki Dewberry | | | $173.00 | | | | | | | | | $0.00 | | | Authorized to be paid in ordinary course |
| Group | Virginia Ellis | | | $263.78 | | | | | | | | | $0.00 | | | Authorized to be paid in ordinary course |
| Group | WAGA Television | | | | | 54 (7/29/19) | | | | $26,889.75 | | | | $0.00 | | Disputed, billed to Ren Scott |
| Group | Wayfair LLC | | | | $1,700.61 | 10 (04/23/19) | | | | $2,167.61 | | | | $0.00 | | Disputed, $0 balance, creditor to update POC |
| N.C. | Wayfair Supply | | | | $63.24 | | | | | | | | | $0.00 | | Total amount due listed under Group (Wayfair LLC) |
| OK | Wayfair Supply | | | | $1,554.24 | | | | | | | | | $0.00 | | Total amount due listed under Group (Wayfair LLC) |
| Group | WCNC Television | | | | | 36 (7/23/19) | | | | $2,392.75 | | | | $0.00 | | Disputed, billed to Ren Scott |
| Group | WCNC-TV, Inc. | | | | $65,641.25 | 15 (5-28-19) | | | | $130,841.25 | | | | $130,841.25 | | Creditor is "WCNC/WFMY" creditor POC#15 |
| N.C. | WCNC-TV, Inc. | | | | $65,641.25 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Wells Fargo | | | | | 58 (9/06/19) | | | | $33,121.23 | | | | $0.00 | | Disputed, lease is with "MRC", not with Wells Fargo directly. Lease with MRC will be assumed ($25087.20) |
| Group | WFMY | | | | $29,650.00 | 15 (5-28-19) | | | | | | | | $0.00 | | Creditor filed the claim as "WCNC-TV, Inc" (aka "WFMY" or "WCNC") Group POC#15 |
| N.C. | WFMY | | | | $29,650.00 | | | | | | | | | $0.00 | | Creditor filed the claim as "WCNC-TV, Inc" (aka "WFMY" or "WCNC") Group POC#15 |
| Group | WFMY Television | | | | | 37 (7/23/19) | | | | $31,493.52 | | | | $0.00 | | Disputed, billed to Ren Scott |
| Group | WFSH-FM | | | | | 41 (7/23/19) | | | | $37,200.04 | | | | $0.00 | | Disputed, billed to Ren Scott |
| Group | WGCL Television | | | | | 38 (7/23/19) | | | | $10,674.30 | | | | $0.00 | | Disputed, billed to Ren Scott |
| Group | Wilhelmina Saunders | | | $151.60 | | | | | | | | | $0.00 | | | Authorized to be paid in ordinary course |
| Georgia | WNCN | | | | $74,810.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | WNCN | | | | $74,810.00 | | | | | | | | | $74,810.00 | | |
| N.C. | WNCN | | | | $74,810.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | WRAL-FM Radio | | | | | 39 (7/23/19) | | | | $11,459.22 | | | | $0.00 | | Disputed, billed to Ren Scott |
| Georgia | WSB-TV Cox Enterprises, Inc. | | | | $11,927.31 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | WSB-TV Cox Enterprises, Inc. | | | | $71,563.83 | 18 (5-30-19) | | | | $239,721.95 | | | | $239,721.95 | | |
| N.C. | WSB-TV Cox Enterprises, Inc. | | | | $35,781.92 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| OK | WSB-TV Cox Enterprises, Inc. | | | | $11,927.31 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| WMC | WSB-TV Cox Enterprises, Inc. | | | | $11,927.31 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | WSB-TV | | | | | 45 (7/26/19) | | | | $47,238.80 | | | | $0.00 | | Disputed, billed to Ren Scott |
| Group | WSOC-TV | | | | $28,450.00 | 17 (5-30-19) | | | | $37,700.00 | | | | $37,700.00 | | |

EXHIBIT C

CLAIMS LIST

| ENTITY | CLAIMANT Name | D C U | SCHEDULED CLAIM Secured Claim (SCHED) | Priority Claim (SCHED) | Unsecured Claim (SCHED) | FILED CLAIM POC # | Secured Claim (FILED) | Admin. Claim (FILED) | Priority Claim (FILED) | Unsecured Claim (FILED) | ALLOWED CLAIM Secured Claim | Admin. Claim | Priority Claim | Unsecured Claim | Class | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| N.C. | WSOC-TV | | | | $28,450.00 | | | | | | | | | $0.00 | | Total amount due listed under Group |
| Group | Young Han | | | $400.00 | | | | | | | | | $0.00 | | | Authorized to be paid in ordinary course |
| | | | | | | | TOTAL | $0.00 | $544,316.11 | $1,000,403.13 | $4,698,694.69 | | | | | |

Page 61

EXHIBIT C

# EXHIBIT D

**TAX ANALYSIS**

| Debtor Entity: | Entity Type | Amount of Outside Debt | Est % pd - Plan | Amt Pd | CODI | Tax Effect of CODI | Basis of Accounitng |
|---|---|---|---|---|---|---|---|
| Flexogenix Group | S | - | 35% | - | - | Note 1 | Accrual |
| Flexogenix Georgia | S | 960,244 | 35% | 336,086 | 624,159 | Note 1 | Accrual |
| Flexogenix Oklahoma | S | 132,975 | 35% | 46,541 | 86,434 | Note 1 | Accrual |
| Flexogenix North Carolina | S | 4,593,695 | 35% | 1,607,793 | 2,985,902 | Note 1 | Accrual |
| Whalen Medical | S | 939,172 | 35% | 328,710 | 610,461 | Note 1 | Accrual |
| Total | | 6,626,087 | 35% | 2,319,130 | 4,306,956 | | |

**Note 1:**

In the case of an S corporation, the rules for excluding the discharge-of-debt income from gross income are applied at the corporate level, including the reduction of certain tax attributes. Income from the discharge of debt of an S corporation that is excluded from the corporation's income and not taken into account as an item that flows through to shareholders. Due to the entity level treatment, basis is not increased for the amount of CODI. If there are any suspended losses (due to basis limitations), those losses will still be unavailable. In fact, to the extent of the CODI, those losses should be eliminated. See the chart below for the effect on the Debtors:

| Debtor Entity: | CODI | Suspended Losses | C/F Losses - Post CODI | |
|---|---|---|---|---|
| Flexogenix Group | - | 484,414 | 484,414 | |
| Flexogenix Georgia | 624,159 | 2,422,335 | 1,798,176 | |
| Flexogenix Oklahoma | 86,434 | 955,470 | 869,036 | |
| Flexogenix North Carolina | 2,985,902 | 1,421,211 | - | |
| Whalen Medical | 610,461 | 4,667,207 | 4,056,746 | Actual Losses Reduction |
| | 4,306,956 | 9,950,637 | 7,208,372 | **2,742,265** |

# EXHIBIT E

**In Re FLEXOGENIX GROUP, INC., et.al.**
**Bankruptcy Case No. 2:19-bk-12927-BR**
**Liquidation Analysis**
**Date of Analysis: 11/20/20**

| *Chapter 11 Liquidation Analysis* | | *Chapter 7 Consolidated Liquidation Analysis* | |
|---|---|---|---|
| | ESTIMATE | | ESTIMATE |
| CASH ACCTS AS OF 11/18/20 | 855,502 [a] | CASH ACCTS AS OF 11/18/20 | 855,502 [a] |
| Operating Income Under Chapter 11 Plan | 101,810,440 [b] | Operating Income as of May 2021 | 5,655,000 [b] |
| ESTIMATED CASH UNDER CHAPTER 11 PLAN | 102,665,942 | ESTIMATED CASH OP ACCTS AS OF 05/2021 | 6,510,502 |
| Estimated AR Collections | - | Estimated AR Collections | 272,821 [c] |
| Inventory amd Equipment Sale | - | Inventory amd Equipment Sale | 255,969 [d] |
| Prepaid Expenses / Security Deposits | - | Prepaid Expenses / Security Deposits | 139,426 [e] |
| TOTAL ESTIMATED CASH AVAILABLE UNDER PLAN | 102,665,942 | TOTAL ESTIMATED CASH THROUGH MAY 1, 2021 | 7,178,719 |
| COSTS UNDER CHAPTER 11 PLAN | | COSTS THROUGH MAY 1, 2021 | |
| Operating Expenses | (96,837,003) [b] | Operating Expenses through Plan Confirmation | (5,443,003) [b] |
| Professional Interim Fee App - Legal | (156,433) | Professional Interim Fee App - Legal | (156,433) |
| Professional Interim Fee App - Accounting | (62,604) | Professional Interim Fee App - Accounting | (62,604) |
| U.S. Trustee Quarterly Fees | (1,428,000) | U.S. Trustee Quarterly Fees | (64,800) |
| TOTAL ESTIMATE EXPENSES | (98,484,040) | TOTAL ESTIMATE EXPENSES | (5,726,840) |
| NET CASH AVAILABLE FOR CHAPTER 11 PLAN | 4,181,902 | NET CASH AVAILABLE FOR CHAPTER 7 | 1,451,879 |
| Chapter 11 Professional Fees - Legal | (230,000) | Chapter 11 Professional Fees - Legal | (115,000) |
| Chapter 11 Professional Fees - Accounting | (50,000) | Chapter 11 Professional Fees - Accounting | (25,000) |
| Chapter 7 Trustee Statutory Feee | - | Chapter 7 Trustee Statutory Fee | (89,900) |
| Chapter 7 Admin Fees | - | Chapter 7 Admin Fees | (150,000) |
| Administrative Claims | (561,068) | Administrative Claims | (561,068) |
| Other Chapter 11 Plan Effective Date Payments | (76,391) | Other Chapter 11 Plan Effective Date Payments | - |
| ADMINISTRATIVE CLAIMS | (917,459) | ADMINISTRATIVE CLAIMS | (940,968) |
| NET CASH AVAILABLE FOR UNSECURED CLAIMS | 3,264,443 | NET CASH AVAILABLE FOR UNSECURED CLAIMS | 510,911 |
| PRIORITY TAX CLAIMS | | PRIORITY TAX CLAIMS | |
| Priority Tax Claims to be Paid | (1,000,403) | Priority Tax Claims to be Paid | (510,911) |
| TOTAL PRIORITY TAX CLAIMS | (1,000,403) | TOTAL PRIORITY TAX CLAIMS | (1,000,403) |
| *PRIORITY TAX CLAIMS PAYOUT PERCENTAGE* | *100.00%* | *PRIORITY TAX CLAIMS PAYOUT PERCENTAGE* | *51.07%* |
| Unsecured Convenience Class Claims | (16,631) | | |
| ESTIMATED CASH AVAILABLE AFTER PRIORITY TAX & | | ESTIMATED CASH AVAILABLE AFTER PRIORITY TAX & | |
| CONVENIENCE CLASS CLAIMS | 2,247,409 | CONVENIENCE CLASS CLAIMS | - |
| UNSECURED CLAIMS | | UNSECURED CLAIMS | |
| Payments for General Unsecured Claims | (1,416,355) | General Unsecured Claims | - |
| TOTAL UNSECURED CLAIMS | (4,721,182) | TOTAL UNSECURED CLAIMS | (4,721,182) |
| *UNSECURED CLAIMS PAYOUT PERCENTAGE* | *30.00%* | *UNSECURED CLAIMS PAYOUT PERCENTAGE* | *0.00%* |

[a] Cash balance as of 11/18/2020 per bank accounts for respective Debtors.
[b] Estimated operating income and expenses based on the Debtors' projections.
[c] Per Debtors, A/R collectibility percentages 80% during the first 30 days, 50% for 31-60 days, 30% for 61-90 days, and 20% for 91-120 days. Collectibility
   on receivables beyond 120 days are most likely not collectible and no value is being attributed. Receivables for Flexogenix Georgia and Whalen Medical
   all exceed 365 days and are not collectible.
[d] See Exhibit 1 for detailed listing and summary of asset costs. Liquidation analysis assumes a 25.0% liquidation discount.
[e] Security deposits per Debtors schedules. Assumes full amount would be returned to estate.

[h] See trustee fee calculation below:

| | Consolidated |
|---|---|
| 25% | 1,250 |
| 10% | 5,000 |
| 5% | 70,094 |
| 3% | 13,556 |
| **Total** | **89,900** |

EXHIBIT E                                                    Page 63

In Re FLEXOGENIX GROUP, INC., et.al.
Bankruptcy Case No. 2:19-bk-12927-BR
Liquidation Analysis Under Chapter 7 by Individual Debtor
Date of Analysis: 11/20/20

| | Flexogenix Georgia | Flexogenix North Carolina | Flexogenix Oklahoma | Flexogenix Group | Whalen Medical Corporation |
|---|---|---|---|---|---|
| | ESTIMATE | ESTIMATE | ESTIMATE | ESTIMATE | ESTIMATE |
| **CASH OP ACCTS AS OF 11/18/20** | 986 [a] | 434,048 [a] | 107,041 [a] | 313,075 [a] | 352 [a] |
| Operating Income through Estimated Chapter 7 | - [b] | 3,847,200 [b] | 676,800 [b] | 1,131,000 [b] | - [b] |
| **ESTIMATED CASH OP ACCTS AS OF 05/2021** | 986 | 4,281,248 | 783,841 | 1,444,075 | 352 |
| | | | | | |
| **ESTIMATED A/R COLLECTIONS** | - [c] | 235,112 [c] | 37,709 [c] | - [c] | - [c] |
| **ESTIMATED INVENTORY / EQUIPMENT LIQUIDATION** | 3,590 [d] | 122,656 [d] | 47,029 [d] | 82,694 [d] | - [d] |
| **PREPAID EXPENSES / SECURITY DEPOSIT** | 62,378 [e] | 13,070 [e] | 23,535 [e] | 34,593 [e] | 5,850 [e] |
| | | | | | |
| **TOTAL ESTIMATED CASH THROUGH MAY 1, 2021** | 66,954 | 4,652,086 | 892,115 | 1,561,362 | 6,202 |
| | | | | | |
| **COSTS THROUGH MAY 1, 2021** | | | | | |
| Operating Income through Estimated Chapter 7 | - [b] | (3,843,220) [b] | (671,540) [b] | (928,243) [b] | - [b] |
| Administrative Costs | - | - | - | - | - |
| Professional Interim Fee App - Legal | - | - | - | (156,433) | - |
| Professional Interim Fee App - Accounting | (5,615) | (9,781) | (7,935) | (34,264) | (5,010) |
| U.S. Trustee Quarterly Fees | (650) | (44,000) | (9,750) | (9,750) | (650) |
| **TOTAL ESTIMATE EXPENSES** | (6,265) | (3,897,000) | (689,225) | (1,128,690) | (5,660) |
| | | | | | |
| **NET CASH AVAILABLE FOR CHAPTER 7** | 60,689 | 755,086 | 202,890 | 432,672 | 542 |
| | | | | | |
| Chapter 11 Professional Fees - Legal | - | - | - | (115,000) | - |
| Chapter 11 Professional Fees - Accounting | - | - | - | (25,000) | - |
| Chapter 7 Trustee Handle | (6,784) | (41,504) | (13,894) | (25,383) | (135) |
| Chapter 7 Admin Fees | (10,000) | (35,000) | (25,000) | (75,000) | (5,000) |
| Administrative Claims | - | (1) | - | (544,316) | (16,751) |
| **ADMINISTRATIVE CLAIMS** | (16,784) | (76,505) | (38,894) | (784,700) | (21,887) |
| | | | | | |
| **NET CASH AVAILABLE FOR UNSECURED CLAIMS** | 43,905 | 678,581 | 163,995 | (352,027) | (21,345) |
| | | | | | |
| **PRIORITY TAX CLAIMS** | | | | | |
| Priority Tax Claims to be Paid | - | (60) | - | - | - |
| **TOTAL PRIORITY TAX CLAIMS** | - | (60) | - | (986,750) | (13,663) |
| *PRIORITY TAX CLAIMS PAYOUT PERCENTAGE* | *0.00%* | *100.00%* | *0.00%* | *0.00%* | *0.00%* |
| **ESTIMATED CASH AVAILABLE AFTER PRIORITY TAX CLAIMS** | 43,905 | 678,521 | 163,995 | - | - |
| | | | | | |
| **UNSECURED CLAIMS** | | | | | |
| General Unsecured Claims | (43,905) | (678,521) | (163,995) | - | - |
| **TOTAL UNSECURED CLAIMS** | (642,312) | (1,398,243) | (249,546) | (4,800,270) | (383,160) |
| *UNSECURED CLAIMS PAYOUT PERCENTAGE* | *6.84%* | *48.53%* | *65.72%* | *0.00%* | *0.00%* |

[a] Cash balance as of 11/18/2020 per bank accounts for respective Debtors.

[b] Estimated operating income and expenses based on the Debtors' projections.

[c] Per Debtors, A/R collectibility percentages 80% during the first 30 days, 50% for 31-60 days, 30% for 61-90 days, and 20% for 91-120 days. Collectibility on receivables beyond 120 days are most likely not collectible and no value is being attributed. Receivables for Flexogenix Georgia and Whalen Medical all exceed 365 days and are not collectible.

| | North Carolina Estimated Collection | Oklahoma Estimated Collection |
|---|---|---|
| Accounts Receivable | 193,508.40 | 33,633.31 |
| | 27,145.38 | 2,799.65 |
| | 9,137.65 | 843.83 |
| | 5,320.65 | 432.61 |
| | 235,112.08 | 37,709.39 |

[d] See Exhibit 1 for detailed listing and summary of asset costs. Liquidation analysis assumes a 25.0% liquidation discount.

[e] Security deposits per Debtors schedules. Assumes full amount would be returned to estate.

[h] See trustee fee calculation below:

| | Georgia | North Carolina | Oklahoma | Group | WMC |
|---|---|---|---|---|---|
| 25% | 1,250 | 1,250 | 1,250 | 1,250 | 135 |
| 10% | 5,000 | 5,000 | 5,000 | 5,000 | |
| 5% | 534 | 35,254 | 7,644 | 19,134 | |
| 3% | | | | | |
| **Total** | 6,784 | 41,504 | 13,894 | 25,383 | 135 |

# EXHIBIT F

## ASSUMED CONTRACTS WITH PROPOSED CURE AMOUNTS

| Name | aka | Vendor Description | Assume/Reject | Contract Start Date | Contract Expire Date | Serial Number | Proposed Cure Amount |
|------|-----|-------------------|---------------|--------------------|--------------------|--------------|---------------------|
| 8X8, Inc. | | VOIP Phone Provider | Assume | | | | $3,550.21 |
| Alford Leasing Company | | Copier Lease | Assume | | | | $433.44 |
| | | | Assume | | | | |
| AlterG | | Medical Equipment | Assume | | | | $6,447.29 |
| | | | Assume | | | | |
| Argon | CN Chisholm Creek, LP | OKC Corp apt | Assume | | | | $0.00 |
| Bainbridge NC Management | | Cary Corp apt | Assume | | 4/1/2019 | | $0.00 |
| Bigleaf Networks | | IT Services | Assume | | | | $2,322.00 |
| Bizmatics, Inc. | | Electronic Medical Record | Assume | | | | $1,599.00 |
| | | | Assume | 8/1/2016 | 7/31/2019 | QTW11491 | |
| Canon Financial Service, Inc. | | Copier Lease | Assume | 5/1/2017 | 4/30/2020 | QTW17631 | $742.12 |
| | | | Assume | 8/1/2017 | 7/31/2020 | WKN01776 | |
| COECO OF RALEIGH | | Copier Lease | Assume | 9/8/2015 | 9/8/2019 | | $934.86 |
| Daimler Trust | Mercedez Benz | Auto Lease | Assume | 2/25/2019 | 2/25/2023 | | $0.00 |
| | | | Assume | 8/23/2016 | 7/1/2021 | 19-0316-04 | |
| | | | Assume | 8/23/2016 | 7/1/2021 | 19-0316-05 | |
| De Lage Landen Financial Services, Inc. | Hologic Capital | Medical Equipment | Assume | 6/21/2016 | 5/1/2021 | 19-0216-13 | |
| | | | Assume | 5/31/2016 | 4/1/2021 | 19-0116-13 | |
| | | | Assume | 5/31/2016 | 4/1/2021 | 19-0116-14 | $26,849.76 |
| | | | Assume | 5/31/2016 | 4/1/2021 | 19-0116-16 | |
| George Place | | Charlotte Corp apt | Assume | | 7/14/2020 | | $0.00 |

## ASSUMED CONTRACTS WITH PROPOSED CURE AMOUNTS

| Name | aka | Vendor Description | Assume/Reject | Contract Start Date | Contract Expire Date | Serial Number | Proposed Cure Amount |
|------|-----|--------------------|---------------|---------------------|----------------------|---------------|----------------------|
| HENDRIX BUSINESS SYSTEMS, INC. | | Copier Services | Assume | | | QTW1491 | $1,327.62 |
| | | | Assume | | | WKN01776 | |
| Hewlett–Packard Financial Services Company | | Computer Lease | Assume | | 7/10/2020 | | $4,929.12 |
| Hologic, Inc (maintenance) | | Medical Equipment Services | Assume | 11/1/2017 | 10/31/2021 | 19-0715-04 | |
| | | | Assume | 11/1/2017 | 10/31/2021 | 19-0815-08 | |
| | | | Assume | 11/1/2017 | 10/31/2021 | 19-0815-09 | |
| | | | Assume | 12/1/2018 | 11/30/2022 | 09-0613-02 | |
| | | | Assume | 12/1/2018 | 11/30/2022 | 09-0613-03 | $9,382.71 |
| | | | Assume | 12/1/2018 | 11/30/2022 | 19-1114-16 | |
| Iron Mountain | | Shredding Services | Assume | | | | $42.92 |
| JANI-KING OF RALEIGH/DURHAM | | Cleaning Services | Assume | | | | $925.00 |
| JP Morgan Chase Bank, N.a. | Chase Auto | Auto Lease | Assume | 12/24/2018 | 12/24/2021 | | $0.00 |
| Kia Motors Finance | | Auto Lease | Assume | 11/12/2018 | 11/21/2021 | | $0.00 |
| MRC | | IT Services | Assume | | | | $5,675.84 |
| NCMIC | | Medical Equipment | Assume | 2/12/2018 | 2/12/2021 | | $589.00 |
| | | | Assume | 5/18/2018 | 5/18/2021 | | $769.67 |
| Shred Ace, Inc | | Shredding Services | Assume | | | | $45.00 |
| Shred-it | | Shredding Services | Assume | | | | $1,031.92 |
| Smart Business System | | Copier Services | Assume | | | | $189.90 |
| Stanford Dosimetry LA | | Radiation Badge Maintenance | Assume | | | | $2,431.00 |
| Stericycle | | Medical Waste Services | Assume | | | | $507.12 |
| | | | | | | TOTAL CURE AMOUNT | $70,725.50 |

EXHIBIT F-1

## REJECTED CONTRACTS

| Name | aka | Vendor Description | Assume/Reject | Contract Start Date | Contract Expire Date | Serial Number |
|---|---|---|---|---|---|---|
| Canon Financial Service, Inc. | | Copier Lease | Reject | 9/1/2016 | 8/31/2019 | QTW12322 |
| | | | Reject | 10/1/2016 | 9/30/2019 | QTV09454 |
| De Lage Landen Financial Services, Inc. | Hologic Capital | Medical Equipment | Reject | 9/22/2017 | 8/1/2022 | 19-0117-04M |
| | | | Reject | 9/22/2017 | 8/1/2022 | 19-0117-05M |
| | | | Reject | 9/22/2017 | 8/1/2022 | 19-0117-07M |
| HENDRIX BUSINESS SYSTEMS, INC. | | Copier Services | Reject | | | QTW12322 |
| Hewlett–Packard Financial Services Company | | Computer Lease | Reject | | 7/5/2021 | |
| Hologic, Inc (maintenance) | | Medical Equipment Services | Reject | 5/27/2015 | 5/26/2019 | 09-0514-03 |
| | | | Reject | 8/15/2015 | 8/14/2019 | 19-0714-07 |
| | | | Reject | 9/2/2015 | 9/1/2019 | 19-0715-02 |
| | | | Reject | 9/14/2016 | 9/13/2019 | 19-0815-07 |
| LA Arena Company, LLC | | | Reject | 2018 | 2021 | |
| Sensis, Inc | | Advertising Agency | Reject | | | |
| Smart Business System | | Copier Services | Reject | | | |

# EXHIBIT G

**Month of the year**
**12-Month Cash Flow Summary**

| | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|
| | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual |
| **Month ending** | 5/31/2021 | 6/30/2021 | 7/31/2021 | 8/31/2021 | 9/30/2021 | 10/31/2021 | 11/30/2021 | 12/31/2021 |
| **Total Statement Balance, Beg** | 404,091 | 375,635 | 347,180 | 385,799 | 354,343 | 325,862 | 503,456 | 474,974 |
| **Cash Receipts** | 1,004,300 | 1,004,300 | 1,255,375 | 1,004,300 | 1,004,300 | 1,255,375 | 1,004,300 | 1,255,375 |
| **Payroll** | 280,333 | 280,333 | 416,333 | 280,333 | 280,333 | 280,333 | 280,333 | 416,333 |
| **Disbursements** | 752,422 | 752,422 | 800,422 | 755,422 | 752,448 | 797,448 | 752,448 | 797,448 |
| **Total Statement Balance, Ending** | 375,635 | 347,180 | 385,799 | 354,343 | 325,862 | 503,456 | 474,974 | 516,568 |
| *Cary* | 563 | 563 | 563 | 563 | 563 | 563 | 563 | 563 |
| *Charlotte* | 556 | 556 | 556 | 556 | 556 | 556 | 556 | 556 |
| *Greensboro* | 406 | 406 | 406 | 406 | 406 | 406 | 406 | 406 |
| *Oklahoma City* | 257 | 257 | 257 | 257 | 257 | 257 | 257 | 257 |
| *Total Injections* | 1,782 | 1,782 | 1,782 | 1,782 | 1,782 | 1,782 | 1,782 | 1,782 |
| **Est Collection** | 1,004,300 | 1,004,300 | 1,255,375 | 1,004,300 | 1,004,300 | 1,255,375 | 1,004,300 | 1,255,375 |
| **Total Cash Receipts** | | | | | | | | |
| **Actual Collection** | | | | | | | | |
| **Payroll** | 272,000 | 272,000 | 408,000 | 272,000 | 272,000 | 272,000 | 272,000 | 408,000 |
| Professional Corp Salary (SW in NC and OK) | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 |
| **Total Payroll** | 280,333 | 280,333 | 416,333 | 280,333 | 280,333 | 280,333 | 280,333 | 416,333 |
| **Disbursements** | | | | | | | | |
| **401k** | | | | | | | | |
| 401k - John Hancock | 16,600 | 16,600 | 16,600 | 16,600 | 16,600 | 16,600 | 16,600 | 16,600 |
| 401k Service Fee - Hicks | | | | | | | | |
| **Advertising** | 82,000 | 82,000 | 85,000 | 85,000 | 85,000 | 85,000 | 85,000 | 85,000 |
| **Auto** | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 |
| **Bank Fees** | | | | | | | | |
| Interest | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 |
| **Braces** | | | | | | | | |
| - Aspen | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 |
| **Cleaning** | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| **Credit Card Merchant Fees** | 3,100 | 3,100 | 3,100 | 3,100 | 3,100 | 3,100 | 3,100 | 3,100 |
| **Equipment Lease** | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 |
| **Injectables** | 305,000 | 305,000 | 350,000 | 305,000 | 305,000 | 350,000 | 305,000 | 350,000 |
| **Insurance** | 6,600 | 6,600 | 6,600 | 6,600 | 6,600 | 6,600 | 6,600 | 6,600 |
| **Insurance - Employee Benefits** | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 |
| **Internet** | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 |
| **Licenses** | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| **Office Expenses** | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 |
| **Office Supplies** | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 |
| **Payroll Services** | | | | | | | | |
| - ADP | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| **Postage** | | | | | | | | |
| - Pitney Bowes | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| **Shipping- Fedex/UPS/USPS** | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| **Professional Fees** | | | | | | | | |
| - Daniel Stark LLC (CPA) | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 |
| - Nelson Hardiman (Healthcare Attorney) | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 |
| - Margulies Faith LLP | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 |
| - Howard Grobstein (CPA) | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 |
| - Shane Heskin | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 |
| - US Trustee Quarterly Fees | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Rent** | | | | | | | | |
| - Cary-Flagship | 17,974 | 17,974 | 17,974 | 17,974 | 15,000 | 15,000 | 15,000 | 15,000 |
| - CLT-Golden Triangle | 15,818 | 15,818 | 15,818 | 15,818 | 15,818 | 15,818 | 15,818 | 15,818 |
| - Greensboro-Maple | 12,080 | 12,080 | 12,080 | 12,080 | 12,080 | 12,080 | 12,080 | 12,080 |
| - Group-Garvey & Dequine, LLC | 2,025 | 2,025 | 2,025 | 2,025 | 2,025 | 2,025 | 2,025 | 2,025 |
| - Oklahoma City (Tower lake) | 21,156 | 21,156 | 21,156 | 21,156 | 21,156 | 21,156 | 21,156 | 21,156 |
| - Argon (OKC Condo) | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| - Carroll at Bellemeade (GBO Condo) | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 |
| - George Place (Charlotte condo) | | | | | | | | |
| **Repairs & Maintenance** | 6,300 | 6,300 | 6,300 | 6,300 | 6,300 | 6,300 | 6,300 | 6,300 |
| **Staffing** | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 |
| **Medical Supplies** | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 |
| **Taxes & Licenses** | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| **Telephone** | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Travel | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 |
| Uniforms | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| Utilities | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 |
| **Projected Plan Distributions** | | | | | | | | |
| - Non-professional Administrative Claims | 17,913 | 17,913 | 17,913 | 17,913 | 17,913 | 17,913 | 17,913 | 17,913 |
| - Assumption cure amounts | 2,947 | 2,947 | 2,947 | 2,947 | 2,947 | 2,947 | 2,947 | 2,947 |
| - Priority Claims (IRS and NC DOR) | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 |
| - Priority Claims (remainder) | | | | | | | | |
| - Payments to Convenience Class (34 claims) | | | | | | | | |
| - Unsecured Claims | | | | | | | | |
| **Total Disbursements** | 752,422.24 | 752,422.24 | 800,422.24 | 755,422.24 | 752,448.14 | 797,448.01 | 752,448.01 | 797,448.01 |
| **Total Disbursements Including Payroll** | 1,032,755.58 | 1,032,755.58 | 1,216,755.58 | 1,035,755.58 | 1,032,781.48 | 1,077,781.35 | 1,032,781.35 | 1,213,781.35 |

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual |
| | 1/31/2022 | 2/28/2022 | 3/31/2022 | 4/30/2022 | 5/31/2022 | 6/30/2022 | 7/31/2022 | 8/31/2022 | 9/30/2022 | 10/31/2022 | 11/30/2022 | 12/31/2022 |
| | 516,568 | 537,895 | 576,721 | 615,548 | 654,375 | 693,201 | 732,028 | 770,855 | 809,681 | 848,508 | 891,247 | 933,986 |
| | 1,151,735 | 1,151,735 | 1,151,735 | 1,151,735 | 1,151,735 | 1,151,735 | 1,151,735 | 1,151,735 | 1,151,735 | 1,151,735 | 1,151,735 | 1,151,735 |
| | 324,333 | 324,333 | 324,333 | 324,333 | 324,333 | 324,333 | 324,333 | 324,333 | 324,333 | 324,333 | 324,333 | 324,333 |
| | 805,075 | 788,575 | 788,575 | 788,575 | 788,575 | 788,575 | 788,575 | 788,575 | 788,575 | 784,662 | 784,662 | 784,662 |
| | 537,895 | 576,721 | 615,548 | 654,375 | 693,201 | 732,028 | 770,855 | 809,681 | 848,508 | 891,247 | 933,986 | 976,726 |
| | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 |
| | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 | 585 |
| | 433 | 433 | 433 | 433 | 433 | 433 | 433 | 433 | 433 | 433 | 433 | 433 |
| | 282 | 282 | 282 | 282 | 282 | 282 | 282 | 282 | 282 | 282 | 282 | 282 |
| | 1,885 | 1,885 | 1,885 | 1,885 | 1,885 | 1,885 | 1,885 | 1,885 | 1,885 | 1,885 | 1,885 | 1,885 |
| | 1,151,735 | 1,151,735 | 1,151,735 | 1,151,735 | 1,151,735 | 1,151,735 | 1,151,735 | 1,151,735 | 1,151,735 | 1,151,735 | 1,151,735 | 1,151,735 |
| | 316,000 | 316,000 | 316,000 | 316,000 | 316,000 | 316,000 | 316,000 | 316,000 | 316,000 | 316,000 | 316,000 | 316,000 |
| | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 |
| | 324,333 | 324,333 | 324,333 | 324,333 | 324,333 | 324,333 | 324,333 | 324,333 | 324,333 | 324,333 | 324,333 | 324,333 |
| | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 |
| | 86,000 | 86,000 | 86,000 | 86,000 | 86,000 | 86,000 | 86,000 | 86,000 | 86,000 | 86,000 | 86,000 | 86,000 |
| | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 |
| | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 |
| | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 |
| | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 |
| | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 |
| | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 |
| | 345,521 | 345,521 | 345,521 | 345,521 | 345,521 | 345,521 | 345,521 | 345,521 | 345,521 | 345,521 | 345,521 | 345,521 |
| | 6,800 | 6,800 | 6,800 | 6,800 | 6,800 | 6,800 | 6,800 | 6,800 | 6,800 | 6,800 | 6,800 | 6,800 |
| | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 |
| | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 |
| | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 |
| | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 |
| | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 |
| | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| | 22,000 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 |
| | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 |
| | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| | 15,500 | 15,500 | 15,500 | 15,500 | 15,500 | 15,500 | 15,500 | 15,500 | 15,500 | 15,500 | 15,500 | 15,500 |
| | 16,092 | 16,092 | 16,092 | 16,092 | 16,092 | 16,092 | 16,092 | 16,092 | 16,092 | 16,092 | 16,092 | 16,092 |
| | 12,200 | 12,200 | 12,200 | 12,200 | 12,200 | 12,200 | 12,200 | 12,200 | 12,200 | 12,200 | 12,200 | 12,200 |
| | 2,120 | 2,120 | 2,120 | 2,120 | 2,120 | 2,120 | 2,120 | 2,120 | 2,120 | 2,120 | 2,120 | 2,120 |
| | 21,473 | 21,473 | 21,473 | 21,473 | 21,473 | 21,473 | 21,473 | 21,473 | 21,473 | 21,473 | 21,473 | 21,473 |
| | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 | 1,910 |
| | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 |
| | 31,000 | 31,000 | 31,000 | 31,000 | 31,000 | 31,000 | 31,000 | 31,000 | 31,000 | 31,000 | 31,000 | 31,000 |
| | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 |
| | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 |
| | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 |
| | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| | 17,913 | 17,913 | 17,913 | 17,913 | 17,913 | 17,913 | 17,913 | 17,913 | 17,913 | | | |
| | 2,947 | 2,947 | 2,947 | 2,947 | 2,947 | 2,947 | 2,947 | 2,947 | 2,947 | 2,947 | 2,947 | 2,947 |
| | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 31,500 | 31,500 | 31,500 |
| | 806,074.98 | 788,574.98 | 788,574.98 | 788,574.98 | 788,574.98 | 788,574.98 | 788,574.98 | 788,574.98 | 788,574.98 | 784,662.48 | 784,662.48 | 784,662.48 |
| | 1,130,408.32 | 1,112,908.32 | 1,112,908.32 | 1,112,908.32 | 1,112,908.32 | 1,112,908.32 | 1,112,908.32 | 1,112,908.32 | 1,112,908.32 | 1,108,995.82 | 1,108,995.82 | 1,108,995.82 |

