Jeremy W. Faith (State Bar No. 190647)
*Jeremy@MarguliesFaithLaw.com*
Monsi Morales (State Bar No. 235520)
*Monsi@MarguliesFaithLaw.com*
MARGULIES FAITH LLP
16030 Ventura Blvd., Suite 470
Encino, CA 91436
Telephone: (818) 705-2777
Facsimile: (818) 705-3777

Counsel for Flexogenix Group, Inc., *et al.*,
Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>FLEXOGENIX GROUP, INC.,<br><br><div align="right">Debtor.</div> | Bk. Case No.: 2:19-bk-12927-BR<br><br>Chapter: 11<br><br>Jointly Administered With:<br>Case No.: 2:19-bk-12928-BR<br>Case No.: 2:19-bk-12929-BR |
| In re<br><br>WHALEN MEDICAL CORPORATION,<br><br><div align="right">Debtor.</div> | Case No.: 2:19-bk-12930-BR<br>Case No.: 2:19-bk-12931-BR |
| In re<br><br>FLEXOGENIX NORTH CAROLINA, PC,<br><br><div align="right">Debtor.</div> | **FLEXOGENIX DEBTORS' THIRD AMENDED JOINT PLAN OF REORGANIZATION DATED MARCH 23, 2021** |
| In re<br><br>FLEXOGENIX GEORGIA, PC,<br><br><div align="right">Debtor.</div> | <u>Confirmation Hearing:</u><br>Date:    May 11, 2021<br>Time:    10:00 a.m. |
| In re<br><br>FLEXOGENIX OKLAHOMA, PC,<br><br><div align="right">Debtor.</div> | Place:  Courtroom 1668 via Zoomgov.com<br>Meeting ID: 1617136367<br>Password: 123456<br>        255 E. Temple St.<br>        Los Angeles, CA 90012 |
| ☒ Affects All Debtors<br>☐ Affects Flexogenix Group, Inc.<br>☐ Affects Whalen Medical Corporation<br>☐ Affects Flexogenix North Carolina, P.C.<br>☐ Affects Flexogenix Georgia, P.C.<br>☐ Affects Flexogenix Oklahoma, P.C. | |

# TABLE OF CONTENTS

*Page No.*

**INTRODUCTION** ..................................................................................................1

**I. DEFINED TERMS AND RULES OF INTERPRETATION** ............................1

**II. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**...................7

   *A. General Overview*................................................................................7

   *B. Treatment of Unclassified Claims* ........................................................8

      1. Statutory Fees ........................................................................8

      2. Administrative Expenses .........................................................8

      3. Priority Tax Claims..................................................................9

      4. Professional Fee Claims ..........................................................9

   *C. Treatment of Classified Claims and Interests*........................................9

      1. Joint Plan for All Debtors ........................................................9

      2. Summary of Classes ..............................................................10

         1. Classes of Secured Claims ...............................................10

         2. Classes of Priority Unsecured Claims .................................12

         3. Classes of General Unsecured Claims .................................13

         4. Classes of Interests ........................................................13

   *D. Acceptance of the Plan* .....................................................................14

      1. Class Entitled to Vote ...........................................................14

      2. Acceptance by Impaired Classes .............................................14

      3. Elimination of Classes ...........................................................14

      4. Cramdown............................................................................14

   *E. Means for Implementation of this Plan* ...............................................14

      1. Continued Legal Existence and Revesting of Assets ...................14

      2. Sources of Cash for Distribution .............................................15

      3. Post-Confirmation Management ..............................................15

      4. Provisions Governing Distributions .........................................15

         a. Disbursing Agent ...........................................................15

         b. Distributions for Claims Allowed as of Effective Date .........................................15

         c. Undeliverable Distributions...............................................16

         d. Interest and Penalties on Claims .......................................16

         e. Means of Cash Payment...................................................16

         f. Withholding and Reporting Requirements............................16

         g. Setoffs .........................................................................17

         h. Procedures for Resolving Disputed, Contingent, and Unliquidated Claims ..........17

      4. Corporate Action ..................................................................18

      5. Effectuating Documents; Further Transactions ..........................18

      6. Exemption From Certain Transfer Taxes and Recording Fees ..................18

      7. Further Authorization ............................................................19

**III. MISCELLANEOUS ITEMS** .................................................................19

i

A. *Treatment of Executory Contracts and Unexpired Leases* ............................................19
   1. Assumption/Rejection of Executory Contracts and Unexpired Leases ...................19
   2. Compensation and Benefit Programs ...........................................................20
   3. Employment Contracts ............................................................................20
B. *Preservation of Causes of Action* ...............................................................21
C. *Retention of Jurisdiction* ........................................................................21
D. *Confirmation and Consummation of this Plan* .............................................23
   1. Condition to Entry of the Confirmation Order ............................................23
   2. Conditions to Effective Date ...................................................................23
   3. Waiver of Condition ...............................................................................24
IV. **EFFECT OF PLAN CONFIRMATION** ....................................................24
A. *Binding Effect* ........................................................................................24
B. *Revesting of Assets* ..................................................................................24
C. *Discharge, Satisfaction of Claims and Releases* ...........................................25
   1. Complete Satisfaction, Discharge and Releases ........................................25
D. *Injunction* .............................................................................................25
   1. General .................................................................................................25
   2. Exculpation and Limitation of Liability ....................................................26
   3. Terms of Bankruptcy Injunction or Stays ..................................................27
E. *Post-Effective Date Retention of Professionals* ............................................27
F. *Indemnification of Officers, Directors and Employees* ..................................27
G. *Amendment or Modification of this Plan* .....................................................27
H. *Post-Confirmation Status Report* ...............................................................28
I. *Payment of Quarterly Fees* ........................................................................28
J. *Post-Confirmation Converstion/Dismissal* ...................................................28
K. *Final Decree and Closing of the Chapter 11 Case* .........................................28
L. *Severability of Plan Provisions* ..................................................................28
M. *Successors and Assigns* ............................................................................29
N. *Revocation, Withdrawal, or Non-Consummation* ..........................................29
O. *Notice* ..................................................................................................29
P. *Governing Law* .......................................................................................30
Q. *Tax Reporting and Compliance* .................................................................30
R. *Conflicts* ..............................................................................................30

# INTRODUCTION

The above-captioned debtors (the "**Debtors**" or the "**Plan Proponents**") propose the following plan of reorganization for the resolution of the outstanding Claims against and Interests in the Debtors.  Reference is made to the Disclosure Statement, filed contemporaneously herewith, for a discussion of (i) certain information relating to the Debtors, (ii) a summary and analysis of this Plan, and (iii) certain matters related to the confirmation and the consummation of this Plan. Subject to certain restrictions and requirements set forth in section 1127 of title 11 of the United States Code and Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, subject to Sections IV.G. and IV.N herein, the Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw this Plan.

## I.

## DEFINED TERMS AND RULES OF INTERPRETATION

*Defined Terms*.  As used herein, capitalized terms shall have the meanings set forth in this Article I or as defined elsewhere in the Plan.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**1.1**    *Administrative Claim* means a Claim for costs and expenses of administration of the Chapter 11 Case under sections 503(b) or 507(b) of the Bankruptcy Code, including: (a) any actual and necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estate and operating the businesses of the Debtors; (b) Professional Fee Claims; and (c) claims under section 503(b)(9) of the Bankruptcy Code.

**1.2**    *Allowed* means, with respect to any Claim, such Claim or any portion thereof that (a) the Debtors or Reorganized Debtors have assented to the validity, (b) for which a proof of Claim was timely filed and has been allowed by a Final Order, (c) allowed pursuant to the terms of this Plan, or (d) allowed by agreement between the Holder of such Claim and the Debtors or Reorganized Debtors.