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual |
| | 1/31/2023 | 2/28/2023 | 3/31/2023 | 4/30/2023 | 5/31/2023 | 6/30/2023 | 7/31/2023 | 8/31/2023 | 9/30/2023 | 10/31/2023 | 11/30/2023 | 12/31/2023 |
| | 976,726 | 1,020,817 | 1,064,908 | 1,108,999 | 1,153,090 | 1,197,128 | 1,241,166 | 1,285,204 | 1,329,242 | 1,373,280 | 1,417,318 | 1,461,356 |
| | 1,206,235 | 1,206,235 | 1,206,235 | 1,206,235 | 1,206,235 | 1,206,235 | 1,206,235 | 1,206,235 | 1,206,235 | 1,206,235 | 1,206,235 | 1,206,235 |
| | 343,333 | 343,333 | 343,333 | 343,333 | 343,333 | 343,333 | 343,333 | 343,333 | 343,333 | 343,333 | 343,333 | 343,333 |
| | 818,811 | 818,811 | 818,811 | 818,811 | 818,864 | 818,864 | 818,864 | 818,864 | 818,864 | 818,864 | 818,864 | 818,864 |
| | 1,020,817 | 1,064,908 | 1,108,999 | 1,153,090 | 1,197,128 | 1,241,166 | 1,285,204 | 1,329,242 | 1,373,280 | 1,417,318 | 1,461,356 | 1,505,394 |
| | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 |
| | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 |
| | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 |
| | 305 | 305 | 305 | 305 | 305 | 305 | 305 | 305 | 305 | 305 | 305 | 305 |
| | 1,955 | 1,955 | 1,955 | 1,955 | 1,955 | 1,955 | 1,955 | 1,955 | 1,955 | 1,955 | 1,955 | 1,955 |
| | 1,206,235 | 1,206,235 | 1,206,235 | 1,206,235 | 1,206,235 | 1,206,235 | 1,206,235 | 1,206,235 | 1,206,235 | 1,206,235 | 1,206,235 | 1,206,235 |
| | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 |
| | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 |
| | 343,333 | 343,333 | 343,333 | 343,333 | 343,333 | 343,333 | 343,333 | 343,333 | 343,333 | 343,333 | 343,333 | 343,333 |
| | 18,400 | 18,400 | 18,400 | 18,400 | 18,400 | 18,400 | 18,400 | 18,400 | 18,400 | 18,400 | 18,400 | 18,400 |
| | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 |
| | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 |
| | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 |
| | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 |
| | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 |
| | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 |
| | 19,000 | 19,000 | 19,000 | 19,000 | 19,000 | 19,000 | 19,000 | 19,000 | 19,000 | 19,000 | 19,000 | 19,000 |
| | 361,871 | 361,871 | 361,871 | 361,871 | 361,871 | 361,871 | 361,871 | 361,871 | 361,871 | 361,871 | 361,871 | 361,871 |
| | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 |
| | 44,000 | 44,000 | 44,000 | 44,000 | 44,000 | 44,000 | 44,000 | 44,000 | 44,000 | 44,000 | 44,000 | 44,000 |
| | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 |
| | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 |
| | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 |
| | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 |
| | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 |
| | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 |
| | 16,413 | 16,413 | 16,413 | 16,413 | 16,413 | 16,413 | 16,413 | 16,413 | 16,413 | 16,413 | 16,413 | 16,413 |
| | 12,360 | 12,360 | 12,360 | 12,360 | 12,360 | 12,360 | 12,360 | 12,360 | 12,360 | 12,360 | 12,360 | 12,360 |
| | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 | 2,225 |
| | 21,795 | 21,795 | 21,795 | 21,795 | 21,795 | 21,795 | 21,795 | 21,795 | 21,795 | 21,795 | 21,795 | 21,795 |
| | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 |
| | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 |
| | 6,800 | 6,800 | 6,800 | 6,800 | 6,800 | 6,800 | 6,800 | 6,800 | 6,800 | 6,800 | 6,800 | 6,800 |
| | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 |
| | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 |
| | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 |
| | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 |
| | 2,947 | 2,947 | 2,947 | 2,947 | | | | | | | | |
| | 31,500 | 31,500 | 31,500 | 31,500 | 34,500 | 34,500 | 34,500 | 34,500 | 34,500 | 34,500 | 34,500 | 34,500 |
| | 818,810.57 | 818,810.57 | 818,810.57 | 818,810.57 | 818,863.67 | 818,863.67 | 818,863.67 | 818,863.67 | 818,863.67 | 818,863.67 | 818,863.67 | 818,863.67 |
| | 1,162,143.91 | 1,162,143.91 | 1,162,143.91 | 1,162,143.91 | 1,162,197.01 | 1,162,197.01 | 1,162,197.01 | 1,162,197.01 | 1,162,197.01 | 1,162,197.01 | 1,162,197.01 | 1,162,197.01 |

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual |
| | 1/31/2024 | 2/29/2024 | 3/31/2024 | 4/30/2024 | 5/31/2024 | 6/30/2024 | 7/31/2024 | 8/31/2024 | 9/30/2024 | 10/31/2024 | 11/30/2024 | 12/31/2024 |
| | 1,505,394 | 1,534,972 | 1,564,551 | 1,594,130 | 1,623,708 | 1,653,287 | 1,683,462 | 1,747,541 | 1,811,619 | 1,787,698 | 1,851,776 | 1,915,855 |
| | 1,233,540 | 1,233,540 | 1,233,540 | 1,233,540 | 1,233,540 | 1,233,540 | 1,233,540 | 1,233,540 | 1,233,540 | 1,233,540 | 1,233,540 | 1,233,540 |
| | 363,333 | 363,333 | 363,333 | 363,333 | 363,333 | 363,333 | 363,333 | 363,333 | 363,333 | 363,333 | 363,333 | 363,333 |
| | 840,628 | 840,628 | 840,628 | 840,628 | 840,628 | 840,331 | 806,128 | 806,128 | 894,128 | 806,128 | 806,128 | 894,128 |
| | 1,534,972 | 1,564,551 | 1,594,130 | 1,623,708 | 1,653,287 | 1,683,462 | 1,747,541 | 1,811,619 | 1,787,698 | 1,851,776 | 1,915,855 | 1,891,934 |
| | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 |
| | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 |
| | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 |
| | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 |
| | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 |
| | 1,233,540 | 1,233,540 | 1,233,540 | 1,233,540 | 1,233,540 | 1,233,540 | 1,233,540 | 1,233,540 | 1,233,540 | 1,233,540 | 1,233,540 | 1,233,540 |
| | 355,000 | 355,000 | 355,000 | 355,000 | 355,000 | 355,000 | 355,000 | 355,000 | 355,000 | 355,000 | 355,000 | 355,000 |
| | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 |
| | 363,333 | 363,333 | 363,333 | 363,333 | 363,333 | 363,333 | 363,333 | 363,333 | 363,333 | 363,333 | 363,333 | 363,333 |
| | 19,400 | 19,400 | 19,400 | 19,400 | 19,400 | 19,400 | 19,400 | 19,400 | 19,400 | 19,400 | 19,400 | 19,400 |
| | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 | 92,000 |
| | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 |
| | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 |
| | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 |
| | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 |
| | 19,000 | 19,000 | 19,000 | 19,000 | 19,000 | 19,000 | 19,000 | 19,000 | 19,000 | 19,000 | 19,000 | 19,000 |
| | 370,062 | 370,062 | 370,062 | 370,062 | 370,062 | 370,062 | 370,062 | 370,062 | 370,062 | 370,062 | 370,062 | 370,062 |
| | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 |
| | 48,000 | 48,000 | 48,000 | 48,000 | 48,000 | 48,000 | 48,000 | 48,000 | 48,000 | 48,000 | 48,000 | 48,000 |
| | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 |
| | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 |
| | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 |
| | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 |
| | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 |
| | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 |
| | 16,500 | 16,500 | 16,500 | 16,500 | 16,500 | 16,500 | 16,500 | 16,500 | 16,500 | 16,500 | 16,500 | 16,500 |
| | 16,744 | 16,744 | 16,744 | 16,744 | 16,744 | 16,744 | 16,744 | 16,744 | 16,744 | 16,744 | 16,744 | 16,744 |
| | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 |
| | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 |
| | 22,122 | 22,122 | 22,122 | 22,122 | 22,122 | 22,122 | 22,122 | 22,122 | 22,122 | 22,122 | 22,122 | 22,122 |
| | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 |
| | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 |
| | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 | 7,100 |
| | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 |
| | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 |
| | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 |
| | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 |
| | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 |
| | 34,500 | 34,500 | 34,500 | 34,500 | 34,500 | 33,903 | | | | | | |
| | | | | | | | | | 88,000 | | | 88,000 |
| | 840,628.10 | 840,628.10 | 840,628.10 | 840,628.10 | 840,628.10 | 840,031.10 | 806,128.10 | 806,128.10 | 894,128.10 | 806,128.10 | 806,128.10 | 894,128.10 |
| | 1,203,961.44 | 1,203,961.44 | 1,203,961.44 | 1,203,961.44 | 1,203,961.44 | 1,203,364.44 | 1,169,461.44 | 1,169,461.44 | 1,257,461.44 | 1,169,461.44 | 1,169,461.44 | 1,257,461.44 |

|  | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual |
|  | 1/31/2025 | 2/28/2025 | 3/31/2025 | 4/30/2025 | 5/31/2025 | 6/30/2025 | 7/31/2025 | 8/31/2025 | 9/30/2025 | 10/31/2025 | 11/30/2025 | 12/31/2025 |
|  | 1,891,934 | 1,934,451 | 1,976,969 | 1,931,487 | 1,974,004 | 2,016,522 | 1,971,040 | 2,013,558 | 2,056,075 | 2,010,593 | 2,053,111 | 2,095,629 |
|  | 1,258,000 | 1,258,000 | 1,258,000 | 1,258,000 | 1,258,000 | 1,258,000 | 1,258,000 | 1,258,000 | 1,258,000 | 1,258,000 | 1,258,000 | 1,258,000 |
|  | 384,333 | 384,333 | 384,333 | 384,333 | 384,333 | 384,333 | 384,333 | 384,333 | 384,333 | 384,333 | 384,333 | 384,333 |
|  | 831,149 | 831,149 | 919,149 | 831,149 | 831,149 | 919,149 | 831,149 | 831,149 | 919,149 | 831,149 | 831,149 | 919,149 |
|  | 1,934,451 | 1,976,969 | 1,931,487 | 1,974,004 | 2,016,522 | 1,971,040 | 2,013,558 | 2,056,075 | 2,010,593 | 2,053,111 | 2,095,629 | 2,050,146 |
|  | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 |
|  | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 |
|  | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 |
|  | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 |
|  | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
|  | 1,258,000 | 1,258,000 | 1,258,000 | 1,258,000 | 1,258,000 | 1,258,000 | 1,258,000 | 1,258,000 | 1,258,000 | 1,258,000 | 1,258,000 | 1,258,000 |
|  | 376,000 | 376,000 | 376,000 | 376,000 | 376,000 | 376,000 | 376,000 | 376,000 | 376,000 | 376,000 | 376,000 | 376,000 |
|  | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 |
|  | 384,333 | 384,333 | 384,333 | 384,333 | 384,333 | 384,333 | 384,333 | 384,333 | 384,333 | 384,333 | 384,333 | 384,333 |
|  | 20,300 | 20,300 | 20,300 | 20,300 | 20,300 | 20,300 | 20,300 | 20,300 | 20,300 | 20,300 | 20,300 | 20,300 |
|  | 94,000 | 94,000 | 94,000 | 94,000 | 94,000 | 94,000 | 94,000 | 94,000 | 94,000 | 94,000 | 94,000 | 94,000 |
|  | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 |
|  | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
|  | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 |
|  | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 |
|  | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 | 3,800 |
|  | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 |
|  | 377,400 | 377,400 | 377,400 | 377,400 | 377,400 | 377,400 | 377,400 | 377,400 | 377,400 | 377,400 | 377,400 | 377,400 |
|  | 7,300 | 7,300 | 7,300 | 7,300 | 7,300 | 7,300 | 7,300 | 7,300 | 7,300 | 7,300 | 7,300 | 7,300 |
|  | 52,000 | 52,000 | 52,000 | 52,000 | 52,000 | 52,000 | 52,000 | 52,000 | 52,000 | 52,000 | 52,000 | 52,000 |
|  | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 |
|  | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
|  | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 |
|  | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 |
|  | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
|  | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 |
|  | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 |
|  | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 |
|  | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
|  | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
|  | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
|  | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 |
|  | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 |
|  | 17,075 | 17,075 | 17,075 | 17,075 | 17,075 | 17,075 | 17,075 | 17,075 | 17,075 | 17,075 | 17,075 | 17,075 |
|  | 12,700 | 12,700 | 12,700 | 12,700 | 12,700 | 12,700 | 12,700 | 12,700 | 12,700 | 12,700 | 12,700 | 12,700 |
|  | 2,420 | 2,420 | 2,420 | 2,420 | 2,420 | 2,420 | 2,420 | 2,420 | 2,420 | 2,420 | 2,420 | 2,420 |
|  | 22,454 | 22,454 | 22,454 | 22,454 | 22,454 | 22,454 | 22,454 | 22,454 | 22,454 | 22,454 | 22,454 | 22,454 |
|  | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 |
|  | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 |
|  | 7,400 | 7,400 | 7,400 | 7,400 | 7,400 | 7,400 | 7,400 | 7,400 | 7,400 | 7,400 | 7,400 | 7,400 |
|  | 36,000 | 36,000 | 36,000 | 36,000 | 36,000 | 36,000 | 36,000 | 36,000 | 36,000 | 36,000 | 36,000 | 36,000 |
|  | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 |
|  | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 |
|  | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
|  | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 |
|  | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
|  | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 |
|  |  |  |  | 88,000 |  |  | 88,000 |  |  | 88,000 |  |  | 88,000 |
|  | 831,148.93 | 831,148.93 | 919,148.93 | 831,148.93 | 831,148.93 | 919,148.93 | 831,148.93 | 831,148.93 | 919,148.93 | 831,148.93 | 831,148.93 | 919,148.93 |
|  | 1,215,482.27 | 1,215,482.27 | 1,303,482.27 | 1,215,482.27 | 1,215,482.27 | 1,303,482.27 | 1,215,482.27 | 1,215,482.27 | 1,303,482.27 | 1,215,482.27 | 1,215,482.27 | 1,303,482.27 |

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual |
| | 1/31/2026 | 2/28/2026 | 3/31/2026 | 4/30/2026 | 5/31/2026 | 6/30/2026 | 7/31/2026 | 8/31/2026 | 9/30/2026 | 10/31/2026 | 11/30/2026 | 12/31/2026 |
| | 2,050,146 | 2,065,013 | 2,079,880 | 2,006,747 | 2,021,614 | 2,036,481 | 1,963,348 | 1,978,215 | 1,993,082 | 1,919,949 | 1,934,816 | 1,949,682 |
| | 1,270,000 | 1,270,000 | 1,270,000 | 1,270,000 | 1,270,000 | 1,270,000 | 1,270,000 | 1,270,000 | 1,270,000 | 1,270,000 | 1,270,000 | 1,270,000 |
| | 407,333 | 407,333 | 407,333 | 407,333 | 407,333 | 407,333 | 407,333 | 407,333 | 407,333 | 407,333 | 407,333 | 407,333 |
| | 847,800 | 847,800 | 935,800 | 847,800 | 847,800 | 935,800 | 847,800 | 847,800 | 935,800 | 847,800 | 847,800 | 935,800 |
| | 2,065,013 | 2,079,880 | 2,006,747 | 2,021,614 | 2,036,481 | 1,963,348 | 1,978,215 | 1,993,082 | 1,919,949 | 1,934,816 | 1,949,682 | 1,876,549 |
| | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 |
| | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 |
| | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 |
| | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 |
| | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| | 1,270,000 | 1,270,000 | 1,270,000 | 1,270,000 | 1,270,000 | 1,270,000 | 1,270,000 | 1,270,000 | 1,270,000 | 1,270,000 | 1,270,000 | 1,270,000 |
| | 399,000 | 399,000 | 399,000 | 399,000 | 399,000 | 399,000 | 399,000 | 399,000 | 399,000 | 399,000 | 399,000 | 399,000 |
| | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 |
| | 407,333 | 407,333 | 407,333 | 407,333 | 407,333 | 407,333 | 407,333 | 407,333 | 407,333 | 407,333 | 407,333 | 407,333 |
| | 21,300 | 21,300 | 21,300 | 21,300 | 21,300 | 21,300 | 21,300 | 21,300 | 21,300 | 21,300 | 21,300 | 21,300 |
| | 95,000 | 95,000 | 95,000 | 95,000 | 95,000 | 95,000 | 95,000 | 95,000 | 95,000 | 95,000 | 95,000 | 95,000 |
| | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 |
| | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 |
| | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 |
| | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 |
| | 381,000 | 381,000 | 381,000 | 381,000 | 381,000 | 381,000 | 381,000 | 381,000 | 381,000 | 381,000 | 381,000 | 381,000 |
| | 7,400 | 7,400 | 7,400 | 7,400 | 7,400 | 7,400 | 7,400 | 7,400 | 7,400 | 7,400 | 7,400 | 7,400 |
| | 57,000 | 57,000 | 57,000 | 57,000 | 57,000 | 57,000 | 57,000 | 57,000 | 57,000 | 57,000 | 57,000 | 57,000 |
| | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 |
| | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 |
| | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 |
| | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 |
| | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 |
| | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 |
| | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 |
| | 17,759 | 17,759 | 17,759 | 17,759 | 17,759 | 17,759 | 17,759 | 17,759 | 17,759 | 17,759 | 17,759 | 17,759 |
| | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 |
| | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 |
| | 22,791 | 22,791 | 22,791 | 22,791 | 22,791 | 22,791 | 22,791 | 22,791 | 22,791 | 22,791 | 22,791 | 22,791 |
| | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 |
| | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 |
| | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 |
| | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 |
| | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 |
| | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 |
| | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 |
| | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 |
| | | | 88,000 | | | 88,000 | | | 88,000 | | | 88,000 |
| | 847,799.74 | 847,799.74 | 935,799.74 | 847,799.74 | 847,799.74 | 935,799.74 | 847,799.74 | 847,799.74 | 935,799.74 | 847,799.74 | 847,799.74 | 935,799.74 |
| | 1,255,133.08 | 1,255,133.08 | 1,343,133.08 | 1,255,133.08 | 1,255,133.08 | 1,343,133.08 | 1,255,133.08 | 1,255,133.08 | 1,343,133.08 | 1,255,133.08 | 1,255,133.08 | 1,343,133.08 |

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual |
| | 1/31/2027 | 2/28/2027 | 3/31/2027 | 4/30/2027 | 5/31/2027 | 6/30/2027 | 7/31/2027 | 8/31/2027 | 9/30/2027 | 10/31/2027 | 11/30/2027 | 12/31/2027 |
| | 1,876,549 | 1,859,632 | 1,842,714 | 1,737,796 | 1,720,879 | 1,703,961 | 1,599,043 | 1,582,125 | 1,565,208 | 1,460,290 | 1,443,372 | 1,426,455 |
| | 1,282,000 | 1,282,000 | 1,282,000 | 1,282,000 | 1,282,000 | 1,282,000 | 1,282,000 | 1,282,000 | 1,282,000 | 1,282,000 | 1,282,000 | 1,282,000 |
| | 431,333 | 431,333 | 431,333 | 431,333 | 431,333 | 431,333 | 431,333 | 431,333 | 431,333 | 431,333 | 431,333 | 431,333 |
| | 867,584 | 867,584 | 955,584 | 867,584 | 867,584 | 955,584 | 867,584 | 867,584 | 955,584 | 867,584 | 867,584 | 955,584 |
| | 1,859,632 | 1,842,714 | 1,737,796 | 1,720,879 | 1,703,961 | 1,599,043 | 1,582,125 | 1,565,208 | 1,460,290 | 1,443,372 | 1,426,455 | 1,321,537 |
| | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 |
| | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 |
| | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 |
| | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 |
| | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| | 1,282,000 | 1,282,000 | 1,282,000 | 1,282,000 | 1,282,000 | 1,282,000 | 1,282,000 | 1,282,000 | 1,282,000 | 1,282,000 | 1,282,000 | 1,282,000 |
| | 423,000 | 423,000 | 423,000 | 423,000 | 423,000 | 423,000 | 423,000 | 423,000 | 423,000 | 423,000 | 423,000 | 423,000 |
| | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 |
| | 431,333 | 431,333 | 431,333 | 431,333 | 431,333 | 431,333 | 431,333 | 431,333 | 431,333 | 431,333 | 431,333 | 431,333 |
| | 22,400 | 22,400 | 22,400 | 22,400 | 22,400 | 22,400 | 22,400 | 22,400 | 22,400 | 22,400 | 22,400 | 22,400 |
| | 96,000 | 96,000 | 96,000 | 96,000 | 96,000 | 96,000 | 96,000 | 96,000 | 96,000 | 96,000 | 96,000 | 96,000 |
| | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 |
| | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 |
| | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 |
| | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 |
| | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 |
| | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 |
| | 384,600 | 384,600 | 384,600 | 384,600 | 384,600 | 384,600 | 384,600 | 384,600 | 384,600 | 384,600 | 384,600 | 384,600 |
| | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 | 62,000 |
| | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 |
| | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 |
| | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 |
| | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 |
| | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 |
| | 17,900 | 17,900 | 17,900 | 17,900 | 17,900 | 17,900 | 17,900 | 17,900 | 17,900 | 17,900 | 17,900 | 17,900 |
| | 18,117 | 18,117 | 18,117 | 18,117 | 18,117 | 18,117 | 18,117 | 18,117 | 18,117 | 18,117 | 18,117 | 18,117 |
| | 13,400 | 13,400 | 13,400 | 13,400 | 13,400 | 13,400 | 13,400 | 13,400 | 13,400 | 13,400 | 13,400 | 13,400 |
| | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 |
| | 23,133 | 23,133 | 23,133 | 23,133 | 23,133 | 23,133 | 23,133 | 23,133 | 23,133 | 23,133 | 23,133 | 23,133 |
| | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 |
| | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 |
| | 8,300 | 8,300 | 8,300 | 8,300 | 8,300 | 8,300 | 8,300 | 8,300 | 8,300 | 8,300 | 8,300 | 8,300 |
| | 38,000 | 38,000 | 38,000 | 38,000 | 38,000 | 38,000 | 38,000 | 38,000 | 38,000 | 38,000 | 38,000 | 38,000 |
| | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 |
| | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 |
| | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 |
| | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 |
| | | | 88,000 | | | 88,000 | | | 88,000 | | | 88,000 |
| | 867,584.36 | 867,584.36 | 955,584.36 | 867,584.36 | 867,584.36 | 955,584.36 | 867,584.36 | 867,584.36 | 955,584.36 | 867,584.36 | 867,584.36 | 955,584.36 |
| | 1,298,917.70 | 1,298,917.70 | 1,386,917.70 | 1,298,917.70 | 1,298,917.70 | 1,386,917.70 | 1,298,917.70 | 1,298,917.70 | 1,386,917.70 | 1,298,917.70 | 1,298,917.70 | 1,386,917.70 |

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual |
| | 1/31/2028 | 2/29/2028 | 3/31/2028 | 4/30/2028 | 5/31/2028 | 6/30/2028 | 7/31/2028 | 8/31/2028 | 9/30/2028 | 10/31/2028 | 11/30/2028 | 12/31/2028 |
| | 1,321,537 | 1,273,945 | 1,226,352 | 1,090,760 | 1,043,168 | 995,575 | 866,307 | 837,214 | 808,122 | 779,030 | 749,937 | 720,845 |
| | 1,294,000 | 1,294,000 | 1,294,000 | 1,294,000 | 1,294,000 | 1,294,000 | 1,294,000 | 1,294,000 | 1,294,000 | 1,294,000 | 1,294,000 | 1,294,000 |
| | 456,333 | 456,333 | 456,333 | 456,333 | 456,333 | 456,333 | 456,333 | 456,333 | 456,333 | 456,333 | 456,333 | 456,333 |
| | 885,259 | 885,259 | 973,259 | 885,259 | 885,259 | 966,935 | 866,759 | 866,759 | 866,759 | 866,759 | 866,759 | 866,759 |
| | 1,273,945 | 1,226,352 | 1,090,760 | 1,043,168 | 995,575 | 866,307 | 837,214 | 808,122 | 779,030 | 749,937 | 720,845 | 691,753 |
| | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 |
| | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 |
| | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 |
| | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 |
| | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| | 1,294,000 | 1,294,000 | 1,294,000 | 1,294,000 | 1,294,000 | 1,294,000 | 1,294,000 | 1,294,000 | 1,294,000 | 1,294,000 | 1,294,000 | 1,294,000 |
| | 448,000 | 448,000 | 448,000 | 448,000 | 448,000 | 448,000 | 448,000 | 448,000 | 448,000 | 448,000 | 448,000 | 448,000 |
| | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 |
| | 456,333 | 456,333 | 456,333 | 456,333 | 456,333 | 456,333 | 456,333 | 456,333 | 456,333 | 456,333 | 456,333 | 456,333 |
| | 23,500 | 23,500 | 23,500 | 23,500 | 23,500 | 23,500 | 23,500 | 23,500 | 23,500 | 23,500 | 23,500 | 23,500 |
| | 97,000 | 97,000 | 97,000 | 97,000 | 97,000 | 97,000 | 97,000 | 97,000 | 97,000 | 97,000 | 97,000 | 97,000 |
| | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 |
| | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 |
| | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 |
| | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 |
| | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 |
| | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 |
| | 388,200 | 388,200 | 388,200 | 388,200 | 388,200 | 388,200 | 388,200 | 388,200 | 388,200 | 388,200 | 388,200 | 388,200 |
| | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 |
| | 68,000 | 68,000 | 68,000 | 68,000 | 68,000 | 68,000 | 68,000 | 68,000 | 68,000 | 68,000 | 68,000 | 68,000 |
| | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 |
| | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 |
| | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 |
| | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 |
| | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | | | | | | |
| | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | | | | | | |
| | 18,400 | 18,400 | 18,400 | 18,400 | 18,400 | 18,400 | 18,400 | 18,400 | 18,400 | 18,400 | 18,400 | 18,400 |
| | 18,479 | 18,479 | 18,479 | 18,479 | 18,479 | 18,479 | 18,479 | 18,479 | 18,479 | 18,479 | 18,479 | 18,479 |
| | 13,900 | 13,900 | 13,900 | 13,900 | 13,900 | 13,900 | 13,900 | 13,900 | 13,900 | 13,900 | 13,900 | 13,900 |
| | 2,780 | 2,780 | 2,780 | 2,780 | 2,780 | 2,780 | 2,780 | 2,780 | 2,780 | 2,780 | 2,780 | 2,780 |
| | 23,600 | 23,600 | 23,600 | 23,600 | 23,600 | 23,600 | 23,600 | 23,600 | 23,600 | 23,600 | 23,600 | 23,600 |
| | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 |
| | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 |
| | 8,700 | 8,700 | 8,700 | 8,700 | 8,700 | 8,700 | 8,700 | 8,700 | 8,700 | 8,700 | 8,700 | 8,700 |
| | 39,000 | 39,000 | 39,000 | 39,000 | 39,000 | 39,000 | 39,000 | 39,000 | 39,000 | 39,000 | 39,000 | 39,000 |
| | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 | 13,000 |
| | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 |
| | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 |
| | | | 88,000 | | | 81,676 | | | | | | |
| | 885,259.00 | 885,259.00 | 973,259.00 | 885,259.00 | 885,259.00 | 966,935.12 | 866,759.00 | 866,759.00 | 866,759.00 | 866,759.00 | 866,759.00 | 866,759.00 |
| | ######### | 1,341,592.34 | 1,429,592.34 | 1,341,592.34 | 1,341,592.34 | 1,423,268.46 | 1,323,092.34 | 1,323,092.34 | 1,323,092.34 | 1,323,092.34 | 1,323,092.34 | 1,323,092.34 |

| CATEGORY | FOOTNOTES, ASSUMPTIONS & CONDITIONS |
|---|---|
| Revenue | 40% YOY increase in gross revenue from 2020 to 2021 in consideration of 50% operations for 9/12 mo of 2020 |
| | 9% YOY increase in gross revenue from 2021 to 2022 (6% increase in productivity and 1% increase in rate of reimbursement) |
| | 5% YOY increase in gross revenue from 2022 to 2023 (4% increase in productivity and 1% increase in rate of reimbursement) |
| | 2% YOY increase in gross revenue from 2023 to 2024 (1% increase in productivity and 1% increase in rate of reimbursement) |
| | 2% YOY increase in gross revenue from 2024 to 2025 (1% increase in productivity and 1% increase in rate of reimbursement) |
| | 1% YOY increase in gross revenue from 2025 to 2026 (flat productivity and 1% increase in rate of reimbursement) |
| | 1% YOY increase in gross revenue from 2026 to 2027 (flat productivity and 1% increase in rate of reimbursement) |
| | 1% YOY increase in gross revenue from 2027 to 2028 (flat productivity and 1% increase in rate of reimbursement) |
| | -represents an overall 72% increase in gross revenue over an 8 year period relative to 2020 at 50% operations for 9/12 mo |
| | |
| Payroll | 6% YOY increase in total payroll expense throughout the plan period |
| | |
| Legal Fees | Payment schedule for bankruptcy legal fees to be paid over 10 months |
| | Ongoing legal fees for MCA class resolution at $139k in 2021, $78k in 2022 and $60 in 2023 |
| | |
| Expenses | YOY increases maintaining current proportions of gross revenue and payroll expense where applicable. Rent as scheduled. |

# EXHIBIT H

# Flexogenix Group, Inc
# Profit and Loss
### January - October, 2020

|  | Total |
|---|---|
| **Income** | |
| Medical Services Income | 7,238,729.99 |
| Sales | 12,882.00 |
| **Total Income** | $ 7,251,611.99 |
| **Gross Profit** | $ 7,251,611.99 |
| **Expenses** | |
| Advertising | 615,510.22 |
| Auto | 322.07 |
| Auto repair | 1,302.00 |
| Insurance/license | 8,922.83 |
| Mileage Reimbursement | 15,804.57 |
| Transportation-P | 55.30 |
| **Total Auto** | $ 26,406.77 |
| Auto lease | 22,791.36 |
| Bank Charges | 16,102.95 |
| Braces | 106,514.23 |
| Cleaning | 4,325.00 |
| Credit Card Fees | 20,804.67 |
| Depreciation Expense | 89,573.56 |
| Disposal Fees | 2,852.94 |
| Dues & Subscriptions | 130.31 |
| Employee Background Check | 552.95 |
| Equipment Loan | 7,696.70 |
| Equipment Rental | 121,648.14 |
| Freight & Delivery | 1,028.39 |
| Injectables | 2,107,532.14 |
| Insurance | 1,175.00 |
| Employee Health | 224,846.86 |
| Employee Life/Disability | 61,662.77 |
| Employee Practices Liability | 682.15 |
| Malpractice | 24,865.69 |
| PET | 322.39 |
| Premises Liability | 6,639.29 |
| Renter insurance | 196.66 |
| Workers Comp | 8,496.12 |
| **Total Insurance** | $ 328,886.93 |
| Interest Expense | 978.49 |
| Internet | 17,790.30 |
| Internet-P | 1,674.83 |
| Legal & Professional Fees | 399.00 |
| Legal & Professional Fees-Consultant | 169,450.72 |
| Legal & Professional Fees-CPA | 81,924.68 |
| Legal & Professional Fees-Credential Services | -207.37 |

# Flexogenix Group, Inc
# Profit and Loss
### January - October, 2020

| | Total |
|---|---:|
| Legal & Professional Fees-IT Services | 41,793.90 |
| Legal & Professional Fees-Law Firm | 460,000.00 |
| Legal & Professional Fees-U.S. Trustee Payment Center | 148,876.45 |
| **Total Legal & Professional Fees** | $ 902,237.38 |
| License & Permit | 10.00 |
| Medical Procedure Kits | 37,282.08 |
| Medical Supplies | 32,022.28 |
| Office Expense-P | 47,826.95 |
| Office Expenses | 23,041.00 |
| Continued Eduction | 12,228.68 |
| Employee benefit/prize | 635.13 |
| Medical License Application Fee | 1,550.00 |
| Office Activities | 203.32 |
| Software | 80,118.61 |
| **Total Office Expenses** | $ 117,776.74 |
| Office Supplies | 8,297.49 |
| Payroll Services | 14,421.98 |
| Payroll UI | |
| NCSUI | -1,344.82 |
| OKCSUI | 147.96 |
| **Total Payroll UI** | -$ 1,196.86 |
| Payroll-Cary | 435,177.08 |
| 401k Pension-Cary | 7,192.23 |
| 401K-Cary | 3,959.70 |
| Garnishment-Cary | 303.67 |
| Payroll Tax-Cary | 32,192.42 |
| Staffing-Cary | 6,713.54 |
| UI-Cary | 2,812.27 |
| **Total Payroll-Cary** | $ 488,350.91 |
| Payroll-CLT | 400,408.47 |
| 401k Pension-CLT | 5,145.65 |
| 401K-CLT | 5,017.43 |
| HSA-CLT | -10.00 |
| Payroll Tax-CLT | 31,751.16 |
| Staffing-CLT | 3,838.80 |
| UI-CLT | 2,450.64 |
| **Total Payroll-CLT** | $ 448,602.15 |
| Payroll-GBO | 269,804.52 |
| 401k Pension-GBO | 257.25 |
| 401K-GBO | -8,298.65 |
| Advance Paycheck-GBO | 275.00 |
| Payroll Tax-GBO | 20,011.91 |
| Staffing-GBO | 44,221.97 |

# Flexogenix Group, Inc
# Profit and Loss
### January - October, 2020

|  | Total |
|---|---:|
| **UI-GBO** | 1,875.27 |
| **Total Payroll-GBO** | $ 328,147.27 |
| **Payroll-Group** | 841,929.01 |
| **401K Pension-Group** | 18,036.28 |
| **401K-Group** | -424.76 |
| **FSA** | 19,619.30 |
| **Payroll Tax-Group** | 69,380.54 |
| **UI-Group** | 8,261.37 |
| **Total Payroll-Group** | $ 956,801.74 |
| **Payroll-OKC** | 160,849.94 |
| **401k Pension-OKC** | 1,127.92 |
| **Payroll Tax-OKC** | 12,961.46 |
| **Staffing-OKC** | 100,072.14 |
| **UI-OKC** | 1,672.39 |
| **Total Payroll-OKC** | $ 276,683.85 |
| **Postage And Delivery** | 7,663.88 |
| **Promotional** | 5,649.32 |
| **Recruit** | 2,703.56 |
| **Rent or Lease** | 821,001.79 |
| **Repair & Maintenance** | 54,830.75 |
| **Security system** | 774.40 |
| **Stationery & Printing** | 4,914.48 |
| **Taxes & Licenses** | 5,503.55 |
| **Telephone** | 31,211.63 |
| **Travel** | 4,969.25 |
| **Travel-P** | 44,230.60 |
| **Uniforms** | 552.98 |
| **Utilities** | 6,801.09 |
| **Utilities-P** | 1,938.64 |
| **Total Expenses** | $ 8,142,810.76 |
| **Net Operating Income** | -$ 891,198.77 |
| **Other Income** |  |
| **Interest Earned** | 0.22 |
| **Other Ordinary Income** | 612,619.98 |
| **Total Other Income** | $ 612,620.20 |
| **Other Expenses** |  |
| **Miscellaneous** | 174,601.61 |
| **Total Other Expenses** | $ 174,601.61 |
| **Net Other Income** | $ 438,018.59 |
| **Net Income** | -$ 453,180.18 |

Unaudited Profit & Loss Statement

# Flexogenix Group, Inc
## Balance Sheet
### As of October 31, 2020

|  | | Total |
|---|---|---|
| **ASSETS** | | |
| **Current Assets** | | |
| **Bank Accounts** | | |
| **Clearing Account** | | 9,057.56 |
| **Wells Fargo - GA** | | 181.03 |
| **Wells Fargo - Group Disbursement** | | 448,869.87 |
| **Wells Fargo - Group Payroll** | | 1,858.97 |
| **Wells Fargo - Group Tax** | | 1,010.00 |
| **Wells Fargo - NC** | | 252,961.58 |
| **Wells Fargo - NC Payroll** | | 1,749.18 |
| **Wells Fargo - OKC** | | 74,644.27 |
| **Wells Fargo - OKC Payroll** | | 2,027.30 |
| **Wells Fargo - Whalen Med Corp** | | 676.87 |
| **Total Bank Accounts** | $ | **793,036.63** |
| **Accounts Receivable** | | |
| **Accounts Receivable** | | 220,379.00 |
| **Total Accounts Receivable** | $ | **220,379.00** |
| **Other Current Assets** | | |
| **Inventory - braces** | | 48,570.39 |
| **Inventory - injectables** | | 218,938.59 |
| **Inventory - medical procedure kits** | | 21,165.00 |
| **Loan to ATL** | | 24,400.00 |
| **Loan to Cary** | | 617,983.92 |
| **Loan to Cary(New)** | | 1,000.00 |
| **Loan to CLT** | | 517,210.00 |
| **Loan to GBO** | | 2,053,712.59 |
| **Loan to Group** | | 74,997,770.57 |
| **Loan to LA** | | 277,797.78 |
| **Loan to Torrance** | | 2,800,275.29 |
| **Prepaid Expenses** | | 0.00 |
| **Prepaid Advertising-FOX 25** | | 274.00 |
| **Prepaid Advertising-KWTV** | | 470.00 |
| **Prepaid Advertising-TEGNA** | | 20,606.50 |
| **Prepaid Advertising-WNCN** | | 9,400.00 |
| **Prepaid Advertising-WRAL** | | 4,706.98 |
| **Prepaid Advertising-WSB-TV** | | 299.65 |
| **Prepaid Advertising-WSOC-TV** | | 7,751.87 |
| **Prepaid Advertising-WXII/HEARST** | | 368.09 |
| **Prepaid Expenses-WJZY/WMYT (FOX 46)** | | 1,729.76 |
| **Prepaid Physician Services-Mint Physician** | | 139.40 |
| **Prepaid Physician Services-Physician Solution** | | 13,537.76 |
| **Total Prepaid Expenses** | $ | **59,284.01** |
| **Receivable from Cary** | | 124,658.54 |