**1.3**    *Allowed Amount* means the Allowed amount of an Allowed Claim.

**1.4**    *Assets* means any and all real or personal property of any nature, including any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, causes of actions and any other general intangibles

**1.5**    *Avoidance Action* means a claim or cause of action of an Estate or of a Debtor in its capacity as debtor in possession, exercising its rights and powers of a trustee, arising out of or maintainable pursuant to section 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b)

or 553 of the Bankruptcy Code or under any other similar applicable law, regardless of whether or not such action has been commenced prior to the Effective Date.

**1.6** *Bankruptcy Code* means title 11 of the United States Code, as now in effect or hereafter amended to the extent such amendments apply to the Chapter 11 Case.

**1.7** *Bankruptcy Court* means the United States Bankruptcy Court for the Central District of California, or any other court with jurisdiction over the Chapter 11 Case.

**1.8** *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended to the extent such amendments apply to the Chapter 11 Case.

**1.9** *Business Day* means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**1.10** *Cash* means legal tender of the United States of America.

**1.11** *Chapter 11 Case(s)* means (a) when used with reference to a particular Debtor, the case under chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court and (b) when used with reference to all Debtors, the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court, which are being administered jointly under the case number 2:19-bk-12927-BR.

**1.12** *Claim* means a "claim" as defined in section 101(5) of the Bankruptcy Code.

**1.13** *Class* means a category of Claims or Interests, as described in Article II hereof.

**1.14** *Confirmation* means the confirmation of this Plan by the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code.

**1.15** *Confirmation Date* means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

**1.16** *Confirmation Hearing* means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be continued from time to time.

**1.17** *Confirmation Order* means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**1.18** *Convenience Claim* means a Claim against the Debtors that is for $1,000 or less, or a Claim for more than $1,000 that the Holder of such Claim elects to reduce to $1,000.

**1.19**     *Debtors* means the following debtors and debtors in possession in the Chapter 11 Cases: Flexogenix Group, Inc., Flexogenix North Carolina, P.C., Flexogenix Oklahoma, P.C., Flexogenix Georgia, P.C., and Whalen Medical Corporation.

**1.20**     *Disclosure Statement* means the disclosure statement filed contemporaneously herewith (including all exhibits and schedules thereto) relating to this Plan, as amended, modified or supplemented from time to time.

**1.21**     *Disputed Claim* means (a) a Claim as to which the Plan Proponents have interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by the Debtors, the Reorganized Debtors, or other party-in-interest in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order, (b) a Claim scheduled by the Debtors as contingent, unliquidated, or disputed, (c) a Claim that amends a Claim scheduled by the Debtors as contingent, unliquidated, or disputed, (d) a Claim described in the Plan or the Disclosure Statement as disputed, or (e) a Claim prior to its having become an Allowed Claim.

**1.22**     *Disallowed* means, with respect to any Claim, such Claim or any portion thereof that (a) has been disallowed by an order or judgment of the Bankruptcy Court or other court in which the merits of the Claim were adjudicated pursuant to the Plan, (b) disallowed pursuant to the terms of this Plan, or (c) disallowed by agreement between the Holder of such Claim and the Debtors or Reorganized Debtors.

**1.23**     *Effective Date* means a Business Day on or after the Confirmation Date specified by the Debtors on which (a) no stay of the Confirmation Order is in effect and (b) the conditions to effectiveness set forth in Section III.D.2 hereof have been satisfied or waived.

**1.24**     *Entity* means an "entity" as defined in section 101(15) of the Bankruptcy Code.

**1.25**     *Estate(s)* means the estate of a Debtor created under section 541 of the Bankruptcy Code.

**1.26**     *Exculpated Parties* means (a) the Plan Proponents, (b) any insider or affiliate of the Plan Proponents, and (c) the present directors, officers, managers, employees, legal advisors and other professionals of (a) and (b) (in their capacity as such).

**1.27**     *Executory Contract* means a contract (a) that is "executory" for purposes of section 365 of the Bankruptcy Code and (b) to which a Debtor is a party as of the commencement of its Chapter 11 Case.

**1.28**     *Exhibit* means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement, as amended, modified or supplemented from time to time.

**1.29**    ***Final Order*** means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request reargument or further review or rehearing has expired and no appeal, petition for certiorari, or request for reargument or further review or rehearing has been timely filed, or (b) any appeal, that has been or may be taken or any petition for certiorari or request for reargument or further review or rehearing that has been or may be filed, has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal or petition for certiorari or request for reargument or further review or rehearing has been or can be taken for granted.

**1.30**    ***General Unsecured Claim*** means a Claim against a Debtor that is not an Administrative Claim, Non-Tax Priority Claim, Priority Tax Claim, Secured Claim, or Convenience Claim.

**1.31**    ***Holder*** means a holder of a Claim or Interest, as applicable, or such holder's designee.

**1.32**    ***Impaired*** means, when used in reference to a Claim, a Claim that is in a Class that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.33**    ***Insider*** means an "insider" as defined in section 101(31) of the Bankruptcy Code.

**1.34**    ***Interest*** means the legal, equitable, contractual (including any contractual right to acquire equity in a Debtor contingent upon future events, such as an initial public offering) and other rights of any Entity with respect to any ownership interest in a Debtor, whether or not transferable, and any option, warrant, or right to purchase, sell, or subscribe for an ownership interest or other equity security in any Debtor, including membership interests in limited liability companies regardless of whether such membership interests have any voting rights under the applicable operating agreement.

**1.35**    ***Lien*** means a lien, security interest, pledge, title retention agreement, encumbrance, charge, mortgage or hypothecation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

**1.36**    ***Management Services Agreement(s)*** means the written agreements attached to the Disclosure Statement as Exhibit I to be executed on the Effective Date between Flexogenix Group, Inc., and PC Debtors Flexogenix North Carolina, P.C., and Flexogenix Oklahoma, P.C., pursuant to which Flexogenix Group, Inc. will provide administrative and management services to the PC Debtors.

**1.37**    ***Non-Tax Priority Claim*** means a Claim, other than an Administrative Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to section 507(b) of the Bankruptcy Code.

4

**1.38**     *PC Debtors* means debtors Flexogenix North Carolina, P.C., Flexogenix Oklahoma, P.C., Flexogenix Georgia, P.C., and Whalen Medical Corporation.

**1.39**     *Person* means a "person" as defined in section 101(41) of the Bankruptcy Code.

**1.40**     *Petition Date* means March 18, 2019.

**1.41**     *Plan* means this chapter 11 plan of reorganization, including the Exhibits and all supplements, appendices, and schedules hereto, either in its current form or as the same may be amended, modified or supplemented from time to time.

**1.42**     *Plan Proponents* has the meaning ascribed to that term in the Introduction.

**1.43**     *Priority Tax Claim* means a Claim of a governmental unit of the kind specified in sections 502(i), 507(a)(8), or 1129(a)(9)(D) of the Bankruptcy Code.

**1.44**     *Professional* means (a) a professional employed in a Chapter 11 Case pursuant to section 327, 328, or 1103 of the Bankruptcy Code or otherwise, and (b) a professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.45**     *Professional Fee Claim* means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred on or after the Petition Date and prior to and including the Effective Date.

**1.46**     *Pro Rata Share* means, with respect to a Claim or a Class of Claims, the percent that is equal to the fraction whose numerator is the amount of the particular Claim under consideration and whose denominator is the aggregate amount of all Claims of the same nature and Class, and, with respect to a Class of Interests, the percentage that is equal to fraction whose numerator is  the number of shares or other Interests held by a particular Holder and the denominator of which is the aggregate number of shares or interests of the same nature and Class held by all Holders.