# Flexogenix Group, Inc
# Balance Sheet
### As of October 31, 2020

|  | Total |
|---|---:|
| **Total Other Current Assets** | $ 81,762,766.68 |
| **Total Current Assets** | $ 82,776,182.31 |
| **Fixed Assets** |  |
| Accumulated Depreciation | -926,541.83 |
| Furniture and Fixtures | 78,694.36 |
| Leasehold Improvements | 277,004.00 |
| Medical Equipment | 631,032.32 |
| Office Equipment | 172,539.49 |
| **Total Fixed Assets** | $ 232,728.34 |
| **Other Assets** |  |
| Security Deposit | 125,814.69 |
| Trademarks | 1,650.00 |
| **Total Other Assets** | $ 127,464.69 |
| **TOTAL ASSETS** | $ 83,136,375.34 |
| **LIABILITIES AND EQUITY** |  |
| Liabilities |  |
| Current Liabilities |  |
| Accounts Payable |  |
| Accounts Payable | 5,271,205.04 |
| **Total Accounts Payable** | $ 5,271,205.04 |
| Credit Cards |  |
| AMEX CORP | -2,914,525.03 |
| AMEX Corp-Iris | 127,862.66 |
| AMEX Corp-Sean | 191,463.22 |
| AMEX Corp-Vivian | 3,261,870.84 |
| **Total AMEX CORP** | $ 666,671.69 |
| AMEX Group | 119,580.81 |
| BofA CreditCard | 30,323.42 |
| BofA Group CC |  |
| BofA Group CC-IC | -209,506.61 |
| BofA Group CC-SW | 254,015.84 |
| **Total BofA Group CC** | $ 44,509.23 |
| Chase Ink |  |
| Chase Ink - Aeisha | 1,053.98 |
| Chase Ink - Amanda | 514.99 |
| Chase Ink - Iris | -384,920.44 |
| Chase Ink - Jonathan | 527.12 |
| Chase Ink - Lisa H | 1,231.89 |
| Chase Ink - LJ | 1,158.58 |
| Chase Ink - Logan | 397.99 |
| Chase Ink - Mike | 1,615.56 |
| Chase Ink - Sean | 42,459.70 |
| Chase Ink - Shannon | 663.31 |

## Flexogenix Group, Inc
## Balance Sheet
### As of October 31, 2020

|  | Total |
|---|---|
| Chase Ink - Vivian | 398,670.73 |
| Chase Ink - Wendy | 846.85 |
| **Total Chase Ink** | $ **64,220.26** |
| Citi AA |  |
| Citi AA- Iris | 20,240.02 |
| **Total Citi AA** | $ **20,240.02** |
| Iris Chase Freedom | 29,743.28 |
| Iris Chase Sapphire | 75,761.97 |
| Iris Chase Slate | 17,806.73 |
| Iris Platinum | 160,482.36 |
| Union Bank Credit Card |  |
| UnionBk CreditCard-IC | 19,570.73 |
| **Total Union Bank Credit Card** | $ **19,570.73** |
| **Total Credit Cards** | $ **1,248,910.50** |
| **Other Current Liabilities** |  |
| Accrued expenses | 134,000.00 |
| Accrued expenses - US trustess |  |
| Accrued expenses - US trustee GA | 105.33 |
| Accrued expenses - US trustee Group | 54,147.45 |
| Accrued expenses - US trustee NC | 20,329.34 |
| Accrued expenses - US trustee Whalen Medical | 5,972.00 |
| Accrued Expenses-US Trustee OKC | 6,500.00 |
| **Total Accrued expenses - US trustess** | $ **87,054.12** |
| Accrued expenses-Howard Grobstein | 48,597.50 |
| Accrued expenses-MARGULIES FAITH LLP | 272,225.38 |
| Accrued expenses-MRC | 8,100.00 |
| Accrued expenses-Nelson Hardiman LLP | 13,504.69 |
| Accrued expenses-White and Williams LLP | 155,000.00 |
| **Total Accrued expenses** | $ **718,481.69** |
| Accrued Payroll - Cary | 20,234.77 |
| Accrued Payroll - Charlotte | 14,211.58 |
| Accrued Payroll - Greensboro | 15,345.03 |
| Accrued Payroll - Group | 46,555.94 |
| Accrued Payroll - OKC | 6,269.97 |
| Loan from Atlanta | 3,707,512.83 |
| Loan from BlueVine | 16,996.12 |
| Loan from BMF | 727,507.88 |
| Loan from Cary | 18,264,236.68 |
| Loan from CLT | 29,847,217.11 |
| Loan from Franklin Funding | 294,000.00 |
| Loan from Franklin Funding-2 | 396,000.00 |
| Loan from GBO | 7,376,774.79 |
| Loan from Global Capital | -506.00 |

# Flexogenix Group, Inc
# Balance Sheet
### As of October 31, 2020

|  |  | Total |
|---|---|---:|
| Loan from Global Capital-3 |  | 49,741.58 |
| Loan from group |  | 8,110,612.77 |
| Loan from Hop Capital |  | 85.60 |
| Loan from In Advance Capital LLC |  | 124,703.44 |
| Loan from INFLUX CAPITAL |  | 230,727.00 |
| Loan from LA |  | 6,477,052.12 |
| Loan from NCMIC |  | 919.00 |
| Loan from OKC |  | 7,408,060.17 |
| Loan from Par Funding-4 |  | 392,336.98 |
| Loan from Par Funding-5 |  | 410,795.14 |
| Loan from Par Funding-6 |  | 800,634.34 |
| Loan from Par Funding-7 |  | 767,433.14 |
| Loan from Par Funding-8 |  | 417,430.64 |
| Loan from Region Capital |  | -2,370.00 |
| Loan from Shareholder-IRIS |  | 27,111.77 |
| Loan from Shareholder-SEAN |  | 237,746.29 |
| Loan from Torrance |  | 345,617.09 |
| Loan from Yes Capital |  | 122,873.20 |
| Loan to OKC |  | -1,245,104.95 |
| Total Other Current Liabilities | $ | 86,127,243.71 |
| Total Current Liabilities | $ | 92,647,359.25 |
| Total Liabilities | $ | 92,647,359.25 |
| Equity |  |  |
| Common Stock |  | 314,900.00 |
| Opening Balance Equity |  | 1,122,970.10 |
| Retained Earnings |  | -10,439,220.91 |
| Shareholder Contribution - Iris |  | 2,500.00 |
| Shareholder Contribution - Paul |  | 12,094.40 |
| Shareholder Contributions - Sean |  | 4,000.00 |
| Shareholder Distributions - Paul |  | -42,600.00 |
| Shareholder Distributions - Sean |  | -32,447.32 |
| Net Income |  | -453,180.18 |
| Total Equity | -$ | 9,510,983.91 |
| TOTAL LIABILITIES AND EQUITY | $ | 83,136,375.34 |

Unaudited Balance Sheet

# Flexogenix Group, Inc
## Profit and Loss
### January 2016 - January 2019

| | Jan 2016 | Feb 2016 | Mar 2016 | Apr 2016 | May 2016 | Jun 2016 | Jul 2016 | Aug 2016 | Sep 2016 | Oct 2016 | Nov 2016 | Dec 2016 | Jan 2017 | Feb 2017 | Mar 2017 | Apr 2017 | May 2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | | | | | |
| Medical Services Income | 1,652,273.52 | 1,545,789.84 | 2,005,661.18 | 1,810,462.69 | 1,940,508.06 | 1,580,982.77 | 1,301,231.08 | 1,940,608.46 | 2,075,920.29 | 1,901,890.94 | 1,789,359.42 | 3,753,341.09 | 1,250,343.49 | 1,430,841.36 | 1,935,959.38 | 1,613,423.90 | 1,859,455.40 |
| Management Fee Income | | | 975,228.58 | | | 976,187.64 | | | 988,432.12 | | | 32,276.04 | | | | | |
| Consulting | | | 500.00 | 500.00 | 500.00 | | | | | | | | | | | | |
| Sales | | | 0.00 | | | | | 0.00 | | | | | | | | | |
| Shipping Income | | | | | | | | | | | | | | | | | |
| Billable Expense Income | | | | | | | | | | | | | | | | | |
| out of period accrual revenue | | | | | | | | | | | | | | | | | |
| **Total Income** | $ 1,652,273.52 | $ 1,545,789.84 | $ 2,981,389.76 | $ 1,810,962.69 | $ 1,941,008.06 | $ 2,557,170.41 | $ 1,301,231.08 | $ 1,940,608.46 | $ 3,064,352.41 | $ 1,901,890.94 | $ 1,789,359.42 | $ 3,785,617.13 | $ 1,250,343.49 | $ 1,430,841.36 | $ 1,935,959.38 | $ 1,613,423.90 | $ 1,859,455.40 |
| **Gross Profit** | $ 1,652,273.52 | $ 1,545,789.84 | $ 2,981,389.76 | $ 1,810,962.69 | $ 1,941,008.06 | $ 2,557,170.41 | $ 1,301,231.08 | $ 1,940,608.46 | $ 3,064,352.41 | $ 1,901,890.94 | $ 1,789,359.42 | $ 3,785,617.13 | $ 1,250,343.49 | $ 1,430,841.36 | $ 1,935,959.38 | $ 1,613,423.90 | $ 1,859,455.40 |
| **Expenses** | | | | | | | | | | | | | | | | | |
| Injectables | 1,524,535.60 | 243,652.60 | 385,108.00 | 536,883.16 | 301,573.10 | 363,606.00 | 413,357.45 | 730,380.70 | 413,137.69 | 242,529.45 | 340,912.90 | 320,546.62 | 258,064.63 | 286,444.56 | 375,575.04 | 391,811.68 | 433,788.24 |
| Advertising | 303,203.27 | 404,463.36 | 366,035.52 | 500,689.98 | 443,002.38 | 458,466.39 | 363,100.09 | 397,497.31 | 389,703.60 | 364,115.23 | 336,685.09 | 2,725.00 | 400,540.94 | 273,168.28 | 284,302.47 | 313,045.68 | 317,425.39 |
| Management Expense | | | 975,228.58 | | | 976,187.64 | | | 988,432.12 | | | 32,276.04 | | | | | |
| Payroll-Group | 144,240.55 | 145,157.08 | 65,851.91 | 88,767.15 | 74,257.32 | 88,572.56 | 82,550.69 | 52,806.89 | 117,435.42 | 132,057.63 | 86,468.00 | 158,764.53 | 48,924.96 | 99,484.31 | 165,204.27 | 113,828.07 | 156,029.17 |
| Payroll-Cary | 196,583.98 | 193,307.76 | 176,776.83 | 219,019.16 | 173,253.10 | 193,789.76 | 197,469.57 | 140,478.48 | 248,260.35 | 248,849.46 | 172,771.73 | 283,945.23 | 85,807.18 | 137,410.87 | 168,116.07 | 117,004.57 | 124,072.13 |
| Payroll-CLT | 119,311.30 | 123,029.16 | 128,768.87 | 173,038.68 | 142,935.56 | 164,191.43 | 147,442.51 | 101,737.53 | 187,041.47 | 205,264.83 | 134,424.05 | 229,697.01 | 68,131.61 | 132,543.67 | 126,234.43 | 123,257.57 | 108,120.69 |
| Interest Expense | 4,904.28 | 2,399.79 | 2,395.27 | 2,390.72 | 2,386.15 | 2,381.56 | 2,376.94 | 9,309.79 | 13,930.12 | 20,862.92 | 22,341.44 | 51,793.61 | 28,491.18 | 22,537.08 | 54,074.58 | 25,654.79 | 32,529.43 |
| Payroll-LA | 75,515.54 | 86,930.94 | 87,535.86 | 112,311.44 | 91,078.24 | 107,343.01 | 99,725.40 | 74,746.17 | 111,807.56 | 143,198.57 | 111,607.98 | 159,185.91 | 91,624.97 | 117,519.43 | 121,314.25 | 92,444.81 | 98,619.23 |
| Rent or Lease | 32,958.03 | 49,907.66 | 52,989.11 | 54,522.63 | 73,622.24 | 23,280.14 | 48,450.98 | 74,138.78 | 41,399.30 | 76,058.42 | 109,316.42 | 108,199.24 | 59,295.53 | 86,165.50 | 86,006.36 | 87,708.09 | 89,968.11 |
| Braces | 252,116.94 | 63,272.15 | 70,621.92 | 99,371.35 | 69,824.79 | 90,683.56 | 82,426.01 | 54,012.18 | 68,833.92 | 114,858.74 | 88,792.59 | 26,796.64 | 9,864.54 | 66,287.09 | 109,369.45 | 68,503.27 | 78,751.10 |
| Payroll-GBO | | | | | 1,215.97 | 9,673.66 | 53,398.08 | 55,162.92 | 114,045.36 | 108,780.74 | 94,093.94 | 134,888.31 | 63,341.89 | 84,796.09 | 87,169.99 | 46,140.71 | 87,820.33 |
| Insurance | 43,200.16 | 49,044.42 | 47,315.77 | 57,458.01 | 53,076.94 | 58,809.73 | 64,652.21 | 68,702.77 | 71,024.94 | 76,968.22 | 21,182.23 | 142,396.76 | 65,097.19 | 76,629.42 | 48,316.61 | 88,033.76 | 60,323.58 |
| Depreciation Expense | 18,158.78 | 18,158.78 | 18,158.78 | 18,158.78 | 18,158.78 | 18,158.78 | 18,158.78 | 18,158.78 | 18,158.78 | 18,158.78 | 18,158.78 | 18,158.78 | 18,158.78 | 18,158.78 | 18,162.42 | 18,275.92 | 18,509.65 |
| Legal & Professional Fees | 4,431.85 | 2,519.25 | 2,204.55 | 102,453.54 | 16,251.86 | 9,199.96 | 9,334.15 | 16,481.98 | 18,717.63 | 8,053.02 | 12,463.84 | 36,340.13 | 30,655.20 | 46,553.53 | 66,666.96 | 59,966.58 | 46,366.35 |
| Payroll-Torrance | 525.47 | 844.10 | 16,238.05 | 64,111.19 | 87,650.35 | 122,298.27 | 113,543.11 | 74,936.21 | 141,256.79 | 141,365.47 | 89,101.77 | 114,520.31 | 14,616.43 | 29,379.84 | 48,405.69 | 37,430.13 | 39,447.68 |
| Payroll-ATL | | | | | | | | | | | | | | | | | |
| Equipment Rental | 20,468.28 | 18,979.35 | 18,802.76 | 28,239.19 | 14,467.07 | 30,070.27 | 37,133.66 | 34,435.36 | 24,934.67 | 34,169.93 | 29,815.45 | 38,636.31 | 20,834.49 | 41,439.95 | 31,407.27 | 29,004.50 | 23,013.37 |
| Office Expenses | 29,288.85 | 97,294.26 | 41,917.67 | 49,803.93 | 34,953.52 | 31,773.59 | 37,698.93 | 21,660.16 | 34,373.93 | 37,716.26 | 34,561.27 | 44,940.19 | 19,153.32 | 9,354.37 | 10,900.13 | 17,440.81 | 11,851.76 |
| Medical Procedure Kits | 3,917.76 | 2,433.40 | 1,475.72 | 2,956.26 | | | 492.84 | 8,740.00 | 14,370.00 | 22,980.00 | 19,180.00 | 20,831.98 | 41,940.31 | 30,233.04 | 39,718.85 | 28,521.43 | 22,990.32 |
| Supplies | 31,606.97 | 18,753.00 | 6,772.93 | 60,076.50 | 29,218.49 | 29,211.36 | 28,419.08 | 10,863.86 | 14,937.73 | 21,558.72 | 16,004.77 | 16,041.05 | 7,492.67 | 9,329.22 | 14,699.38 | 9,850.56 | 8,315.97 |
| Travel | 230.50 | 3,265.83 | 192,140.37 | 3,967.57 | 54,700.65 | 7,047.31 | 3,510.99 | 2,862.69 | 8,250.68 | 2,136.99 | 7,528.55 | 5,017.98 | 1,593.92 | 738.26 | 2,476.08 | 3,568.30 | 2,919.28 |
| Auto | 3,958.61 | 4,470.76 | 6,808.55 | 16,455.37 | 7,796.97 | 10,047.62 | 3,341.12 | 14,774.46 | 8,878.38 | 13,356.03 | 13,994.62 | 8,834.39 | 4,188.70 | 5,184.22 | 10,692.23 | 24,986.50 | 5,276.06 |
| Credit Card Fees | 3,759.27 | 3,342.68 | 4,041.91 | 4,801.51 | 14,214.56 | 3,784.79 | 5,630.82 | 15,275.81 | 17,647.64 | 13,311.42 | 5,385.75 | 10,745.77 | 12,029.99 | 7,060.58 | 5,285.01 | 9,331.51 | 7,472.06 |
| Travel-P | 4,504.18 | 6,665.16 | 18,815.28 | 11,211.87 | 10,700.44 | 5,935.31 | 5,113.13 | 4,925.79 | 8,672.09 | 5,433.35 | 8,976.97 | 1,816.10 | 3,292.39 | -1,701.60 | 3,347.72 | 2,954.44 | 7,960.72 |
| Office Expense-P | 11,297.95 | 1,838.24 | 5,390.41 | 9,939.72 | 5,357.91 | 5,125.87 | 4,828.52 | 5,020.07 | 5,949.34 | 8,688.64 | 5,309.51 | 12,189.28 | 2,912.47 | 1,206.29 | 5,507.92 | 12,661.88 | 8,175.48 |
| Telephone | 3,337.62 | 4,447.11 | 3,970.63 | 13,955.18 | 4,175.15 | 5,551.33 | 5,450.91 | 6,774.42 | 5,556.24 | 5,364.13 | 8,524.42 | 5,007.50 | 5,488.69 | 4,973.83 | 4,747.29 | 4,818.91 | 4,905.72 |
| Promotional | 11,683.21 | 10,327.80 | 1,700.00 | 16,107.24 | 4,520.32 | 13,676.05 | 22,170.20 | 1,375.59 | 1,440.65 | 4,646.16 | | 14,942.37 | | 3,134.30 | 2,229.51 | 2,232.66 | |
| Office Supplies | 9,768.19 | 4,768.64 | 6,119.31 | 16,241.24 | 10,987.08 | 13,487.53 | 9,755.69 | 2,119.44 | 3,745.43 | 3,909.00 | 2,657.96 | 4,635.48 | 3,458.08 | 1,341.55 | 4,896.56 | 1,590.06 | 4,316.25 |
| Repair & Maintenance | 4,554.90 | 3,638.33 | 307.20 | 27,365.96 | 7,981.72 | 1,534.42 | 29,686.54 | 3,257.63 | 4,789.84 | 5,149.00 | 1,712.50 | 6,512.58 | 1,831.62 | 951.92 | 2,160.46 | 1,448.02 | 1,448.02 |
| Taxes & Licenses | | | | 1,600.00 | 2,855.20 | 7,532.19 | 1,012.37 | | 5,194.92 | 2,167.12 | -22.13 | 3,363.06 | 25.00 | 520.60 | 8,256.38 | | 1,600.00 |
| out of period accrual expenses | | | | | | | | | | | | | | | | | |
| Payroll-OKC | | | | | | | | | | | | | | | | | |
| Meal-P | 2,466.65 | 1,152.56 | 2,508.32 | 7,109.57 | 1,473.43 | 662.97 | 218.33 | 833.19 | 993.98 | 2,870.24 | 1,723.23 | 2,000.68 | 2,964.34 | 2,560.35 | 3,573.92 | 2,787.62 | 3,400.76 |
| Auto lease | 3,335.09 | 3,364.99 | 3,335.09 | 12,051.10 | 3,521.16 | 4,077.64 | 4,077.64 | 4,077.64 | 4,077.64 | 4,077.64 | 4,077.64 | 4,077.64 | 1,151.24 | 2,095.30 | 2,095.30 | 2,095.30 | 2,117.10 |
| Recruit | 3,206.93 | 3,081.53 | 5,493.10 | 3,347.20 | 2,614.82 | 2,753.45 | 1,055.97 | 100.98 | 180.22 | 373.58 | 189.87 | 125.74 | 194.48 | | 1,100.00 | | |
| Due Diligence Fee | | | | | 25,000.00 | | | 30,000.00 | -20,379.61 | | | 20,000.00 | 2,000.00 | 13,000.00 | | | |
| Payroll Services | 2,463.40 | 2,393.32 | 1,076.25 | 1,164.88 | 1,438.25 | 2,056.06 | 3,953.07 | 2,289.57 | 1,571.50 | 3,126.55 | 2,191.11 | 3,007.97 | 2,284.19 | 3,276.41 | 1,799.47 | 2,562.10 | 1,802.10 |
| Loan fees | | | | | | | | | | | | | | | 37,030.00 | | |
| Internet | 1,346.03 | 518.03 | 736.93 | 1,137.84 | 1,905.15 | 2,442.76 | 1,224.07 | 4,358.87 | 2,041.06 | 4,641.00 | 5,940.54 | 1,744.59 | 1,351.65 | 3,284.33 | 2,042.96 | 1,993.91 | 2,038.01 |
| Dues & Subscriptions | 4,359.00 | 8,150.00 | 4,005.00 | 4,199.95 | 7,215.00 | 4,079.00 | 4,425.00 | 4,255.00 | 3,890.00 | 4,435.00 | 4,625.07 | 3,850.00 | -156.58 | 1,040.00 | 520.00 | 543.85 | 520.00 |
| Cleaning | 1,955.61 | 1,520.00 | 1,822.03 | 2,400.00 | 1,860.00 | 1,918.18 | 1,860.00 | 1,860.00 | 2,400.00 | 2,905.00 | 1,860.00 | 2,010.00 | 1,860.00 | 1,727.98 | 2,157.00 | 1,742.00 | 1,752.00 |
| Postage And Delivery | 1,693.65 | 264.89 | 1,464.04 | 1,078.83 | 543.20 | 3,453.69 | 1,117.70 | 4,688.97 | 3,070.31 | 1,619.90 | 1,686.40 | 1,489.61 | 2,161.68 | 2,793.76 | 2,844.78 | 864.53 | 1,749.25 |
| Payroll UI | | | | | | | | | | 1,470.23 | 2,874.88 | 2,233.17 | 14,651.82 | 8,393.01 | 4,416.54 | 3,220.32 | 3,338.03 |
| Utilities | 645.54 | 1,860.62 | 936.03 | 1,226.67 | 189.99 | 243.27 | 1,144.66 | 563.87 | 10,880.88 | 401.19 | 2,057.72 | 1,739.80 | 4,062.41 | 1,196.47 | 1,073.40 | 1.67 | 56.98 |
| Uniforms | 4,745.48 | 2,648.46 | 251.09 | 6,235.45 | 4,174.25 | 5,575.43 | 1,768.60 | | 864.50 | 2,170.83 | 348.56 | | 259.95 | | 62.40 | 136.24 | 443.04 |
| Disposal Fees | 778.00 | 240.00 | 240.00 | 360.00 | 240.00 | 240.00 | 160.00 | 360.00 | 240.00 | 668.26 | 240.00 | 360.00 | 280.00 | 260.00 | 1,476.31 | 1,409.77 | 1,450.37 |
| Employee Background Check | 8,818.25 | 1,353.00 | 18.00 | 2,705.05 | 2,721.15 | 1,698.55 | | | 989.75 | 1,629.75 | 86.25 | 203.25 | | | 705.50 | 616.25 | 721.00 |
| Merchant expense | | | | | | | | | | | | | | | | | |
| Meals | | 207.70 | 585.29 | 1,504.09 | 537.29 | 880.80 | 593.08 | 204.93 | 285.26 | 1,009.05 | 1,512.19 | 292.34 | 792.91 | 14.86 | 751.05 | 823.32 | 1,032.84 |
| Stationery & Printing | | 55.84 | | | 21.94 | | 91.26 | 38.65 | 63.60 | 39.03 | 870.39 | 68.28 | 1,035.56 | 71.45 | 43.59 | 1,309.63 | 240.32 |
| Utilities-P | 192.11 | | 127.78 | 716.60 | 529.84 | 523.24 | 113.68 | 54.99 | 250.30 | 54.99 | 151.13 | 296.95 | 256.80 | 115.94 | 408.38 | 403.91 | 417.11 |
| Security system | 317.48 | 246.58 | 90.74 | 226.74 | 469.51 | 473.78 | 473.78 | 396.47 | 558.24 | 408.39 | 408.39 | 934.54 | 606.37 | 352.49 | 522.78 | 527.16 | 527.16 |
| 401K Service Fee | | | | | | | | 3,180.00 | | | 2,550.00 | 150.00 | | | | | |
| Payroll Tax | | | | | | | | | | 4.39 | 13.37 | 9,534.95 | 658.46 | 175.53 | 1,131.79 | 98.62 | 166.92 |
| Freight & Delivery | | | | | | | | | 78.72 | | | | | | | | |
| Bank Charges | 692.77 | 667.85 | 26.41 | 312.43 | 232.40 | 204.80 | 248.40 | 368.80 | 195.20 | 226.80 | 355.00 | 329.95 | 493.90 | 402.90 | 767.04 | 196.46 | 185.90 |
| Internet-P | | | | | | | | | | | | | | | | 94.97 | 49.99 |
| Equipment Loan | | | | | | | | | | | | | | 80.44 | | | |
| Charitable Contributions | | | | | | | | 1,300.00 | 2,350.00 | 1,400.00 | 100.00 | | | | | | |
| Staffing Service | 147.48 | 150.26 | | 522.22 | 150.00 | 300.00 | | 150.00 | | 156.74 | | | 700.00 | | | | |
| Shipping and delivery expense | | | | | | | | | | | | | | | | | |
| Equipment | 1,605.00 | | -153.95 | 2,969.84 | -202.44 | 550.78 | | | | | | | | | | | |
| DTLA APC | | | | | | | | | | | | | | | | | |
| License & Permit | | | | | | | | | | | 30.00 | | | | | | |
| Uncategorized Expense | | | | | | | | | | | | | | | 410.08 | | |
| Meals and Entertainment | | | | | | | | | | | 219.85 | | | | | | |
| Membership | | | | | | | | | | | | | | | | | |
| Payroll-GASUR | | | | | | | | | | | | | | | | | |
| Entertainment | | | | | | | 28.65 | | | | 20.93 | | | | | | |
| Medical | | | | | | | | | | | | | | | | | |
| Paroll-CAETT | | | | | | | | | | | | | | | | | |
| Payroll | | | | | | | | | | | | 0.00 | 0.00 | | | 0.00 | |
| Reimbursement of Payroll - ATL | | | | | | | | | | | | | | | | | |
| Reimbursement of Payroll - Cary | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Reimbursement of Payroll - CLT | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Reimbursement of Payroll - GBO | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Reimbursement of Payroll - LA | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Reimbursement of Payroll - OKC | | | | | | | | | | | | | | | | | |
| Reimbursement of Payroll - Torrance | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Unapplied Cash Bill Payment Expense | | | | | | | | | | | | | | | | | |
| Pension Expense | | | | | | | | | -0.04 | | | | | | | | |
| **Total Expenses** | $ 2,896,830.51 | $ 1,590,787.24 | $ 2,726,053.91 | $ 2,341,165.79 | $ 1,804,850.80 | $ 2,883,554.49 | $ 1,912,784.66 | $ 2,059,717.70 | $ 3,116,528.10 | $ 2,115,396.79 | $ 1,826,082.92 | $ 2,068,197.62 | $ 1,404,465.86 | $ 1,631,686.20 | $ 1,970,175.67 | $ 1,752,942.84 | $ 1,824,024.97 |
| **Net Operating Income** | -$ 1,244,556.99 | -$ 44,997.40 | $ 255,335.85 | -$ 530,203.10 | $ 136,157.26 | -$ 326,384.08 | -$ 611,553.58 | -$ 119,109.24 | -$ 52,175.69 | -$ 213,505.85 | -$ 36,723.50 | $ 1,717,419.51 | -$ 154,122.37 | -$ 200,844.84 | -$ 34,216.29 | -$ 139,518.94 | $ 35,430.43 |
| **Other Income** | | | | | | | | | | | | | | | | | |
| Gain from TI Allowance | | | | | | | | | | | | | | | | | |
| Gain from Insurance claim | | | | | | | | | | | | | | | | | |
| **Total Other Income** | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| **Net Other Income** | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| **Net Income** | -$ 1,244,556.99 | -$ 44,997.40 | $ 255,335.85 | -$ 530,203.10 | $ 136,157.26 | -$ 326,384.08 | -$ 611,553.58 | -$ 119,109.24 | -$ 52,175.69 | -$ 213,505.85 | -$ 36,723.50 | $ 1,717,419.51 | -$ 154,122.37 | -$ 200,844.84 | -$ 34,216.29 | -$ 139,518.94 | $ 35,430.43 |