**1.47**     *Reinstated* means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim so as to leave the Class including such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code, or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before, on or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, (ii) reinstating the maturity of such Claim as such maturity existed before such default, (iii) compensating the holder of a Claim for any damages incurred as a result of any reasonable reliance by such holder of a Claim on such contractual provision or such applicable law, and (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim; *provided*, *however*, that any contractual right that

5

does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence, prohibiting certain transactions, change of control or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required to be cured to achieve reinstatement.

**1.48** *Reorganized Debtors* means, with respect to the Debtors, the successor to the Debtors on and after the Effective Date.

**1.49** *Retained Actions* means all claims, causes of action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which a Debtor, in its capacity as debtor or in its capacity as debtor in possession, an Estate, or the Reorganized Debtors may hold against any Entity, including: (a) claims and causes of action brought prior to the Effective Date, (b) claims and causes of action seeking the recovery of any of a Debtor's or the Reorganized Debtors' rights to payment created or arising in the ordinary course of business, including claim overpayments and tax refunds, and (c) all Avoidance Actions; *provided*, *however*, that Retained Actions shall not include those claims, causes of action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, released under Article IV herein.

**1.50** *Secured Claim* means a Claim that is secured by a Lien on property in which an Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

**1.51** *Unclassified Claims* means Administrative Claims and Priority Tax Claims.

**1.52** *Unexpired Lease* means a lease (a) that is "executory" for purposes of section 365 of the Bankruptcy Code, and (b) to which a Debtor is a party as of the commencement of the Chapter 11 Cases.

**1.53** *Unimpaired* means a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.54** *U.S. Trustee Fees* means all fees and charges assessed against the Estate under section 1930 of title 28 of the United States Code.

*Rules Of Interpretation And Computation Of Time*.  For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions

means that such document shall be substantially in such form or substantially on such terms and conditions with any modifications subject to the consent of the Plan Proponents; (c) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns, and any reference to an entity in other contexts includes that entity's predecessors; (e) all references in this Plan to Articles and Sections are references to Articles and Sections of or to this Plan, unless otherwise indicated; (f) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply; (k) "including" means "including without limitation;" and (l) with reference to any distribution under this Plan, "on" a date means on or as soon as reasonably practicable after that date.

*Exhibits*.  All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto or to the Disclosure Statement, such Exhibits shall be filed with the Bankruptcy Court no later than the Confirmation Date.  Holders of Claims and Interests may obtain a copy of the Exhibits upon written request to the Debtors' attorneys.  Upon their filing, the Exhibits may be inspected (i) in the office of the clerk of the Bankruptcy Court or its designee during normal business hours; or (ii) online, through the U.S. Court's PACER website at http://www.pacer.gov (registration and fee may be required).  The documents contained in the Exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

## II.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

## A.    GENERAL OVERVIEW

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified, and the respective treatment of such Unclassified Claims is set forth in Section II.B of this Plan.

The treatment of classified claims is described in Section II.C of this Plan.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular

Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

**B.     TREATMENT OF UNCLASSIFIED CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote on this Plan.

**1.     *Statutory Fees*.**  On the Effective Date, all fees due and payable pursuant to 28 U.S.C. § 1930, including, without limitation, any U.S. Trustee Fees incurred pursuant to 28 U.S.C. § 1930(a)(6), as determined by the Bankruptcy Court at the Confirmation Hearing, to the extent not previously paid by the Debtors, shall be paid in Cash in full.  The Reorganized Debtors shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6) after the Effective Date.  Following Confirmation, the Reorganized Debtors will file with the Bankruptcy Court and serve on the United States Trustee quarterly financial reports regarding all income and disbursements, including all Plan payments, for each quarter (or portion thereof) that the Chapter 11 Cases remain open.

**2.     *Administrative Expenses*.**  On the latest of (a) the Effective Date, (b) the date on which an Administrative Claim becomes an Allowed Administrative Claim, or (c) the date on which an Allowed Administrative Claim becomes payable under any agreement relating thereto, each Holder of such Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim.  Notwithstanding the foregoing, (y) any Allowed Administrative Claim based on a liability incurred by the Debtors in the ordinary course of business during the Chapter 11 Case may be paid in the ordinary course of business in accordance with the terms and conditions of any agreement relating thereto, and (z) any Allowed Administrative Claim may be paid on such other terms as may be agreed to between the Holder of such Claim and the Debtors or the Reorganized Debtors.

***Deadline for Filing Administrative Expenses***.  Other than Holders of (a) Administrative Claims for U.S. Trustee Fees, (b) Professional Fee Claims, (c) Administrative Claims that were Allowed on or before the Effective Date, (d) Administrative Claims incurred and payable in the ordinary course of the Debtors' business, (e) Administrative Claims held by a governmental unit and (f) Administrative Claims held by current officers, directors, managers or employees for indemnification, contribution, or advancement of expenses pursuant to (1) an operating agreement or similar organizational document, or (2) agreement approved by the Bankruptcy Court, all Holders of Administrative Claims shall file with the Bankruptcy Court and serve on the Reorganized Debtors proof of any unpaid Administrative Claim on or before the 30th day following the Effective Date.  Such proof must include all supporting documentation for such Administrative Claim.  **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE CLAIM BEING FOREVER BARRED AND DISCHARGED**.

*Deadline for Filing Postpetition Tax Claims*.  All requests for payment of Claims by a governmental unit for Taxes (and for interest and/or penalties related to such Taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date otherwise has been established previously, must be filed on or before the later of: (i) sixty (60) days following filing of the notice of the Effective Date; and (ii) ninety (90) days following the filing of the tax return for such Taxes for such tax year or period with the applicable governmental unit. **FAILURE TO FILE AND SERVE SUCH POSTPETITION TAX CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE POSTPETITION TAX CLAIM BEING FOREVER BARRED AND DISCHARGED**.

**3.**     *Priority Tax Claims*.  On the later of (a) the Effective Date or (b) the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Tax Claim, in the sole discretion of, prior to the Effective Date, the Plan Proponents or, after the Effective Date, the Reorganized Debtors, (i) Cash equal to the unpaid portion of such Holder's Allowed Priority Tax Claim, (ii) a *Pro Rata* share of $28,725.94 per month, which amount is subject to adjustment in accordance with 26 U.S.C. § 6621, beginning on the Effective Date and continuing for thirty-five (35) months, or until such Allowed Priority Tax Claim is paid in full, which shall occur not later than five years from the Petition Date, or (iii) such other treatment as to which the Debtors or the Reorganized Debtors and such Holder shall have agreed upon in writing.  The IRS priority claim will be paid with interest per 11 U.S.C. § 511(b), and *see* 26 U.S.C. § 6621, currently 5%.

**4.**     *Professional Fee Claims*.  Each Professional requesting compensation pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code for services rendered in connection with the Chapter 11 Cases prior to the Effective Date shall file with the Bankruptcy Court and serve on the Reorganized Debtors an application for allowance of final compensation and reimbursement of expenses in the Chapter 11 Cases on or before the 30th day following the Effective Date. **FAILURE TO FILE AND SERVE SUCH PROFESSIONAL FEE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE PROFESSIONAL FEE CLAIM BEING FOREVER BARRED AND DISCHARGED**.  Without limiting the foregoing, the Reorganized Debtors may pay the charges incurred by the Reorganized Debtors on and after the Effective Date for any professional's fees, disbursements, expenses or related support services, without application to or approval by the Bankruptcy Court.