| | Jun 2017 | Jul 2017 | Aug 2017 | Sep 2017 | Oct 2017 | Nov 2017 | Dec 2017 | Jan 2018 | Feb 2018 | Mar 2018 | Apr 2018 | May 2018 | Jun 2018 | Jul 2018 | Aug 2018 | Sep 2018 | Oct 2018 | Nov 2018 | Dec 2018 | Jan 2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | | | | | | | | |
| Medical Services Income | 1,729,482.04 | 1,221,794.10 | 1,675,471.10 | 1,505,424.74 | 1,811,634.99 | 2,126,217.22 | 1,880,189.06 | 1,467,071.42 | 1,733,077.01 | 2,108,138.23 | 2,254,935.27 | 2,333,260.96 | 1,890,288.66 | 1,739,063.26 | 1,387,672.10 | 1,505,030.61 | 1,545,693.17 | 1,449,514.82 | 1,154,918.55 | 1,373,132.43 |
| Management Fee Income | | | | | | | 4,401,239.00 | | | | | | | | | | | | | |
| Consulting | | | | | | | | 50,000.00 | | | 15,000.00 | 22,000.00 | | 7,000.00 | 17,500.00 | | | | | |
| Sales | | | | | | | | | | | 32,612.87 | 1,883.39 | 9,380.12 | 1,168.12 | 3,337.35 | 9,891.21 | 18,984.92 | 17,371.57 | 2,179.24 | 2,597.03 |
| Shipping Income | | | | | | | | | | | 79.75 | | 62.69 | 34.40 | 44.70 | 167.91 | 43.62 | 17.50 | 17.50 | 66.75 |
| Billable Expense Income | | | | | | | | 0.18 | | | | | | | | | | | | |
| out of period accrual revenue | | | | | | | -1,222,910.53 | | | | | | | | | | | | | |
| **Total Income** | $ 1,729,482.04 | $ 1,221,794.10 | $ 1,675,471.10 | $ 1,505,424.74 | $ 1,811,634.99 | $ 2,126,217.22 | $ 5,058,517.53 | $ 1,517,071.60 | $ 1,733,077.01 | $ 2,108,138.23 | $ 2,302,627.89 | $ 2,357,144.35 | $ 1,899,731.47 | $ 1,747,265.78 | $ 1,408,554.15 | $ 1,515,089.73 | $ 1,564,721.71 | $ 1,466,903.89 | $ 1,157,115.29 | $ 1,375,796.21 |
| **Gross Profit** | $ 1,729,482.04 | $ 1,221,794.10 | $ 1,675,471.10 | $ 1,505,424.74 | $ 1,811,634.99 | $ 2,126,217.22 | $ 5,058,517.53 | $ 1,517,071.60 | $ 1,733,077.01 | $ 2,108,138.23 | $ 2,302,627.89 | $ 2,357,144.35 | $ 1,899,731.47 | $ 1,747,265.78 | $ 1,408,554.15 | $ 1,515,089.73 | $ 1,564,721.71 | $ 1,466,903.89 | $ 1,157,115.29 | $ 1,375,796.21 |
| **Expenses** | | | | | | | | | | | | | | | | | | | | |
| Injectables | 453,185.19 | 385,334.70 | 284,370.53 | 399,891.77 | 396,473.54 | 411,175.00 | 337,043.02 | 320,663.10 | 492,788.37 | 557,840.78 | 650,658.68 | 590,141.15 | 519,256.09 | 429,877.66 | 435,200.76 | 304,139.47 | 345,471.30 | 486,052.77 | 329,850.69 | 315,445.20 |
| Advertising | 345,232.30 | 407,952.71 | 380,052.65 | 382,542.91 | 392,689.46 | 360,896.69 | 349,694.81 | 370,360.98 | 412,631.14 | 372,315.24 | 471,128.65 | 368,058.67 | 200,446.99 | 11,364.36 | 76,191.69 | 77,844.13 | 86,624.18 | 173,967.12 | 160,585.53 | 147,466.85 |
| Management Expense | | | | | | | 4,401,239.00 | | | | | | | | | | | | | |
| Payroll-Group | 145,083.21 | 152,699.33 | 135,830.87 | 228,177.02 | 176,249.61 | 187,566.32 | 332,880.53 | 166,245.92 | 166,876.57 | 187,275.60 | 194,299.09 | 196,822.92 | 212,550.92 | 217,562.20 | 188,878.23 | 177,465.78 | 199,426.85 | 197,601.47 | 230,345.43 | 254,136.17 |
| Payroll-Cary | 91,381.51 | 95,610.74 | 102,224.21 | 133,964.22 | 91,197.53 | 86,925.21 | 127,015.25 | 108,402.22 | 94,645.07 | 99,738.32 | 92,819.17 | 108,853.46 | 109,082.49 | 96,865.16 | 129,065.88 | 70,505.60 | 93,710.12 | 93,767.01 | 100,486.26 | 89,313.14 |
| Payroll-CLT | 83,179.71 | 91,961.80 | 89,303.79 | 142,945.96 | 96,660.90 | 99,950.62 | 95,067.29 | 117,752.00 | 99,646.40 | 93,680.00 | 107,891.18 | 105,318.80 | 98,592.61 | 104,637.38 | 104,431.48 | 82,213.86 | 108,070.60 | 96,699.47 | 106,548.86 | 95,696.17 |
| Interest Expense | 46,066.05 | 64,961.49 | 83,619.84 | 75,219.02 | 82,985.69 | 82,282.18 | 98,756.67 | 104,697.63 | 92,448.35 | 119,903.32 | 118,313.69 | 122,595.82 | 127,372.54 | 173,609.90 | 195,776.70 | 207,698.38 | 268,817.47 | 239,014.54 | 321,963.75 | 400,166.18 |
| Payroll-LA | 79,021.87 | 75,105.96 | 75,165.99 | 113,956.35 | 80,746.32 | 76,047.48 | 104,247.16 | 83,949.49 | 67,189.35 | 74,477.84 | 79,431.75 | 79,937.94 | 68,492.30 | 68,944.93 | 69,950.48 | 57,778.84 | 65,903.20 | 60,213.49 | 61,500.36 | 59,438.44 |
| Rent or Lease | 99,475.06 | 91,133.82 | 94,755.61 | 92,335.05 | 73,651.39 | 71,001.39 | 46,747.51 | 72,993.03 | 103,516.70 | 104,054.87 | 101,352.94 | 108,548.22 | 84,128.53 | 106,288.33 | 103,193.53 | 108,069.59 | 108,133.63 | 111,300.14 | 111,171.30 | 109,462.26 |
| Braces | 93,179.08 | 62,543.90 | 84,428.25 | 69,077.02 | 88,763.95 | 84,772.71 | 70,454.75 | 72,018.14 | 74,572.88 | 126,481.84 | 17,611.77 | 133,333.03 | 113,333.47 | 66,351.30 | 93,179.07 | 17,488.19 | 47,508.30 | 41,987.22 | 31,198.32 | 38,608.66 |
| Payroll-GBO | 81,021.40 | 92,467.15 | 94,885.36 | 128,710.89 | 87,553.63 | 87,843.89 | 98,600.28 | 96,253.93 | 86,651.66 | 91,620.43 | 95,464.19 | 96,967.28 | 89,837.90 | 89,488.35 | 84,187.62 | 76,732.69 | 67,172.71 | 67,100.69 | 64,751.21 | 68,240.74 |
| Insurance | 64,664.05 | 57,728.96 | 50,570.80 | 41,709.75 | 58,085.01 | 65,067.48 | 74,982.00 | 54,712.78 | 59,659.26 | 89,796.84 | 51,942.45 | 73,227.09 | 56,984.14 | 64,121.42 | 74,180.13 | 50,359.62 | 62,982.69 | 49,425.12 | 50,119.93 | 61,192.97 |
| Depreciation Expense | 18,808.33 | 18,913.72 | 18,862.82 | 18,862.82 | 18,862.82 | 18,862.82 | 699,019.12 | 26,979.33 | 26,979.33 | 27,284.91 | 27,284.91 | 27,284.91 | | 54,569.82 | 27,284.91 | 27,284.91 | 27,284.91 | 27,284.91 | -38,695.33 | 28,707.49 |
| Legal & Professional Fees | 73,241.51 | 25,109.25 | 17,927.64 | 29,996.34 | 18,029.56 | 21,230.66 | 24,464.36 | 13,952.66 | 18,891.36 | 30,361.86 | 39,380.51 | 8,302.91 | 72,377.77 | 47,085.74 | 53,017.11 | 29,902.41 | 32,838.11 | 78,720.51 | 74,771.86 | 30,280.43 |
| Payroll-Torrance | 27,665.81 | 19,046.46 | 11,477.11 | 27,371.49 | | | | 0.00 | | | | | | | | | | | | |
| Payroll-ATL | 1,311.60 | 33,963.79 | 63,632.75 | 65,564.87 | 43,266.73 | 59,848.12 | 58,621.29 | 65,657.23 | 61,163.35 | 70,333.88 | 63,506.38 | 73,376.76 | 63,444.86 | 76,293.99 | 77,670.44 | 56,914.62 | 73,167.29 | 67,311.88 | 55,316.85 | 61,696.10 |
| Equipment Rental | 41,516.37 | 30,338.54 | 26,784.80 | 29,350.54 | 31,345.83 | 31,330.62 | 32,628.48 | 30,638.92 | 30,780.17 | 30,468.02 | 30,294.02 | 30,659.98 | 30,295.47 | 30,441.89 | 30,735.15 | 27,739.71 | 21,547.14 | 22,154.69 | 22,455.95 | 23,997.54 |
| Office Expenses | 14,273.96 | 13,906.91 | 12,096.61 | 23,291.53 | 19,464.10 | 19,014.00 | 24,269.42 | 16,244.36 | 21,062.32 | 18,994.88 | 26,588.74 | 38,148.19 | 28,662.91 | 29,085.45 | 23,815.80 | 31,907.72 | 27,291.27 | 42,763.76 | 39,217.72 | 20,573.03 |
| Medical Procedure Kits | 13,772.43 | 9,854.40 | 15,970.69 | 17,674.44 | 20,193.65 | 27,357.10 | 18,126.24 | | | 36,136.94 | 28,997.02 | 17,146.97 | 26,529.15 | 8,751.35 | 13,085.00 | 11,905.00 | 6,490.00 | 13,042.50 | 6,845.00 | 9,025.00 |
| Supplies | 11,079.20 | 17,534.38 | 12,439.59 | 11,451.42 | 12,469.85 | 11,866.65 | 9,588.85 | 10,447.59 | 9,696.17 | 11,674.51 | 13,701.47 | 14,223.19 | 10,836.11 | 10,030.78 | 8,548.60 | 5,666.95 | 11,900.39 | 6,500.88 | 4,716.44 | 5,846.48 |
| Travel | 3,087.88 | 3,920.35 | 2,713.76 | 4,580.32 | 752.55 | 3,759.12 | 2,816.93 | 1,946.19 | 1,368.48 | 3,077.28 | 1,916.55 | 4,829.14 | 2,876.21 | 1,739.09 | 2,026.02 | 860.52 | 5,043.54 | 5,883.62 | 5,365.08 | 3,902.51 |
| Auto | 7,271.40 | 9,609.46 | 6,745.35 | 9,211.32 | 5,485.50 | 6,684.55 | 11,169.20 | 5,896.64 | 4,793.04 | 6,773.11 | 6,494.92 | 13,497.74 | 12,313.68 | 9,455.02 | 8,950.99 | 5,697.42 | 6,724.12 | 5,599.61 | 6,538.99 | 8,517.99 |
| Credit Card Fees | 7,159.30 | 6,356.41 | 5,652.05 | 6,758.58 | 9,251.04 | 7,074.93 | 8,919.13 | 9,182.27 | 7,251.47 | 6,486.76 | 9,382.85 | 6,868.94 | 7,089.88 | 5,102.94 | 5,816.27 | 3,534.02 | 4,953.19 | 4,076.71 | 3,101.95 | 1,043.27 |
| Travel-P | 4,663.20 | | 4,271.67 | 5,050.07 | 5,123.10 | 11,123.96 | 6,476.90 | 14,915.48 | 3,364.70 | 10,767.37 | 5,445.88 | 6,124.37 | 6,421.57 | 6,168.63 | 8,123.23 | 20,827.32 | 17,033.39 | 10,631.62 | 5,757.77 | 4,191.23 |
| Office Expense-P | 5,286.84 | 2,611.83 | 13,285.88 | 10,400.36 | 9,832.12 | 7,540.17 | 9,057.56 | 2,853.36 | 3,518.28 | 5,005.85 | 10,083.49 | 5,952.14 | 9,042.05 | 7,420.12 | 2,549.41 | 7,781.39 | 6,845.45 | 10,907.24 | 12,728.74 | 10,513.33 |
| Telephone | 5,536.34 | 5,247.01 | 5,881.24 | 5,497.38 | 5,549.02 | 7,284.70 | 5,424.30 | 6,003.10 | 5,200.42 | 6,826.28 | 5,939.28 | 4,049.98 | 2,542.07 | 4,283.79 | 3,631.41 | 6,237.41 | 6,007.22 | 2,513.55 | 5,777.56 | 3,713.75 |
| Promotional | 1,640.29 | 9,114.65 | 1,613.00 | 1,499.68 | 1,181.96 | 0.00 | 773.81 | 10,360.32 | 6,731.48 | 4,595.64 | 20,038.30 | 2,734.78 | 4,344.58 | 2,599.45 | 4,945.27 | 1,840.93 | 500.00 | 7,745.17 | 1,800.00 | 1,347.48 |
| Office Supplies | 3,542.81 | 15,639.63 | 6,021.29 | 3,622.03 | 2,462.87 | 2,665.86 | 7,155.85 | 813.96 | 2,305.39 | 3,909.08 | 5,493.04 | 1,892.95 | 8,154.09 | 3,004.92 | 1,154.44 | 2,486.88 | 6,661.52 | 3,655.62 | 3,742.60 | 2,282.89 |
| Repair & Maintenance | 1,558.02 | 1,448.02 | 2,038.02 | 3,767.74 | 3,679.42 | 4,123.02 | 1,448.02 | 3,217.65 | 7,085.02 | -1,409.73 | 4,017.27 | 2,252.27 | 5,089.09 | 3,992.27 | 2,808.89 | 5,334.77 | 7,305.27 | 3,204.77 | 5,642.26 | 4,142.26 |
| Taxes & Licenses | | 3,100.11 | 400.00 | | 3,864.94 | 2,988.53 | 9,845.18 | 4,440.32 | 4,744.55 | 4,510.61 | 2,820.79 | 1,466.79 | 78,702.88 | 3,692.64 | 3,922.32 | 3,922.32 | 3,922.32 | 3,953.37 | 1,655.53 | 1,680.53 |
| out of period accrual expenses | | | | | | | 125,725.97 | | | | | | | | | | | | | |
| Payroll-OKC | | | | | | | | | | | | | | | | | 6,847.92 | 36,706.74 | 28,543.42 | 48,016.78 |
| Meal-P | 2,716.92 | 5,931.61 | 1,545.93 | 2,856.19 | 2,692.03 | 8,073.53 | 4,442.00 | 3,215.78 | 2,820.60 | 4,781.87 | 3,337.09 | 4,852.16 | 2,687.50 | 3,827.25 | 4,098.27 | 2,779.83 | 4,029.99 | 2,026.61 | 3,945.74 | 2,167.28 |
| Auto lease | 2,073.50 | 2,095.30 | 2,315.93 | 1,882.11 | 2,099.02 | 2,100.88 | 2,100.88 | 2,100.88 | 2,100.88 | 2,100.88 | 2,100.88 | 2,100.88 | 2,936.05 | 2,100.88 | 2,100.88 | 2,100.88 | 2,100.88 | 4,975.88 | 2,851.44 | 2,101.14 |
| Recruit | 450.00 | 8.33 | 364.68 | 54.73 | 269.32 | 360.76 | 375.29 | 363.73 | 393.16 | 14,369.67 | 14,737.45 | 895.87 | 1,053.72 | 258.12 | 2,325.37 | 1,409.52 | 1,160.54 | 12,335.37 | 12,983.55 | 12,143.65 |
| Due Diligence Fee | | | 7,500.00 | | | | | | | | | | | | | | | | 20,000.00 | |
| Payroll Services | 1,888.43 | 1,373.96 | 2,273.92 | 2,124.12 | 2,132.31 | 1,928.50 | 2,018.64 | 9,056.09 | 4,551.08 | 2,568.90 | 1,454.80 | 723.81 | 2,728.61 | 1,481.16 | 1,475.36 | 2,698.73 | 1,378.88 | 1,341.36 | 1,496.79 | 1,405.47 |
| Loan fees | 12,000.00 | 6,000.00 | | | | 17,985.00 | | | 11,424.20 | 3,495.00 | | | 400.00 | 1,500.00 | | -6,000.00 | | | | 299.00 |
| Internet | 2,554.71 | 2,420.34 | 2,102.67 | 2,368.30 | 2,471.09 | 1,753.39 | 1,863.76 | 1,864.66 | 1,864.90 | 1,914.89 | 1,934.89 | 1,864.90 | 1,866.34 | 1,866.34 | 1,936.33 | 1,541.82 | 3,220.02 | 2,310.03 | 1,575.69 | 2,347.30 |
| Dues & Subscriptions | 520.00 | 543.85 | 0.00 | 300.00 | 323.85 | | 600.00 | 3,671.85 | | 1,416.00 | 582.38 | 1,416.00 | 1,416.00 | 23.85 | | | | | | 1,490.91 |
| Cleaning | 1,937.00 | 1,515.00 | 1,807.00 | 2,397.02 | 2,067.00 | 2,075.00 | 1,921.00 | 1,676.31 | 1,883.00 | 2,331.00 | 1,883.00 | 1,966.57 | 966.00 | 1,870.00 | 2,411.50 | 1,746.00 | 1,916.00 | 2,295.55 | 2,468.00 | 1,240.00 |
| Postage And Delivery | 1,755.88 | 1,129.57 | 724.28 | 1,467.34 | 2,281.90 | 1,353.98 | 1,059.67 | 839.70 | 1,813.35 | 1,056.00 | 963.20 | 453.00 | 461.45 | 1,085.52 | 1,067.95 | 1,017.71 | 1,063.57 | 4,779.55 | 2,188.58 | 1,357.69 |
| Payroll UI | 1,671.70 | 3,087.22 | 2,639.62 | 2,702.22 | 1,807.59 | 1,903.72 | 1,977.06 | -568.70 | | | | | | | | | -4.85 | 41.75 | | |
| Utilities | | 3,903.16 | 0.86 | 1,610.43 | | 2,052.03 | | 1,492.24 | | 1,296.79 | | 1,341.49 | | 1,569.87 | 51.41 | 2,477.47 | | 3,364.13 | 832.03 | 2,938.37 |
| Uniforms | 1,975.11 | 1,432.36 | 501.83 | 1,014.58 | 344.74 | 432.00 | 0.00 | 160.99 | 0.00 | 170.00 | 0.00 | 168.00 | 348.00 | 0.00 | 0.00 | 86.00 | | 654.56 | | 243.09 |
| Disposal Fees | 664.99 | 1,410.54 | 1,329.33 | 2,074.75 | 1,409.99 | 1,382.61 | 1,263.62 | 1,183.59 | 1,273.44 | 1,233.36 | 1,197.52 | 1,349.73 | 1,235.51 | 1,231.48 | 1,783.52 | 639.06 | 1,318.76 | 1,609.74 | 1,309.41 | 628.45 |
| Employee Background Check | 1,529.55 | 808.25 | 413.00 | 613.50 | 1,302.50 | 285.75 | 347.00 | 173.50 | 175.30 | 675.75 | 355.96 | 537.49 | 275.57 | | 441.37 | 540.02 | 1,086.52 | 129.56 | 164.80 | |
| Merchant expense | | | | | 1,750.00 | 5,004.00 | 5,000.00 | 4,000.00 | 4,024.00 | 5,000.00 | 2,250.00 | 3,685.00 | | | | | | | | |
| Meals | 1,038.77 | 1,412.94 | 1,438.62 | 374.99 | 129.12 | 448.16 | 477.01 | 252.15 | 316.79 | 395.39 | 463.31 | 763.46 | 718.62 | 468.94 | 513.46 | 603.18 | 954.88 | 1,241.16 | 1,242.87 | 1,166.84 |
| Stationery & Printing | 509.10 | 1,258.53 | 56.91 | 60.80 | 1,793.44 | 369.62 | 217.36 | 1,799.44 | 1,068.36 | 314.31 | 1,721.30 | 718.82 | 326.56 | 1,698.61 | 846.94 | 179.96 | 961.03 | 748.98 | 338.65 | 198.42 |
| Utilities-P | 344.59 | 481.94 | 589.63 | 640.86 | 538.01 | 463.34 | 233.34 | 476.02 | 470.45 | 801.81 | 450.40 | 716.41 | 484.96 | 522.13 | 443.33 | 793.53 | 313.28 | 723.94 | 397.98 | 513.31 |
| Security system | 531.69 | 726.35 | 541.34 | 549.96 | 559.71 | 559.71 | 561.56 | 561.56 | 561.56 | 561.56 | 279.59 | 851.99 | 450.37 | 174.76 | 1,019.99 | -2,024.77 | 614.43 | 387.57 | 262.65 | -2,214.74 |
| 401K Service Fee | | | | | 480.00 | 2,550.00 | | | | | | | | | | | 3,390.00 | | | |
| Payroll Tax | -134.25 | 15.73 | 0.95 | 1.92 | 5.74 | 9.98 | 3,212.65 | | | | | | | | | | -3,556.34 | | | |
| Freight & Delivery | | | | | 290.47 | 329.54 | 896.40 | 479.42 | 875.20 | 676.52 | 566.29 | 2,477.76 | 733.22 | 748.75 | 297.05 | 299.54 | 451.68 | 735.67 | 617.05 | 551.33 |
| Bank Charges | 206.79 | 187.07 | 256.55 | 302.64 | 39.90 | 78.19 | 197.38 | 199.12 | 103.79 | 320.92 | 228.59 | 210.96 | 245.90 | -222.80 | 100.00 | -143.00 | 712.00 | 75.00 | 57.00 | 302.00 |
| Internet-P | 49.99 | | 578.72 | 439.87 | 340.95 | 409.22 | 3,363.00 | 452.89 | 140.64 | 91.72 | 337.21 | 280.03 | 188.31 | 188.31 | 118.30 | 188.29 | 118.30 | 164.09 | 798.10 | 435.50 |
| Equipment Loan | | | | | | | | | 769.67 | | 769.67 | 769.67 | 769.67 | 769.67 | 769.67 | 769.67 | 769.67 | 769.67 | 769.67 | 769.67 |
| Charitable Contributions | | | | | | | | | | | 100.00 | | 286.00 | | | 480.00 | 129.00 | | | |
| Staffing Service | 400.00 | | 800.00 | | | | 665.10 | | | | | 50.00 | 291.42 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| Shipping and delivery expense | | | -7.19 | | | | | | 127.64 | 327.69 | 18.52 | | 31.81 | | 17.14 | | | | 182.77 | 4,071.70 |
| Equipment | | | | | | | | | | | | | | | | | | | | |
| DTLA APC | | | | | 3,864.75 | | | | | | | | | | | | | | | |
| License & Permit | | 926.22 | | | 158.00 | | | | | 125.00 | | | | 300.00 | 432.00 | | | | | |
| Uncategorized Expense | | | | | | | | | | | | | | | | | | | | |
| Meals and Entertainment | | | | | | | | | | | | | | | | | | | | |
| Membership | | | | | | | | | | | | | | | | | | 199.00 | | |
| Payroll-GASUR | 0.73 | 18.82 | 21.99 | 17.82 | 11.09 | 5.70 | 2.99 | | | | | | | | | | | | | |
| Entertainment | | | | | | | | | | | | | | | | | | | | |
| Medical | | | | | | | | | | | | | | | | | | 29.51 | | |
| Paroll-CAETT | 1.94 | | | | | | | | | | | | | | | | | | | |
| Payroll | | | | | 0.00 | | | 0.00 | | | | | | | | | | | | |
| Reimbursement of Payroll - ATL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Reimbursement of Payroll - Cary | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Reimbursement of Payroll - CLT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Reimbursement of Payroll - GBO | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Reimbursement of Payroll - LA | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Reimbursement of Payroll - OKC | | | | | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| Reimbursement of Payroll - Torrance | 0.00 | 0.00 | 0.00 | 0.00 | | | | | | | | | | | | | | | | |
| Unapplied Cash Bill Payment Expense | | | | | | | | | | | 0.00 | | | | | | | | | |
| Pension Expense | | | | | | | | | | | | | | | | | | | | |
| **Total Expenses** | $ 1,857,591.86 | $ 1,839,902.57 | $ 1,730,818.74 | $ 2,106,335.04 | $ 1,865,034.61 | $ 1,908,198.39 | $ 7,225,054.59 | $ 1,825,049.82 | $ 2,002,319.29 | $ 2,239,007.36 | $ 2,318,031.03 | $ 2,270,810.39 | $ 2,069,701.94 | $ 1,754,341.72 | $ 1,854,620.67 | $ 1,492,373.89 | $ 1,748,362.34 | $ 2,010,774.87 | $ 1,868,336.80 | $ 1,942,851.25 |
| **Net Operating Income** | -$ 128,109.82 | -$ 618,108.47 | -$ 55,347.64 | -$ 600,910.30 | -$ 53,399.62 | $ 218,018.83 | -$ 2,166,537.06 | -$ 307,978.22 | -$ 269,242.28 | -$ 130,869.13 | -$ 15,403.14 | $ 86,333.96 | -$ 169,970.47 | -$ 7,075.94 | -$ 446,066.52 | $ 22,715.84 | -$ 183,640.63 | -$ 543,870.98 | -$ 711,221.51 | -$ 567,055.04 |
| **Other Income** | | | | | | | | | | | | | | | | | | | | |
| Gain from TI Allowance | | | | | | | 200,000.00 | | | | | | | | | | | | | |
| Gain from Insurance claim | | | | | | | 1,740.55 | | | | | | | | | | | | | |
| **Total Other Income** | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 201,740.55 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| **Net Other Income** | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 201,740.55 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| **Net Income** | -$ 128,109.82 | -$ 618,108.47 | -$ 55,347.64 | -$ 600,910.30 | -$ 53,399.62 | $ 218,018.83 | -$ 1,964,796.51 | -$ 307,978.22 | -$ 269,242.28 | -$ 130,869.13 | -$ 15,403.14 | $ 86,333.96 | -$ 169,970.47 | -$ 7,075.94 | -$ 446,066.52 | $ 22,715.84 | -$ 183,640.63 | -$ 543,870.98 | -$ 711,221.51 | -$ 567,055.04 |

Monday, Mar 11, 2019 07:22:01 AM GMT-7 - Accrual Basis

**Flexogenix Group, Inc**
**Balance Sheet**
**As of January 31, 2019**

| | Jan 2016 | Feb 2016 | Mar 2016 | Apr 2016 | May 2016 | Jun 2016 | Jul 2016 | Aug 2016 | Sep 2016 | Oct 2016 | Nov 2016 | Dec 2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | | | | | | | |
| **Current Assets** | | | | | | | | | | | | |
| **Bank Accounts** | | | | | | | | | | | | |
| ATL Checking | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Cary BofA Checking | 31.00 | 31.00 | 31.00 | 31.00 | 442.24 | 4,083.39 | 985.65 | 2,930.99 | 4,266.18 | 615.46 | 3,442.87 | 864.56 |
| Charlotte Checking | 18,543.94 | 13,774.13 | 5,459.82 | 26,740.50 | 45,440.39 | 99.31 | 6,131.17 | 38,401.04 | 19,513.07 | 1,094.23 | 1,384.61 | 34,439.24 |
| Clearing Account | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| GBO Checking | | 0.00 | 0.00 | 0.00 | 0.00 | -35.00 | 78.59 | 9,124.34 | 20,568.19 | 419.06 | 1,726.76 | 7,909.15 |
| Group Checking | -5,543.17 | -122,002.66 | -46,617.60 | -614,724.04 | 114,384.07 | 14,014.86 | -93,731.28 | 243,059.98 | 56,862.08 | -86,515.83 | 75,600.40 | 7,787.48 |
| LA checking | 7,532.51 | 439.88 | 619.97 | 22,111.87 | 6,450.12 | 847.77 | 672.61 | 19,579.53 | 21,493.78 | 1,115.28 | 1,180.21 | 17,077.22 |
| OKC Checking | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Payroll Acct | 1,000.00 | 1,179.32 | 302.00 | 86,734.36 | 91,658.53 | 3,665.39 | 24.97 | -266.53 | 103,042.05 | 120.00 | 0.00 | 1,430.49 |
| Petty Cash | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 |
| Torrance Checking | 31.00 | 2,759.36 | 4,181.96 | 13,578.30 | 8,980.13 | 2,429.83 | 46.56 | 23,962.82 | 14,722.39 | 325.85 | 2,477.42 | 5,536.97 |
| Union Checking | 157,801.59 | 115,436.11 | 3,996.31 | 91,804.06 | 7,450.00 | 721.36 | 50.67 | 3,855.40 | 146.85 | 1,050.21 | 28,716.83 | 15,217.58 |
| **Total Bank Accounts** | **$ 182,596.87** | **$ 14,817.14** | **-$ 28,826.54** | **-$ 370,523.95** | **$ 278,005.48** | **$ 29,026.91** | **-$ 82,541.06** | **$ 343,847.57** | **$ 243,814.59** | **-$ 78,575.74** | **$ 117,729.10** | **$ 93,462.69** |
| **Accounts Receivable** | | | | | | | | | | | | |
| Accounts Receivable | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,196,862.82 |
| **Total Accounts Receivable** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 2,196,862.82** |
| **Other Current Assets** | | | | | | | | | | | | |
| Accrued Interest Expense | 22,725.50 | 22,725.50 | 22,725.50 | 22,725.50 | 22,725.50 | 22,725.50 | 22,725.50 | 22,725.50 | 22,725.50 | 22,725.50 | 22,725.50 | 22,725.50 |
| Inventory - braces | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Inventory - injectables | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Inventory - medical procedure kits | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan Receivable - Paul | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan Receivable - Sean | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan to Iris Chen | 15,794.20 | 17,105.43 | 18,482.65 | 19,858.17 | 21,234.71 | 22,610.70 | 23,986.86 | 25,362.22 | 26,738.30 | 30,114.43 | 32,872.78 | 6,729.93 |
| **Total Other Current Assets** | **$ 38,519.70** | **$ 39,830.93** | **$ 41,208.15** | **$ 42,583.67** | **$ 43,960.21** | **$ 45,336.20** | **$ 46,712.36** | **$ 48,087.72** | **$ 49,463.80** | **$ 52,839.93** | **$ 55,598.28** | **$ 29,455.43** |
| **Total Current Assets** | **$ 221,116.57** | **$ 54,648.07** | **$ 12,381.61** | **-$ 327,940.28** | **$ 321,965.69** | **$ 74,363.11** | **-$ 35,828.70** | **$ 391,935.29** | **$ 293,278.39** | **-$ 25,735.81** | **$ 173,327.38** | **$ 2,319,780.94** |
| **Fixed Assets** | | | | | | | | | | | | |
| Accumulated Depreciation | -272,210.92 | -290,369.70 | -308,528.48 | -326,687.26 | -344,846.04 | -363,004.82 | -381,163.60 | -399,322.38 | -417,481.16 | -435,639.94 | -453,798.72 | -471,957.50 |
| Furniture and Fixtures | 30,572.72 | 30,572.72 | 31,046.73 | 31,046.73 | 31,046.73 | 46,508.05 | 46,508.05 | 47,799.72 | 47,799.72 | 50,039.72 | 52,629.48 | 52,942.25 |
| Leasehold Improvements | 1,008,669.12 | 1,138,883.63 | 1,312,994.62 | 1,517,983.75 | 1,592,915.98 | 1,599,415.98 | 1,606,915.98 | 1,606,915.98 | 1,606,915.98 | 1,606,915.98 | 1,606,915.98 | 1,606,915.98 |
| Medical Equipment | 451,539.01 | 464,039.01 | 482,892.74 | 563,896.02 | 575,056.02 | 575,056.02 | 584,469.82 | 592,427.51 | 592,427.51 | 601,393.75 | 601,393.75 | 601,393.75 |
| Office Equipment | 74,735.57 | 79,145.85 | 97,069.34 | 131,886.81 | 139,472.40 | 165,956.34 | 168,803.75 | 169,743.05 | 173,398.98 | 179,808.72 | 179,808.72 | 179,808.72 |
| **Total Fixed Assets** | **$ 1,293,305.50** | **$ 1,422,271.51** | **$ 1,615,474.95** | **$ 1,918,126.05** | **$ 1,993,645.09** | **$ 2,023,931.57** | **$ 2,025,534.00** | **$ 2,017,563.88** | **$ 2,003,061.03** | **$ 2,002,518.23** | **$ 1,986,949.21** | **$ 1,969,103.20** |
| **Other Assets** | | | | | | | | | | | | |
| Security Deposit | 3,638.95 | 3,638.95 | 3,638.95 | 3,638.95 | 3,638.95 | 3,638.95 | 3,638.95 | 3,638.95 | 3,638.95 | 3,638.95 | 3,638.95 | 3,638.95 |
| Trademarks | | 0.00 | 1,650.00 | 1,650.00 | 1,650.00 | 13,954.25 | 15,913.25 | 19,196.50 | 19,196.50 | 19,196.50 | 19,196.50 | 19,196.50 |
| **Total Other Assets** | **$ 3,638.95** | **$ 3,638.95** | **$ 5,288.95** | **$ 5,288.95** | **$ 5,288.95** | **$ 17,593.20** | **$ 19,552.20** | **$ 22,835.45** | **$ 22,835.45** | **$ 22,835.45** | **$ 22,835.45** | **$ 22,835.45** |
| **TOTAL ASSETS** | **$ 1,518,061.02** | **$ 1,480,558.53** | **$ 1,633,145.51** | **$ 1,595,474.72** | **$ 2,320,899.73** | **$ 2,115,887.88** | **$ 2,009,257.50** | **$ 2,432,334.62** | **$ 2,319,174.87** | **$ 1,999,617.87** | **$ 2,183,112.04** | **$ 4,311,719.59** |
| **LIABILITIES AND EQUITY** | | | | | | | | | | | | |
| **Liabilities** | | | | | | | | | | | | |
| **Current Liabilities** | | | | | | | | | | | | |
| **Accounts Payable** | | | | | | | | | | | | |
| Accounts Payable | 1,737,713.43 | 1,753,194.83 | 1,572,545.36 | 2,117,786.73 | 2,693,692.93 | 2,753,687.05 | 3,051,030.43 | 3,405,918.39 | 3,284,713.89 | 3,255,191.29 | 3,326,288.81 | 3,444,713.69 |
| **Total Accounts Payable** | **$ 1,737,713.43** | **$ 1,753,194.83** | **$ 1,572,545.36** | **$ 2,117,786.73** | **$ 2,693,692.93** | **$ 2,753,687.05** | **$ 3,051,030.43** | **$ 3,405,918.39** | **$ 3,284,713.89** | **$ 3,255,191.29** | **$ 3,326,288.81** | **$ 3,444,713.69** |
| **Credit Cards** | | | | | | | | | | | | |
| AMEX Blue-02001-IRIS (deleted) | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 17,200.00 | 21,470.02 | 0.00 | 12,138.58 | 12,138.58 | 12,138.58 |
| AMEX CORP | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Aeisha | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Amanda | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Bethany | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Eric | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Iris | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Jimmy | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Lisa | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-LJ | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Logan | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Mike | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Sean | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Sharon | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Tyler | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Vivian | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total AMEX CORP** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** |
| AMEX Flexogenix CA | 131,750.00 | 149,073.73 | 153,255.80 | 144,638.08 | 154,813.08 | 188,862.68 | 188,900.68 | 184,248.67 | 189,757.70 | 185,382.00 | 169,932.00 | 154,482.00 |
| AMEX Group | 67,998.75 | 55,634.59 | 92,163.10 | 92,383.55 | 93,055.53 | 92,498.05 | 98,845.45 | 85,361.48 | 85,576.59 | 101,115.56 | 99,110.87 | 97,477.28 |
| Amex North Carolina | | 0.00 | 4,890.56 | 1,789.36 | 0.00 | 4,201.73 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX-2005-Paul | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 112,885.45 | 112,885.45 | 112,885.45 | 102,885.45 | 93,925.45 | 84,965.45 |
| BofA CreditCard | 7,931.00 | 10,035.75 | 17,754.77 | 0.00 | 0.00 | 17,405.69 | 19,963.10 | 3,942.48 | 9,975.61 | 19,954.25 | 11,379.36 | 20,002.11 |
| BofA Group CC | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| BofA Group CC-IC | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| BofA Group CC-SW | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total BofA Group CC** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** |
| Chase Ink | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Chase Ink - Aeisha | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Chase Ink - Amanda | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Chase Ink - Iris | -36,574.33 | -61,422.81 | -47,612.61 | 11,305.60 | 5,455.08 | 11,752.30 | 12,089.52 | 8,094.04 | -24,705.81 | 0.00 | -24,070.33 | -32,175.08 |
| Chase Ink - Jonathan | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Chase Ink - Lisa H | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Chase Ink - LJ | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Chase Ink - Logan | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Chase Ink - Mike | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Chase Ink - PM | 24,241.24 | 33,342.24 | 36,416.25 | 0.00 | 5,763.79 | 6,452.09 | 8,874.89 | 12,718.52 | 13,299.42 | 0.00 | 52.15 | 138.99 |
| Chase Ink - Sean | 24,054.42 | 30,475.16 | 43,964.35 | 0.00 | 13,893.05 | 18,940.84 | 24,693.64 | 30,646.41 | 34,886.99 | 35,201.48 | 35,201.48 | 35,201.48 |
| Chase Ink - Shannon | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Chase Ink - Vivian | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 23,562.39 | 31,478.14 |
| Chase Ink - Wendy | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Chase Ink** | **$ 11,721.33** | **$ 2,394.59** | **$ 32,767.99** | **$ 11,305.60** | **$ 25,111.92** | **$ 37,145.23** | **$ 45,658.05** | **$ 51,458.97** | **$ 23,480.60** | **$ 35,201.48** | **$ 34,745.69** | **$ 34,643.53** |
| Citi AA | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Citi AA- Iris | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Citi AA** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** |
| Iris Amex Blue | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13,000.00 | 13,099.19 |
| Iris Chase Freedom | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 39,563.95 | 0.00 | 25,061.77 | 29,789.22 | 29,166.22 |
| Iris Chase Sapphire | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -2,000.00 |
| Iris Chase Slate | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8,056.83 |
| Iris Platinum | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13,809.95 | 0.00 | 12,432.00 | 12,800.00 | 13,742.30 |
| Union Bank Credit Card | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| UnionBk CreditCard-IC | 0.00 | 50.69 | 0.00 | 7,301.69 | 0.00 | 0.00 | 20,000.00 | 211.10 | 211.10 | 20,077.54 | 19,591.20 | 20,177.63 |
| UnionBk CreditCard-PM | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| UnionBk CreditCard-SW | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Union Bank Credit Card** | **$ 0.00** | **$ 50.69** | **$ 0.00** | **$ 7,301.69** | **$ 0.00** | **$ 0.00** | **$ 20,000.00** | **$ 211.10** | **$ 211.10** | **$ 20,077.54** | **$ 19,591.20** | **$ 20,177.63** |
| **Total Credit Cards** | **$ 219,401.08** | **$ 217,189.35** | **$ 300,832.22** | **$ 257,418.28** | **$ 272,980.53** | **$ 340,113.38** | **$ 503,452.73** | **$ 512,952.07** | **$ 421,887.05** | **$ 514,248.63** | **$ 496,412.37** | **$ 485,951.12** |
| **Other Current Liabilities** | | | | | | | | | | | | |
| Accrued expenses | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Accrued Payroll - ATL | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Accrued Payroll - Cary | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 80,485.32 |
| Accrued Payroll - Charlotte | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 54,949.94 |
| Accrued Payroll - Greensboro | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 39,367.96 |
| Accrued Payroll - Group | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 38,236.43 |
| Accrued Payroll - LA | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 64,639.73 |
| Accrued Payroll - OKC | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Accrued Payroll - Torrance | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 16,159.94 |
| Accrued Payroll Taxes - Cary | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,577.06 |
| Accrued Payroll Taxes - Charlotte | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,595.87 |
| Accrued Payroll Taxes - Greensboro | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,254.04 |
| Accrued Payroll Taxes - Group | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,164.82 |
| Accrued Payroll Taxes - LA | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,414.30 |
| Accrued Payroll Taxes - Torrance | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 767.23 |
| Loan from ARGUS CAPITAL | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from BlueVine | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from BMF | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