**C.     TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

**1.**     *Joint Plan for All Debtors.*  This Plan is a single plan of reorganization for the jointly-administered Chapter 11 Cases.  Solely for the purposes of voting, confirmation, and making distributions to the holders of Allowed General Unsecured Claims: (a) all General Unsecured Claims against the Debtors are placed in a single Class for the purpose of voting on the Plan, and (b) any General Unsecured Claims against multiple Debtors based upon one underlying obligation, including Claims based on joint and several liability, contribution, indemnity,

9

subrogation, reimbursement, surety, guaranty, co-maker and similar concepts, shall be treated as a single Claim.  Such treatment of General Unsecured Claims for Plan purposes shall not affect, without limitation: (x) the legal and corporate structure of the Reorganized Debtors, (y) any obligations under any leases or contracts assumed in this Plan or otherwise after the Petition Date, or (z) the obligation of each Reorganized Debtor to pay all U.S. Trustee Fees on all disbursements as required by the Bankruptcy Code and Guidelines of the U.S. Trustee.

### 2.    *Summary of Classes*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified, and the respective treatment of such Unclassified Claims is set forth above in Article II.B of this Plan.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

| *Class* | *Impaired/Unimpaired; Entitlement To Vote* |
|---|---|
| Class 1 – Secured Claims | Unimpaired – Deemed to have accepted this Plan and not entitled to vote |
| Class 2 – Non-Tax Priority Claims | Unimpaired – Deemed to have accepted this Plan and not entitled to vote |
| Class 3 – Convenience Claims | Impaired – Entitled to vote |
| Class 4 – General Unsecured Claims | Impaired – Entitled to vote |
| Class 5 – Interests in Debtors | Unimpaired – Deemed to have accepted this Plan |

### *Treatment of Classes.*

*1.  Classes of Secured Claims*

*Class 1 – Secured Claims*

*Claims In Class:*  All Secured Claims against the Debtors.

*Treatment:*  On the Effective Date, each Holder of an Allowed Secured Claim shall, at the option of the Plan Proponents, be entitled to the treatment set forth below in option A, B, C, D, or E.  The Plan Proponents and the Reorganized Debtors specifically reserve the right to challenge the validity, nature and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported Claims and Liens relating to the Secured Claims.

Option A:  Allowed Secured Claims with respect to which the Plan Proponents elect option A shall be Reinstated.  The failure of the Plan Proponents to file an objection, prior to the Effective Date, with respect to any Secured Claim that is Reinstated hereunder shall be without prejudice to the rights of the Reorganized Debtors to contest or otherwise defend against such Claim in an appropriate forum when and if such Claim is sought to be enforced.  Any cure amount that the Debtors may be required to pay pursuant to section 1124(2) of the Bankruptcy Code on account of any such Reinstated Secured Claim shall be paid on the latest of (a) the Effective Date, (b) the date on which such Secured Claim becomes Allowed, and (c) such other date as mutually may be agreed to by and between such Holder and the Debtors or Reorganized Debtors.

Option B:  Allowed Secured Claims with respect to which the Plan Proponents elect option B shall be paid in Cash, in full, including any amounts owed under section 506 of the Bankruptcy Code, on the latest of (a) the Effective Date, (b) the date on which such Secured Claim becomes an Allowed Secured Claim, (c) the date on which such Secured Claim is otherwise due and payable, and (d) such other date as mutually may be agreed to by and between such Holder and the Debtors or Reorganized Debtors.

Option C:  Allowed Secured Claims with respect to which the Plan Proponents elect option C shall be satisfied by the surrender to the Holder of the Claim of the collateral securing the applicable Secured Claim.

Option D:  Allowed Secured Claims with respect to which the Plan Proponents elect option D shall receive the following payments in Cash: (a) one year after the Effective Date, 20% of the Allowed Amount of the Allowed Secured Claim plus accrued interest at 5% per annum, (b) two years after the Effective Date, 20% of the Allowed Amount of the Allowed Secured Claim plus accrued interest at 5% per annum, (c) three years after the Effective Date, 20% of the Allowed Amount of the Allowed Secured Claim plus accrued interest at 5% per annum, (d) four years after the Effective Date, 20% of the Allowed Amount of the Allowed Secured Claim plus accrued interest at 5% per annum, and (e) five years after the Effective Date, 20% of the Allowed Amount of the Allowed Secured Claim plus accrued interest at 5% per annum. The Reorganized Debtors' payment obligations on account of the Secured Claim will be secured by a security interest in the property securing the

11

Secured Claim as of the Petition Date. If the Secured Claim becomes an Allowed Secured Claim after the Effective Date, the Reorganized Debtors shall make all payments due and owing as of the date the Secured Claim becomes an Allowed Secured Claim within thirty days of such date.

Option E: Allowed Secured Claims with respect to which the Plan Proponents elect option E shall be satisfied in accordance with such other terms and conditions as may be agreed upon by the Debtors or Reorganized Debtors and the Holder of such Allowed Secured Claim.

The Plan Proponents shall be deemed to have elected option A with respect to all Allowed Secured Claims except those with respect to which the Plan Proponents elect another option in writing and filed not later than five (5) days prior to the Confirmation Hearing.

*Voting*: Unless the Debtors elect Option D, Class 1 is an Unimpaired Class, and the Holders of Secured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Secured Claims are not entitled to vote to accept or reject this Plan. If the Debtors elect Option D, Class 1 is Impaired and pursuant to section 1126 of the Bankruptcy Code, the Holder of the Secured Claims are entitled to vote to accept or reject this Plan.

*2.  Classes of Priority Unsecured Claims*

*Class 2 – Non-Tax Priority Claims*

*Claims In Class:* All Non-Tax Priority Claims against the Debtors.

*Treatment*: Except to the extent that the Holder of an Allowed Non-Tax Priority Claim has agreed to a less favorable treatment of such Claim, on the latest of (a) the Effective Date, (b) the date on which such Non-Tax Priority Claim becomes an Allowed Non-Tax Priority Claim, (c) the date on which such Allowed Non-Tax Priority Claim is otherwise due and payable, and (d) such other date as mutually may be agreed to by and between the Debtors and the Holder of such Non-Tax Priority Claim, each Holder of an Allowed Non-Tax Priority Claim shall receive, in full and final satisfaction, release, and discharge of, and in exchange for, such Allowed Non-Tax Priority Claim, Cash equal to the unpaid portion of such Allowed Non-Tax Priority Claim.

*Voting:* Class 2 is an Unimpaired Class, and the Holders of Non-Tax Priority Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Non-Tax Priority Claims are not entitled to vote to accept or reject this Plan.

3.  *Classes of General Unsecured Claims*

*Class 3 – Convenience Claims*

*Claims In Class:* All Convenience Claims against the Debtors.

*Treatment:*  Holders of Convenience Claims shall be paid in Cash, in full, on, or as soon as reasonably practicable after, the latest of (a) the Effective Date, (b) the date on which such Convenience Claim becomes an Allowed Convenience Claim, (c) the date on which such Convenience Claim is otherwise due and payable, and (d) such other date as mutually may be agreed to by and between such Holder and the Debtors or Reorganized Debtors.  No interest will be paid on Allowed Convenience Claims.

*Voting*:  Class 3 is Impaired.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of a Convenience Claim is entitled to vote to accept or reject this Plan.

*Class 4 – General Unsecured Claims*

*Claims In Class:* All General Unsecured Claims.

*Treatment:*  Beginning on the first Business Date of the first calendar month following the end of the calendar quarter in which the Allowed Priority Tax Claims are paid in full, and continuing on the same date of the month following each calendar quarter thereafter, the Holders of Allowed Class 4 Claims shall receive *Pro Rata* distributions of $88,000.00, until the earlier of (a) the date on which all such Allowed Class 4 Claims have been paid in full, and (b) forty-eight (48) months following the date of the first distributions to Holders of Allowed Class 4 Claims under this Plan.