| | Jan 2017 | Feb 2017 | Mar 2017 | Apr 2017 | May 2017 | Jun 2017 | Jul 2017 | Aug 2017 | Sep 2017 | Oct 2017 | Nov 2017 | Dec 2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | | | | | | | |
| **Current Assets** | | | | | | | | | | | | |
| **Bank Accounts** | | | | | | | | | | | | |
| ATL Checking | 0.00 | 0.00 | 0.00 | 0.00 | 70.07 | 38.43 | 471.83 | 809.59 | 132.32 | 20,339.03 | 32,573.95 | 6,074.18 |
| Cary BofA Checking | 7,717.45 | 1,941.44 | 822.44 | 1,795.15 | 8,966.84 | 182.36 | 2,796.44 | 644.52 | 329.90 | 16,985.80 | 22,102.25 | 11,985.07 |
| Charlotte Checking | 28,855.62 | 100,090.63 | 2,288.48 | 686.61 | 7,600.80 | 185.05 | 23,225.46 | 286.22 | 811.27 | 78,553.54 | 288,645.27 | 7,882.03 |
| Clearing Account | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 99.05 | 0.00 | 0.00 | 0.00 | 0.00 |
| GBO Checking | 9,951.49 | 14,593.34 | 1,530.02 | 868.02 | 8,141.56 | 2,850.33 | 3,529.44 | 400.93 | 987.75 | 8,716.33 | 23,972.34 | 5,869.23 |
| Group Checking | 231,407.63 | 92,565.18 | 71,591.30 | 49,077.56 | 174,521.20 | 126,987.29 | 36,874.93 | 239,302.62 | 161,666.38 | 30,258.60 | 181,436.43 | 502,206.92 |
| LA checking | 7,344.01 | 50,442.47 | 483.51 | 938.90 | 2,067.53 | 1,286.94 | 798.10 | 817.69 | 133.41 | 40,078.87 | 59,219.10 | 2,948.08 |
| OKC Checking | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Payroll Acct | 3,450.07 | 1,138.82 | 244.40 | 1,714.14 | 228.64 | 1,943.63 | 302.34 | 228.64 | 228.64 | 0.00 | 2,833.53 | 0.00 |
| Petty Cash | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 0.00 |
| Torrance Checking | 4,375.09 | 1,470.17 | 642.06 | 595.43 | 3,831.43 | 814.58 | 763.87 | 990.76 | 17.24 | 4,790.97 | 1,736.63 | 2,248.23 |
| Union Checking | 917.33 | 9,614.07 | 167.91 | 4,047.87 | 10,333.58 | 5,909.83 | 9,233.66 | 640.17 | 4,375.98 | 5,856.97 | 1,149.28 | 87.67 |
| **Total Bank Accounts** | **$ 297,218.69** | **$ 275,056.12** | **$ 80,970.12** | **$ 62,923.68** | **$ 218,961.65** | **$ 143,398.44** | **$ 81,196.07** | **$ 247,420.19** | **$ 171,882.89** | **$ 208,780.11** | **$ 616,868.78** | **$ 539,301.41** |
| **Accounts Receivable** | | | | | | | | | | | | |
| Accounts Receivable | 2,231,467.44 | 2,274,305.27 | 2,333,342.04 | 2,349,092.55 | 2,368,405.26 | 2,357,977.46 | 2,133,713.01 | 2,141,582.91 | 2,105,117.96 | 2,217,676.21 | 2,437,153.58 | 1,214,243.05 |
| **Total Accounts Receivable** | **$ 2,231,467.44** | **$ 2,274,305.27** | **$ 2,333,342.04** | **$ 2,349,092.55** | **$ 2,368,405.26** | **$ 2,357,977.46** | **$ 2,133,713.01** | **$ 2,141,582.91** | **$ 2,105,117.96** | **$ 2,217,676.21** | **$ 2,437,153.58** | **$ 1,214,243.05** |
| **Other Current Assets** | | | | | | | | | | | | |
| Accrued Interest Expense | 22,725.50 | 22,725.50 | 22,725.50 | 22,725.50 | 22,725.50 | 22,725.50 | 22,725.50 | 22,725.50 | 22,725.50 | 22,725.50 | 22,725.50 | 0.00 |
| Inventory - braces | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 44,481.60 |
| Inventory - injectables | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 217,476.20 |
| Inventory - medical procedure kits | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan Receivable - Paul | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan Receivable - Sean | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan to Iris Chen | -14,611.77 | -13,611.77 | -12,111.77 | -10,611.77 | -9,111.77 | -7,611.77 | -6,111.77 | -4,611.77 | -1,000.00 | 0.00 | 0.00 | 0.00 |
| **Total Other Current Assets** | **$ 8,113.73** | **$ 9,113.73** | **$ 10,613.73** | **$ 12,113.73** | **$ 13,613.73** | **$ 15,113.73** | **$ 16,613.73** | **$ 18,113.73** | **$ 21,725.50** | **$ 22,725.50** | **$ 22,725.50** | **$ 261,957.80** |
| **Total Current Assets** | **$ 2,536,799.86** | **$ 2,558,475.12** | **$ 2,424,925.89** | **$ 2,424,129.96** | **$ 2,600,980.64** | **$ 2,516,489.63** | **$ 2,231,522.81** | **$ 2,407,116.83** | **$ 2,298,726.35** | **$ 2,449,181.82** | **$ 3,076,747.86** | **$ 2,015,502.26** |
| **Fixed Assets** | | | | | | | | | | | | |
| Accumulated Depreciation | -490,116.28 | -508,275.06 | -526,437.48 | -544,713.40 | -563,223.05 | -582,031.38 | -600,945.10 | -619,807.92 | -638,670.74 | -657,533.56 | -676,396.38 | -614,780.59 |
| Furniture and Fixtures | 52,942.25 | 52,942.25 | 52,942.25 | 56,444.54 | 63,492.54 | 73,149.77 | 76,478.54 | 76,478.54 | 76,478.54 | 76,478.54 | 76,767.62 | 78,122.53 |
| Leasehold Improvements | 1,606,915.98 | 1,606,915.98 | 1,606,915.98 | 1,614,165.98 | 1,614,165.98 | 1,622,156.78 | 1,623,511.69 | 1,623,511.69 | 1,423,511.69 | 1,423,511.69 | 1,423,511.69 | 846,281.07 |
| Medical Equipment | 601,393.75 | 601,393.75 | 601,393.75 | 606,250.36 | 616,939.56 | 623,759.98 | 626,351.47 | 626,351.47 | 626,351.47 | 626,351.47 | 626,351.47 | 626,351.47 |
| Office Equipment | 179,808.72 | 179,808.72 | 180,114.24 | 180,114.24 | 182,010.97 | 186,743.11 | 188,946.76 | 188,946.76 | 189,488.14 | 189,434.91 | 189,434.91 | 206,416.26 |
| **Total Fixed Assets** | **$ 1,950,944.42** | **$ 1,932,785.64** | **$ 1,914,928.74** | **$ 1,912,261.72** | **$ 1,913,386.00** | **$ 1,923,778.26** | **$ 1,914,343.36** | **$ 1,895,480.54** | **$ 1,677,159.10** | **$ 1,658,243.05** | **$ 1,639,669.31** | **$ 1,142,390.74** |
| **Other Assets** | | | | | | | | | | | | |
| Security Deposit | 3,638.95 | 3,638.95 | 3,638.95 | 5,463.95 | 35,970.33 | 35,970.33 | 35,970.33 | 35,970.33 | 9,066.45 | 29,601.52 | 29,601.52 | 56,505.40 |
| Trademarks | 19,196.50 | 19,196.50 | 19,196.50 | 19,196.50 | 19,196.50 | 19,196.50 | 19,196.50 | 19,196.50 | 19,196.50 | 19,196.50 | 19,196.50 | 19,196.50 |
| **Total Other Assets** | **$ 22,835.45** | **$ 22,835.45** | **$ 22,835.45** | **$ 24,660.45** | **$ 55,166.83** | **$ 55,166.83** | **$ 55,166.83** | **$ 55,166.83** | **$ 28,262.95** | **$ 48,798.02** | **$ 48,798.02** | **$ 75,701.90** |
| **TOTAL ASSETS** | **$ 4,510,579.73** | **$ 4,514,096.21** | **$ 4,362,690.08** | **$ 4,361,052.13** | **$ 4,569,533.47** | **$ 4,495,434.72** | **$ 4,201,033.00** | **$ 4,357,764.20** | **$ 4,004,148.40** | **$ 4,156,222.89** | **$ 4,765,215.19** | **$ 3,233,594.90** |
| **LIABILITIES AND EQUITY** | | | | | | | | | | | | |
| **Liabilities** | | | | | | | | | | | | |
| **Current Liabilities** | | | | | | | | | | | | |
| **Accounts Payable** | | | | | | | | | | | | |
| Accounts Payable | 3,877,820.19 | 4,043,477.18 | 4,033,995.01 | 4,066,195.19 | 4,130,922.96 | 4,105,243.49 | 4,280,226.56 | 4,585,260.49 | 4,864,010.27 | 4,975,621.62 | 4,639,808.89 | 4,573,335.32 |
| **Total Accounts Payable** | **$ 3,877,820.19** | **$ 4,043,477.18** | **$ 4,033,995.01** | **$ 4,066,195.19** | **$ 4,130,922.96** | **$ 4,105,243.49** | **$ 4,280,226.56** | **$ 4,585,260.49** | **$ 4,864,010.27** | **$ 4,975,621.62** | **$ 4,639,808.89** | **$ 4,573,335.32** |
| **Credit Cards** | | | | | | | | | | | | |
| AMEX Blue-02001-IRIS (deleted) | 12,138.58 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX CORP | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -100,000.00 | -1,000,000.00 | -1,930,000.00 |
| AMEX Corp-Aeisha | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 297.70 | 340.36 | 0.00 |
| AMEX Corp-Amanda | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 423.44 | 75.00 | 60.00 |
| AMEX Corp-Bethany | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Eric | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 414.60 | 0.00 |
| AMEX Corp-Iris | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,015.95 | 5,621.13 | 20,670.41 |
| AMEX Corp-Jimmy | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Lisa | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 154.13 | 757.56 | 1.82 |
| AMEX Corp-LJ | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.94 | 170.91 | 178.70 |
| AMEX Corp-Logan | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Mike | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 478.10 | 1,942.99 | 381.28 |
| AMEX Corp-Sean | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13,809.14 | 29,723.20 | 46,621.63 |
| AMEX Corp-Sharon | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 25.71 | 59.07 | 0.00 |
| AMEX Corp-Tyler | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 848.40 | 416.88 |
| AMEX Corp-Vivian | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 730,701.21 | 1,771,032.49 | 2,757,491.49 |
| **Total AMEX CORP** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 649,006.32** | **$ 810,985.71** | **$ 895,822.21** |
| AMEX Flexogenix CA | 139,032.00 | 123,582.00 | 108,132.00 | 92,682.00 | 77,232.00 | 61,782.00 | 46,332.00 | 30,882.00 | 15,432.00 | 0.00 | 0.00 | 0.00 |
| AMEX Group | 123,279.82 | 105,669.62 | 102,343.59 | 113,759.19 | 115,102.84 | 114,010.08 | 117,322.17 | 108,779.33 | 89,306.10 | 260.50 | 99,521.09 | 14,188.62 |
| Amex North Carolina | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX-2005-Paul | 76,005.45 | 67,045.45 | 58,085.45 | 49,125.45 | 40,165.45 | 31,205.45 | 22,245.45 | 13,285.45 | 4,325.45 | 0.00 | 0.00 | 0.00 |
| BofA CreditCard | 18,922.99 | 20,283.95 | 20,024.30 | 18,823.57 | 19,168.79 | 18,525.24 | 19,205.66 | 20,038.70 | 18,864.38 | 18,210.71 | 17,555.21 | 0.00 |
| BofA Group CC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| BofA Group CC-IC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| BofA Group CC-SW | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total BofA Group CC** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** |
| Chase Ink | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Chase Ink - Aeisha | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Chase Ink - Amanda | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Chase Ink - Iris | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 285.19 |
| Chase Ink - Jonathan | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Chase Ink - Lisa H | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Chase Ink - LJ | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Chase Ink - Logan | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Chase Ink - Mike | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Chase Ink - PM | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Chase Ink - Sean | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,717.86 |
| Chase Ink - Shannon | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Chase Ink - Vivian | 33,590.86 | 30,172.16 | 27,063.57 | 31,923.52 | 34,458.54 | 25,940.80 | 33,423.76 | 29,280.72 | 34,205.34 | 24,714.11 | 1,153.61 | 1,919.81 |
| Chase Ink - Wendy | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Chase Ink** | **$ 33,590.86** | **$ 30,172.16** | **$ 27,063.57** | **$ 31,923.52** | **$ 34,458.54** | **$ 25,940.80** | **$ 33,423.76** | **$ 29,280.72** | **$ 34,205.34** | **$ 24,714.11** | **$ 1,153.61** | **$ 3,922.86** |
| Citi AA | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Citi AA- Iris | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Citi AA** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** |
| Iris Amex Blue | 16,099.19 | 16,216.69 | 15,958.62 | 15,691.14 | 13,000.00 | 13,051.94 | 13,100.00 | 13,100.00 | 13,164.95 | 13,041.39 | 12,904.44 | 52.43 |
| Iris Chase Freedom | 29,817.90 | 29,495.59 | 29,141.92 | 28,903.42 | 8,590.50 | 30,000.00 | 30,000.00 | 30,317.57 | 30,025.53 | 29,699.06 | 0.00 | 0.00 |
| Iris Chase Sapphire | -3,199.61 | -4,096.25 | -8,862.73 | -7,992.35 | 7,834.16 | -15,974.76 | -19,119.47 | -18,925.69 | -17,267.75 | -16,582.27 | -16,955.73 | -17,563.18 |
| Iris Chase Slate | 8,257.68 | 9,220.96 | 9,686.96 | 9,589.96 | 9,493.96 | 9,398.96 | 9,304.96 | 9,211.96 | 9,118.96 | 9,026.96 | 9,123.33 | 64.70 |
| Iris Platinum | 8,129.66 | 6,369.78 | 4,607.44 | 13,500.00 | 13,500.00 | 13,500.00 | 13,000.00 | 29,700.96 | 231,638.05 | 0.00 | 105,500.59 | 111,087.66 |
| Union Bank Credit Card | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| UnionBk CreditCard-IC | 19,818.87 | 19,194.16 | 19,416.87 | 19,220.64 | 19,026.33 | 18,620.09 | 18,657.90 | 18,472.39 | 18,280.68 | 18,104.59 | 17,916.89 | 0.00 |
| UnionBk CreditCard-PM | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| UnionBk CreditCard-SW | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Union Bank Credit Card** | **$ 19,818.87** | **$ 19,194.16** | **$ 19,416.87** | **$ 19,220.64** | **$ 19,026.33** | **$ 18,620.09** | **$ 18,657.90** | **$ 18,472.39** | **$ 18,280.68** | **$ 18,104.59** | **$ 17,916.89** | **$ 0.00** |
| **Total Credit Cards** | **$ 481,893.39** | **$ 423,154.11** | **$ 385,597.99** | **$ 385,226.54** | **$ 357,572.57** | **$ 320,059.80** | **$ 303,472.43** | **$ 284,143.39** | **$ 447,093.69** | **$ 745,481.37** | **$ 1,057,705.14** | **$ 1,007,575.30** |
| **Other Current Liabilities** | | | | | | | | | | | | |
| Accrued expenses | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50,000.00 |
| Accrued Payroll - ATL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 32,600.76 |
| Accrued Payroll - Cary | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40,891.96 |
| Accrued Payroll - Charlotte | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50,902.01 |
| Accrued Payroll - Greensboro | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 49,780.96 |
| Accrued Payroll - Group | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 98,021.88 |
| Accrued Payroll - LA | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 27,508.79 |
| Accrued Payroll - OKC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Accrued Payroll - Torrance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 12,051.91 |
| Accrued Payroll Taxes - Cary | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Accrued Payroll Taxes - Charlotte | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Accrued Payroll Taxes - Greensboro | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Accrued Payroll Taxes - Group | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Accrued Payroll Taxes - LA | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Accrued Payroll Taxes - Torrance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from ARGUS CAPITAL | 0.00 | 0.00 | 0.00 | 0.00 | 204,147.90 | 164,862.28 | 129,148.08 | 88,076.75 | 52,362.55 | 14,862.64 | -2,481.60 | 0.00 |
| Loan from BlueVine | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from BMF | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

| | Jan 2018 | Feb 2018 | Mar 2018 | Apr 2018 | May 2018 | Jun 2018 | Jul 2018 | Aug 2018 | Sep 2018 | Oct 2018 | Nov 2018 | Dec 2018 | Jan 2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | | | | | | | | |
| **Current Assets** | | | | | | | | | | | | | |
| **Bank Accounts** | | | | | | | | | | | | | |
| ATL Checking | 12,120.68 | 8,590.29 | 21,582.29 | 13,550.90 | 24,439.04 | 3,430.55 | 6,377.95 | 1,912.67 | 3,905.19 | 149.30 | 400.14 | 8,436.70 | 8,647.04 |
| Cary BofA Checking | 4,935.91 | 12,209.51 | 10,539.37 | 4,576.25 | 30,070.43 | 855.60 | 9,015.13 | 453.56 | 5,021.49 | 5.47 | 541.09 | 404.35 | 169.60 |
| Charlotte Checking | 87,652.06 | 69,583.36 | 62,492.64 | 1,421.92 | 109,341.51 | 2,532.14 | 104,294.27 | 1,476.74 | 337.64 | 3,286.81 | 617.10 | 47,301.14 | 29,750.70 |
| Clearing Account | 0.00 | 0.00 | 5,827.27 | 5,827.27 | 5,827.27 | 262.87 | 0.00 | -1,584.48 | 0.00 | -38,087.52 | -3,191.60 | 0.00 | -400,000.00 |
| GBO Checking | 10,059.80 | 9,360.45 | 20,562.18 | 9,625.32 | 15,801.64 | 5,418.37 | 5,192.45 | 722.36 | 1,164.33 | 807.82 | 834.28 | 709.73 | 15,470.68 |
| Group Checking | 138,922.81 | 130,707.27 | 94,396.32 | 19,129.59 | 55,995.80 | 665,531.10 | 88,663.26 | -49,608.73 | -7,140.44 | -6,509.19 | -94,224.72 | -142,097.37 | -10,149.68 |
| LA checking | 36,495.47 | 7,393.19 | 9,590.84 | 15,819.30 | 21,369.96 | 327.44 | 33,290.48 | 353.20 | 401.04 | 47.91 | 1,600.12 | 6,673.50 | 4,584.82 |
| OKC Checking | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 242,368.45 | 379.46 | 501.94 | 79,972.82 | 781.76 |
| Payroll Acct | 568.70 | 0.00 | 326.14 | 12,916.86 | 1,100.00 | 0.00 | 35.40 | 1,584.48 | 0.00 | 0.00 | 4,059.60 | 100.00 | 2,242.04 |
| Petty Cash | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Torrance Checking | 171.33 | 4,179.42 | 418.73 | 1.98 | 1,201.27 | 1,212.20 | 1,647.79 | 169.84 | 1,179.43 | 506.62 | 488.03 | 15.91 | 395.86 |
| Union Checking | 11,335.56 | 15,427.63 | 4,058.10 | 8,237.22 | 642.05 | 7,494.14 | 4,579.75 | 4,953.25 | 5,888.84 | 2,717.13 | 4,157.36 | 6,615.21 | 5,935.92 |
| **Total Bank Accounts** | **$ 302,262.32** | **$ 257,451.12** | **$ 229,793.88** | **$ 91,106.61** | **$ 265,788.97** | **$ 687,064.41** | **$ 253,096.48** | **-$ 39,567.11** | **$ 253,125.97** | **-$ 36,696.19** | **-$ 84,216.66** | **$ 8,131.99** | **-$ 342,171.26** |
| **Accounts Receivable** | | | | | | | | | | | | | |
| Accounts Receivable | 1,120,691.21 | 1,418,414.81 | 1,492,260.41 | 1,601,259.10 | 1,502,517.32 | 1,390,377.81 | 1,305,001.70 | 1,217,351.44 | 1,003,084.55 | 1,084,547.23 | 1,044,589.65 | 867,395.58 | 1,129,130.90 |
| **Total Accounts Receivable** | **$ 1,120,691.21** | **$ 1,418,414.81** | **$ 1,492,260.41** | **$ 1,601,259.10** | **$ 1,502,517.32** | **$ 1,390,377.81** | **$ 1,305,001.70** | **$ 1,217,351.44** | **$ 1,003,084.55** | **$ 1,084,547.23** | **$ 1,044,589.65** | **$ 867,395.58** | **$ 1,129,130.90** |
| **Other Current Assets** | | | | | | | | | | | | | |
| Accrued Interest Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Inventory - braces | 36,460.42 | 29,366.40 | 18,015.82 | 101,706.54 | 87,419.26 | 99,078.16 | 112,975.78 | 94,090.74 | 100,511.52 | 101,437.64 | 85,594.80 | 92,635.10 | 87,894.44 |
| Inventory - injectables | 235,342.86 | 204,857.61 | 265,096.35 | 277,328.99 | 249,054.22 | 204,908.63 | 282,008.17 | 302,142.89 | 268,414.33 | 279,634.12 | 263,983.58 | 232,966.43 | 180,633.54 |
| Inventory - medical procedure kits | 26,910.86 | 42,441.94 | 31,335.00 | 26,950.00 | 31,225.00 | 24,481.35 | 23,130.00 | 19,045.00 | 15,160.00 | 13,030.00 | 14,830.00 | 16,865.00 | 12,900.00 |
| Loan Receivable - Paul | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan Receivable - Sean | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan to Iris Chen | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Other Current Assets** | **$ 298,714.14** | **$ 276,665.95** | **$ 314,447.17** | **$ 405,985.53** | **$ 367,698.48** | **$ 328,468.14** | **$ 418,113.95** | **$ 415,278.63** | **$ 384,085.85** | **$ 394,101.76** | **$ 364,408.38** | **$ 342,466.53** | **$ 281,427.98** |
| **Total Current Assets** | **$ 1,721,667.67** | **$ 1,952,531.88** | **$ 2,036,501.46** | **$ 2,098,351.24** | **$ 2,136,004.77** | **$ 2,405,910.36** | **$ 1,976,212.13** | **$ 1,593,062.96** | **$ 1,640,296.37** | **$ 1,441,952.80** | **$ 1,324,781.37** | **$ 1,217,994.10** | **$ 1,068,387.62** |
| **Fixed Assets** | | | | | | | | | | | | | |
| Accumulated Depreciation | -641,759.92 | -668,739.25 | -696,024.16 | -723,309.07 | -750,593.98 | -750,593.98 | -805,163.80 | -832,448.71 | -859,733.62 | -887,018.53 | -914,303.44 | -926,393.22 | -955,100.71 |
| Furniture and Fixtures | 78,122.53 | 78,122.53 | 78,122.53 | 78,122.53 | 78,122.53 | 78,122.53 | 78,122.53 | 78,122.53 | 78,122.53 | 84,755.04 | 88,173.12 | 87,344.73 | 87,344.73 |
| Leasehold Improvements | 846,281.07 | 846,281.07 | 846,281.07 | 846,281.07 | 846,281.07 | 846,281.07 | 846,281.07 | 846,281.07 | 846,281.07 | 846,281.07 | 846,281.07 | 917,579.08 | 917,579.08 |
| Medical Equipment | 626,351.47 | 626,351.47 | 626,351.47 | 626,351.47 | 626,351.47 | 640,392.18 | 640,392.18 | 640,392.18 | 640,392.18 | 642,361.57 | 642,361.57 | 640,483.16 | 640,483.16 |
| Office Equipment | 206,416.26 | 206,416.26 | 217,417.07 | 217,417.07 | 217,417.07 | 217,417.07 | 217,417.07 | 217,417.07 | 217,417.07 | 217,417.07 | 217,417.07 | 200,137.50 | 200,137.50 |
| **Total Fixed Assets** | **$ 1,115,411.41** | **$ 1,088,432.08** | **$ 1,072,147.98** | **$ 1,044,863.07** | **$ 1,017,578.16** | **$ 1,031,618.87** | **$ 977,049.05** | **$ 949,764.14** | **$ 922,479.23** | **$ 903,796.22** | **$ 879,929.39** | **$ 919,151.25** | **$ 890,443.76** |
| **Other Assets** | | | | | | | | | | | | | |
| Security Deposit | 56,505.40 | 56,505.40 | 56,505.40 | 56,505.40 | 56,505.40 | 56,505.40 | 56,505.40 | 56,505.40 | 116,518.16 | 117,218.16 | 117,218.16 | 119,498.16 | 119,098.16 |
| Trademarks | 19,196.50 | 19,196.50 | 19,196.50 | 19,196.50 | 19,196.50 | 19,196.50 | 19,196.50 | 1,650.00 | 1,650.00 | 1,650.00 | 1,650.00 | 1,650.00 | 1,650.00 |
| **Total Other Assets** | **$ 75,701.90** | **$ 75,701.90** | **$ 75,701.90** | **$ 75,701.90** | **$ 75,701.90** | **$ 75,701.90** | **$ 75,701.90** | **$ 58,155.40** | **$ 118,168.16** | **$ 118,868.16** | **$ 118,868.16** | **$ 121,148.16** | **$ 120,748.16** |
| **TOTAL ASSETS** | **$ 2,912,780.98** | **$ 3,116,665.86** | **$ 3,184,351.34** | **$ 3,218,916.21** | **$ 3,229,284.83** | **$ 3,513,231.13** | **$ 3,028,963.08** | **$ 2,600,982.50** | **$ 2,680,943.76** | **$ 2,464,617.18** | **$ 2,323,578.92** | **$ 2,258,293.51** | **$ 2,079,579.54** |
| **LIABILITIES AND EQUITY** | | | | | | | | | | | | | |
| **Liabilities** | | | | | | | | | | | | | |
| **Current Liabilities** | | | | | | | | | | | | | |
| **Accounts Payable** | | | | | | | | | | | | | |
| Accounts Payable | 4,233,151.03 | 4,253,192.32 | 4,355,803.37 | 4,721,257.98 | 4,817,652.83 | 4,662,030.63 | 4,419,190.99 | 4,288,411.29 | 3,926,178.41 | 3,838,944.10 | 3,715,967.66 | 3,662,983.54 | 3,580,911.56 |
| **Total Accounts Payable** | **$ 4,233,151.03** | **$ 4,253,192.32** | **$ 4,355,803.37** | **$ 4,721,257.98** | **$ 4,817,652.83** | **$ 4,662,030.63** | **$ 4,419,190.99** | **$ 4,288,411.29** | **$ 3,926,178.41** | **$ 3,838,944.10** | **$ 3,715,967.66** | **$ 3,662,983.54** | **$ 3,580,911.56** |
| **Credit Cards** | | | | | | | | | | | | | |
| AMEX Blue-02001-IRIS (deleted) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX CORP | -2,680,000.00 | -3,300,000.00 | -3,936,000.00 | 0.00 | -650,000.00 | -1,035,000.00 | -1,624,165.69 | -2,019,126.69 | -2,416,374.43 | -2,696,374.43 | -2,783,856.87 | -2,828,856.87 | -2,883,856.87 |
| AMEX Corp-Aeisha | 0.00 | -224.17 | 0.00 | 846.09 | 888.15 | 0.00 | 0.00 | 128.78 | 328.78 | 406.78 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Amanda | 0.00 | -60.00 | -60.00 | -60.00 | -60.00 | -60.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Bethany | 0.00 | -102.82 | -102.82 | -102.82 | -102.82 | -102.82 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Eric | 0.00 | -100.78 | -100.78 | -100.78 | -100.78 | -100.78 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Iris | 22,436.24 | 24,679.95 | 28,943.58 | 33,704.85 | 31,381.75 | 37,516.58 | 39,779.52 | 44,268.94 | 48,470.90 | 48,570.95 | 48,570.95 | 107,640.46 | 127,862.66 |
| AMEX Corp-Jimmy | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 259.32 | 132.75 | 132.75 | 233.90 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Lisa | -1.82 | -89.67 | -89.67 | 411.60 | 911.84 | 0.00 | 59.18 | 431.99 | 486.30 | 608.50 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-LJ | 746.30 | 704.32 | 0.00 | 0.00 | 420.00 | 0.00 | 68.09 | 175.16 | 239.16 | 317.16 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Logan | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 115.82 | 106.03 | 448.49 | 526.49 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Mike | -381.28 | -445.76 | 548.60 | 1,697.77 | 2,578.83 | 0.00 | 1,363.27 | 1,774.86 | 2,401.50 | 2,512.30 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Sean | 58,263.62 | 63,719.40 | 77,497.48 | 83,513.85 | 104,872.72 | 120,462.12 | 137,209.61 | 154,016.96 | 189,650.60 | 191,463.22 | 191,463.22 | 191,463.22 | 191,463.22 |
| AMEX Corp-Sharon | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Tyler | 102.88 | -645.22 | -169.19 | 588.35 | 2,435.66 | 0.00 | 56.74 | 56.74 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Corp-Vivian | 3,404,914.22 | 4,020,242.33 | 4,724,755.73 | 689,656.36 | 1,303,539.02 | 1,769,821.05 | 2,239,020.94 | 2,608,759.46 | 3,250,590.37 | 3,261,870.84 | 3,261,870.84 | 3,261,870.84 | 3,261,870.84 |
| **Total AMEX CORP** | **$ 806,080.16** | **$ 807,677.58** | **$ 895,222.93** | **$ 810,155.27** | **$ 796,764.37** | **$ 892,536.15** | **$ 793,766.80** | **$ 790,724.98** | **$ 1,076,374.42** | **$ 810,135.71** | **$ 718,048.14** | **$ 732,117.65** | **$ 697,339.85** |
| AMEX Flexogenix CA | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX Group | 3,705.42 | 13,581.12 | 73,704.63 | 82,186.36 | 100,666.14 | 408.14 | 106,588.29 | 118,365.60 | 78,403.60 | 49,873.14 | 22,555.91 | 47,870.17 | 52,343.92 |
| Amex North Carolina | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| AMEX-2005-Paul | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| BofA CreditCard | 20,000.00 | 20,000.89 | 19,397.93 | 20,395.89 | 15,766.33 | 0.00 | 0.00 | 0.00 | 11,053.64 | 30,041.91 | 29,853.09 | 26,303.40 | 29,973.79 |
| BofA Group CC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| BofA Group CC-IC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -82,088.00 | -124,945.99 | -167,700.89 | -211,040.61 |
| BofA Group CC-SW | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 42,244.00 | 41,044.00 | 124,945.99 | 167,700.89 | 210,258.89 | 254,015.84 |
| **Total BofA Group CC** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 42,244.00** | **$ 41,044.00** | **$ 42,857.99** | **$ 42,754.90** | **$ 42,558.00** | **$ 42,975.23** |
| Chase Ink | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Chase Ink - Aeisha | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 105.79 | 155.68 | 548.68 |
| Chase Ink - Amanda | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 330.00 | 387.24 | 507.04 |
| Chase Ink - Iris | 3,662.58 | 3,989.93 | -32,448.48 | 0.00 | 217.07 | -53,886.82 | -53,503.66 | -52,498.50 | -56,561.89 | -128,919.38 | -240,055.29 | -302,325.57 | -353,007.09 |
| Chase Ink - Jonathan | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 445.01 | 458.55 | 458.55 |
| Chase Ink - Lisa H | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,231.89 | 1,231.89 | 1,231.89 |
| Chase Ink - LJ | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 58.98 | 107.50 | 407.50 |
| Chase Ink - Logan | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 152.50 | 207.61 | 283.14 |
| Chase Ink - Mike | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 437.32 | 1,365.47 | 1,420.90 |
| Chase Ink - PM | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Chase Ink - Sean | 2,116.97 | 2,648.37 | 2,826.72 | 3,404.55 | 4,240.63 | 7,269.61 | 7,815.48 | 8,851.42 | 11,481.18 | 25,376.75 | 30,657.35 | 35,979.00 | 38,119.69 |
| Chase Ink - Shannon | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 357.97 | 663.31 | 663.31 |
| Chase Ink - Vivian | 27,686.01 | 28,677.21 | 30,333.64 | 16,296.02 | 16,541.02 | 46,784.97 | 48,741.07 | 65,455.22 | 79,215.23 | 146,348.39 | 238,996.97 | 292,669.51 | 343,445.20 |
| Chase Ink - Wendy | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 200.99 |
| **Total Chase Ink** | **$ 33,465.56** | **$ 35,315.51** | **$ 711.88** | **$ 19,700.57** | **$ 20,998.72** | **$ 167.76** | **$ 3,052.89** | **$ 21,808.14** | **$ 34,134.52** | **$ 42,805.76** | **$ 32,718.49** | **$ 30,900.19** | **$ 34,279.80** |
| Citi AA | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Citi AA- Iris | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 616.90 | 8,657.17 | 15,545.97 | 19,981.52 |
| **Total Citi AA** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 616.90** | **$ 8,657.17** | **$ 15,545.97** | **$ 19,981.52** |
| Iris Amex Blue | 0.43 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Iris Chase Freedom | 30,000.00 | 30,000.00 | 543.16 | 10.06 | 0.00 | 0.00 | 0.00 | 0.00 | 30,000.00 | 30,000.00 | 29,997.55 | 29,850.00 | 29,141.00 |
| Iris Chase Sapphire | 26,838.99 | 27,422.83 | 31,448.93 | 32,100.91 | 36,334.27 | 15,080.79 | 0.00 | 0.00 | 48,791.96 | 63,957.95 | 52,907.82 | 54,984.75 | 52,133.89 |
| Iris Chase Slate | -90.00 | -90.00 | -90.00 | -90.00 | -90.00 | -90.00 | 0.00 | 0.00 | 9,945.00 | 9,612.72 | 9,825.00 | 10,000.00 | 9,709.77 |
| Iris Platinum | 143,386.62 | 190,899.59 | 338,859.52 | 268,187.40 | 314,353.12 | 96,534.80 | 187,807.95 | 362,051.36 | 2,113.47 | 52,371.73 | 291.71 | 51,933.65 | 63,672.46 |
| Union Bank Credit Card | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| UnionBk CreditCard-IC | 20,000.00 | 19,944.07 | 19,790.65 | 19,585.52 | 19,397.47 | 0.00 | 0.00 | 0.00 | 19,843.40 | 19,128.82 | 19,853.48 | 19,635.00 | 19,492.90 |
| UnionBk CreditCard-PM | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| UnionBk CreditCard-SW | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Union Bank Credit Card** | **$ 20,000.00** | **$ 19,944.07** | **$ 19,790.65** | **$ 19,585.52** | **$ 19,397.47** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 19,843.40** | **$ 19,128.82** | **$ 19,853.48** | **$ 19,635.00** | **$ 19,492.90** |
| **Total Credit Cards** | **$ 1,083,387.18** | **$ 1,144,751.59** | **$ 1,379,589.63** | **$ 1,252,231.98** | **$ 1,304,190.42** | **$ 1,004,637.64** | **$ 1,091,215.93** | **$ 1,335,194.08** | **$ 1,351,704.01** | **$ 1,151,402.63** | **$ 967,463.26** | **$ 1,061,698.78** | **$ 1,051,044.13** |
| **Other Current Liabilities** | | | | | | | | | | | | | |
| Accrued expenses | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 90,000.00 | 125,000.00 | 125,000.00 |
| Accrued Payroll - ATL | 36,933.02 | 40,026.29 | 16,225.03 | 19,620.30 | 26,120.83 | 30,409.68 | 40,863.90 | 14,569.47 | 16,470.51 | 23,590.48 | 27,938.94 | 25,130.01 | 8,780.10 |
| Accrued Payroll - Cary | 58,150.70 | 62,729.94 | 22,361.25 | 29,515.04 | 42,437.25 | 47,036.73 | 52,940.50 | 29,073.89 | 22,264.69 | 31,180.73 | 40,837.26 | 54,062.73 | 15,051.99 |
| Accrued Payroll - Charlotte | 63,783.36 | 64,940.66 | 17,513.55 | 28,902.45 | 34,920.52 | 43,252.00 | 51,975.50 | 20,933.38 | 23,860.59 | 28,118.24 | 36,955.79 | 43,170.50 | 13,924.03 |
| Accrued Payroll - Greensboro | 53,492.80 | 56,603.66 | 20,960.45 | 28,535.61 | 37,914.37 | 43,394.34 | 49,508.70 | 18,888.49 | 17,942.66 | 24,463.98 | 26,311.67 | 35,699.76 | 10,622.89 |
| Accrued Payroll - Group | 94,485.78 | 105,245.82 | 45,130.12 | 61,837.18 | 71,121.95 | 83,948.71 | 106,736.75 | 38,880.45 | 41,861.54 | 59,732.48 | 75,557.06 | 108,274.17 | 34,120.15 |
| Accrued Payroll - LA | 46,797.54 | 43,808.48 | 17,422.17 | 24,337.97 | 31,210.09 | 33,465.46 | 38,706.12 | 16,342.74 | 16,638.88 | 23,527.40 | 26,801.08 | 31,797.82 | 10,313.96 |
| Accrued Payroll - OKC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,235.50 | 16,330.67 | 12,324.07 | 7,231.44 |
| Accrued Payroll - Torrance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Accrued Payroll Taxes - Cary | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Accrued Payroll Taxes - Charlotte | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Accrued Payroll Taxes - Greensboro | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Accrued Payroll Taxes - Group | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Accrued Payroll Taxes - LA | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Accrued Payroll Taxes - Torrance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from ARGUS CAPITAL | 2,481.60 | 2,481.60 | 2,481.60 | 2,481.60 | 2,481.60 | 2,481.60 | 2,481.60 | 2,481.60 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from BlueVine | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30,735.05 | 25,733.93 | 20,550.32 | 13,804.02 | 8,185.12 | 29,199.22 | 23,794.60 |
| Loan from BMF | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 872,874.54 |

| | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Loan from Franklin Funding | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Global Capital | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Global Capital-3 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Hop Capital | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Jim Crossland | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Kalamata | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 81,666.63 | 46,666.56 | 13,333.16 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Knight Capital | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 223,828.70 | 195,419.70 |
| Loan from Lin | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 300,000.00 | 300,000.00 | 100,000.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from NCMIC | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Nextwave | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 260,350.87 | 229,356.67 | 195,263.05 | 161,169.43 | 130,175.23 |
| Loan from Par Funding | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Par Funding-2 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Par Funding-3 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Par Funding-4 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Par Funding-5 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Par Funding-6 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Par Funding-7 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Par Funding-8 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Platinum Rapid Funding | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 200,571.75 | 179,952.25 | 160,270.00 | 140,587.75 |
| Loan from Platinum RFG | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from ProMed | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 183,562.45 | 444,166.68 | 281,000.08 | 374,054.51 | 232,727.61 | 72,225.81 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| loan from QUEEN FUNDING LL | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 123,766.93 |
| Loan from Region Capital | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Shareholder-IRIS | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Shareholder-PAUL | 70,252.25 | 66,599.25 | 63,049.25 | 55,949.25 | 55,949.25 | 52,399.25 | 98,849.25 | 95,299.25 | 88,199.25 | 86,699.25 | 83,149.25 | 150,670.23 | 145,885.90 | 140,430.74 | 136,880.74 | 128,880.74 | 120,880.74 | 112,880.74 | 104,880.74 |
| Loan from Shareholder-SEAN | 40,435.32 | 39,124.08 | 37,746.85 | 36,371.32 | 34,994.78 | 33,618.79 | 32,242.63 | 30,867.26 | 29,491.18 | 26,115.04 | 35,826.71 | 69,281.58 | 75,150.68 | 81,341.07 | 77,708.25 | 74,159.36 | 70,589.09 | 67,023.69 | 63,458.38 |
| Loan from SRC | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 199,270.83 | 196,354.15 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from yellowstone | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 165,018.72 |
| Pension Costs Payable | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 0.00 | 0.00 | 0.00 | 63,030.31 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Other Current Liabilities | $ 210,687.57 | $ 205,723.33 | $ 200,796.10 | $ 192,320.57 | $ 190,944.03 | $ 186,018.04 | $ 231,091.88 | $ 409,728.96 | $ 561,857.11 | $ 393,814.37 | $ 574,697.10 | $ 879,988.93 | $ 805,866.38 | $ 718,125.96 | $ 574,939.86 | $ 632,968.52 | $ 770,833.03 | $ 890,034.84 | $ 1,052,455.53 |
| Total Current Liabilities | $ 2,167,802.08 | $ 2,176,107.51 | $ 2,074,173.68 | $ 2,567,525.58 | $ 3,157,617.49 | $ 3,279,818.47 | $ 3,785,575.04 | $ 4,328,599.42 | $ 4,268,458.05 | $ 4,163,254.29 | $ 4,397,398.28 | $ 4,810,653.74 | $ 5,165,579.96 | $ 5,184,757.25 | $ 4,994,532.86 | $ 5,084,390.25 | $ 5,259,328.56 | $ 5,315,338.13 | $ 5,636,154.52 |
| Long-Term Liabilities | | | | | | | | | | | | | | | | | | | |
| Shareholder Loan | 430,454.84 | 429,644.32 | 428,829.28 | 428,009.69 | 427,185.53 | 426,356.78 | 425,523.41 | 424,685.39 | 423,842.70 | 422,995.31 | 421,073.09 | 419,140.15 | 417,196.44 | 415,241.89 | 413,276.44 | 411,300.04 | 409,312.62 | 407,314.12 | 405,304.48 |
| Total Long-Term Liabilities | $ 430,454.84 | $ 429,644.32 | $ 428,829.28 | $ 428,009.69 | $ 427,185.53 | $ 426,356.78 | $ 425,523.41 | $ 424,685.39 | $ 423,842.70 | $ 422,995.31 | $ 421,073.09 | $ 419,140.15 | $ 417,196.44 | $ 415,241.89 | $ 413,276.44 | $ 411,300.04 | $ 409,312.62 | $ 407,314.12 | $ 405,304.48 |
| Total Liabilities | $ 2,598,256.92 | $ 2,605,751.83 | $ 2,503,002.96 | $ 2,995,535.27 | $ 3,584,803.02 | $ 3,706,175.25 | $ 4,211,098.45 | $ 4,753,284.81 | $ 4,692,300.75 | $ 4,586,249.60 | $ 4,818,471.37 | $ 5,229,793.89 | $ 5,582,776.40 | $ 5,599,999.14 | $ 5,407,809.30 | $ 5,495,690.29 | $ 5,668,641.18 | $ 5,722,652.25 | $ 6,041,459.00 |
| Equity | | | | | | | | | | | | | | | | | | | |
| Common Stock | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 185,000.00 | 260,000.00 | 310,000.00 | 310,000.00 | 310,000.00 | 314,900.00 |
| Opening Balance Equity | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -12,138.58 | -12,138.58 | -12,138.58 | 0.00 | 0.00 | 0.00 | 100.02 | 100.02 | 100.02 |
| Retained Earnings | 210,814.01 | 210,814.01 | 210,814.01 | 210,814.01 | 210,814.01 | 210,814.01 | 210,814.01 | 210,814.01 | 210,814.01 | 210,814.01 | 210,814.01 | 210,814.01 | -859,482.80 | -859,482.80 | -859,482.80 | -859,482.80 | -859,482.80 | -859,482.80 | -859,482.80 |
| Shareholder Contribution - Iris | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| Shareholder Contribution - Paul | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 |
| Shareholder Contributions - Sean | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 |
| Shareholder Distributions - Paul | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 |
| Shareholder Distributions - Sean | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 |
| Net Income | -1,244,556.99 | -1,289,554.39 | -1,034,218.54 | -1,564,421.64 | -1,428,264.38 | -1,754,648.46 | -2,366,202.04 | -2,485,311.28 | -2,537,486.97 | -2,750,992.82 | -2,787,716.32 | -1,070,296.81 | -154,122.37 | -354,967.21 | -389,183.50 | -528,702.44 | -493,272.01 | -621,381.83 | -1,239,490.30 |
| Total Equity | -$ 1,080,195.90 | -$ 1,125,193.30 | -$ 869,857.45 | -$ 1,400,060.55 | -$ 1,263,903.29 | -$ 1,590,287.37 | -$ 2,201,840.95 | -$ 2,320,950.19 | -$ 2,373,125.88 | -$ 2,586,631.73 | -$ 2,635,493.81 | -$ 918,074.30 | -$ 1,072,196.67 | -$ 1,085,902.93 | -$ 1,045,119.22 | -$ 1,134,638.16 | -$ 1,099,107.71 | -$ 1,227,217.53 | -$ 1,840,426.00 |
| TOTAL LIABILITIES AND EQUITY | $ 1,518,061.02 | $ 1,480,558.53 | $ 1,633,145.51 | $ 1,595,474.72 | $ 2,320,899.73 | $ 2,115,887.88 | $ 2,009,257.50 | $ 2,432,334.62 | $ 2,319,174.87 | $ 1,999,617.87 | $ 2,182,977.56 | $ 4,311,719.59 | $ 4,510,579.73 | $ 4,514,096.21 | $ 4,362,690.08 | $ 4,361,052.13 | $ 4,569,533.47 | $ 4,495,434.72 | $ 4,201,033.00 |

| | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Loan from Franklin Funding | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 385,000.00 |
| Loan from Global Capital | 126,142.80 | 108,285.60 | 89,535.54 | 71,678.34 | 53,821.14 | 366,536.14 | 336,350.27 | 301,398.21 | 268,034.88 | 233,082.82 | 199,719.49 | 166,356.16 | 129,815.37 | 99,629.50 | 64,677.44 | 32,902.84 | 1,128.24 | -506.00 |
| Loan from Global Capital-3 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 180,071.15 | 157,819.76 | 139,806.73 | 119,674.52 | 96,363.54 | 75,171.74 | 53,979.94 | 49,741.58 |
| Loan from Hop Capital | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 963,072.04 | 810,656.92 | 651,313.84 | 512,754.64 | 353,411.56 | 200,996.44 | 55,509.28 | 85.60 |
| Loan from Jim Crossland | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Kalamata | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Knight Capital | 162,749.35 | 134,340.35 | 104,510.90 | 74,681.45 | 46,272.45 | 16,443.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Lin | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from NCMIC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 18,000.00 | 17,411.00 | 16,822.00 | 16,233.00 | 15,644.00 | 15,055.00 | 14,466.00 | 13,877.00 | 13,288.00 |
| Loan from Nextwave | 94,531.90 | 63,537.70 | 30,993.79 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Par Funding | 0.00 | 0.00 | 0.00 | 599,042.45 | 672,910.25 | 712,151.04 | 680,571.35 | 612,450.93 | 543,621.92 | 450,858.70 | 362,311.99 | 273,765.28 | 176,785.55 | 96,671.86 | 3,908.64 | 0.00 | 0.00 | 0.00 |
| Loan from Par Funding-2 | 0.00 | 0.00 | 0.00 | 0.00 | 240,000.04 | 200,625.25 | 165,000.44 | 123,750.66 | 84,375.87 | 43,126.09 | 3,751.30 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Par Funding-3 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 472,940.40 | 404,488.50 | 339,148.05 | 270,696.15 | 205,355.70 | 140,015.25 | 68,451.90 | 9,334.35 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Par Funding-4 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 845,537.01 | 746,601.03 | 656,659.23 | 566,717.43 | 472,278.54 |
| Loan from Par Funding-5 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 723,095.00 | 643,195.00 | 563,295.00 | 479,400.00 |
| Loan from Par Funding-6 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,101,482.76 | 997,569.16 | 888,459.88 |
| Loan from Par Funding-7 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 919,384.62 | 835,804.20 |
| Loan from Par Funding-8 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 493,024.98 | 451,444.56 |
| Loan from Platinum Rapid Funding | 118,189.94 | 97,915.74 | 77,641.54 | 55,339.92 | 35,065.72 | 13,777.81 | -5,482.68 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Platinum RFG | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 233,839.66 | 202,085.08 | 170,330.50 | 140,019.31 | 109,708.12 | 76,510.15 | 49,085.74 | 17,331.16 | 0.00 | 0.00 | 0.00 |
| Loan from ProMed | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| loan from QUEEN FUNDING LL | 100,451.60 | 79,163.69 | 56,862.07 | 34,560.45 | 13,272.54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Region Capital | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 455,052.72 | 380,184.52 | 294,086.09 | 211,731.07 | 133,119.46 | 47,021.03 |
| Loan from Shareholder-IRIS | 0.00 | 2,111.77 | 2,111.77 | 2,111.77 | 2,111.77 | 2,111.77 | 2,111.77 | 2,111.77 | 2,111.77 | 2,111.77 | 2,111.77 | 2,111.77 | 2,111.77 | 2,111.77 | 27,111.77 | 27,111.77 | 27,111.77 | 27,111.77 |
| Loan from Shareholder-PAUL | 96,880.74 | 88,880.74 | 80,880.74 | 72,880.74 | 64,880.74 | 56,880.74 | 48,880.74 | 40,880.74 | 32,880.74 | 24,880.74 | 16,880.74 | 8,880.74 | 880.74 | 880.74 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from Shareholder-SEAN | 59,896.48 | 56,332.21 | 52,785.94 | 48,724.72 | 46,675.41 | 44,661.34 | 75,644.12 | 154,040.25 | 161,545.67 | 147,542.06 | 143,365.94 | 139,187.72 | 222,409.21 | 220,313.07 | 218,146.29 | 217,746.29 | 217,346.29 | 216,946.29 |
| Loan from SRC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Loan from yellowstone | 133,926.40 | 105,537.76 | 75,797.28 | 46,056.80 | 17,668.16 | -11,265.36 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Pension Costs Payable | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Other Current Liabilities | $ 980,845.96 | $ 788,468.11 | $ 585,982.21 | $ 1,002,595.04 | $ 1,554,436.49 | $ 1,808,046.53 | $ 2,201,852.86 | $ 2,065,054.89 | $ 1,879,034.13 | $ 1,656,835.44 | $ 2,568,058.95 | $ 2,249,271.84 | $ 2,156,274.93 | $ 2,561,410.91 | $ 2,818,440.35 | $ 3,530,380.73 | $ 4,506,721.45 | $ 4,987,789.15 |
| Total Current Liabilities | $ 5,850,249.84 | $ 6,099,572.07 | $ 6,307,085.20 | $ 6,700,109.07 | $ 7,135,347.11 | $ 7,124,584.74 | $ 7,599,796.77 | $ 7,800,447.89 | $ 7,852,524.09 | $ 7,778,678.69 | $ 8,234,727.22 | $ 7,759,678.76 | $ 7,779,880.30 | $ 7,839,293.33 | $ 7,808,787.08 | $ 8,213,811.65 | $ 9,231,403.77 | $ 9,619,744.84 |
| Long-Term Liabilities | | | | | | | | | | | | | | | | | | |
| Shareholder Loan | 403,288.00 | 401,260.27 | 399,221.25 | 397,170.85 | 395,109.03 | 393,035.70 | 390,950.83 | 388,854.32 | 386,746.13 | 384,626.19 | 382,494.43 | 380,350.78 | 378,195.18 | 376,027.57 | 373,847.87 | 371,656.02 | 0.00 | 0.00 |
| Total Long-Term Liabilities | $ 403,288.00 | $ 401,260.27 | $ 399,221.25 | $ 397,170.85 | $ 395,109.03 | $ 393,035.70 | $ 390,950.83 | $ 388,854.32 | $ 386,746.13 | $ 384,626.19 | $ 382,494.43 | $ 380,350.78 | $ 378,195.18 | $ 376,027.57 | $ 373,847.87 | $ 371,656.02 | $ 0.00 | $ 0.00 |
| Total Liabilities | $ 6,253,537.84 | $ 6,500,832.34 | $ 6,706,306.45 | $ 7,097,279.92 | $ 7,530,456.14 | $ 7,517,620.44 | $ 7,990,747.60 | $ 8,189,302.21 | $ 8,239,270.22 | $ 8,163,304.88 | $ 8,617,221.65 | $ 8,140,029.54 | $ 8,158,075.48 | $ 8,215,320.90 | $ 8,182,634.95 | $ 8,585,467.67 | $ 9,231,403.77 | $ 9,619,744.84 |
| Equity | | | | | | | | | | | | | | | | | | |
| Common Stock | 314,900.00 | 314,900.00 | 314,900.00 | 314,900.00 | 314,900.00 | 314,900.00 | 314,900.00 | 314,900.00 | 314,900.00 | 314,900.00 | 314,900.00 | 314,900.00 | 314,900.00 | 314,900.00 | 314,900.00 | 314,900.00 | 314,900.00 | 314,900.00 |
| Opening Balance Equity | 100.02 | 100.02 | 100.02 | 100.02 | 100.02 | 100.02 | 100.02 | 100.02 | 100.02 | 100.02 | 100.02 | 100.02 | 100.02 | 100.02 | 100.02 | 100.02 | 100.02 | 100.02 |
| Retained Earnings | -859,482.80 | -859,482.80 | -859,482.80 | -859,482.80 | -859,482.80 | -4,555,408.34 | -4,555,408.34 | -4,555,408.34 | -4,555,408.34 | -4,555,408.34 | -4,555,408.34 | -4,555,408.34 | -4,555,408.34 | -4,555,408.34 | -4,555,408.34 | -4,555,408.34 | -4,555,408.34 | -7,231,697.36 |
| Shareholder Contribution - Iris | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| Shareholder Contribution - Paul | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 | 12,094.40 |
| Shareholder Contributions - Sean | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 |
| Shareholder Distributions - Paul | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 | -42,600.00 |
| Shareholder Distributions - Sean | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 | -32,447.32 |
| Net Income | -1,294,837.94 | -1,895,748.24 | -1,949,147.86 | -1,731,129.03 | -3,695,925.54 | -307,978.22 | -577,220.50 | -708,089.63 | -723,492.77 | -637,158.81 | -807,129.28 | -814,205.22 | -1,260,271.74 | -1,237,555.90 | -1,421,196.53 | -1,965,067.51 | -2,676,289.02 | -567,055.04 |
| Total Equity | -$ 1,895,773.64 | -$ 2,496,683.94 | -$ 2,550,083.56 | -$ 2,332,064.73 | -$ 4,296,861.24 | -$ 4,604,839.46 | -$ 4,874,081.74 | -$ 5,004,950.87 | -$ 5,020,354.01 | -$ 4,934,020.05 | -$ 5,103,990.52 | -$ 5,111,066.46 | -$ 5,557,132.98 | -$ 5,534,417.14 | -$ 5,718,057.77 | -$ 6,261,928.75 | -$ 6,973,150.26 | -$ 7,540,205.30 |
| TOTAL LIABILITIES AND EQUITY | $ 4,357,764.20 | $ 4,004,148.40 | $ 4,156,222.89 | $ 4,765,215.19 | $ 3,233,594.90 | $ 2,912,780.98 | $ 3,116,665.86 | $ 3,184,351.34 | $ 3,218,916.21 | $ 3,229,284.83 | $ 3,513,231.13 | $ 3,028,963.08 | $ 2,600,942.50 | $ 2,680,903.76 | $ 2,464,577.18 | $ 2,323,538.92 | $ 2,258,253.51 | $ 2,079,539.54 |

Monday, Mar 11, 2019 07:23:43 AM GMT-7 - Accrual Basis

# EXHIBIT I

# MANAGEMENT SERVICES AGREEMENT

This Management Services Agreement (the "Agreement") is made, entered into, and effective as of _____, 20__ (the "Effective Date") by and between Flexogenix Group, Inc., a California corporation ("Manager"), and Flexogenix North Carolina, PC, a North Carolina professional medical corporation ("Company").  Manager and Company shall also be referred to herein as a "Party" and together, as the "Parties."

## RECITALS

WHEREAS,

A.     Company is a North Carolina professional corporation that operates a medical practice at the addresses listed on Exhibit "A" hereto as updated from time-to-time (the "Operations"), and is in need of business consulting, accounting, administrative, technological, managerial, human resources, financial, and related services in order to appropriately provide services to its patients.

B.     Manager is engaged in the business of providing administrative and management services to health care entities and has the capacity to manage and administer the operations of Company and to furnish Company with appropriate managerial, administrative, financial, and technological support (the "Administrative Services").

C.     Company desires to focus its energies, expertise, and time on the delivery of medical services to patients.  To accomplish this goal, Company desires to engage Manager to provide it with the Administrative Services as are necessary and appropriate for the day-to-day administration and management of the Operations, and Manager desires to provide the Administrative Services to Company, all upon the terms and subject to the conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged by the Parties, the Parties agree as follows:

## TERMS OF AGREEMENT

## 1.     ENGAGEMENT

1.1.    Engagement of Manager.  Company hereby engages Manager to provide the Administrative Services for the Operations on the terms and conditions described herein, and Manager accepts such engagement.  Manager shall be the sole and exclusive provider of the Administrative Services to be provided to or on behalf of Company for the Operations.  Manager in its sole discretion shall determine which services shall be provided to Company from time-to-time.

EXHIBIT I                                        Page 87

1.2.    <u>Agency</u>.  Company hereby appoints Manager as Company's true and lawful agent throughout the Term of this Agreement, and Manager hereby accepts such appointment.

1.3.    <u>Power of Attorney</u>.  In connection with billing, collection, banking, and related services incident to or under the Administrative Services to be provided hereunder, Company, in accordance with applicable law, hereby grants to Manager an exclusive special power of attorney and appoints Manager as Company's exclusive true and lawful agent and attorney-in-fact, and Manager hereby accepts such special power of attorney and appointment, for the following purposes:

1.3.1.    To submit bills in Company's name and on Company's behalf, including all claims for reimbursement or indemnification from, health plans, all other third party payors, and its patients for all medical services provided to patients.

1.3.2.    To collect and deposit all amounts received, including all cash received, patient co-payments, cost reimbursements, co-insurance and deductibles, and accounts receivable, into the "<u>Manager's Account</u>," which shall be and at all times remain in Company's name through accrual on Company's accounting records.

1.3.3.    To make demand with respect to, settle, and compromise such claims and to coordinate with collections agencies in the name of Company or Manager, to commence any suit, action or proceeding to collect any such claims.

1.3.4.    To take possession of and endorse in the name of Company on any note, check, money order, insurance payment or any other instrument received.

1.3.5.    To effectuate the payment of Company expenses, including to the Manager for the Management Fee as it becomes due.

1.3.6.    To sign checks, drafts, bank notes or other instruments on behalf of Company and to make withdrawals from the Manager's Account for other payments specified in this Agreement and as determined appropriate by the Manager.

1.4.    <u>Documentation to Bank</u>.  Upon request of Manager, Company shall execute and deliver to the financial institution wherein the Manager's Account is maintained, such additional documents or instruments as may be necessary to evidence or effect the special and limited power of attorney granted to Manager.  Company will not take any action that interferes with the transfer of funds to or from Manager's Account, nor will Company or its agents remove, withdraw or authorize the removal or withdrawal of any funds from the Manager's Account for any purpose.

1.5.    <u>Expiration of Power of Attorney</u>.  The power of attorney shall expire on the latest of the date that (i) this Agreement is terminated or (ii) or as otherwise determined by Manager.

EXHIBIT I                                    Page 88

## 2.    DUTIES AND RESPONSIBILITIES OF MANAGER

2.1.    <u>General Responsibilities</u>.  During the Term of this Agreement Manager shall, in its sole discretion, provide such services as are necessary and appropriate for the day-to-day administration and management of Company's business in a manner consistent with good business practice, including without limitation: Human Resources, Information Technology, Equipment and Supplies, Banking, Accounting and Finance, Insurance Procurement, Risk Management, Contract Negotiation, Real Estate Management, Marketing, and Management of Patient Records, as all are more specifically set forth below.

2.1.1.    <u>Personnel</u>.  Manager shall assist Company to develop and implement guidelines and procedures for the recruitment, selection, hiring, firing, compensation, terms, conditions, obligations and privileges of employment or engagement of clinical and physician employees working for Company.  Manager will also assist Company in recruiting new employees and will carry out such administrative functions as may be appropriate for such recruitment, including advertising for and identifying potential candidates, assisting Company in examining and investigating the credentials of such potential candidates, and arranging interviews with such potential candidates.  Company will make the ultimate decision as to whether to employ or retain a specific candidate.  Company shall be solely responsible for compensating its employees.  Company expressly acknowledges its responsibility and liability to provide for the payment and withholding of appropriate amounts for income tax, social security, unemployment insurance, state disability insurance taxes, and any authorized payroll deductions from the paychecks of Company personnel.  Manager shall assist Company with these administrative functions, as requested.

2.1.2.    <u>Manager Personnel</u>.  Manager shall employ or contract with and provide all necessary personnel it reasonably needs to provide the Administrative Services hereunder.  Such personnel shall be under the direction, supervision, and control of Manager, and shall be employees of Manager.  Manager shall be responsible for setting and paying the compensation and providing the fringe benefits of all Manager Personnel.

2.1.3.    <u>Training</u>.  Manager shall provide reasonable training to Company's personnel in all aspects of the Operations material to the role of such personnel, including but not limited to administrative, financial, and equipment maintenance matters.

2.1.4.    <u>Insurance</u>.  Manager shall assist Company in Company's purchase of necessary insurance coverage.

2.1.5.    <u>Accounting</u>.  Manager shall establish and administer accounting procedures and controls and systems for the development, preparation, and keeping of records and books of accounting related to the business and financial affairs of Company.

2.1.6.    <u>Tax Matters</u>.  Manager shall oversee the preparation of the annual report and tax information returns required to be filed by Company.  All of Company's tax obligations shall be paid by Manager out of Company's funds managed by Manager.  Company shall give to

EXHIBIT I                                    Page 89

personnel of Manager (or its designated affiliate) all appropriate authority necessary for them to act as Company's Attorney-in-Fact under a power of attorney, for such purposes, and to the extent permitted by law.  Company shall also make such reserves and set asides for taxes as directed by Manager throughout the year.

2.1.7.  <u>Reports and Information</u>.  Manager shall furnish Company in a timely fashion, quarterly or more frequently, operating reports and other business reports as reasonably requested by Company, including without limitation (i) copies of bank statements and checks relating to Company's bank accounts and (ii) financial statements.

2.1.8.  <u>Budgets</u>.  Manager shall prepare for review and approval by Company, all capital and annual operating budgets as needed, and such approval shall not be unreasonably withheld.

2.1.9.  <u>Expenditures</u>.  Manager shall manage all cash receipts and disbursements of Company, including the payment on behalf of Company for any of the items set forth in this Article 2, such as taxes, assessments, licensing fees, and other fees of any nature whatsoever in connection with the operation of the Operations as the same become due and payable, unless payment thereof is being contested in good faith by Company.

2.1.10. <u>Contract Negotiations</u>.  Manager shall advise Company with respect to and negotiate, either directly or on Company's behalf, as appropriate and permitted by applicable law, such contractual arrangements with third parties as are reasonably necessary and appropriate for Company's Operations.

2.1.11. <u>Billing and Collection</u>.  On behalf of and for the account of Company, Manager shall establish and maintain credit and billing and collection policies and procedures, and shall exercise reasonable efforts to bill and collect in a timely manner all professional and other fees for all billable services provided by Company.

2.1.12. <u>Office and Clinic Space</u>.  Manager shall provide to Company such office space and clinic space as are needed for the Operations, under rates and conditions as may be agreed to by the Parties from time-to-time.

2.1.13. <u>All Other Matters Reasonably Needed for Operations</u>.  Manager shall perform all tasks required for the good governance and operation of the Operations in its discretion.

2.2.  <u>Responsibilities as Agent</u>.  In connection with the appointment of Manager as Agent of Company under Section 1.2 above, Manager shall undertake the following:

2.2.1.  <u>Billing</u>.  Manager shall bill, in Company's name and on Company's behalf, any claims for reimbursement, cost offset, or indemnification from members, insurance companies and plans, all state or federally funded benefit plans, and all other third party payors or fiscal intermediaries.

EXHIBIT I                                    Page 90

2.2.2.  <u>Collections</u>.  Manager shall collect on Company's behalf, all accounts receivable generated by such billings and claims for reimbursement.  Manager shall administer Company's  accounts receivable including, but not limited to, extending the time for payment of any such accounts for cash, credit or otherwise; discharging or releasing the obligors of any such accounts; suing, assigning or selling at a discount such accounts to collection agencies; or taking other measures to require the payment of any such accounts.

2.2.3.  <u>Banking</u>.  The Parties shall cooperate in opening such bank accounts as shall be required for prudent administration of the Operations.  Company agrees to add Manager's designees as signers on Company's depository accounts, and Manager shall sign checks, drafts, bank notes or other instruments on behalf of Company, and make withdrawals from Company's accounts for payments specified in this Agreement.  Otherwise, the Parties may choose to enter into a depository account control agreement to sweep all collections from Company's accounts into Manager's accounts (and Manager shall be entitled to separately account for Company's funds but allowed to commingle such swept amounts with Manager's other funds).

2.2.4.  <u>Litigation Management</u>.  Manager shall (a) manage and direct the defense of all claims, actions, proceedings or investigations against Company or any of its officers, directors, employees or agents in their capacity as such, and (b) manage and direct the initiation and prosecution of all claims, actions, proceedings or investigations brought by Company against any person other than Manager.

2.2.5.  <u>Marketing, Advertising, and Public Relations Programs</u>.  Manager shall propose, with Company's consultation, marketing and advertising programs to be implemented by Company to effectively notify the community of the services offered by Company.  Manager shall advise and assist Company in implementing such marketing and advertising programs, including, but not limited to, analyzing the effectiveness of such programs, preparing marketing and advertising materials, negotiating marketing and advertising contracts on Company's behalf, and obtaining services necessary to produce and present such marketing and advertising programs.  The Parties expressly acknowledge and agree that Company shall exercise control over all policies and decisions relating to every element of such advertising, and that Company shall specifically approve of all advertisements.  Manager and Company agree that all marketing and advertising programs shall be conducted in compliance with all applicable standards of ethics, laws, and regulations.

2.2.6.  <u>Information Technology and Computer Systems</u>.  Manager shall set up workstations and other information technology required for the Operations.

2.2.7.  <u>Supplies.</u>  Manager shall order and purchase all supplies in connection with the Administrative Services and the Operations, including all necessary forms, supplies and postage, provided that all such supplies acquired shall be reasonably necessary in connection with the Operations.

EXHIBIT I                    Page 91

3. **RELATIONSHIP OF THE PARTIES**

3.1.    <u>Sole Authority to Practice</u>.  Notwithstanding any other provision of this Agreement, Company shall have exclusive authority and control over the healthcare aspects of Company and its practice to the extent they constitute the practice of a licensed profession, including, without limitation, all diagnosis, treatment, and ethical determinations with respect to patients which are required by law to be decided by a licensed professional.  Any delegation of authority by Company to Manager that would require or permit Manager to engage in the practice of a licensed profession shall be prohibited and deemed ineffective, and Company shall have the sole authority with respect to such matters.  Manager shall not be required or permitted to engage in, and Company shall not request Manager to engage in, activities that constitute the practice of medicine, nursing or another similar profession in the State in which Company is providing services to patients.  Manager shall not direct, control, attempt to control, influence, restrict or interfere with Company's or any of the Company's physicians' exercise of independent clinical, medical or professional judgment in providing healthcare or medical related services.

3.2.    <u>Compliance with Corporate Practice of Medicine</u>.  The Parties have made all reasonable efforts to ensure that this Agreement complies with the corporate practice of medicine prohibitions in the State in which Company is providing services to patients.  The Parties understand and acknowledge that such laws may change, be amended, have guidance or have a different interpretation and the Parties intend to comply with such laws in the event of such occurrences.  Under this Agreement, Company and its physicians shall have the exclusive authority and control over the medical aspects of Company's practice to the extent they constitute the practice of medicine, while Manager shall have the particular authority to manage the business aspects of Company as more fully described in Section 2 of this Agreement.  Company shall have final say over (1) hiring and firing of clinical personnel and supervisors thereof, (2) choice of modalities and medical services offered through the Operations, (3) financial issues, including banking and pricing (subject to day-to-day operational delegations to Manager hereunder), (4) choice of medical equipment, and (5) content of any advertising subject to applicable State laws and regulations.

3.3.    <u>Relationship of the Parties</u>.  Nothing contained herein shall be construed as creating a partnership, trustee, fiduciary joint venture, or employment relationship between Manager and Company.  In performing all services required hereunder, Manager shall be in the relation of an independent contractor to Company, providing the Administrative Services to the Operations operated by Company.

3.4.    <u>No Patient Referrals</u>.  Manager shall neither have nor exercise any control or direction over the number, type, or recipient of patient or member referrals and nothing in this Agreement shall be construed as directing or influencing any such referrals.  Nothing in this Agreement is to be construed to restrict the professional judgment of any physician to use any medical practice, facility or pharmacy where necessary or desirable in order to provide proper and appropriate treatment or care to a patient.  No part of this Agreement shall be construed to induce, encourage, solicit or reimburse the referral of any patients or business, including any patient or business funded in whole or in part by federal or state government programs (i.e.,

EXHIBIT I                                    Page 92

Medicare, Medi-Cal, etc.).  The Parties acknowledge that there is no requirement under this Agreement or any other agreement among the Parties to refer patients either to the other or to any of their respective affiliates.  No payment made under this Agreement shall be in return for the referral of patients or business, including those paid in whole or in part by federal or state government programs.

**4.     RESPONSIBILITIES OF COMPANY**

4.1.    <u>General Responsibilities of Company</u>.  Company shall own and operate the Operations during the Term of this Agreement.

4.2.    <u>Physicians and Staff</u>.  Company shall ensure that all technicians or other non-physicians responsible for patient care employed or contracted by Company are appropriately supervised with respect to the provision of services to patients in accordance with all applicable laws.  Company shall consult with Manager from time to time regarding the number, work schedules, and evaluation of the physicians employed or engaged by Company.  Company shall staff its practice as required for the efficient operation of Company, and as otherwise necessary to meet the requirements of payor contracts and applicable law.  Company shall provide full and prompt medical coverage consistent with comparable practice standards.  In addition, each physician employed by or providing services to Company shall:

4.2.1.    Maintain an unrestricted license to practice in the State in which Company is providing services to patients, maintain all narcotics and controlled substances numbers and licenses, including, without limitation, a DEA registration or permit, and maintain good standing with the applicable professional boards;

4.2.2.    Perform services and otherwise operate in accordance with all laws and with prevailing and applicable standards of care;

4.2.3.    Maintain his or her skills through continuing education and training;

4.2.4.    Maintain eligibility for professional liability insurance for his or her specialty;

4.2.5.    Comply with such other requirements for the orderly operation of the Company (not including those relating to the practice of medicine) established from time-to-time by Manager;

4.2.6.    Avoid all personal acts, habits, and usages that might injure in any way, directly or indirectly, his or her professional judgment or professional reputation; and

4.2.7.    Not be (and shall avoid being) suspended or excluded from any federal or state healthcare program (e.g., Medicare and Medi-Cal).

4.3.    <u>Exclusivity</u>.  During the term of this Agreement, Manager shall serve as Company's sole and exclusive manager and provider of the Administrative Services, and

EXHIBIT I                                    Page 93

Company shall not engage any other person or entity to furnish Company with any sites for conduct of its Operations, any policies or procedures for conduct of the Operations, or any of the financial or other services provided hereunder by Manager.

4.4.    <u>Provision of Medical Services/Quality/Compliance</u>.  Company shall be responsible for the provision of excellent patient care services through its professionals. Company shall also be responsible for quality improvement (following Manager's policies and procedures), and for all aspects of compliance with all health care and general rules and regulations governing the delivery of health care services.

## 5.    FINANCIAL ARRANGEMENTS

5.1.    <u>Management Fee</u>.  As compensation for services hereunder, Company shall pay Manager, monthly, a Management Fee equal to twenty-five percent (25%) of Company's monthly gross revenues.  The Parties shall cooperate in the allocation of shared costs and expenses between them.

## 6.    TERM AND TERMINATION

6.1.    <u>Term</u>.  This Agreement shall commence as of the Effective Date and continue in full force and effect for a period of two (2) years (the "<u>Initial Term</u>"), unless terminated as provided herein.  Following the Initial Term, this Agreement shall automatically renew for one (1) year renewal terms.

6.2.    <u>Termination by Mutual Agreement</u>.  The Parties may terminate this Agreement by mutual written agreement.

6.3.    <u>Without Cause Termination</u>.  Any of the Parties may terminate this Agreement by giving ninety (90) days advance written notice of the intent to terminate the Agreement to the other Parties.

6.4.    <u>Material Breach</u>.  This Agreement may be terminated by either Party upon a material breach by the other Party, provided that the non-breaching Party provides the breaching Party with thirty (30) days' written notice of any such breach, during which period of time the breaching Party shall have the opportunity to cure any such breach.  If any such breach is cured by the breaching Party during such period of time, it shall be as if such breach never occurred and this Agreement shall continue in full force and effect, unaffected by the non-breaching Party's notice

## 7.    RECORDS AND RECORD KEEPING

7.1.    <u>Medical/Patient Records</u>.  Company appoints Manager to control and be responsible for the confidentiality, privacy, maintenance, storage, retention and custody of all medical/patient records of Company.  To the extent permitted by applicable law, Manager shall be permitted to retain true and complete copies of such records for archival purposes, at its expense.  The Parties agree to comply with all state and federal patient confidentiality and

EXHIBIT I                                    Page 94

privacy laws regarding medical/patient records.  The Parties shall fully comply with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and all implementing regulations issued pursuant thereto, as may be amended from time-to-time and all confidentiality rules and legal restrictions placed on medical/patient records.  In furtherance thereof, the Parties are entering into a Business Associate Agreement of even date hereof and attached hereto as Exhibit "B."

7.2.    Access to Information.  Each Party hereby authorizes and grants the other Party full and complete access to all information, instruments, and documents which may be reasonably requested by the other Party to perform its obligations hereunder or to conduct the Operations.  Each Party shall disclose and make available to representatives of the other Party for review and photocopying all relevant books, agreements, papers, and records of such Party.  At all times during and after the Term of this Agreement, all business records and information, including, but not limited to, all books of account and general administrative records and all information generated under or contained in the management information systems pertaining to Company, relating to the business and activities of Manager, shall be and remain the sole property of Manager.  Company will have reasonable access during normal business hours to the business records kept by Manager relating to the Operations, and Company may copy any or all such records.  After termination of this Agreement, each Party will have reasonable access during normal business hours to the business records of the other Party as determined by such Party accessing records to be necessary to carry out its affairs or for the defense of any legal or administrative action or claim relating to such records.

## 8.    GENERAL

8.1.    Indemnification.

8.1.1.    Indemnification by Company.  Company hereby agrees to indemnify, defend, and hold harmless Manager, its managers, officers, directors, owners, members, employees, agents, affiliates, and subcontractors, from and against any and all claims, damages, demands, diminution in value, losses, liabilities, actions, lawsuits and other proceedings, judgments, fines, assessments, penalties, awards, costs, and expenses (including reasonable attorneys' fees) related to third party claims, whether or not covered by insurance, arising from or relating to any willful misconduct relating to the breach of this Agreement by Company.  The provisions of this Section 8.1.1 shall survive termination or expiration of this Agreement.  Notwithstanding the foregoing, Company shall not indemnify Manager for the acts or omissions of any physicians or others employed or engaged by Manager to perform non-clinical work under supervision by Manager.  Company shall immediately notify Manager of any lawsuits or actions, or any threat thereof, that are known or become known to Company that might adversely affect any interest of Company or Manager whatsoever.

8.1.2.    Indemnification by Manager.  Manager hereby agrees to indemnify, defend, and hold harmless Company, its respective officers, directors, shareholders, employees and agents from and against any and all claims, damages, demands, diminution in value, losses, liabilities, actions, lawsuits and other proceedings, judgments, fines, assessments, penalties, and awards, costs, and expenses (including reasonable attorneys' fees), whether or not covered by

EXHIBIT I                                    Page 95

insurance, arising from or relating to (a) any material breach of this Agreement by Manager, (b) any acts or omissions by Manager and its employees to the extent that such is not paid or covered by the proceeds of insurance.  The provisions of this Section 8.1.2 shall survive termination or expiration of this Agreement.  Notwithstanding the foregoing, Manager shall not indemnify Company for the acts or omissions of any physicians, or others employed or engaged by Company to perform clinical work under supervision by Company.  Manager shall immediately notify Company of any lawsuits or actions, or any threat thereof, that are known or become known to Manager that might adversely affect any interest of Manager or Company whatsoever.

      8.1.3.  <u>Effect of Insurance</u>.  The Parties agree that no indemnification hereunder shall be in lieu of or to the detriment to any policy of insurance or recovery thereunder that responds to any damage or loss for which indemnification is sought; all recoveries for indemnification shall be non-duplicative of recoveries received under any policy of insurance, and shall be paid only to the extent that such insurance recoveries do not compensate the injured party for the full amount of loss otherwise payable under the indemnification clause.

     8.2.  <u>Dispute Resolution</u>.  In the event that any disagreement, dispute or claim arises among the Parties hereto with respect to the enforcement or interpretation of this Agreement or any specific terms and provisions hereof or with respect to whether an alleged breach or default hereof has or has not occurred (collectively, a "<u>Dispute</u>"), such Dispute shall be settled in accordance with the following procedures:

      8.2.1.  <u>Meet and Confer</u>.  In the event of a Dispute among the Parties hereto, a Party may give written notice to all other Parties setting forth the nature of such Dispute (the "<u>Dispute Notice</u>").  The Parties shall meet and confer to discuss the Dispute in good faith within ten (10) days following the other Parties' receipt of the Dispute Notice in an attempt to resolve the Dispute.  All representatives shall meet at such date(s) and time(s) as are mutually convenient to the representatives of each participant within the "Meet and Confer Period" (as defined herein below).

      8.2.2.  <u>Mediation</u>.  If the Parties are unable to resolve the Dispute within thirty (30) days following the date of receipt of the Dispute Notice by the other Parties (the "<u>Meet and Confer Period</u>"), then the Parties shall attempt in good faith to settle the Dispute through nonbinding mediation under the then current mediation rules of ADR Services, Inc. ("<u>ADR Services</u>") or such other neutral service as the Parties may agree.  A single disinterested third-party mediator located in Los Angeles, California shall be selected by ADR Services in accordance with its then current mediation rules.  The Parties to the Dispute shall share the expenses of the mediator and the other costs of mediation on a pro rata basis.

      8.2.3.  <u>Arbitration</u>.  Any Dispute which cannot be resolved by the Parties within sixty (60) days following the end of the Meet and Confer Period shall be resolved by final and binding arbitration (the "<u>Arbitration</u>").  The Arbitration shall be initiated and administered by and in accordance with the then current arbitration rules of ADR Services or such other neutral service as the Parties may agree.  The Arbitration shall be held in Los Angeles County, unless the Parties mutually agree to have such proceeding in some other locale; the exact time and location shall be decided by the arbitrator(s) selected in accordance with the then current

EXHIBIT I    Page 96

arbitration rules of ADR Services.  The arbitrator(s) shall apply California substantive law, or federal substantive law where state law is preempted.  The arbitrator(s) selected shall have the power to enforce the rights, remedies, duties, liabilities, and obligations of discovery by the imposition of the same terms, conditions, and penalties as can be imposed in like circumstances in a civil action by a court of competent jurisdiction of the State of California.  The arbitrator(s) shall have the power to grant all legal and equitable remedies provided by California law and award compensatory damages provided by California law, except that punitive damages shall not be awarded.  The arbitrator(s) shall prepare in writing and provide to the Parties an award including factual findings and the legal reasons on which the award is based.  The arbitration award may be enforced through an action thereon brought in the Superior Court for the State of California in Los Angeles County.  The prevailing Party in any Arbitration hereunder shall be awarded reasonable attorneys' fees, expert and non-expert witness costs and any other expenses incurred directly or indirectly with said Arbitration, including without limitation the fees and expenses of the arbitrator(s).

THIS ELECTION OF AN ALTERNATIVE DISPUTE PROCESS IS AN AFFIRMATIVE WAIVER OF THE PARTIES' RIGHTS TO A JURY TRIAL UNDER CALIFORNIA LAW, Cal. C. Civ. Pro. Sec 631.  BY SIGNING BELOW, EACH PARTY IS EXPLICITLY WAIVING JURY TRIAL AND AUTHORIZING ANY AND ALL PARTIES TO FILE THIS WAIVER WITH ANY COURT AS THE WAIVER REQUIRED UNDER Cal. C. Civ. Proc. Sec. 631(f)(2):

JURY TRIAL WAIVED:

Flexogenix Group, Inc.                          Flexogenix North Carolina, PC


By:_____          By:_____
      Iris Chen, CEO                                      Sean P. Whalen, M.D., President

    8.3.    <u>Entire Agreement; Amendment</u>.  This Agreement constitutes the entire agreement among the Parties related to the subject matter hereof and supersedes all prior agreements, understandings, and letters of intent relating to the subject matter hereof.  This Agreement may be amended or supplemented only by a writing executed by all Parties.