*Voting*:  Class 4 is Impaired.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of a General Unsecured Claim is entitled to vote to accept or reject this Plan.

4.  *Classes of Interests*

*Class 5 – Interests in the Debtors*

*Interests In Class:*  All Interests in the Debtors.

*Treatment*:  Holders of Interests in the Debtors shall have such Interests Reinstated on the Effective Date.

*Voting*:  Class 5 is an Unimpaired Class, and the Holders of Interests in the Debtors are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Interests in the Debtors are not entitled to vote to accept or reject this Plan.

*Intercompany Claims.*  On the Effective Date, all net Intercompany Claims (taking into account any setoffs of Intercompany Claims) held by the Debtors, between and among the Debtors, or between one or more Debtors shall be released, waived, and discharged.

*Reservation of Reorganized Debtors' Rights Regarding Claims*.  Except as otherwise expressly provided in this Plan, nothing shall affect the Debtors' or the Reorganized Debtors' rights, claims and defenses, both legal and equitable, including all rights and claims with respect to legal and equitable defenses to setoffs against or recoupments, with respect to any Claims, including with respect to Claims in Unimpaired Classes.

**D.    ACCEPTANCE OF THE PLAN**

**1.    *Class Entitled to Vote.*** Classes 3 and 4 are Impaired and entitled to vote to accept or reject this Plan.  Class 1 is Impaired if the Debtors elect Option D.  By operation of law, Classes 1 (unless the Debtors elect Option D), 2 and 5, which are Unimpaired Classes, are deemed to have accepted this Plan and, therefore, are not entitled to vote.

**2.    *Acceptance by Impaired Classes*.** An Impaired Class of Claims shall have accepted this Plan if, not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code, (i) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept this Plan and (ii) the Holders of more than one-half in number of the Allowed Claims actually voting in the Class have voted to accept this Plan.

**3.    *Elimination of Classes.*** To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from this Plan for purposes of (a) voting to accept or reject this Plan and (b) determining whether it has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

**4.    *Cramdown.*** To the extent necessary, the Plan Proponents may request confirmation of this Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Plan Proponents reserve the right to modify this Plan to the extent, if any, that confirmation pursuant to section 1129(a) or (b) of the Bankruptcy Code requires modification.

**E.    MEANS FOR IMPLEMENTATION OF THIS PLAN**

**1.    *Continued Legal Existence and Revesting of Assets.*** Except as otherwise provided in this Plan, each Debtor will continue to exist after the Effective Date as a separate legal entity, with all the powers of such an entity (i.e., a corporation) under the laws of the state in which such Debtor was organized and pursuant to such Debtor's articles of organization or formation, operating agreement and other organizational documents in effect as of the Effective Date (provided that such organizational documents shall be amended to prohibit the Reorganized Debtors from issuing non-voting equity securities, to the extent necessary to comply with section 1123(a) of the Bankruptcy

Code), without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date.  In accordance with Section IV.B hereof, and except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estate (including Retained Actions) shall vest in the Reorganized Debtors.

**2**.    ***Sources of Cash for Distribution.***  All Cash necessary for the Reorganized Debtors to make payments required by this Plan shall be obtained from (a) existing Cash balances, and (b) the operation of the Reorganized Debtors.

**3**.    ***Post-Confirmation Management.***  On the Effective Date, Dr. Sean Whalen shall be the President, Secretary and Chief Medical Officer of the Reorganized Debtor Flex Group, Inc., and the President and Chief Medical Officer of the PC Debtors.  Iris Whalen shall be the Chief Executive Officer of Reorganized Debtor Flex Group, Inc.  The directors of Reorganized Debtor Flex Group, Inc., shall be Dr. Sean Whalen and Iris Whalen (the "Whalens").  On the Effective Date, the Whalens will be appointed automatically as the officers and directors of the Reorganized Debtors, as described herein, without any requirement of further action by members, creditors, directors, or managers of the Debtors or the Reorganized Debtors, and their compensation for such services shall be in whole or in part as described in the Disclosure Statement.

**4**.    ***Provisions Governing Distributions***

***a.***    ***Disbursing Agent***.  The Reorganized Debtors shall have the responsibility for making the post-Effective Date payments and distributions to creditors required by this Plan. Notwithstanding any provision herein to the contrary, with respect to distributions on account of pre-Effective Date Claims, the Reorganized Debtors shall make distributions only to Holders of Allowed Claims.  A Holder of a Disputed Claim shall receive only a distribution on account thereof when and to the extent that such Holder's Disputed Claim becomes an Allowed Claim.

***b.***    ***Distributions for Claims Allowed as of the Effective Date.***  Except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Effective Date.  Any distribution to be made on the Effective Date pursuant to this Plan shall be deemed as having been made on the Effective Date if such distribution is made on the Effective Date.  Any payment or distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day.  Distributions to Holders of Allowed Claims will be made by mail as follows:

   i.    If the Holder filed a proof of claim, distributions will be sent to the address, if any, set forth on the proof of claim;

   ii.    If the Holder, after filing a proof of claim, delivered or delivers to the Debtors' attorneys a written notice of address change, distributions will be sent to the address set forth in the written notice and not the address set forth on the proof of claim;

iii.     If no proof of claim was filed or if the filed proof of claim does not set forth a legible and complete address and if the Debtors' attorneys have not received a written notice of address change, distributions will be sent to the address set forth in the Debtors' schedules of assets and liabilities (the "*Schedules*"); or

iv.     If no proof of claim was filed or if the proof of claim does not set forth a legible, complete address, the Debtors' attorneys have not received a written notice of address change; and the Schedules do not set forth a complete address, then the distribution will be deemed to be an "*Undeliverable Distribution*" as defined below.

*c.     Undeliverable Distributions.*  If a distribution is made and returned to the Reorganized Debtors marked as undeliverable for any reason, the distribution shall be deemed an "*Undeliverable Distribution.*"  If a distribution to a Holder is returned to the Reorganized Debtors as an Undeliverable Distribution or is deemed to be an Undeliverable Distribution, the Reorganized Debtors shall make no further distribution to the Holder unless and until the Reorganized Debtors are timely notified by such Holder, in writing, of the Holder's current address.  Any Holder who is otherwise entitled to an Undeliverable Distribution and who does not, within 90 days after the attempted delivery thereof (the "*90-Day Period*"), provide the Reorganized Debtors with written notice asserting its claim in that Undeliverable Distribution and setting forth a current, deliverable address, will be deemed to waive any claim to or interest in that Undeliverable Distribution and will be forever barred from receiving that Undeliverable Distribution from the Reorganized Debtors. Any Undeliverable Distributions that are not claimed prior to the expiration of the 90-Day Period shall revert back to the Reorganized Debtors free and clear of all claims of the Holder and all other Holders of Allowed Claims.  The Reorganized Debtors shall not have any obligation to attempt to locate any Holder whose distribution is undeliverable.  During the 90-Day Period, the Reorganized Debtors shall undertake reasonable efforts, such as a Google search, to attempt to locate any Holder whose distribution is undeliverable.

*d.     Interest and Penalties on Claims.*  Unless otherwise specifically provided for in this Plan or the Confirmation Order, required by applicable bankruptcy law, or necessary to render a Claim Unimpaired, postpetition interest and penalties shall not accrue or be paid on any Claims, including Priority Tax Claims and Non-Tax Priority Claims, and no Holder of a Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date such Claim becomes an Allowed Claim and is satisfied in accordance with the terms of this Plan.