    8.4.    <u>Notices</u>.  All notices, requests, demands or consents hereunder shall be in writing and shall be deemed given and received when delivered, if delivered in person, or four (4) days after being mailed by certified or registered mail, postage prepaid, return receipt requested, or one (1) day after being sent by overnight courier such as Federal Express, to and by the Parties at the following addresses, or at such other addresses as the Parties may designate by written notice in the manner set forth herein:

       If to Manager:        Flexogenix Group, Inc.

                  _____

                  _____

EXHIBIT I                                    Page 97

If to Company:        Flexogenix North Carolina, PC

_____

_____

8.5.    <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which, when taken together, will constitute one and the same instrument.  Each counterpart may be delivered by facsimile transmission or e-mail (as a .pdf or similar attachment), which transmission shall be deemed delivery of an originally executed counterpart hereof.

8.6.    <u>Governing Law</u>.  This Agreement shall be construed and governed in accordance with the laws of the State of California, without reference to conflict of law principles.

8.7.    <u>Assignment</u>.  This Agreement shall not be assignable by any Party hereto without the express written consent of the other Parties; *provided*, however, that this Agreement shall be assignable by Manager to any of its wholly-owned affiliates or successors without the consent of the other Parties.

8.8.    <u>Waiver</u>.  Waiver of any agreement or obligation set forth in this Agreement by any Party shall not prevent that Party from later insisting upon full performance of such agreement or obligation and no course of dealing, partial exercise or any delay or failure on the part of any Party hereto in exercising any right, power, privilege, or remedy under this Agreement or any related agreement or instrument shall impair or restrict any such right, power, privilege or remedy or be construed as a waiver therefor.  No waiver shall be valid against any Party unless made in writing and signed by the Party against whom enforcement of such waiver is sought.

8.9.    <u>Binding Effect</u>.  Subject to the provisions set forth in this Agreement, this Agreement shall be binding upon and inure to the benefit of the Parties hereto and upon their respective successors and assigns.

8.10.    <u>Waiver of Rule of Construction</u>.  Each Party has had the opportunity to consult with its own legal counsel in connection with the review, drafting, and negotiation of this Agreement.  Accordingly, the rule of construction that any ambiguity in this Agreement shall be construed against the drafting party shall not apply.

8.11.    <u>Severability</u>.  If anyone or more of the provisions of this Agreement is adjudged to any extent invalid, unenforceable, or contrary to law by a court of competent jurisdiction, each and all of the remaining provisions of this Agreement will not be affected thereby and shall be valid and enforceable to the fullest extent permitted by law.

8.12.    <u>Force Majeure</u>.  Each Party shall be excused for failures and delays in performance of its respective obligations under this Agreement due to any cause beyond the control and without the fault of such Party, including without limitation, any act of God, war, terrorism, bio-terrorism, riot or insurrection, law or regulation, strike, flood, earthquake, water

EXHIBIT I                                              Page 98

shortage, fire, explosion or inability due to any of the aforementioned causes to obtain necessary labor, materials or facilities. This provision shall not release such Party from using its best efforts to avoid or remove such cause and such Party shall continue performance hereunder with the utmost dispatch whenever such causes are removed. Upon claiming any such excuse or delay for non-performance, such Party shall give prompt written notice thereof to the other Parties, provided that failure to give such notice shall not in any way limit the operation of this provision.

8.13.    Authorization for Agreement. The execution and performance of this Agreement by Company and Manager have been duly authorized by all necessary laws, resolutions, and corporate action, and this Agreement constitutes the valid and enforceable obligations of Company and Manager in accordance with its terms.

8.14.    Duty to Cooperate. The Parties acknowledge that the Parties' cooperation is critical to the ability of Manager and Company to successfully and efficiently perform their respective duties hereunder. Accordingly, each Party agrees to cooperate fully with the other in formulating and implementing goals and objectives which are in Company's best interests.

[*Signature page follows*.]

EXHIBIT I                                    Page 99

IN WITNESS WHEREOF, the Parties agree to the foregoing terms of agreement through the execution below by their respective, duly authorized representatives as of the Effective Date.

**"MANAGER"**

Flexogenix Group, Inc.

By: _____

     Iris Chen, CEO

**"COMPANY"**

Flexogenix North Carolina, PC

By:_____

     Sean P. Whalen, M.D., President

**EXHIBIT "A"**

**LOCATIONS**

1. Flexogenix Cary/Raleigh: 400 Ashville Avenue #330, Cary, North Carolina 27518

2. Flexogenix Charlotte: 6836 Morrison Boulevard STE 101, Charlotte, North Carolina 28211

3. Flexogenix Greensboro: 1414 Yanceyville Street #200, Greensboro, North Carolina 27405

EXHIBIT I                                                    Page 101

## EXHIBIT "B"

## BUSINESS ASSOCIATE AGREEMENT

This Business Associate Agreement ("Agreement") is entered into as of the ___ day of
_____, 20___ ("Effective Date"), by and between Flexogenix Group, Inc., a
California corporation ("Business Associate") and Flexogenix North Carolina, PC, a North
Carolina professional medical corporation ("Covered Entity").  The Covered Entity is referred to
below as "CE."  The Business Associate is referred to below as "BA."

## RECITALS

WHEREAS,

A.     This Agreement is entered into by CE and BA for the purposes of complying with
privacy and security regulations issued by the United States Department of Health and Human
Services under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and
the Health Information Technology for Economic and Clinical Health Act ("HITECH Act") as
well as applicable State laws and regulations.

B.     CE is a covered entity as such term is defined under HIPAA, and as such is
required to comply with the requirements thereof regarding the confidentiality and privacy of
Protected Health Information (defined below).

C.     This Agreement will facilitate the ongoing operations of a health care enterprise
through which CE provides medical services to patients and for which BA provides
administrative services pursuant to that certain Management Services Agreement between them
of even date hereof ("Services Agreement").

NOW THEREFORE, in consideration of the promises contained herein, and other good
and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the
parties agree as follows:

## TERMS OF AGREEMENT

1.     **DEFINITIONS**

For the purposes of this Agreement, the following terms shall have the meanings ascribed
to them below:

1.1.    "Breach" shall have the meaning given to such term pursuant to 45 C.F.R. §
164.402.

1.2.    "Business Associate" shall have the meaning given to such term pursuant to 45
C.F.R. § 160.103, and in reference to the party to this Agreement, shall mean Flexogenix Group,
Inc.

EXHIBIT I                                        Page 102

1.3.    "<u>Covered Entity</u>" shall have the meaning given to such term pursuant to 45 C.F.R. § 160.103, and in reference to the party to this Agreement, shall mean Flexogenix North Carolina, PC.

1.4.    "<u>Designated Record Set</u>" shall have the meaning given to such term pursuant to 45 C.F.R. § 164.501.

1.5.    "<u>Disclosure</u>" shall have the meaning given to such term pursuant to 45 C.F.R. § 160.103.

1.6.    "<u>Electronic Protected Health Information</u>" or "<u>ePHI</u>" shall have the meaning given to such term pursuant to 45 C.F.R. § 160.103.

1.7.    "<u>Individual</u>" shall have the meaning given to such term pursuant to 45 C.F.R. § 160.103.

1.8.    "<u>Individually Identifiable Health Information</u>" shall have the meaning given to such term pursuant to 45 C.F.R. § 160.103.

1.9.    "<u>Minimum Necessary</u>" shall have the meaning given to such term pursuant to 45 C.F.R. §§ 164.502(b) and 164.514(d).

1.10.    "<u>Privacy Rule</u>" shall mean the privacy standards for the protection of the privacy of Individually Identifiable Health Information at 45 C.F.R. Part 160 and Part 164, Subparts A and E.

1.11.    "<u>Protected Health Information</u>" or "<u>PHI</u>" shall have the meaning given to such term pursuant to 45 C.F.R. §§ 160.103.

1.12.    "<u>Required By Law</u>" shall have the meaning given to such term pursuant to 45 C.F.R. § 164.103.

1.13.    "<u>Secretary</u>" shall have the meaning given to such term pursuant to 45 C.F.R. § 160.103.

1.14.    "<u>Security Incident</u>" shall have the meaning given to such term pursuant to 45 C.F.R. § 164.304.

1.15.    "<u>Security Rule</u>" shall mean the security standards for the protection of Electronic Protected Health Information at 45 C.F.R. Part 160 and Part 164, Subparts A and C.

1.16.    "<u>Subcontractor</u>" shall have the meaning given to such term pursuant to 45 C.F.R. § 160.103.

EXHIBIT I                                    Page 103

1.17.  "Unsecured Protected Health Information" or "Unsecured PHI" shall have the meaning given to such term pursuant to 45 C.F.R. § 164.402.

1.18.  "Use" shall have the meaning given to such term pursuant to 45 C.F.R. § 160.103.

2.  **OBLIGATIONS OF BUSINESS ASSOCIATE**

2.1.  Permitted Uses and Disclosures of PHI.  BA, its directors, officers, Subcontractors, employees, affiliates, agents, and representatives shall use or disclose PHI (a) in connection with fulfilling its duties and obligations under this Agreement and the Services Agreement; (b) for the proper management and administration of BA; or (c) to carry out the legal responsibilities of BA.

2.2.  Prohibited Uses and Disclosures of PHI.  BA shall not use or disclose PHI other than as permitted or Required By Law.  BA shall not use or disclose PHI in any manner that violates state or federal laws, or would violate such laws if used or disclosed in such manner by CE.

2.3.  Performance of CE's Obligation(s).  To the extent BA is to carry out CE's obligation(s), BA must comply with all requirements that apply to CE in the performance of such obligation(s).

2.4.  Third Party Disclosures.  BA shall obtain and maintain an agreement with each Subcontractor that has or will have access to PHI which is received from, created, or received by BA on behalf of CE, pursuant to which agreement such Subcontractor agrees to be bound by the same restrictions, terms, and conditions that apply to BA pursuant to this Agreement with respect to such PHI.  BA shall also (a) obtain reasonable assurances from the Subcontractor that the PHI will be held in confidence and used or further disclosed only as Required by Law or for the purpose for which it was disclosed, and (b) obligate such person to notify BA of any instance in which PHI is used or disclosed that is not provided for in the Services Agreement, including incidents that constitute breaches of Unsecured PHI or any Security Incident of which it becomes aware in which the confidentiality of the PHI has been breached.

2.5.  Minimum Necessary.  BA and its agents or Subcontractors shall request, use, and disclose only the minimum amount of PHI necessary to accomplish the purpose of the request, use or disclosure.  To the extent BA uses or discloses PHI received from, created, or received by BA on behalf of CE, BA will make reasonable efforts to limit PHI to the Minimum Necessary to accomplish the intended purpose of the use, disclosure or request.

2.6.  Access of Individuals to PHI.

2.6.1.  BA shall make PHI maintained by BA or its agents or Subcontractors available to CE for inspection and copying within three (3) business days of a written request by CE to enable CE to fulfill its obligations under the Privacy Rule.  If BA maintains ePHI, BA shall provide such information in electronic format to enable CE to fulfill its obligations under 45 C.F.R. § 164.524.

EXHIBIT I                                                          Page 104

2.6.2.    In the event an Individual or entity requests access to PHI from BA, BA shall forward such request to CE within two (2) business days.  CE is responsible for determining what PHI shall be unavailable to the Individual pursuant to 45 C.F.R. § 164.524.

2.6.3.    Any denial of access to PHI determined by CE pursuant to 45 C.F.R. § 164.524, and conveyed to BA by CE, shall be the responsibility of CE, including resolution or reporting of all appeals, and/or complaints arising from denials.

2.7.    <u>Amendment of PHI</u>.

2.7.1.    As applicable, in order to allow CE to respond to a request by an Individual for an amendment pursuant to 45 C.F.R. § 164.526, BA shall, within three (3) business days of a written request by CE for PHI about an Individual contained in a Designated Record Set, make such PHI available to CE for so long as such information is maintained in the Designated Record Set.

2.7.2.    In the event that any Individual requests that the BA amend his or her PHI, BA shall forward such request to CE within two (2) business days.  The CE is responsible for determining what PHI is unavailable to the Individual pursuant to 45 C.F.R. § 164.526.

2.7.3.    Any denial of an amendment to PHI determined by CE pursuant to 45 C.F.R. § 164.526, and conveyed to BA by CE, shall be the responsibility of CE, including resolution or reporting of all appeals and/or complaints arising from denials.

2.7.4.    As applicable, within ten (10) business days of receipt of a request from CE to amend an Individual's PHI in a Designated Record Set, BA shall incorporate any amendments, statements of disagreement, and/or rebuttals approved by CE into its Designated Record Set, as required by 45 C.F.R. § 164.526.

2.8.    <u>Accounting of Disclosures</u>.

2.8.1.    In order to allow CE to respond to a request by an Individual for an accounting of disclosures of a Designated Record Set pursuant to 45 C.F.R. § 164.528, BA shall, within five (5) business days of a CE's written request for an accounting of disclosures of PHI about an Individual, make such information available to CE.  As applicable, BA shall provide CE with the following information: (a) the date of the disclosure; (b) the name of the entity or person who received the PHI, and, if known, the address of such entity or person; (c) a brief description of the PHI disclosed; and (d) a brief statement of the purpose of such disclosure.

2.8.2.    In the event an Individual requests an accounting of disclosures of PHI directly from BA, BA shall forward such request to CE within two (2) business days.

2.8.3.    As applicable BA shall implement an appropriate recordkeeping process of Designated Records Sets to enable it to comply with the requirements of 45 C.F.R. § 164.528.

EXHIBIT I                                    Page 105

2.9.    Subpoena or Legal Request for PHI.  BA shall notify CE within two (2) business days of receipt of any request, subpoena, or other legal process to obtain PHI received from, or created or received by BA on behalf of CE.  CE, in conjunction with BA, shall determine whether BA may disclose PHI pursuant to such request, subpoena, or other legal process.  The provisions of this Section 2.9 shall survive the termination of this Agreement.

2.10.    Reporting Breaches, Improper Disclosures, and Security Incidents.

2.10.1. Breaches.  In the event of a Breach of any Unsecured PHI that BA accesses, maintains, retains, modifies, records, stores, destroys, or otherwise holds or uses on behalf of CE, BA shall report such Breach to CE immediately, but in no event more than twenty-four (24) hours after discovering the breach.

2.10.2. Improper Disclosures.  BA shall report any unauthorized or improper use or disclosure of PHI regarding the terms and conditions of this Agreement or applicable federal and state laws to CE as soon as practicable, but in no event later than two (2) business days of the date on which BA becomes aware of such unauthorized or improper use or disclosure.  BA shall, in consultation with CE, mitigate to the extent practicable any harmful effect of such improper disclosures.

2.10.3. Security Incidents.  BA shall report to CE any Security Incident of which it becomes aware within five (5) business days.  BA hereby provides notice to CE that it receives frequent, routine, unsuccessful attempts to penetrate or compromise its systems, including pings, port scans, and log on attempts.  Unless these attempts result in an unauthorized access to, use, disclosure or destruction or loss of ePHI, BA will not report such incidents to CE.

2.11.    Safeguards.  BA shall implement appropriate administrative, technical, and physical safeguards, consistent with the size and complexity of BA's operations, to protect the confidentiality and security of PHI that it creates, receives, maintains, or transmits on behalf of CE and to prevent the use or disclosure of PHI in any manner inconsistent with the terms of this Agreement.

2.12.    Availability of Books and Records to CE.  Within ten (10) calendar days of a written request by CE, BA and its agents or Subcontractors shall permit CE to audit BA's internal practices, books, and records at reasonable times as they pertain to the use and disclosure of PHI received from, or created or received by BA on behalf of CE in order to ensure that CE and BA are in compliance with the requirements of this Agreement, and to the extent that CE determines such examination is necessary to comply with CE's obligations pursuant to HIPAA. The availability of books and records from BA to CE is subject to the following conditions:

a.  BA and CE shall mutually agree in advance upon the scope, timing, and location of such an inspection.

b.  CE shall protect the confidentiality of all confidential and proprietary information of BA to which CE has access during the course of inspection.

EXHIBIT I                                    Page 106

c. CE shall execute a nondisclosure agreement, under terms mutually agreed upon by the parties, if requested by BA.

2.13.  Governmental Access to Records.  BA shall make its internal practices, books, and records relating to the use and disclosure of PHI available to the Secretary for purposes of determining BA's compliance with the Privacy Rule and the Security Rule.  BA shall notify CE within ten (10) calendar days of learning that BA has become the subject of an audit, compliance review, or complaint investigation by the Secretary.

3.    **OBLIGATIONS OF COVERED ENTITY**

3.1.  General Obligations.  CE warrants that CE, its directors, officers, subcontractors, employees, affiliated agents, and representatives: (a) shall comply with the Privacy Rule in its use or disclosure of PHI; (b) shall not use or disclose PHI in any manner that violates applicable federal and state laws; (c) shall not request BA to use or disclose PHI in any manner that violates applicable federal and state laws if such use or disclosure were done by CE; and (d) may request BA to disclose PHI directly to another party only for the purposes allowed by the Privacy Rule.

3.2.  Breach.  CE shall provide notice to BA of any pattern of activity or practice of BA that CE believes constitutes a material breach or violation of the BA's obligation under the Services Agreement or this Agreement within ten (10) calendar days of discovery and shall meet with BA to discuss and attempt to resolve the problem as one of the reasonable steps to cure the breach or end the violation.

3.3.  Notice of Privacy Practices.  CE will notify BA of any limitation(s) in its notice of privacy practices in accordance with 45 C.F.R. § 164.520, to the extent that such limitation may affect BA's use or disclosure of PHI.  CE shall provide such notice no later than fifteen (15) days prior to the effective date of the limitation.

3.4.  Notification of Changes Regarding Individual Permission.  CE shall notify BA of any changes in, or revocation of, permission by an Individual to use or disclose PHI, to the extent that such changes may affect BA's use or disclosure of PHI.  CE shall provide such notice no later than fifteen (15) days prior to the effective date of the change.

3.5.  Notification of Restrictions to Use or Disclosure of PHI.  CE shall notify BA of any restriction to the use or disclosure of PHI that CE has agreed to in accordance with 45 C.F.R. § 164.522, to the extent that such restriction may affect BA's use or disclosure of PHI.  CE shall provide such notice no later than fifteen (15) days prior to the effective date of the restriction.

3.6.  Permissible Requests by CE.  CE shall not request BA to use or disclose PHI in any manner that would not be permissible under HIPAA if done by CE, except as permitted pursuant to Section 2.

EXHIBIT I                                    Page 107

4.      **TERM AND TERMINATION**

4.1.    <u>Term</u>.  This Agreement shall have a term co-extensive with the Services Agreement.

4.2.    <u>Material Breach</u>.  This Agreement may be terminated by either party upon a material breach by the other party, provided that the non-breaching party provides the breaching party within thirty (30) days' written notice of any such breach, during which period of time the breaching party shall have the opportunity to cure any such breach.  If any such breach is cured by the breaching party during such period of time, it shall be as if such breach never occurred and this Agreement shall continue in full force and effect, unaffected by the non-breaching party's notice.

4.3.    <u>Effect of Termination</u>.  Upon termination of this Agreement, BA shall return or destroy all PHI that BA or its agents or Subcontractors maintain in any form, and shall retain no copies of such PHI.  If return or destruction is not feasible, as determined by BA, BA shall continue to extend the protections of Section 2 of this Agreement to such information, and limit further use of such PHI to those purposes that make the return or destruction of such PHI impractical.  All destruction shall be in accordance with HIPAA, the HITECH Act, and applicable State laws and regulations.

5.      **INSURANCE AND INDEMNIFICATION**

5.1.    <u>Insurance</u>.  The parties shall use their best efforts to obtain and maintain cyber liability insurance covering claims based on a violation of the Privacy Rule or any applicable law or regulation concerning the privacy of patient information and claims based on obligations pursuant to this Agreement with coverage of not less than One Million Dollars ($1,000,000) per occurrence.

5.2.    <u>Indemnification</u>.  Each party hereby indemnifies and holds the other party and its employees and agents harmless from and against any and all loss, liability, or damages, including reasonable attorneys' fees, arising out of or in any manner occasioned by a breach of any provision of this Agreement by such breaching party, its employees, agents, or Subcontractors.  Nothing herein is intended to defeat the application of insurance proceeds in the first instance to make whole a party claiming indemnification hereunder; all such indemnification requests made hereunder are to be made only to the extent the damages suffered have not been covered by insurance proceeds.

6.      **MISCELLANEOUS**

6.1.    <u>Amendment</u>.  The parties agree to take such action to amend this Agreement from time-to-time as is necessary to comply with the requirements of HIPAA, the HITECH Act, and applicable State laws and regulations.

6.2.    <u>Notices</u>.  Notices shall be given in the manner provided by the Services Agreement.

EXHIBIT I                                              Page 108

6.3.    <u>Disclaimer</u>.  BA makes no warranty or representation that compliance by BA with this Agreement, HIPAA, or the HITECH Act will be adequate or satisfactory for CE's own purposes.  CE is solely responsible for all decisions made by CE regarding the safeguarding of PHI.

6.4.    <u>No Third-Party Beneficiaries</u>.  Except as expressly provided for in the Privacy Rule, there are no third party beneficiaries to this Agreement.

6.5.    <u>Effect on Services Agreement</u>.  Except as specifically required to implement the purposes of this Agreement, or to the extent inconsistent with this Agreement, all other terms of the Services Agreement shall remain in force and effect.

6.6.    <u>Interpretation</u>.  The provisions of this Agreement shall prevail over any provisions in the Services Agreement that may conflict with or are inconsistent with any provision in this Agreement.  This Agreement and the Services Agreement shall be interpreted as broadly as necessary to implement and comply with HIPAA, the HITECH Act, and applicable State laws and regulations.  The parties agree that any ambiguity in this Agreement shall be resolved in favor of a meaning that complies and is consistent with HIPAA, the HITECH Act and applicable State laws and regulations, as appropriate.  State regulations will prevail if and where they are more stringent than Federal regulations.

6.7.    <u>Governing Law</u>.  This Agreement shall be construed and governed in accordance with the laws of the State of California, without reference to conflict of law principles.

IN WITNESS WHEREOF, the parties hereto agree to the foregoing through the execution of this Agreement by their respective duly authorized representatives below as of the Effective Date hereof.

**COVERED ENTITY**                          **BUSINESS ASSOCIATE**

Flexogenix North Carolina, PC               Flexogenix Group, Inc.


By:_____        By:_____
    Sean P. Whalen, M.D., President              Iris Chen, CEO

EXHIBIT I                                    Page 109

# MANAGEMENT SERVICES AGREEMENT

This Management Services Agreement (the "Agreement") is made, entered into, and effective as of _____, 20__ (the "Effective Date") by and between Flexogenix Group, Inc., a California corporation ("Manager"), and Flexogenix Oklahoma, PC, an Oklahoma professional medical corporation ("Company"). Manager and Company shall also be referred to herein as a "Party" and together, as the "Parties."

## RECITALS

WHEREAS,

A.    Company is an Oklahoma professional corporation that operates a medical practice at the addresses listed on Exhibit "A" hereto as updated from time-to-time (the "Operations"), and is in need of business consulting, accounting, administrative, technological, managerial, human resources, financial, and related services in order to appropriately provide services to its patients.

B.    Manager is engaged in the business of providing administrative and management services to health care entities and has the capacity to manage and administer the operations of Company and to furnish Company with appropriate managerial, administrative, financial, and technological support (the "Administrative Services").

C.    Company desires to focus its energies, expertise, and time on the delivery of medical services to patients. To accomplish this goal, Company desires to engage Manager to provide it with the Administrative Services as are necessary and appropriate for the day-to-day administration and management of the Operations, and Manager desires to provide the Administrative Services to Company, all upon the terms and subject to the conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged by the Parties, the Parties agree as follows:

## TERMS OF AGREEMENT

## 1.    ENGAGEMENT

1.1.    Engagement of Manager. Company hereby engages Manager to provide the Administrative Services for the Operations on the terms and conditions described herein, and Manager accepts such engagement. Manager shall be the sole and exclusive provider of the Administrative Services to be provided to or on behalf of Company for the Operations. Manager in its sole discretion shall determine which services shall be provided to Company from time-to-time.

EXHIBIT I                                                    Page 110

    1.2.   <u>Agency</u>.  Company hereby appoints Manager as Company's true and lawful agent throughout the Term of this Agreement, and Manager hereby accepts such appointment.

    1.3.   <u>Power of Attorney</u>.  In connection with billing, collection, banking, and related services incident to or under the Administrative Services to be provided hereunder, Company, in accordance with applicable law, hereby grants to Manager an exclusive special power of attorney and appoints Manager as Company's exclusive true and lawful agent and attorney-in-fact, and Manager hereby accepts such special power of attorney and appointment, for the following purposes:

    1.3.1.   To submit bills in Company's name and on Company's behalf, including all claims for reimbursement or indemnification from, health plans, all other third party payors, and its patients for all medical services provided to patients.

    1.3.2.   To collect and deposit all amounts received, including all cash received, patient co-payments, cost reimbursements, co-insurance and deductibles, and accounts receivable, into the "<u>Manager's Account</u>," which shall be and at all times remain in Company's name through accrual on Company's accounting records.

    1.3.3.   To make demand with respect to, settle, and compromise such claims and to coordinate with collections agencies in the name of Company or Manager, to commence any suit, action or proceeding to collect any such claims.

    1.3.4.   To take possession of and endorse in the name of Company on any note, check, money order, insurance payment or any other instrument received.

    1.3.5.   To effectuate the payment of Company expenses, including to the Manager for the Management Fee as it becomes due.

    1.3.6.   To sign checks, drafts, bank notes or other instruments on behalf of Company and to make withdrawals from the Manager's Account for other payments specified in this Agreement and as determined appropriate by the Manager.

    1.4.   <u>Documentation to Bank</u>.  Upon request of Manager, Company shall execute and deliver to the financial institution wherein the Manager's Account is maintained, such additional documents or instruments as may be necessary to evidence or effect the special and limited power of attorney granted to Manager.  Company will not take any action that interferes with the transfer of funds to or from Manager's Account, nor will Company or its agents remove, withdraw or authorize the removal or withdrawal of any funds from the Manager's Account for any purpose.

    1.5.   <u>Expiration of Power of Attorney</u>.  The power of attorney shall expire on the latest of the date that (i) this Agreement is terminated or (ii) or as otherwise determined by Manager.

## 2.    DUTIES AND RESPONSIBILITIES OF MANAGER

2.1.    <u>General Responsibilities</u>.  During the Term of this Agreement Manager shall, in its sole discretion, provide such services as are necessary and appropriate for the day-to-day administration and management of Company's business in a manner consistent with good business practice, including without limitation: Human Resources, Information Technology, Equipment and Supplies, Banking, Accounting and Finance, Insurance Procurement, Risk Management, Contract Negotiation, Real Estate Management, Marketing, and Management of Patient Records, as all are more specifically set forth below.

2.1.1.    <u>Personnel</u>.  Manager shall assist Company to develop and implement guidelines and procedures for the recruitment, selection, hiring, firing, compensation, terms, conditions, obligations and privileges of employment or engagement of clinical and physician employees working for Company.  Manager will also assist Company in recruiting new employees and will carry out such administrative functions as may be appropriate for such recruitment, including advertising for and identifying potential candidates, assisting Company in examining and investigating the credentials of such potential candidates, and arranging interviews with such potential candidates.  Company will make the ultimate decision as to whether to employ or retain a specific candidate.  Company shall be solely responsible for compensating its employees.  Company expressly acknowledges its responsibility and liability to provide for the payment and withholding of appropriate amounts for income tax, social security, unemployment insurance, state disability insurance taxes, and any authorized payroll deductions from the paychecks of Company personnel.  Manager shall assist Company with these administrative functions, as requested.

2.1.2.    <u>Manager Personnel</u>.  Manager shall employ or contract with and provide all necessary personnel it reasonably needs to provide the Administrative Services hereunder.  Such personnel shall be under the direction, supervision, and control of Manager, and shall be employees of Manager.  Manager shall be responsible for setting and paying the compensation and providing the fringe benefits of all Manager Personnel.

2.1.3.    <u>Training</u>.  Manager shall provide reasonable training to Company's personnel in all aspects of the Operations material to the role of such personnel, including but not limited to administrative, financial, and equipment maintenance matters.

2.1.4.    <u>Insurance</u>.  Manager shall assist Company in Company's purchase of necessary insurance coverage.

2.1.5.    <u>Accounting</u>.  Manager shall establish and administer accounting procedures and controls and systems for the development, preparation, and keeping of records and books of accounting related to the business and financial affairs of Company.

2.1.6.    <u>Tax Matters</u>.  Manager shall oversee the preparation of the annual report and tax information returns required to be filed by Company.  All of Company's tax obligations shall be paid by Manager out of Company's funds managed by Manager.  Company shall give to

EXHIBIT I                                                                                                          Page 112

personnel of Manager (or its designated affiliate) all appropriate authority necessary for them to act as Company's Attorney-in-Fact under a power of attorney, for such purposes, and to the extent permitted by law.  Company shall also make such reserves and set asides for taxes as directed by Manager throughout the year.

2.1.7.  <u>Reports and Information</u>.  Manager shall furnish Company in a timely fashion, quarterly or more frequently, operating reports and other business reports as reasonably requested by Company, including without limitation (i) copies of bank statements and checks relating to Company's bank accounts and (ii) financial statements.

2.1.8.  <u>Budgets</u>.  Manager shall prepare for review and approval by Company, all capital and annual operating budgets as needed, and such approval shall not be unreasonably withheld.

2.1.9.  <u>Expenditures</u>.  Manager shall manage all cash receipts and disbursements of Company, including the payment on behalf of Company for any of the items set forth in this Article 2, such as taxes, assessments, licensing fees, and other fees of any nature whatsoever in connection with the operation of the Operations as the same become due and payable, unless payment thereof is being contested in good faith by Company.

2.1.10. <u>Contract Negotiations</u>.  Manager shall advise Company with respect to and negotiate, either directly or on Company's behalf, as appropriate and permitted by applicable law, such contractual arrangements with third parties as are reasonably necessary and appropriate for Company's Operations.

2.1.11. <u>Billing and Collection</u>.  On behalf of and for the account of Company, Manager shall establish and maintain credit and billing and collection policies and procedures, and shall exercise reasonable efforts to bill and collect in a timely manner all professional and other fees for all billable services provided by Company.

2.1.12. <u>Office and Clinic Space</u>.  Manager shall provide to Company such office space and clinic space as are needed for the Operations, under rates and conditions as may be agreed to by the Parties from time-to-time.

2.1.13. <u>All Other Matters Reasonably Needed for Operations</u>.  Manager shall perform all tasks required for the good governance and operation of the Operations in its discretion.

2.2.    <u>Responsibilities as Agent</u>.  In connection with the appointment of Manager as Agent of Company under Section 1.2 above, Manager shall undertake the following:

2.2.1.  <u>Billing</u>.  Manager shall bill, in Company's name and on Company's behalf, any claims for reimbursement, cost offset, or indemnification from members, insurance companies and plans, all state or federally funded benefit plans, and all other third party payors or fiscal intermediaries.

EXHIBIT I                                              Page 113

2.2.2.  <u>Collections</u>.  Manager shall collect on Company's behalf, all accounts receivable generated by such billings and claims for reimbursement.  Manager shall administer Company's  accounts receivable including, but not limited to, extending the time for payment of any such accounts for cash, credit or otherwise; discharging or releasing the obligors of any such accounts; suing, assigning or selling at a discount such accounts to collection agencies; or taking other measures to require the payment of any such accounts.

2.2.3.  <u>Banking</u>.  The Parties shall cooperate in opening such bank accounts as shall be required for prudent administration of the Operations.  Company agrees to add Manager's designees as signers on Company's depository accounts, and Manager shall sign checks, drafts, bank notes or other instruments on behalf of Company, and make withdrawals from Company's accounts for payments specified in this Agreement.  Otherwise, the Parties may choose to enter into a depository account control agreement to sweep all collections from Company's accounts into Manager's accounts (and Manager shall be entitled to separately account for Company's funds but allowed to commingle such swept amounts with Manager's other funds).

2.2.4.  <u>Litigation Management</u>.  Manager shall (a) manage and direct the defense of all claims, actions, proceedings or investigations against Company or any of its officers, directors, employees or agents in their capacity as such, and (b) manage and direct the initiation and prosecution of all claims, actions, proceedings or investigations brought by Company against any person other than Manager.

2.2.5.  <u>Marketing, Advertising, and Public Relations Programs</u>.  Manager shall propose, with Company's consultation, marketing and advertising programs to be implemented by Company to effectively notify the community of the services offered by Company.  Manager shall advise and assist Company in implementing such marketing and advertising programs, including, but not limited to, analyzing the effectiveness of such programs, preparing marketing and advertising materials, negotiating marketing and advertising contracts on Company's behalf, and obtaining services necessary to produce and present such marketing and advertising programs.  The Parties expressly acknowledge and agree that Company shall exercise control over all policies and decisions relating to every element of such advertising, and that Company shall specifically approve of all advertisements.  Manager and Company agree that all marketing and advertising programs shall be conducted in compliance with all applicable standards of ethics, laws, and regulations.

2.2.6.  <u>Information Technology and Computer Systems</u>.  Manager shall set up workstations and other information technology required for the Operations.

2.2.7.  <u>Supplies.</u>  Manager shall order and purchase all supplies in connection with the Administrative Services and the Operations, including all necessary forms, supplies and postage, provided that all such supplies acquired shall be reasonably necessary in connection with the Operations.

EXHIBIT I                                                           Page 114

3.    **RELATIONSHIP OF THE PARTIES**

3.1.    Sole Authority to Practice.  Notwithstanding any other provision of this Agreement, Company shall have exclusive authority and control over the healthcare aspects of Company and its practice to the extent they constitute the practice of a licensed profession, including, without limitation, all diagnosis, treatment, and ethical determinations with respect to patients which are required by law to be decided by a licensed professional.  Any delegation of authority by Company to Manager that would require or permit Manager to engage in the practice of a licensed profession shall be prohibited and deemed ineffective, and Company shall have the sole authority with respect to such matters.  Manager shall not be required or permitted to engage in, and Company shall not request Manager to engage in, activities that constitute the practice of medicine, nursing or another similar profession in the State in which Company is providing services to patients.  Manager shall not direct, control, attempt to control, influence, restrict or interfere with Company's or any of the Company's physicians' exercise of independent clinical, medical or professional judgment in providing healthcare or medical related services.

3.2.    Compliance with Corporate Practice of Medicine.  The Parties have made all reasonable efforts to ensure that this Agreement complies with the corporate practice of medicine prohibitions in the State in which Company is providing services to patients.  The Parties understand and acknowledge that such laws may change, be amended, have guidance or have a different interpretation and the Parties intend to comply with such laws in the event of such occurrences.  Under this Agreement, Company and its physicians shall have the exclusive authority and control over the medical aspects of Company's practice to the extent they constitute the practice of medicine, while Manager shall have the particular authority to manage the business aspects of Company as more fully described in Section 2 of this Agreement.  Company shall have final say over (1) hiring and firing of clinical personnel and supervisors thereof, (2) choice of modalities and medical services offered through the Operations, (3) financial issues, including banking and pricing (subject to day-to-day operational delegations to Manager hereunder), (4) choice of medical equipment, and (5) content of any advertising subject to applicable State laws and regulations.

3.3.    Relationship of the Parties.  Nothing contained herein shall be construed as creating a partnership, trustee, fiduciary joint venture, or employment relationship between Manager and Company.  In performing all services required hereunder, Manager shall be in the relation of an independent contractor to Company, providing the Administrative Services to the Operations operated by Company.

3.4.    No Patient Referrals.  Manager shall neither have nor exercise any control or direction over the number, type, or recipient of patient or member referrals and nothing in this Agreement shall be construed as directing or influencing any such referrals.  Nothing in this Agreement is to be construed to restrict the professional judgment of any physician to use any medical practice, facility or pharmacy where necessary or desirable in order to provide proper and appropriate treatment or care to a patient.  No part of this Agreement shall be construed to induce, encourage, solicit or reimburse the referral of any patients or business, including any patient or business funded in whole or in part by federal or state government programs (i.e.,

EXHIBIT I                                                    Page 115

Medicare, Medi-Cal, etc.).  The Parties acknowledge that there is no requirement under this Agreement or any other agreement among the Parties to refer patients either to the other or to any of their respective affiliates.  No payment made under this Agreement shall be in return for the referral of patients or business, including those paid in whole or in part by federal or state government programs.

## 4.    RESPONSIBILITIES OF COMPANY

4.1.    <u>General Responsibilities of Company</u>.  Company shall own and operate the Operations during the Term of this Agreement.