*e.     Means of Cash Payment.*  Payments of Cash made pursuant to this Plan shall be made, at the option and in the sole discretion of the Reorganized Debtors, by checks drawn on, or wire transfer from, a domestic bank selected by the Reorganized Debtors.  Cash payments to foreign creditors may be made, at the option of the Reorganized Debtors, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

*f.     Withholding and Reporting Requirements.*  In connection with this Plan and all distributions hereunder, the Reorganized Debtors shall comply with all withholding and

reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Reorganized Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including in requiring the Holder of any Allowed Claim to provide the Reorganized Debtors with any information, completed and signed state or federal tax forms, or other documents as the Reorganized Debtors may reasonably request.

   **g.** ***Setoffs.*** The Reorganized Debtors may, pursuant to applicable law, but shall not be required to, set off against any Claim the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims or rights of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claim or rights that the Debtors or the Reorganized Debtors may have against such Holder. The Debtors or the Reorganized Debtors shall provide notice of any proposed setoff to the Holder of such Claim at least five (5) days prior to effectuating such setoff.

   **h.** ***Procedures for Resolving Disputed, Contingent, and Unliquidated Claims***.

    i. *Authority and Deadline.* The Reorganized Debtors shall have the sole right to file objections to all Disputed Claims; *provided, however,* if any party in interest requests that the Reorganized Debtors object to a certain Claim, and if the Reorganized Debtors refuse to file the objection, and the requesting party can demonstrate to the Bankruptcy Court that a good faith basis for the objection exists, the Bankruptcy Court may enter an order authorizing the requesting party to file an objection to the Claim. Any objections to Disputed Claims shall be served and filed in the Bankruptcy Court on or before one hundred twenty (120) days after the Effective Date.

    ii. *Creation of Reserves for Disputed Claim*. The Reorganized Debtors shall (i) establish and maintain a reserve for Disputed Claims, (ii) establish and maintain a reserve for Undeliverable Distributions, and (iii) establish any other reserves or accounts it deems necessary or appropriate. All Cash held in the reserves shall be invested only in investments permitted under the Bankruptcy Code and maintained in accounts held at authorized bank depositories.

    iii. *Estimation of Claims*. The Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection and make distributions under the Plan with respect to

other Allowed Claims in the same Class after making an appropriate reserve based on the estimated amount of such Disputed or contingent Claim.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Except as provided herein, Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

        iv.    *Distributions Relating to Disputed Claims*.  At such time as a Disputed Claim becomes an Allowed Claim, the Reorganized Debtors shall distribute to the Holder of such Claim such Cash as the Holder is entitled to under the Plan, which distribution shall occur as soon as practicable after the date that the order or judgment allowing any Disputed Claim becomes a Final Order.  To the extent that all or a portion of a Disputed Claim is Disallowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is Disallowed.

        v.    *Disallowed Claims*.  All Disputed Claims held by Entities against whom or which the Debtors or the Reorganized Debtors have commenced, or described in the Plan or Disclosure Statement as possible, a proceeding asserting a claim for relief under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code and shall continue to be Disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Debtors or the Reorganized Debtors from such party have been paid.

        **4.    *Corporate Action.*** Each of the matters provided for under this Plan involving the corporate structure of the Debtors or the Reorganized Debtors or any corporate action to be taken by, or required of, the Debtors or the Reorganized Debtors shall be deemed to have occurred and be effective as provided herein, and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by stockholders, members, creditors, directors, or managers of the Debtors or the Reorganized Debtors.

        **5.    *Effectuating Documents; Further Transactions.*** Each of the Debtors and Reorganized Debtors, and their respective officers and designees, is authorized to execute, deliver, file, or record all contracts, instruments, releases, indentures, and other agreements or documents, and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan, or to otherwise comply with applicable law.

        **6.    *Exemption From Certain Transfer Taxes and Recording Fees.*** Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from a Debtor to the Reorganized Debtors or to any other Entity pursuant to this Plan, or any agreement regarding the transfer of title to or ownership of any of a Debtor's or an Estate's real or personal property, will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording

fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

7.    ***Further Authorization.***  The Reorganized Debtors shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary to enforce, carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

### III.

### <u>MISCELLANEOUS ITEMS</u>

## A.  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 1.    ***Assumption/Rejection of Executory Contracts and Unexpired Leases***

A list of the Debtors' Executory Contracts and Unexpired Leases, together with the cure amount for each Executory Contract and Unexpired Lease to be assumed, is attached as Exhibit F to the Disclosure Statement.  Exhibit F-1 identifies Executory Contracts and Unexpired Leases to be assumed as of the Effective Date, along with the proposed cure amount to be paid, if any, and Exhibit F-2 identifies Executory Contracts and Unexpired Leases to be rejected as of the Effective Date.  Exhibit F to the Disclosure Statement is subject to modification at any time before the Confirmation Date.

The Debtors' Executory Contracts and Unexpired Leases shall be deemed automatically assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless such Executory Contract or Unexpired Lease:

i.    is listed on Exhibit F-2 to the Disclosure Statement;

ii.    has been previously rejected by the Debtors by order of the Bankruptcy Court;

iii.    has been rejected by the Debtors by order of the Bankruptcy Court in effect as of the Effective Date (which order may be the Confirmation Order); or

iv.    is the subject of a motion to reject filed by the Debtors under section 365 of the Bankruptcy Code pending as of the Confirmation Date.

An Executory Contract or Unexpired Lease that is deemed to be assumed pursuant to the foregoing sentence shall be referred to as an "***Assumed Contract***."  An Executory Contract that is rejected or subject to a motion to reject as described above shall be referred to as a "***Rejected Contract***."

Entry of the Confirmation Order by the Bankruptcy Court shall constitute findings by the Bankruptcy Court that (i) the Debtors and the Reorganized Debtors have properly provided for the cure of any defaults that might have existed consistent with the requirements of section 365(b)(1) of the Bankruptcy Code, (ii) each assumption (or rejection, as the case may be) is in the best interest of the Debtors and the Estates and that each Assumed Contract is assumed and each Rejected Contract is rejected as of the Effective Date, and (iii) the requirements for assumption (or rejection, as the case may be) of any Executory Contract or Unexpired Lease to be assumed or rejected have been satisfied.  No provision of any agreement or other document that permits a person to terminate or modify an agreement or to otherwise modify the rights of the Debtors based on the filing of the petition initiating the Chapter 11 Cases or the financial condition of the Debtors shall be enforceable.  At the election of the Debtors, all cure payments under any Assumed Contract will be made by the Reorganized Debtors (1) on the Effective Date, (2) in 24 equal monthly payments plus 3% per annum interest paid monthly, or (3) upon such other terms as may be agreed to by the Debtors and the non-Debtor party to the Assumed Contract.

In the event of a dispute, cure payments required by section 365(b)(1) of the Bankruptcy Code shall be paid consistent with the preceding sentence commencing upon entry of a Final Order resolving such dispute; *provided, however*, if an objection to the Debtors' proposed cure amount, as set forth on Exhibit F-1 to the Disclosure Statement, is sustained by the Bankruptcy Court, the Reorganized Debtors, in their sole discretion, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it.

Unless otherwise provided by an order of the Bankruptcy Court, any Claim arising from the rejection of an Executory Contract or Unexpired Lease must be filed by the Holder of such Claim with the Bankruptcy Court and served on the parties entitled to notice under this Plan no later than sixty (60) days after the later of (1) the Effective Date or (2) the effective date of such rejection, subject to the Debtors' and the Reorganized Debtors' right to object thereto.  In the event of such objection, the Debtors shall not be obligated to make any distribution in respect of such Claim until such dispute is resolved by Final Order of the Bankruptcy Court or the agreement of the parties.