4.2.    <u>Physicians and Staff</u>.  Company shall ensure that all technicians or other non-physicians responsible for patient care employed or contracted by Company are appropriately supervised with respect to the provision of services to patients in accordance with all applicable laws.  Company shall consult with Manager from time to time regarding the number, work schedules, and evaluation of the physicians employed or engaged by Company.  Company shall staff its practice as required for the efficient operation of Company, and as otherwise necessary to meet the requirements of payor contracts and applicable law.  Company shall provide full and prompt medical coverage consistent with comparable practice standards.  In addition, each physician employed by or providing services to Company shall:

4.2.1.    Maintain an unrestricted license to practice in the State in which Company is providing services to patients, maintain all narcotics and controlled substances numbers and licenses, including, without limitation, a DEA registration or permit, and maintain good standing with the applicable professional boards;

4.2.2.    Perform services and otherwise operate in accordance with all laws and with prevailing and applicable standards of care;

4.2.3.    Maintain his or her skills through continuing education and training;

4.2.4.    Maintain eligibility for professional liability insurance for his or her specialty;

4.2.5.    Comply with such other requirements for the orderly operation of the Company (not including those relating to the practice of medicine) established from time-to-time by Manager;

4.2.6.    Avoid all personal acts, habits, and usages that might injure in any way, directly or indirectly, his or her professional judgment or professional reputation; and

4.2.7.    Not be (and shall avoid being) suspended or excluded from any federal or state healthcare program (e.g., Medicare and Medi-Cal).

4.3.    <u>Exclusivity</u>.  During the term of this Agreement, Manager shall serve as Company's sole and exclusive manager and provider of the Administrative Services, and

EXHIBIT I                                    Page 116

Company shall not engage any other person or entity to furnish Company with any sites for conduct of its Operations, any policies or procedures for conduct of the Operations, or any of the financial or other services provided hereunder by Manager.

4.4.    <u>Provision of Medical Services/Quality/Compliance</u>.  Company shall be responsible for the provision of excellent patient care services through its professionals. Company shall also be responsible for quality improvement (following Manager's policies and procedures), and for all aspects of compliance with all health care and general rules and regulations governing the delivery of health care services.

## 5.    FINANCIAL ARRANGEMENTS

5.1.    <u>Management Fee</u>.  As compensation for services hereunder, Company shall pay Manager, monthly, a Management Fee equal to twenty-five percent (25%) of Company's monthly gross revenues.  The Parties shall cooperate in the allocation of shared costs and expenses between them.

## 6.    TERM AND TERMINATION

6.1.    <u>Term</u>.  This Agreement shall commence as of the Effective Date and continue in full force and effect for a period of two (2) years (the "<u>Initial Term</u>"), unless terminated as provided herein.  Following the Initial Term, this Agreement shall automatically renew for one (1) year renewal terms.

6.2.    <u>Termination by Mutual Agreement</u>.  The Parties may terminate this Agreement by mutual written agreement.

6.3.    <u>Without Cause Termination</u>.  Any of the Parties may terminate this Agreement by giving ninety (90) days advance written notice of the intent to terminate the Agreement to the other Parties.

6.4.    <u>Material Breach</u>.  This Agreement may be terminated by either Party upon a material breach by the other Party, provided that the non-breaching Party provides the breaching Party with thirty (30) days' written notice of any such breach, during which period of time the breaching Party shall have the opportunity to cure any such breach.  If any such breach is cured by the breaching Party during such period of time, it shall be as if such breach never occurred and this Agreement shall continue in full force and effect, unaffected by the non-breaching Party's notice

## 7.    RECORDS AND RECORD KEEPING

7.1.    <u>Medical/Patient Records</u>.  Company appoints Manager to control and be responsible for the confidentiality, privacy, maintenance, storage, retention and custody of all medical/patient records of Company.  To the extent permitted by applicable law, Manager shall be permitted to retain true and complete copies of such records for archival purposes, at its expense.  The Parties agree to comply with all state and federal patient confidentiality and

EXHIBIT I                                                           Page 117

privacy laws regarding medical/patient records.  The Parties shall fully comply with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and all implementing regulations issued pursuant thereto, as may be amended from time-to-time and all confidentiality rules and legal restrictions placed on medical/patient records.  In furtherance thereof, the Parties are entering into a Business Associate Agreement of even date hereof and attached hereto as Exhibit "B."

7.2.    Access to Information.  Each Party hereby authorizes and grants the other Party full and complete access to all information, instruments, and documents which may be reasonably requested by the other Party to perform its obligations hereunder or to conduct the Operations.  Each Party shall disclose and make available to representatives of the other Party for review and photocopying all relevant books, agreements, papers, and records of such Party.  At all times during and after the Term of this Agreement, all business records and information, including, but not limited to, all books of account and general administrative records and all information generated under or contained in the management information systems pertaining to Company, relating to the business and activities of Manager, shall be and remain the sole property of Manager.  Company will have reasonable access during normal business hours to the business records kept by Manager relating to the Operations, and Company may copy any or all such records.  After termination of this Agreement, each Party will have reasonable access during normal business hours to the business records of the other Party as determined by such Party accessing records to be necessary to carry out its affairs or for the defense of any legal or administrative action or claim relating to such records.

## 8.    GENERAL

8.1.    Indemnification.

8.1.1.    Indemnification by Company.  Company hereby agrees to indemnify, defend, and hold harmless Manager, its managers, officers, directors, owners, members, employees, agents, affiliates, and subcontractors, from and against any and all claims, damages, demands, diminution in value, losses, liabilities, actions, lawsuits and other proceedings, judgments, fines, assessments, penalties, awards, costs, and expenses (including reasonable attorneys' fees) related to third party claims, whether or not covered by insurance, arising from or relating to any willful misconduct relating to the breach of this Agreement by Company.  The provisions of this Section 8.1.1 shall survive termination or expiration of this Agreement. Notwithstanding the foregoing, Company shall not indemnify Manager for the acts or omissions of any physicians or others employed or engaged by Manager to perform non-clinical work under supervision by Manager.  Company shall immediately notify Manager of any lawsuits or actions, or any threat thereof, that are known or become known to Company that might adversely affect any interest of Company or Manager whatsoever.

8.1.2.    Indemnification by Manager.  Manager hereby agrees to indemnify, defend, and hold harmless Company, its respective officers, directors, shareholders, employees and agents from and against any and all claims, damages, demands, diminution in value, losses, liabilities, actions, lawsuits and other proceedings, judgments, fines, assessments, penalties, and awards, costs, and expenses (including reasonable attorneys' fees), whether or not covered by

EXHIBIT I                                    Page 118

insurance, arising from or relating to (a) any material breach of this Agreement by Manager, (b) any acts or omissions by Manager and its employees to the extent that such is not paid or covered by the proceeds of insurance.  The provisions of this Section 8.1.2 shall survive termination or expiration of this Agreement.  Notwithstanding the foregoing, Manager shall not indemnify Company for the acts or omissions of any physicians, or others employed or engaged by Company to perform clinical work under supervision by Company.  Manager shall immediately notify Company of any lawsuits or actions, or any threat thereof, that are known or become known to Manager that might adversely affect any interest of Manager or Company whatsoever.

8.1.3.  <u>Effect of Insurance</u>.  The Parties agree that no indemnification hereunder shall be in lieu of or to the detriment to any policy of insurance or recovery thereunder that responds to any damage or loss for which indemnification is sought; all recoveries for indemnification shall be non-duplicative of recoveries received under any policy of insurance, and shall be paid only to the extent that such insurance recoveries do not compensate the injured party for the full amount of loss otherwise payable under the indemnification clause.

8.2.  <u>Dispute Resolution</u>.  In the event that any disagreement, dispute or claim arises among the Parties hereto with respect to the enforcement or interpretation of this Agreement or any specific terms and provisions hereof or with respect to whether an alleged breach or default hereof has or has not occurred (collectively, a "<u>Dispute</u>"), such Dispute shall be settled in accordance with the following procedures:

8.2.1.  <u>Meet and Confer</u>.  In the event of a Dispute among the Parties hereto, a Party may give written notice to all other Parties setting forth the nature of such Dispute (the "<u>Dispute Notice</u>").  The Parties shall meet and confer to discuss the Dispute in good faith within ten (10) days following the other Parties' receipt of the Dispute Notice in an attempt to resolve the Dispute.  All representatives shall meet at such date(s) and time(s) as are mutually convenient to the representatives of each participant within the "Meet and Confer Period" (as defined herein below).

8.2.2.  <u>Mediation</u>.  If the Parties are unable to resolve the Dispute within thirty (30) days following the date of receipt of the Dispute Notice by the other Parties (the "<u>Meet and Confer Period</u>"), then the Parties shall attempt in good faith to settle the Dispute through nonbinding mediation under the then current mediation rules of ADR Services, Inc. ("<u>ADR Services</u>") or such other neutral service as the Parties may agree.  A single disinterested third-party mediator located in Los Angeles, California shall be selected by ADR Services in accordance with its then current mediation rules.  The Parties to the Dispute shall share the expenses of the mediator and the other costs of mediation on a pro rata basis.

8.2.3.  <u>Arbitration</u>.  Any Dispute which cannot be resolved by the Parties within sixty (60) days following the end of the Meet and Confer Period shall be resolved by final and binding arbitration (the "<u>Arbitration</u>").  The Arbitration shall be initiated and administered by and in accordance with the then current arbitration rules of ADR Services or such other neutral service as the Parties may agree.  The Arbitration shall be held in Los Angeles County, unless the Parties mutually agree to have such proceeding in some other locale; the exact time and location shall be decided by the arbitrator(s) selected in accordance with the then current

EXHIBIT I                                    Page 119

arbitration rules of ADR Services.  The arbitrator(s) shall apply California substantive law, or federal substantive law where state law is preempted.  The arbitrator(s) selected shall have the power to enforce the rights, remedies, duties, liabilities, and obligations of discovery by the imposition of the same terms, conditions, and penalties as can be imposed in like circumstances in a civil action by a court of competent jurisdiction of the State of California.  The arbitrator(s) shall have the power to grant all legal and equitable remedies provided by California law and award compensatory damages provided by California law, except that punitive damages shall not be awarded.  The arbitrator(s) shall prepare in writing and provide to the Parties an award including factual findings and the legal reasons on which the award is based.  The arbitration award may be enforced through an action thereon brought in the Superior Court for the State of California in Los Angeles County.  The prevailing Party in any Arbitration hereunder shall be awarded reasonable attorneys' fees, expert and non-expert witness costs and any other expenses incurred directly or indirectly with said Arbitration, including without limitation the fees and expenses of the arbitrator(s).

THIS ELECTION OF AN ALTERNATIVE DISPUTE PROCESS IS AN AFFIRMATIVE WAIVER OF THE PARTIES' RIGHTS TO A JURY TRIAL UNDER CALIFORNIA LAW, Cal. C. Civ. Pro. Sec 631.  BY SIGNING BELOW, EACH PARTY IS EXPLICITLY WAIVING JURY TRIAL AND AUTHORIZING ANY AND ALL PARTIES TO FILE THIS WAIVER WITH ANY COURT AS THE WAIVER REQUIRED UNDER Cal. C. Civ. Proc. Sec. 631(f)(2):

JURY TRIAL WAIVED:

Flexogenix Group, Inc.                          Flexogenix Oklahoma, PC


By:_____          By:_____
     Iris Chen, CEO                                  Sean P. Whalen, M.D., President

     8.3.    <u>Entire Agreement; Amendment</u>.  This Agreement constitutes the entire agreement among the Parties related to the subject matter hereof and supersedes all prior agreements, understandings, and letters of intent relating to the subject matter hereof.  This Agreement may be amended or supplemented only by a writing executed by all Parties.

     8.4.    <u>Notices</u>.  All notices, requests, demands or consents hereunder shall be in writing and shall be deemed given and received when delivered, if delivered in person, or four (4) days after being mailed by certified or registered mail, postage prepaid, return receipt requested, or one (1) day after being sent by overnight courier such as Federal Express, to and by the Parties at the following addresses, or at such other addresses as the Parties may designate by written notice in the manner set forth herein:

     If to Manager:        Flexogenix Group, Inc.
                       _____
                       _____

EXHIBIT I                                              Page 120

If to Company:    Flexogenix Oklahoma, PC

              _____

              _____

8.5.    _Counterparts._  This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which, when taken together, will constitute one and the same instrument.  Each counterpart may be delivered by facsimile transmission or e-mail (as a .pdf or similar attachment), which transmission shall be deemed delivery of an originally executed counterpart hereof.

8.6.    _Governing Law._  This Agreement shall be construed and governed in accordance with the laws of the State of California, without reference to conflict of law principles.

8.7.    _Assignment._  This Agreement shall not be assignable by any Party hereto without the express written consent of the other Parties; _provided_, however, that this Agreement shall be assignable by Manager to any of its wholly-owned affiliates or successors without the consent of the other Parties.

8.8.    _Waiver_.  Waiver of any agreement or obligation set forth in this Agreement by any Party shall not prevent that Party from later insisting upon full performance of such agreement or obligation and no course of dealing, partial exercise or any delay or failure on the part of any Party hereto in exercising any right, power, privilege, or remedy under this Agreement or any related agreement or instrument shall impair or restrict any such right, power, privilege or remedy or be construed as a waiver therefor.  No waiver shall be valid against any Party unless made in writing and signed by the Party against whom enforcement of such waiver is sought.

8.9.    _Binding Effect_.  Subject to the provisions set forth in this Agreement, this Agreement shall be binding upon and inure to the benefit of the Parties hereto and upon their respective successors and assigns.

8.10.    _Waiver of Rule of Construction_.  Each Party has had the opportunity to consult with its own legal counsel in connection with the review, drafting, and negotiation of this Agreement.  Accordingly, the rule of construction that any ambiguity in this Agreement shall be construed against the drafting party shall not apply.

8.11.    _Severability_.  If anyone or more of the provisions of this Agreement is adjudged to any extent invalid, unenforceable, or contrary to law by a court of competent jurisdiction, each and all of the remaining provisions of this Agreement will not be affected thereby and shall be valid and enforceable to the fullest extent permitted by law.

8.12.    _Force Majeure_.  Each Party shall be excused for failures and delays in performance of its respective obligations under this Agreement due to any cause beyond the control and without the fault of such Party, including without limitation, any act of God, war, terrorism, bio-terrorism, riot or insurrection, law or regulation, strike, flood, earthquake, water

EXHIBIT I                                    Page 121

shortage, fire, explosion or inability due to any of the aforementioned causes to obtain necessary labor, materials or facilities.  This provision shall not release such Party from using its best efforts to avoid or remove such cause and such Party shall continue performance hereunder with the utmost dispatch whenever such causes are removed.  Upon claiming any such excuse or delay for non-performance, such Party shall give prompt written notice thereof to the other Parties, provided that failure to give such notice shall not in any way limit the operation of this provision.

8.13.    <u>Authorization for Agreement.</u>  The execution and performance of this Agreement by Company and Manager have been duly authorized by all necessary laws, resolutions, and corporate action, and this Agreement constitutes the valid and enforceable obligations of Company and Manager in accordance with its terms.

8.14.    <u>Duty to Cooperate</u>.  The Parties acknowledge that the Parties' cooperation is critical to the ability of Manager and Company to successfully and efficiently perform their respective duties hereunder.  Accordingly, each Party agrees to cooperate fully with the other in formulating and implementing goals and objectives which are in Company's best interests.

*[Signature page follows.]*

EXHIBIT I                                    Page 122

IN WITNESS WHEREOF, the Parties agree to the foregoing terms of agreement through the execution below by their respective, duly authorized representatives as of the Effective Date.

**"MANAGER"**

Flexogenix Group, Inc.

By: _____
        Iris Chen, CEO

 **"COMPANY"**

Flexogenix Oklahoma, PC

By:_____
        Sean P. Whalen, M.D., President

EXHIBIT I                    Page 123

## EXHIBIT "A"

## <u>LOCATIONS</u>

1.  Flexogenix Oklahoma City: 9300 N. Kelley Ave, Oklahoma City, OK 73131

EXHIBIT I                                    Page 124

## EXHIBIT "B"

## BUSINESS ASSOCIATE AGREEMENT

This Business Associate Agreement ("Agreement") is entered into as of the ___ day of
_____, 20__ ("Effective Date"), by and between Flexogenix Group, Inc., a
California corporation ("Business Associate") and Flexogenix Oklahoma, PC, an Oklahoma
professional medical corporation ("Covered Entity"). The Covered Entity is referred to below as
"CE." The Business Associate is referred to below as "BA."

## RECITALS

WHEREAS,

A.      This Agreement is entered into by CE and BA for the purposes of complying with
privacy and security regulations issued by the United States Department of Health and Human
Services under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and
the Health Information Technology for Economic and Clinical Health Act ("HITECH Act") as
well as applicable State laws and regulations.

B.      CE is a covered entity as such term is defined under HIPAA, and as such is
required to comply with the requirements thereof regarding the confidentiality and privacy of
Protected Health Information (defined below).

C.      This Agreement will facilitate the ongoing operations of a health care enterprise
through which CE provides medical services to patients and for which BA provides
administrative services pursuant to that certain Management Services Agreement between them
of even date hereof ("Services Agreement").

NOW THEREFORE, in consideration of the promises contained herein, and other good
and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the
parties agree as follows:

## TERMS OF AGREEMENT

1.      **DEFINITIONS**

For the purposes of this Agreement, the following terms shall have the meanings ascribed
to them below:

1.1.    "Breach" shall have the meaning given to such term pursuant to 45 C.F.R. §
164.402.

1.2.    "Business Associate" shall have the meaning given to such term pursuant to 45
C.F.R. § 160.103, and in reference to the party to this Agreement, shall mean Flexogenix Group,
Inc.

EXHIBIT I                                    Page 125

1.3.    "<u>Covered Entity</u>" shall have the meaning given to such term pursuant to 45 C.F.R. § 160.103, and in reference to the party to this Agreement, shall mean Flexogenix Oklahoma, PC.

1.4.    "<u>Designated Record Set</u>" shall have the meaning given to such term pursuant to 45 C.F.R. § 164.501.

1.5.    "<u>Disclosure</u>" shall have the meaning given to such term pursuant to 45 C.F.R. § 160.103.

1.6.    "<u>Electronic Protected Health Information</u>" or "<u>ePHI</u>" shall have the meaning given to such term pursuant to 45 C.F.R. § 160.103.

1.7.    "<u>Individual</u>" shall have the meaning given to such term pursuant to 45 C.F.R. § 160.103.

1.8.    "<u>Individually Identifiable Health Information</u>" shall have the meaning given to such term pursuant to 45 C.F.R. § 160.103.

1.9.    "<u>Minimum Necessary</u>" shall have the meaning given to such term pursuant to 45 C.F.R. §§ 164.502(b) and 164.514(d).

1.10.    "<u>Privacy Rule</u>" shall mean the privacy standards for the protection of the privacy of Individually Identifiable Health Information at 45 C.F.R. Part 160 and Part 164, Subparts A and E.

1.11.    "<u>Protected Health Information</u>" or "<u>PHI</u>" shall have the meaning given to such term pursuant to 45 C.F.R. §§ 160.103.

1.12.    "<u>Required By Law</u>" shall have the meaning given to such term pursuant to 45 C.F.R. § 164.103.

1.13.    "<u>Secretary</u>" shall have the meaning given to such term pursuant to 45 C.F.R. § 160.103.

1.14.    "<u>Security Incident</u>" shall have the meaning given to such term pursuant to 45 C.F.R. § 164.304.

1.15.    "<u>Security Rule</u>" shall mean the security standards for the protection of Electronic Protected Health Information at 45 C.F.R. Part 160 and Part 164, Subparts A and C.

1.16.    "<u>Subcontractor</u>" shall have the meaning given to such term pursuant to 45 C.F.R. § 160.103.

EXHIBIT I                    Page 126

1.17.    "<u>Unsecured Protected Health Information</u>" or "<u>Unsecured PHI</u>" shall have the meaning given to such term pursuant to 45 C.F.R. § 164.402.

1.18.    "<u>Use</u>" shall have the meaning given to such term pursuant to 45 C.F.R. § 160.103.

## 2.    OBLIGATIONS OF BUSINESS ASSOCIATE

2.1.    <u>Permitted Uses and Disclosures of PHI</u>.  BA, its directors, officers, Subcontractors, employees, affiliates, agents, and representatives shall use or disclose PHI (a) in connection with fulfilling its duties and obligations under this Agreement and the Services Agreement; (b) for the proper management and administration of BA; or (c) to carry out the legal responsibilities of BA.

2.2.    <u>Prohibited Uses and Disclosures of PHI</u>.  BA shall not use or disclose PHI other than as permitted or Required By Law.  BA shall not use or disclose PHI in any manner that violates state or federal laws, or would violate such laws if used or disclosed in such manner by CE.

2.3.    <u>Performance of CE's Obligation(s)</u>.  To the extent BA is to carry out CE's obligation(s), BA must comply with all requirements that apply to CE in the performance of such obligation(s).

2.4.    <u>Third Party Disclosures</u>.  BA shall obtain and maintain an agreement with each Subcontractor that has or will have access to PHI which is received from, created, or received by BA on behalf of CE, pursuant to which agreement such Subcontractor agrees to be bound by the same restrictions, terms, and conditions that apply to BA pursuant to this Agreement with respect to such PHI.  BA shall also (a) obtain reasonable assurances from the Subcontractor that the PHI will be held in confidence and used or further disclosed only as Required by Law or for the purpose for which it was disclosed, and (b) obligate such person to notify BA of any instance in which PHI is used or disclosed that is not provided for in the Services Agreement, including incidents that constitute breaches of Unsecured PHI or any Security Incident of which it becomes aware in which the confidentiality of the PHI has been breached.

2.5.    <u>Minimum Necessary</u>.  BA and its agents or Subcontractors shall request, use, and disclose only the minimum amount of PHI necessary to accomplish the purpose of the request, use or disclosure.  To the extent BA uses or discloses PHI received from, created, or received by BA on behalf of CE, BA will make reasonable efforts to limit PHI to the Minimum Necessary to accomplish the intended purpose of the use, disclosure or request.

2.6.    <u>Access of Individuals to PHI</u>.

2.6.1.    BA shall make PHI maintained by BA or its agents or Subcontractors available to CE for inspection and copying within three (3) business days of a written request by CE to enable CE to fulfill its obligations under the Privacy Rule.  If BA maintains ePHI, BA shall provide such information in electronic format to enable CE to fulfill its obligations under 45 C.F.R. § 164.524.

EXHIBIT I                                    Page 127

2.6.2.   In the event an Individual or entity requests access to PHI from BA, BA shall forward such request to CE within two (2) business days.  CE is responsible for determining what PHI shall be unavailable to the Individual pursuant to 45 C.F.R. § 164.524.

2.6.3.   Any denial of access to PHI determined by CE pursuant to 45 C.F.R. § 164.524, and conveyed to BA by CE, shall be the responsibility of CE, including resolution or reporting of all appeals, and/or complaints arising from denials.

2.7.   <u>Amendment of PHI</u>.

2.7.1.   As applicable, in order to allow CE to respond to a request by an Individual for an amendment pursuant to 45 C.F.R. § 164.526, BA shall, within three (3) business days of a written request by CE for PHI about an Individual contained in a Designated Record Set, make such PHI available to CE for so long as such information is maintained in the Designated Record Set.

2.7.2.   In the event that any Individual requests that the BA amend his or her PHI, BA shall forward such request to CE within two (2) business days.  The CE is responsible for determining what PHI is unavailable to the Individual pursuant to 45 C.F.R. § 164.526.

2.7.3.   Any denial of an amendment to PHI determined by CE pursuant to 45 C.F.R. § 164.526, and conveyed to BA by CE, shall be the responsibility of CE, including resolution or reporting of all appeals and/or complaints arising from denials.

2.7.4.   As applicable, within ten (10) business days of receipt of a request from CE to amend an Individual's PHI in a Designated Record Set, BA shall incorporate any amendments, statements of disagreement, and/or rebuttals approved by CE into its Designated Record Set, as required by 45 C.F.R. § 164.526.

2.8.   <u>Accounting of Disclosures</u>.

2.8.1.   In order to allow CE to respond to a request by an Individual for an accounting of disclosures of a Designated Record Set pursuant to 45 C.F.R. § 164.528, BA shall, within five (5) business days of a CE's written request for an accounting of disclosures of PHI about an Individual, make such information available to CE.  As applicable, BA shall provide CE with the following information: (a) the date of the disclosure; (b) the name of the entity or person who received the PHI, and, if known, the address of such entity or person; (c) a brief description of the PHI disclosed; and (d) a brief statement of the purpose of such disclosure.

2.8.2.   In the event an Individual requests an accounting of disclosures of PHI directly from BA, BA shall forward such request to CE within two (2) business days.

2.8.3.   As applicable BA shall implement an appropriate recordkeeping process of Designated Records Sets to enable it to comply with the requirements of 45 C.F.R. § 164.528.

EXHIBIT I                                                           Page 128

2.9.    Subpoena or Legal Request for PHI.  BA shall notify CE within two (2) business days of receipt of any request, subpoena, or other legal process to obtain PHI received from, or created or received by BA on behalf of CE.  CE, in conjunction with BA, shall determine whether BA may disclose PHI pursuant to such request, subpoena, or other legal process.  The provisions of this Section 2.9 shall survive the termination of this Agreement.

2.10.    Reporting Breaches, Improper Disclosures, and Security Incidents.

2.10.1. Breaches.  In the event of a Breach of any Unsecured PHI that BA accesses, maintains, retains, modifies, records, stores, destroys, or otherwise holds or uses on behalf of CE, BA shall report such Breach to CE immediately, but in no event more than twenty-four (24) hours after discovering the breach.

2.10.2. Improper Disclosures.  BA shall report any unauthorized or improper use or disclosure of PHI regarding the terms and conditions of this Agreement or applicable federal and state laws to CE as soon as practicable, but in no event later than two (2) business days of the date on which BA becomes aware of such unauthorized or improper use or disclosure.  BA shall, in consultation with CE, mitigate to the extent practicable any harmful effect of such improper disclosures.

2.10.3. Security Incidents.  BA shall report to CE any Security Incident of which it becomes aware within five (5) business days.  BA hereby provides notice to CE that it receives frequent, routine, unsuccessful attempts to penetrate or compromise its systems, including pings, port scans, and log on attempts.  Unless these attempts result in an unauthorized access to, use, disclosure or destruction or loss of ePHI, BA will not report such incidents to CE.

2.11.    Safeguards.  BA shall implement appropriate administrative, technical, and physical safeguards, consistent with the size and complexity of BA's operations, to protect the confidentiality and security of PHI that it creates, receives, maintains, or transmits on behalf of CE and to prevent the use or disclosure of PHI in any manner inconsistent with the terms of this Agreement.

2.12.    Availability of Books and Records to CE.  Within ten (10) calendar days of a written request by CE, BA and its agents or Subcontractors shall permit CE to audit BA's internal practices, books, and records at reasonable times as they pertain to the use and disclosure of PHI received from, or created or received by BA on behalf of CE in order to ensure that CE and BA are in compliance with the requirements of this Agreement, and to the extent that CE determines such examination is necessary to comply with CE's obligations pursuant to HIPAA. The availability of books and records from BA to CE is subject to the following conditions:

a.    BA and CE shall mutually agree in advance upon the scope, timing, and location of such an inspection.

b.    CE shall protect the confidentiality of all confidential and proprietary information of BA to which CE has access during the course of inspection.

EXHIBIT I                                        Page 129

    c. CE shall execute a nondisclosure agreement, under terms mutually agreed upon by the parties, if requested by BA.

2.13. <u>Governmental Access to Records</u>.  BA shall make its internal practices, books, and records relating to the use and disclosure of PHI available to the Secretary for purposes of determining BA's compliance with the Privacy Rule and the Security Rule.  BA shall notify CE within ten (10) calendar days of learning that BA has become the subject of an audit, compliance review, or complaint investigation by the Secretary.

3. **OBLIGATIONS OF COVERED ENTITY**

3.1. <u>General Obligations</u>.  CE warrants that CE, its directors, officers, subcontractors, employees, affiliated agents, and representatives: (a) shall comply with the Privacy Rule in its use or disclosure of PHI; (b) shall not use or disclose PHI in any manner that violates applicable federal and state laws; (c) shall not request BA to use or disclose PHI in any manner that violates applicable federal and state laws if such use or disclosure were done by CE; and (d) may request BA to disclose PHI directly to another party only for the purposes allowed by the Privacy Rule.

3.2. <u>Breach</u>.  CE shall provide notice to BA of any pattern of activity or practice of BA that CE believes constitutes a material breach or violation of the BA's obligation under the Services Agreement or this Agreement within ten (10) calendar days of discovery and shall meet with BA to discuss and attempt to resolve the problem as one of the reasonable steps to cure the breach or end the violation.

3.3. <u>Notice of Privacy Practices</u>.  CE will notify BA of any limitation(s) in its notice of privacy practices in accordance with 45 C.F.R. § 164.520, to the extent that such limitation may affect BA's use or disclosure of PHI.  CE shall provide such notice no later than fifteen (15) days prior to the effective date of the limitation.

3.4. <u>Notification of Changes Regarding Individual Permission</u>.  CE shall notify BA of any changes in, or revocation of, permission by an Individual to use or disclose PHI, to the extent that such changes may affect BA's use or disclosure of PHI.  CE shall provide such notice no later than fifteen (15) days prior to the effective date of the change.

3.5. <u>Notification of Restrictions to Use or Disclosure of PHI</u>.  CE shall notify BA of any restriction to the use or disclosure of PHI that CE has agreed to in accordance with 45 C.F.R. § 164.522, to the extent that such restriction may affect BA's use or disclosure of PHI.  CE shall provide such notice no later than fifteen (15) days prior to the effective date of the restriction.

3.6. <u>Permissible Requests by CE</u>.  CE shall not request BA to use or disclose PHI in any manner that would not be permissible under HIPAA if done by CE, except as permitted pursuant to Section 2.

EXHIBIT I                                    Page 130

4.    **TERM AND TERMINATION**

4.1.    Term.  This Agreement shall have a term co-extensive with the Services Agreement.

4.2.    Material Breach.  This Agreement may be terminated by either party upon a material breach by the other party, provided that the non-breaching party provides the breaching party within thirty (30) days' written notice of any such breach, during which period of time the breaching party shall have the opportunity to cure any such breach.  If any such breach is cured by the breaching party during such period of time, it shall be as if such breach never occurred and this Agreement shall continue in full force and effect, unaffected by the non-breaching party's notice.

4.3.    Effect of Termination.  Upon termination of this Agreement, BA shall return or destroy all PHI that BA or its agents or Subcontractors maintain in any form, and shall retain no copies of such PHI.  If return or destruction is not feasible, as determined by BA, BA shall continue to extend the protections of Section 2 of this Agreement to such information, and limit further use of such PHI to those purposes that make the return or destruction of such PHI impractical.  All destruction shall be in accordance with HIPAA, the HITECH Act, and applicable State laws and regulations.

5.    **INSURANCE AND INDEMNIFICATION**

5.1.    Insurance.  The parties shall use their best efforts to obtain and maintain cyber liability insurance covering claims based on a violation of the Privacy Rule or any applicable law or regulation concerning the privacy of patient information and claims based on obligations pursuant to this Agreement with coverage of not less than One Million Dollars ($1,000,000) per occurrence.

5.2.    Indemnification.  Each party hereby indemnifies and holds the other party and its employees and agents harmless from and against any and all loss, liability, or damages, including reasonable attorneys' fees, arising out of or in any manner occasioned by a breach of any provision of this Agreement by such breaching party, its employees, agents, or Subcontractors. Nothing herein is intended to defeat the application of insurance proceeds in the first instance to make whole a party claiming indemnification hereunder; all such indemnification requests made hereunder are to be made only to the extent the damages suffered have not been covered by insurance proceeds.

6.    **MISCELLANEOUS**

6.1.    Amendment.  The parties agree to take such action to amend this Agreement from time-to-time as is necessary to comply with the requirements of HIPAA, the HITECH Act, and applicable State laws and regulations.

6.2.    Notices.  Notices shall be given in the manner provided by the Services Agreement.

EXHIBIT I                                    Page 131

6.3.    Disclaimer.  BA makes no warranty or representation that compliance by BA with this Agreement, HIPAA, or the HITECH Act will be adequate or satisfactory for CE's own purposes.  CE is solely responsible for all decisions made by CE regarding the safeguarding of PHI.

6.4.    No Third-Party Beneficiaries.  Except as expressly provided for in the Privacy Rule, there are no third party beneficiaries to this Agreement.

6.5.    Effect on Services Agreement.  Except as specifically required to implement the purposes of this Agreement, or to the extent inconsistent with this Agreement, all other terms of the Services Agreement shall remain in force and effect.

6.6.    Interpretation.  The provisions of this Agreement shall prevail over any provisions in the Services Agreement that may conflict with or are inconsistent with any provision in this Agreement.  This Agreement and the Services Agreement shall be interpreted as broadly as necessary to implement and comply with HIPAA, the HITECH Act, and applicable State laws and regulations.  The parties agree that any ambiguity in this Agreement shall be resolved in favor of a meaning that complies and is consistent with HIPAA, the HITECH Act and applicable State laws and regulations, as appropriate.  State regulations will prevail if and where they are more stringent than Federal regulations.

6.7.    Governing Law.  This Agreement shall be construed and governed in accordance with the laws of the State of California, without reference to conflict of law principles.

IN WITNESS WHEREOF, the parties hereto agree to the foregoing through the execution of this Agreement by their respective duly authorized representatives below as of the Effective Date hereof.

COVERED ENTITY                          BUSINESS ASSOCIATE

Flexogenix Oklahoma, PC                  Flexogenix Group, Inc.


By:_____          By:_____
     Sean P. Whalen, M.D., President              Iris Chen, CEO

EXHIBIT I                                   Page 132

# EXHIBIT J

**Sean Patrick Whalen**                                                                              **CURRICULUM VITAE**
645 W 9th Street, #730
Los Angeles, CA 90015
(213)222-3867(c)
(213)418-0137(o)
(213)261-3816(f)
sean@flexogenix.com

**EXPERIENCE**                 03/2018 – Present
                              President & Medical Director – Flexogenix Oklahoma, PC
                              Oklahoma City, Oklahoma

                              03/2014 – Present
                              President & Medical Director – Flexogenix North Carolina, PC
                              Charlotte, North Carolina

                              01/2015 – Present
                              Co-Founder & Chief Medical Officer – Flexogenix Group, Inc.
                              Los Angeles, California

                              04/2013 – Present
                              President & Medical Director – Flexogenix, Inc.
                              Los Angeles, California

                              09/2010 – 08/2013
                              Medical Director – Insight Imaging Garfield
                              President & CEO – San Gabriel Radiology Medical Group
                              Monterey Park, California

                              05/2008 – 10/2013
                              Consulting Radiologist
                              Mid-Carolina Radiology Associates
                              Sanford, North Carolina

                              07/2007 – 06/2012
                              Staff Radiologist
                              Gaston Radiology, PA
                              Gastonia, North Carolina

**RESIDENCY**                  2003 – 2007
                              Diagnostic Radiology
                              University of Southern California, LAC+USC Medical Center
                              Los Angeles, California

**INTERNSHIP**

2002 – 2003
Internal Medicine
St. Mary Medical Center
Long Beach, California

**EDUCATION**

2002
Doctor of Medicine
University of California, Irvine – College of Medicine
Irvine, California

1997
BA, Psychology & Biological Sciences, minor in Chemistry
California State University, Fullerton
Fullerton, California

**LICENSURE**

California Medical Board – 2003 (current)
North Carolina Medical Board – 2007 (current)
South Carolina Medical Board – 2008 (current)
Georgia Composite Medical Board – 2016 (current)
Oklahoma State Board of Medical Licensure – 20016 (current)
Indiana Professional Licensing Agency – 2016 (current)

**HONORS/AWARDS**

Howard Hughes Medical Institute Medical Student Research
Training Fellowship
Fulfilled at UCI-COM (1999 - 2000)

National Institute of Health Short-term Research Fellowship
Fulfilled at UCI-COM (1998)

**AFFILIATIONS**

American Medical Association • California Medical Association •
Orange County Medical Association • American College of
Radiology • American Roentgen Ray Society

**MODALITIES**

Computed tomography • Ultrasound • Plain film radiography •
MRI • Nuclear medicine • Interventional radiology

**Iris Yingyin Whalen**                                                                    **CURRICULUM VITAE**
645 W 9th Street, #730
Los Angeles, CA 90015
(626)379-9950(c)
(213)418-0135(o)
(213)261-3816(f)
iris@flexogenix.com

**EXPERIENCE**            04/2013 – Present
                          Chief Executive & Financial Officer – Flexogenix Group, Inc.
                          Los Angeles, California

                          09/2006 – 02/2014
                          Radiologic Technologist II
                          AHMC Garfield Medical Center
                          Monterey Park, California

                          07/2006 – 10/2013
                          Radiologic Technologist
                          Calvin Yang Medical Imaging
                          Monterey Park, California

**INTERNSHIP**            2011 – 2013
                          Focus Medical Group
                          Los Angeles, California

                          2011 – 2013
                          Insight Imaging Garfield
                          Monterey Park, California

**EDUCATION**             2013
                          BS, Radiology Practitioner Assistant/Registered Radiologist
                          Assistant
                          Weber State University
                          Ogden, Utah

                          2006
                          AS, BS, Radiology Science
                          Pasadena City College
                          Pasadena, California

**LICENSURE**                    ARRT, R – 2006
                                 ARRT, M – 2006
                                 ARRT, CT – 2008
                                 ARRT, RRA – 2013
                                 CRT, RT (R) – 2006
                                 CRT, RT (F) – 2006
                                 CRT, RT (M) – 2006
                                 CBRPA, RPA – 2013


**MODALITIES**                   Computed tomography • Plain film radiography • MRI •
                                 Mammography • Fluoroscopy • Procedures