**2.** *Compensation and Benefit Programs.*  All of the Debtors' existing programs, plans, agreements, and arrangements relating to employee compensation and benefits (other than as set forth in any Rejected Contract), including all savings plans, retirement plans, healthcare plans, disability plans, severance plans, incentive plans, and life, accidental death and dismemberment insurance plans, entered into before the Petition Date, as amended from time to time and to the extent and as in effect immediately prior to the Effective Date (*"Benefit Plans"*) will be deemed to be, and will be treated as though they are, executory contracts that are assumed under Article III.A.1 of this Plan, and the Debtors' and Reorganized Debtors' obligations and rights under such programs, plans, agreements, and arrangements will survive confirmation of this Plan, subject to the terms and conditions of such Benefit Plans.

**3.** *Employment Contracts.*  Any employment agreements designated for rejection in writing by the Debtors and filed with the Bankruptcy Court prior to the Confirmation Date shall be

deemed rejected as of the Effective Date.  Any Claims arising from the rejection of any employment agreements shall be governed by the deadlines set forth in Article III.A.1 of this Plan.  Any such Claims will be classified as Class 4 General Unsecured Claims and will be capped in accordance with section 502(b)(7) of the Bankruptcy Code.

## B.    PRESERVATION OF CAUSES OF ACTION

In accordance with section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors will retain and may (but are not required to) enforce all Retained Actions.  After the Effective Date, the Reorganized Debtors, in their sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court.  The failure to specifically list any claim, right of action, suit, proceeding, or other Retained Action in this Plan or the Disclosure Statement does not, and will not be deemed to, constitute a waiver or release by the Debtors or the Reorganized Debtors of such claim, right of action, suit, proceeding or other Retained Action, and the Reorganized Debtors will retain the right to pursue such claims, rights of action, suits, proceedings, and other Retained Actions in its sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches will apply to such claim, right of action, suit, proceeding, or other Retained Action upon or after the confirmation or consummation of this Plan.

## C.    RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction (unless otherwise indicated) over all matters arising out of, and related to, the Chapter 11 Cases and this Plan, including, among other things, jurisdiction to:

i.    resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease with respect to which the Debtors or the Reorganized Debtors may be liable, and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

ii.    decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications, involving the Debtors that may be pending on the Effective Date or that are described in the Plan or Disclosure Statement as may be commenced after the Effective Date;

iii.    decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications, involving objections to Claims filed after the Effective Date;

21

iv.      enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

v.      resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to this Plan, or any entity's rights arising from, or obligations incurred in connection with, this Plan or such documents;

vi.      modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order, or remedy any defect or omission, or reconcile any inconsistency, in any Bankruptcy Court order, this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

vii.      hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under sections 330, 331, 503(b) and 1129(a)(4) of the Bankruptcy Code; *provided*, *however*, that from and after the Effective Date the payment of fees and expenses of the Reorganized Debtors, including professional fees, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

viii.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation, or enforcement of this Plan or the Confirmation Order;

ix.      adjudicate controversies arising out of the administration of the Estate or the implementation of this Plan;

x.      recover all assets of the Debtors and property of the Estates, wherever located;

xi.      hear and determine claims for relief and causes of action by or on behalf of the Debtors or the Reorganized Debtors;

xii.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason, or in any respect, modified, stayed, reversed, revoked, or vacated, or distributions pursuant to this Plan are enjoined or stayed;

xiii.    hear and resolve all matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

xiv.    determine any other matters that may arise in connection with, or relate to, this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

xv.    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases;

xvi.    hear and determine such other matters related hereto that are not inconsistent with the Bankruptcy Code or title 28 of the United States Code; and

xvii.    enter an order closing the Chapter 11 Cases.

***Failure of Bankruptcy Court to Exercise Jurisdiction.***    If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter, including the matters set forth in Section III.C of the Plan, the provisions of this Section shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

**D.    CONFIRMATION AND CONSUMMATION OF THIS PLAN**

**1.    *Condition To Entry of the Confirmation Order.*    The following are conditions precedent to the Confirmation, each of which must be satisfied, or waived in writing, by the Plan Proponents in accordance with the terms hereof:

a.    The Plan and all schedules, documents, supplements and exhibits relating to this Plan shall have been filed in form and substance acceptable to the Plan Proponents.

b.    The proposed Confirmation Order shall be in form and substance acceptable to the Plan Proponents.

**2.    *Conditions To Effective Date*.    The Debtors shall request that the Confirmation Order include a finding by the Bankruptcy Court that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall take effect immediately upon its entry.    The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived by the Plan Proponents in accordance with the terms hereof:

a.    The Confirmation Order, in form and substance satisfactory to the Plan Proponents, shall be in full force and effect and not subject to any stay and shall, among other things, provide that the Debtors and Reorganized Debtors are authorized, without further approval or consent under the Debtors' existing organizational documents, to take

23

all actions necessary to enter into all agreements or documents created in connection with this Plan.  Without limiting the foregoing, the directors or officers of the Debtors and the Reorganized Debtors shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

b.    All authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of this Plan shall have been obtained.

c.    All other actions, documents, and agreements necessary to implement this Plan shall have been effected or executed.

d.    The Debtors shall have sufficient Cash to make all payments required to be made on the Effective Date.

e.    The Effective Date shall have occurred on or prior to the later of (i) the first business day following the date that is six months after the date the Confirmation Order becomes a Final Order, and (ii) May 1, 2021.

**3.**    *Waiver Of Condition.*  The Plan Proponents may waive, in whole or in part, the conditions to the occurrence of the Effective Date, without any notice to parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Effective Date shall preclude the occurrence of the Effective Date, regardless of the circumstances giving rise to the failure of such condition to be satisfied, including any action or inaction by the Plan Proponents.  The waiver of a condition to the occurrence of the Effective Date shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

## IV.

## EFFECT OF PLAN CONFIRMATION

**A.    BINDING EFFECT.**  This Plan shall be binding upon and inure to the benefit of the Debtors, the Estates, all current and former Holders of Claims and Interests, and their respective successors and assigns, including the Reorganized Debtors.

**B.    REVESTING OF ASSETS.**  Except as otherwise explicitly provided in this Plan, on the Effective Date, all Retained Actions and all other property comprising the Estates shall vest in the Reorganized Debtors, free and clear of all Claims, Liens, charges, encumbrances, rights, and Interests of creditors and equity security holders except for possessory liens, purchase money security interests and as otherwise set forth in the Plan.  As of the Effective Date, the Reorganized Debtors may operate their business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any

restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

## C.    DISCHARGE, SATISFACTION OF CLAIMS AND RELEASES

**1.** *Complete Satisfaction, Discharge and Releases*.

a.    Except as otherwise provided herein or in the Confirmation Order, all consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtors or any of their assets or properties and, regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, retained, or distributed pursuant to this Plan on account of such Claims, upon the Effective Date, the Debtors shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including demands and liabilities that arose before the Effective Date, and all debts of the kind specified in 11 U.S.C. § 502, whether or not (i) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (iii) a Claim based upon such debt is or has been Disallowed by order of the Bankruptcy Court, or (iv) the Holder of a Claim based upon such debt accepted this Plan.

b.    As of the Effective Date, except as provided in this Plan or the Confirmation Order, all Entities shall be precluded from asserting against the Debtors or the Reorganized Debtors any other or further Claims, debts, rights, causes of action, claims for relief, or liabilities relating to the Debtors or any Interest in the Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as provided in this Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors, and the termination of all such Interests, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim or a terminated Interest.

## D.    INJUNCTION

**1.**    *General.*  **Except as provided in this Plan or the Confirmation Order, from and after the Effective Date, all Entities that have held, currently hold, may hold, or allege that they hold, a Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, cause of action, or liability that is released, terminated, exculpated, or discharged under Section IV.C of the Plan, along with their respective current and former employees, agents, officers, directors, managers, principals, affiliates, shareholders, and members, are permanently enjoined from taking any of the following actions against the Debtors, the Reorganized Debtors, the Exculpated Parties or any other released party, and their respective agents, officers, directors, managers, employees, representatives, advisors, attorneys, affiliates, shareholders, or members, or any of their successors or assigns or any of their respective**

**property on account of any such released, terminated or discharged Claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or Interest:  (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors; or (v) commencing or continuing any action, in each such case in any manner, in any place, or against any Entity that does not comply with or is inconsistent with the provisions of this Plan or the Confirmation Order.**

### 2.    *Exculpation and Limitation of Liability*

a.    None of the Exculpated Parties shall have or incur any liability to any Entity or any Entity's respective agents, employees, representatives, advisors, attorneys, affiliates, shareholders, or members, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the Disclosure Statement, the formulation, negotiation, or implementation of this Plan, the pursuit of Confirmation of this Plan, the Confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for acts or omissions that are the result of fraud, gross negligence, criminal conduct, or willful misconduct, including the willful misappropriation of confidential information; *provided*, *however*, that the foregoing exculpation and limitation of liability shall apply only to acts and omissions that occur prior to the Effective Date, except with respect to those specific Plan administrative matters identified herein; and *provided further, however,* that the foregoing exculpation and limitation of liability shall not apply to and shall not operate to waive, release, or exculpate any Claims or causes of action arising from or related to the rights and obligations under this Plan and the contracts, instruments, releases, and other agreements or documents delivered hereunder or contemplated hereby and thereby.  Without limiting the generality of the foregoing, the Debtors, the Reorganized Debtors, and any of such parties' directors, managers, officers, or members, shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

b.    Notwithstanding any other provision herein, nothing in this Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state and local authority against the Exculpated Parties, and nothing in the Plan shall enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Exculpated Parties referred to herein for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state or local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue

Code, the environmental laws, or any criminal laws of the United States or any state and local authority, against the Exculpated Parties referred to herein.

          c.    Notwithstanding any other provision herein, nothing in this Plan shall limit the liability of the Professionals of the Debtors or the Reorganized Debtors to their respective clients.

      **3.**     ***Term of Bankruptcy Injunction or Stays.***

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

## E.    POST-EFFECTIVE DATE RETENTION OF PROFESSIONALS

Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate and the Reorganized Debtors may employ and pay professionals in the ordinary course of business.

## F.    INDEMNIFICATION OF OFFICERS, DIRECTORS AND EMPLOYEES

All Claims arising on or after the Petition Date relating to or arising from the obligation of the Debtors to exculpate, indemnify or advance any expense to any officer, director, manager, employee or agent, shall survive confirmation of the Plan and become the obligations of the Reorganized Debtors.

## G.    AMENDMENT OR MODIFICATION OF THIS PLAN

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Plan Proponents reserve the right to alter, amend, or modify this Plan at any time prior to or after the Confirmation Date, including, without limitation the right to withdraw the Plan; provided, however, that, in the event a material modification to the Plan is proposed after the Effective Date, the Reorganized Debtors shall provide notice and an opportunity to object to all interested parties.  A Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

**H.      POST-CONFIRMATION STATUS REPORTS**

Subject to any requirements set forth in the Confirmation Order or section 1106(a)(7) of the Bankruptcy Code, the Reorganized Debtors shall file, within 45 days after the Effective Date, a status report detailing the actions taken by the Debtors and the Reorganized Debtors and the progress made toward the consummation of this Plan.  Reports shall be filed thereafter every March 15, June 15, September 15, and December 15 until a final decree has been entered.

**I.      PAYMENT OF QUARTERLY FEES**

All U.S. Trustee Fees due and payable as of the Effective Date, plus applicable interest, if any, shall be paid by the Debtors in full on the Effective Date.  The Reorganized Debtors shall be responsible for timely payment of all U.S. Trustee Fees incurred after the Effective Date.

**J.      POST-CONFIRMATION CONVERSION/DISMISSAL**

A Creditor or party in interest may bring a motion to convert or dismiss the Chapter 11 Cases under Bankruptcy Code section 1112(b) after the Plan is confirmed if there is a default in performing the Plan.  If the Bankruptcy Court orders the Chapter 11 Cases converted to chapter 7 after the Plan is confirmed, all property that had been property of the chapter 11 Estates, and that has not been disbursed pursuant to the Plan, will revest in the chapter 7 estates, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Bankruptcy Court during this Chapter 11 Cases.

**K.      FINAL DECREE AND CLOSING OF THE CHAPTER 11 CASES**

As soon as practicable after the Estates are fully administered, the Reorganized Debtors shall seek a decree closing the Chapter 11 Cases.  The Estates shall be administered fully, as provided in Bankruptcy Code section 3022, notwithstanding any continuing jurisdiction of the Bankruptcy Court and whether or not the Reorganized Debtors have made all distributions to the Holders of Allowed Claims and Interests as provided under this Plan.

**L.      SEVERABILITY OF PLAN PROVISIONS**

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power, upon the request of the Plan Proponents, to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Subject to the rights of the Plan Proponents under Sections IV.G and IV.N herein, notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination that each term and provision of this

Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**M.    SUCCESSORS AND ASSIGNS**

This Plan shall be binding upon and inure to the benefit of the Debtors and the Reorganized Debtors, and successors and assigns of the Debtors and the Reorganized Debtors.  The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

**N.    REVOCATION, WITHDRAWAL, OR NON-CONSUMMATION**

The Plan Proponents reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization.  If the Plan Proponents revoke or withdraw this Plan, or if Confirmation or consummation of this Plan does not occur, then (i) this Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Class of Claims or any release contemplated hereby), assumption of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (iii) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (A) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Entity, (B) prejudice in any manner the rights of the Debtors or any Entity in any further proceedings involving the Debtors, or (C) constitute an admission of any sort by the Debtors or any other Entity.

**O.    NOTICE**

All notices, requests, and demands to or upon the Reorganized Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered by either hardcopy or electronic mail, addressed as follows:

If to the Reorganized Debtors, to:

Flexogenix Group, Inc.
Attn: Sean Whalen
7422 Garvey Avenue, Suite 203
Rosemead, CA 91755

with a copy to:

1  Margulies Faith LLP
2  Attn: Monsi Morales
   16030 Ventura Blvd., Suite 470
3  Encino, CA  91436
   Email: Monsi@MarguliesFaithLaw.com
4  Telephone: (818) 705-2777

5  **P.    GOVERNING LAW**

6
   Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is
7  applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights
8  and obligations arising under this Plan shall be governed by, and construed and enforced in
   accordance with, the laws of the State of California without giving effect to the principles of
9  conflicts of law of such jurisdiction.

10 **Q.    TAX REPORTING AND COMPLIANCE**

11
   The Reorganized Debtors are hereby authorized to request an expedited determination
12 under section 505(b) of the Bankruptcy Code of the tax liability of the Debtors for all taxable
13 periods ending after the Petition Date through, and including, the Effective Date.

14 **R.    CONFLICTS**

15
   In the event that provisions of the Disclosure Statement and provisions of this Plan conflict,
16 the terms of this Plan shall govern.

17 Dated:  March 23, 2021

18
                                    Flexogenix Group, Inc.
19                                  Flexogenix North Carolina, P.C.
                                    Flexogenix Oklahoma, P.C.
20                                  Flexogenix Georgia, P.C.
21                                  Whalen Medical Corporation

22

23

24                                  By: Sean Whalen
25                                  Its: President

26

27

28